Jane Metcalf (*pro hac vice* pending)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice* pending)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice* pending)
  pvogel@pbwt.com
Basil Williams (*pro hac vice* pending)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al., | Case No.: 5:22-CV-01839-JGB-SHK |
| Plaintiffs, | **DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| INCOMM FINANCIAL SERVICES, INC., | Hon. Jesus G. Bernal |
| Defendant. | Date:  Mar. 6, 2023<br>Time:  9:00 a.m.<br>Courtroom:  1 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on March 6, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California, 92501, before the Honorable Jesus G. Bernal, Defendant InComm Financial Services, Inc. will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing with prejudice Plaintiffs' Complaint.

Plaintiffs accuse InComm of deceiving consumers through its "marketing" of Vanilla® Prepaid Gift Cards. But Plaintiffs do not say what these objectionable marketing materials were, or why they were deceptive. Plaintiffs also do not explain how the gift cards differed from what they expected when they purchased the cards. To the extent Plaintiffs expected the gift cards to be the only payment cards in the world with absolute immunity to third-party fraud, that expectation was patently unreasonable. Accordingly, Plaintiffs do not plead their claims under the California Consumer Legal Remedies Act ("CLRA") and California Unfair Competition Law ("UCL") with the plausibility and particularly required by Federal Rules of Civil Procedure 8 and 9(b). Plaintiffs' unjust enrichment claim, which is entirely derivative of their CLRA and UCL claims, likewise fails.

Furthermore, Plaintiffs Shelby Cooper and Sharon Manier lack standing under Article III of the U.S. Constitution and under the UCL to bring their claims. They never purchased InComm's gift cards. Therefore, they did not take any action based on InComm's marketing and cannot claim it caused them any injury.

Finally, Plaintiffs' breach-of-implied-contract claims fail. Plaintiffs do not even attempt to explain how, when, or where they entered into implied contracts with InComm. They also do not allege the privity required between parties to create an implied contract.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Jane Metcalf and exhibits thereto, the pleadings

1   and records on file, and such other matters as the Court deems necessary and proper

2   to adjudicate this Motion.

3       This Motion is made following the conference of counsel pursuant to Local

4   Rule 7-3, which took place on December 6, 2022.

5

6   Dated: December 14, 2022          By: */s/ William A. Delgado*

7                                     William A. Delgado (SBN 222666)
                                        wdelgado@dtolaw.com
8                                     DTO LAW
9                                     601 S. Figueroa St. Suite 2130
                                      Los Angeles, CA 90017
10                                    Tel: (213) 335-7010
11                                    Fax: (213) 335-7802

12                                    Jane Metcalf (*pro hac vice* pending)
13                                      jmetcalf@pbwt.com
                                      David S. Kleban (*pro hac vice* pending)
14                                      dkleban@pbwt.com
15                                    Peter Vogel (*pro hac vice* pending)
                                        pvogel@pbwt.com
16                                    Basil Williams (*pro hac vice* pending)
17                                      bwilliams@pbwt.com
                                      PATTERSON BELKNAP WEBB &
18                                    TYLER LLP
19                                    1133 Avenue of the Americas
                                      New York, New York 10036
20                                    Tel: (212) 336-2000
21                                    Fax: (212) 336-2222

22                                    Attorneys for Defendant
23                                    INCOMM FINANCIAL SERVICES, INC.

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    A.    InComm's Gift Cards ........................................................................... 2

    B.    The Complaint ....................................................................................... 5

          1.    The Named Plaintiffs' Allegations of "Unauthorized Use" of their Cards ........................................................................ 5

          2.    The Plaintiffs' Allegations of Purportedly Unfair Practices ......................................................................................... 8

          3.    The Better Business Bureau Website ..................................... 10

    C.    Plaintiffs' Causes of Action ............................................................. 10

ARGUMENT .................................................................................................................. 11

I.    The Complaint Does Not State a Claim Under the UCL or CLRA .......... 12

    A.    The Complaint fails to identify how the Gift Cards fell short of Plaintiffs' expectations ................................................................. 13

    B.    The Complaint fails to identify any misleading communications about the Gift Cards .............................................. 14

    C.    No reasonable consumer would expect an impenetrably fraud-proof gift card ............................................................................. 18

II.    Mere "Recipients" of Vanilla Gift Cards Have No Standing ................... 20

    A.    Recipients lack Article III standing ................................................ 20

    B.    Recipients lack standing under the UCL ....................................... 21

III.    The Complaint Does Not State a Claim for Unjust Enrichment ............... 22

IV.    The Complaint Does Not State a Claim for Breach of Implied Contract .. 23

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... 11, 13

*Avila v. Vital Pharms., Inc.*,
    2013 WL 12124054 (C.D. Cal. Feb. 7, 2013) ........................................ 12, 13, 16

*Barrett v. Apple Inc.*,
    2022 WL 2119131 (N.D. Cal. June 13, 2022) ................................................ 17

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ........................................................... 18, 19

*Benay v. Warner Bros. Ent., Inc.*,
    607 F.3d 620 (9th Cir. 2010) ................................................................ 24

*Boris v. Wal-Mart Stores, Inc.*,
    35 F. Supp. 3d 1163 (C.D. Cal. 2014) ........................................................ 16

*Brod v. Sioux Honey Ass'n Coop.*,
    895 F. Supp. 2d 972 (N.D. Cal. 2012) ........................................................ 23

*Carney v. Adams*,
    141 S. Ct. 493 (2020) ....................................................................... 20

*Choon's Design, LLC v. ContextLogic Inc.*,
    2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) .................................................. 22

*Colucci v. ZonePerfect Nutrition Co.*,
    2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) .................................................. 20

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
    2018 WL 10072961 (C.D. Cal. May 1, 2018) ................................................... 22

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
    895 F.3d 1166 (9th Cir. 2018) ............................................................... 20

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................ 18, 19

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ............................................................... 15

*Frison v. Accredited Home Lenders, Inc.*,
   2011 WL 2729241 (S.D. Cal. July 13, 2011) ....................................................... 22

*Gardner v. Health Net, Inc.*,
   2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ................................................... 24

*Gunaratna v. Dennis Gross Cosmetology LLC*,
   2020 WL 8509681 (C.D. Cal. Nov. 13, 2020) ....................................................... 3

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ....................................................... 12, 17

*In re Intel Laptop Battery Litigation*,
   2010 WL 5173930 (N.D. Cal. Dec. 15, 2010) ...................................................... 21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................... 11, 15

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..................................................................... 4

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (Cal. 2011) ........................................................................ 21

*Lee v. Toyota Motor Sales, U.S.A.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ........................................................... 15

*Mack v. LLR, Inc.*,
   2019 WL 1873294 (C.D. Cal. Feb. 6, 2019) ................................... 12, 15, 16, 22

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................................... 15

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ..................................................................... 18

*In re NJOY, Inc.*,
   2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ................................................... 16

*Paracor Fin., Inc. v. GE Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .................................................................... 23

*Red v. Kraft Foods, Inc.*,
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................................... 19

*Shaouli v. Saks Fifth Ave.*,
  2015 WL 13917124 (C.D. Cal. Apr. 2, 2015) ..................................................... 22

*Sperling v. DSW Inc.*,
  2016 WL 354319 (C.D. Cal. Jan. 28, 2016) ........................................... 11, 12, 13

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...................................................................... 11

*Starzynski v. Cap. Pub. Radio, Inc.*,
  88 Cal. App. 4th 33 (Cal. Ct. App. 2001) ...................................................... 24

*Terpin v. AT&T Mobility, LLC*,
  399 F. Supp. 3d 1035 (C.D. Cal. 2019) .......................................................... 23

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................... 3

*Werbel v. Pepsico, Inc.*,
  2010 WL 2673860 (N.D. Cal. July 2, 2010) ................................................... 18

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................................ 18

*Yari v. Producers Guild of Am., Inc.*,
  161 Cal. App. 4th 172 (Cal. Ct. App. 2008) .................................................. 23

**Statutes**

Cal. Bus. & Prof. Code § 17204 ........................................................................ 21

Cal. Civ. Code § 1770 ....................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................... 11

1   Defendant InComm Financial Services, Inc. (together with its affiliates,
2   "InComm") respectfully submits this Memorandum of Points and Authorities in
3   support of its Motion to Dismiss the Complaint.

**PRELIMINARY STATEMENT**

5   In this putative class action, five Plaintiffs accuse InComm of deceiving
6   consumers through its "marketing" of Vanilla® Prepaid Gift Cards.  But Plaintiffs
7   do not say what these objectionable marketing materials were, or why they were
8   deceptive.  Plaintiffs also do not explain in any detail how the Vanilla Gift Cards
9   differed from what they expected when they purchased the cards.  And two of the
10  Plaintiffs do not allege that they bought Vanilla Gift Cards at all.  For these reasons,
11  among others, their Complaint does not get out of the starting gate.

12  Though Plaintiffs claim to have found the gift cards unsatisfactory, their
13  Complaint does not explain how or why.  Plaintiffs' primary allegation is that the
14  cash balances of their cards got depleted at some point.  But Vanilla Gift Cards are
15  essentially single-use prepaid debit cards; the cash balances are *supposed* to be
16  spent.  Although Plaintiffs insinuate that third-party fraudsters were responsible for
17  the depletion of their balances, they provide no supporting facts.  The Complaint
18  acknowledges that, if Plaintiffs suspected fraud, they could have easily gone online
19  and checked their card records for unauthorized charges.  But none of the Plaintiffs
20  alleges that she did that, let alone that she *found* unauthorized charges.  Plaintiffs'
21  claims of fraud are nothing more than speculation.

22  More fundamentally, even if Plaintiffs' balances were in fact depleted by
23  fraud, they allege no facts to suggest that InComm's "marketing" was to blame.
24  Though Plaintiffs allude vaguely to purportedly misleading representations and
25  omissions by InComm, they never say what those deceptions were, or where or when
26  they occurred.  And to the extent Plaintiffs expected the Vanilla Gift Cards to be the
27  only payment cards in the world with immunity to third-party fraud, that expectation
28  cannot support their claims, since no reasonable consumer would share it.

These deficiencies doom all five Plaintiffs' claims.  In addition, the two Plaintiffs who did not buy the cards, but instead received them as gifts, have no Article III or statutory standing to complain of InComm's "marketing."  If both purchasers and gift recipients had standing, as Plaintiffs urge, InComm would be liable twice over for every gift card.

The Complaint alleges, at most, that the Plaintiffs were dissatisfied with the Vanilla Gift Cards, and with the customer service they received when they complained to InComm about it.  But this Court is not a backup customer service line, and Plaintiffs' subjective disappointment is not a basis for a consumer fraud claim.  The Complaint should be dismissed with prejudice.

## BACKGROUND

### A.    InComm's Gift Cards

InComm Financial Services, Inc., a South Dakota corporation based in Atlanta, Georgia, is part of a family of financial technology companies collectively known as InComm Payments ("InComm").  Since its founding in 1992, InComm has developed, distributed, marketed and serviced a variety of innovative payment products.  InComm sells tens of millions of non-reloadable gift cards each year. Among its most popular products are Vanilla Gift Cards,  which are available for purchase at online and brick-and-mortar retailers.  Compl. ¶¶ 1-2.  A Vanilla Gift Card functions like a debit card with a pre-set cash balance, which the cardholder can use to make purchases where the associated credit card network—typically Visa or MasterCard—is accepted.  *Id.*  A cardholder can check his Vanilla Gift Card balance and transaction history online at vanillagift.com.  *Id.* ¶ 4.

Unlike traditional debit and credit cards, however, a Vanilla Gift Card is not linked to a specific individual or bank account.  Once a consumer purchases a Vanilla Gift Card, the card's balance automatically becomes available for spending by whoever possesses the card.  *Id.* ¶ 19.  The purchaser can keep and spend the card or give it to someone else as a gift.  Thus, a Vanilla Gift Card is as easily transferable

2

as cash, but functions similarly to a debit or credit card.  This combination makes Vanilla Gift Cards a popular option for gifts as well as personal use.  *Id.*  Vanilla Gift Cards typically sell for their balance amount (also known as their "face value"), plus an "activation fee" of $2.95–$9.95.  *Id.* ¶ 22.

Vanilla Gift Cards, like all payment instruments, carry some inherent risk of fraudulent interference by third parties.  But InComm devotes considerable resources to preventing and mitigating that interference.  Some of InComm's anti-fraud measures are consumer-facing.  For example, each Vanilla Gift Card is protected by a unique PIN, which InComm sets initially but encourages consumers to change at first use of the card.  (Ex. A.)[1]  InComm also enables consumers to check a card's balance history on its website, vanillagift.com, and offers a dedicated customer service line for all consumer concerns, including those relating to unauthorized card charges.  *See* Compl. ¶¶ 11, 20.  These services, among many others, enhance the security and convenience of the Vanilla Gift Cards, and are available without limitation in exchange for the modest, one-time activation fee.

As Plaintiffs' Complaint acknowledges, identifying and redressing occurrences of Vanilla Gift Card fraud is a complex undertaking, to which InComm

---

[1] Citations to "Ex." are to exhibits attached to the Declaration of Jane Metcalf, filed herewith.  On a motion to dismiss, the Court can consider "documents incorporated by reference in the complaint."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A document is incorporated by reference if the plaintiff "refers extensively to [it] or the document forms the basis of the plaintiff's claim."  *Id.* Furthermore, "[c]ourts routinely incorporate product labels where the complaint challenges their adequacy."  *Gunaratna v. Dennis Gross Cosmetology LLC*, 2020 WL 8509681, at *2 (C.D. Cal. Nov. 13, 2020).  Here, Plaintiffs' Complaint refers vaguely to InComm's "marketing," without specifying the materials on which Plaintiffs' claims are based.  However, to the extent Plaintiffs' purchases of physical Vanilla Gift Cards form the basis of their claims, *see* Compl. ¶ 10, the Court may properly consider the labeling and packaging of those products.  Similarly, because the Complaint refers to the brand website, vanillagift.com, *see id.* ¶¶ 4, 20, Plaintiffs have incorporated the material on that website by reference.

voluntarily devotes considerable resources.  The cards' easy transferability, while a prime selling point, can also impede InComm's efforts to distinguish unauthorized charges from legitimate ones.  By design, the cards are not linked to a specific user, a fact that limits InComm's ability to flag and avert "suspicious" charges on the cards.  This feature of the cards also complicates InComm's efforts to distinguish a legitimate fraud complainant from, *e.g.*, someone who is seeking a bogus refund, or someone who permitted another person to access her card and now forgets or denies having done so.  For these reasons, InComm cannot guarantee its consumers a refund for any and all instances of reported fraud.  The Complaint does not allege that InComm has ever made such a guarantee.

Nevertheless, InComm conscientiously investigates consumers' reports of fraud and routinely refunds consumers whose reports are deemed credible. InComm's page on the Better Business Bureau ("BBB") website, which Plaintiffs reference at length in their Complaint, reflects dozens of instances from the past year in which InComm has substantiated a claim of fraud and issued the consumer a full refund.  Although some consumers complained that the process took some time (an inevitability given the challenges noted above), virtually all were satisfied with the resolutions.  This exemplary record has earned InComm a BBB rating of "A+," and a "response rate" score of 100% on the BBB website.  Ex. B.[2]

---

[2] Plaintiffs have incorporated the BBB website by reference, by quoting from it extensively in their Complaint.  Plaintiffs' selective quotations are also highly misleading, as shown in Exs. B and C.  This makes incorporation by reference of the BBB website all the more appropriate.  The doctrine of incorporation by reference prevents plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *Ritchie*, 342 F.3d at 907).  That is what Plaintiffs have attempted here.

**B.     The Complaint**

Plaintiffs are five California consumers who claim to have been dissatisfied with their Vanilla Gift Cards in some way.  Three of them claim to have purchased Vanilla Gift Cards (the "Purchasers"), while the other two allege that they received cards as gifts (the "Recipients").  Each Plaintiff complains that her card balance was depleted at some point after purchase, and speculates that the card may have had "charges made against it by Unauthorized Users."  Compl. ¶ 12.

Even assuming that their speculation is accurate, Plaintiffs offer no facts to explain why their grievance is with InComm rather than the "Unauthorized Users" who stole their balances.  Though the Complaint pins the blame for Plaintiffs' misfortunes on InComm's purportedly unfair and deceptive marketing, just what "marketing" they are talking about is anyone's guess.  Indeed, the Complaint ***does not even reference*** a single label, advertisement, or other marketing communication relating to the Vanilla Gift Cards.

**1.     The Named Plaintiffs' Allegations of "Unauthorized Use" of their Cards**

Plaintiff Carolyn Clark is the only Plaintiff who says she purchased a gift card for her own use.  *See id.* ¶ 7.  She alleges that she purchased an electronic gift card "online" (without specifying from what site) "within the last year."  *Id.*  Sometime after she bought the card—the Complaint does not say when or where—she tried to use the card and it was rejected.  *Id.*  The card was later rejected a second time.  *Id.*  Again, the Complaint does not say when or where.

Other than these cryptic references to having her card "rejected," Clark provides no information at all about her experience with the Vanilla Gift Card. Although the Complaint acknowledges that cardholders may "look up Card balances on [InComm's] website" and check for "specific charges made by unknown third parties," Clark does not identify any such charges on her card, or even claim to have consulted her balance history.  *Id.* ¶ 4.  It is also not clear what Clark did with the

card prior to the "rejection" episodes—how she secured it, whether she provided anyone else with access to it, or whether she spent any of it herself. Her allegations are thus entirely consistent with the possibility that Clark herself, or someone else whom she allowed to access the card, spent the balance.

Clark's allegations about her customer service experiences with InComm (which the Complaint calls "Vanilla") are no more informative. Though Clark claims to have called InComm "several times" and spent "approximately 30 hours trying to recoup the funds she paid for her card," she says very little about what happened during all that time. *Id.* She does not say when she called or to whom she spoke. She does not say what information she provided, or what InComm told her, during the "several times" she allegedly called the company. Indeed, she does not say whether InComm rejected her claim for a refund, or is still reviewing it.

Tarika Stewart claims to have purchased a $100 gift card for her son at an unidentified WalMart store in December 2021. *Id.* ¶ 10. She alleges that her son told her that when he tried to use the card—the Complaint does not say when or where—he learned that the balance was $2. *Id.* Stewart does not deny (and does not claim that her son denies) the possibility that the balance was depleted because he either spent it himself or permitted someone else to do so. Like Clark, she does not allege that she consulted the balance history or found any unauthorized charges.

Also like Clark, Stewart claims to have spent considerable time— "approximately 50 hours"—on the issue, but does not say what she did during all that time. And she similarly does not say whether her complaint with InComm is still pending or, if not, what its outcome was.

Aquilla Thompson alleges that she purchased an electronic gift card for her daughter in December 2021 from an unspecified website. *Id.* ¶ 11. She does not say when she gave the card to her daughter, or whether anyone else had access to the card. "Soon" after Thompson's daughter received the card, Thompson alleges, the daughter told Thompson that it had no value. *See id.* The Complaint does not say

*how* soon, or how Thompson's daughter made this discovery.  Like Stewart, Thompson does not deny (and does not claim that her daughter denies) that either her daughter, or someone else who was permitted to access the card, spent some or all of the original balance.  Thompson says nothing about any purportedly unauthorized charges on the card's balance history.  And other than characterizing the process as a "runaround," Thompson does not provide any information about the content or circumstances of her conversations with InComm.

The two Recipients, Shelby Cooper and Sharon Manier, do not claim to have purchased Vanilla Gift Cards at all.  *See id.* ¶¶ 8-9.  Cooper alleges that she received seven cards as gifts at one or more unspecified points in 2021, and Manier claims to have received a single card (she does not say how) in December 2021.  *Id.*  Both Recipients complain that they later discovered—they do not say when or where— that their cards had either no value or "less than the Face Value."  *Id.* ¶ 8; *see also id.* ¶ 9.  Neither identifies any unauthorized charges she discovered on the card. Cooper does not claim to have contacted InComm about her problems.  *See id.* ¶ 8. Manier claims to "recall[] that Vanilla indicated" that "it could not[] or would not" fix "the lack of funds."  *Id.* ¶ 9.  She does not elaborate on how InComm "indicated" this, nor does she disclose what information (if any) she provided to InComm or when.

In addition to providing almost no information about the purported depletion of their card balances, Plaintiffs provide no information at all about the cards themselves—no serial numbers, no partial card numbers, no expiration dates, and no specific dates, times, or purchase locations.  They do not even bother to share what card networks (*e.g.*, Visa or MasterCard) the cards were associated with.  And, as noted, they give no details about their purported complaints to InComm.  This utter

lack of specificity precludes InComm from locating Plaintiffs' cards or customer service records, or even determining the cards' terms of use.[3]

### 2.     The Plaintiffs' Allegations of Purportedly Unfair Practices

Even if Plaintiffs could allege facts to support their suspicions of fraud, their Complaint is also missing another major piece of the puzzle: factual allegations that InComm's deceptive or unfair business practices, rather than the third-party fraudsters, are to blame.  Plaintiffs accuse InComm of "market[ing] and sell[ing] [the] Cards as though . . . the Face Value is available for spending," and claim that, had InComm been truthful, "Plaintiffs and Purchaser Class Members would not have purchased [the cards]."  *Id.* ¶¶ 25, 43.  But none of the Plaintiffs identifies a single label, advertisement, or other "marketing" communication that she saw or relied upon when purchasing Vanilla Gift Cards.  The Complaint does not even reference any such material.  It is a Complaint for unlawful marketing practices with no mention of any marketing practices.

Instead, the Complaint vaguely attributes a variety of purportedly misleading messages to InComm—without any indication of where, how, or when InComm communicated them.  The Complaint is hazy about what InComm's objectionable messages were.  First, Plaintiffs claim that InComm failed to "disclose[] that its Cards held less than their Face Value," which left the Purchasers unable to "know[] the truth about whether Vanilla's Cards contained their Face Value ***after purchase***."

---

[3] The terms of use for each Vanilla Gift Card are set forth in a "cardholder agreement," which is enclosed with the physical card and available at https://balance.vanillagift.com/#/cardholderAgreement.    While    the    various cardholder agreements have some essential terms in common, different cards are subject to different agreements, depending on date and place of purchase and other factors.    But because Plaintiffs do not identify the cards they purchased or "received," InComm cannot even determine which agreements applied.  For this reason, InComm reserves all rights, defenses and arguments based on the terms of the applicable cardholder agreements.

*Id.* ¶ 43 (emphasis added).  Laying aside Plaintiffs' failure to say where or when this purported concealment occurred, it is unclear what information they are accusing InComm of hiding.  Vanilla Gift Cards do not purport to retain their balances indefinitely "after purchase"; the balances are supposed to be spent.  And Plaintiffs do not and cannot dispute that the Vanilla Gift Cards contained their face value ***at the time of*** purchase.  So Plaintiffs have not indicated what "truth" they are accusing InComm of concealing.

Plaintiffs proffer a few other, equally puzzling theories as to how InComm's unspecified marketing communications misled them.  Plaintiffs accuse InComm of failing to tell them "that [the] [c]ard funds would be improperly depleted" or were "vulnerable to fraudulent use and theft."  *Id.* ¶¶ 45, 55.  But all cards are "vulnerable" to fraud to some extent, and Plaintiffs do not allege that InComm ever claimed otherwise.  Nor do they explain how, without a crystal ball, InComm could have warned them that their card funds "***would be***" depleted.

At another point, Plaintiffs allege that InComm failed to disclose that it "did not employ reasonable, industry-standard, and appropriate security measures," or that its "processing and data systems were insecure."  *Id.* ¶ 54.  According to Plaintiffs, InComm engaged in "unfair business practices by marketing Cards as being worth their Face Value while . . . using sub-standard security practices and procedures[,] [and] . . . intentionally erecting barriers through difficult and time-consuming customer service processes."  *Id.* ¶ 64.  But the Complaint alleges nothing deficient, and indeed no facts at all, about InComm's security measures, practices or procedures.  And as explained above, Plaintiffs do not even describe their own individual interactions with InComm customer service in any detail.  They certainly offer no basis for concluding that InComm "intentionally" put "barriers" in the way of consumers hoping to report concerns about fraud.

### 3.    The Better Business Bureau Website

On the contrary, the materials incorporated in Plaintiffs' Complaint suggest that InComm's customer service is exemplary.   The Complaint exhibits four consumer comments posted to the BBB website.  *Id.* ¶ 24.  Plaintiffs claim that these comments "illustrate the problem."  *Id.*  But Plaintiffs do not mention that the same website shows that InComm resolved all four concerns as follows:

- by providing an $800 refund to a customer who complained of fraudulent transactions totaling $792.40 (*compare* Compl. at 8:7-15, *with* Ex. B at 7-8);

- by explaining that the reason a customer's card had been declined for a transaction was due to "safety and security" measures, to which the customer replied that "this resolution is satisfactory" (*compare* Compl. at 9:1-8, *with* Ex. C at 24-25);

- by providing a replacement card in the same amount as the original (*compare* Compl. at 9:9-20, *with* Ex. C at 30-31); and

- by again providing a replacement card in the same amount as the original (*compare* Compl. at 10:1-8, *with* Ex. C at 32).

The website also shows that InComm's satisfactory responses to these complaints are the norm, rather than the exception.  That is why the BBB—a nonprofit organization dedicated to protecting consumers' interests—gives InComm's customer service a rating of "A+" and notes InComm's 100% response rate to consumer concerns.   Accordingly, Plaintiffs' exhibits belie rather than support their contention that InComm "intentionally" deflected or ignored consumer concerns about fraud.

### C.    Plaintiffs' Causes of Action

The Purchasers, Clark, Stewart, and Thompson, assert claims under the "unfair" and "unlawful" prongs of California's Unfair Competition Law ("UCL") (Compl. ¶¶ 49-70) and under the Consumer Legal Remedies Act ("CLRA") (*id.*

¶¶ 36-42), as well as claims for breach of implied contract (*id.* ¶¶ 77-82), and unjust enrichment (*id.* ¶¶ 89-95).  The Recipients assert claims under the "unfair" prong of the UCL (*id.* ¶¶ 71-76) and for breach of implied contract (*id.* ¶¶ 83-88) only.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A]llegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a complaint is "grounded in fraud" or "sound[s] in fraud," Rule 9(b) of the Federal Rules of Civil Procedure applies to the "pleading . . . as a whole." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Under Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  This means that "the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken conduct."  *Sperling v. DSW Inc.*, 2016 WL 354319, at *4 (C.D. Cal. Jan. 28, 2016) (Bernal, J.).  A plaintiff cannot evade this heightened standard by packaging a UCL claim as one for "unfair" rather than "fraudulent" conduct.  Claims under the "unfair" prong are still subject to Rule 9(b) when "grounded in fraud."  *E.g.*, *Kearns*, 567 F.3d at 1127.

Here, each count in the Complaint is premised on InComm's purportedly fraudulent marketing of its Vanilla Gift Cards.  The Purchasers' CLRA claim rests on the contention that InComm "represent[ed] that [the Vanilla Gift Cards] ha[d] characteristics . . . that they d[id] not" the same purported CLRA violation supplies the basis for the Purchasers' claim under the "unlawful" prong of the UCL.  *See* Compl. ¶¶ 41-45, 51-52.  Similarly, the Plaintiffs' claim under the "unfair" prong accuses InComm of "marketing cards as being worth their Face Value while

knowing that Cards are not likely to retain their Face Value."   *Id.* ¶¶ 63-64 (Purchasers); *see also id.* ¶¶ 71-72 (Recipients).  The implied contract claim alleges that InComm falsely "promised that the Face Value . . . would be available to spend when used," *see id.* ¶ 78 (Purchasers); *id.* ¶ 84 (Recipients).  Finally, the Purchasers' unjust enrichment claim alleges that InComm "operated a fraud on the public" by "acting to hide that its cards would not retain their face value as promised" and "affirmatively misrepresent[ing]" the cards' face value, *id.* ¶ 92.  Each of these claims is "grounded in fraud" for purposes of Rule 9(b).

## I.    The Complaint Does Not State a Claim Under the UCL or CLRA

"A claim under the UCL requires a showing of . . . unfair, deceptive, untrue, or misleading advertising."  *Mack v. LLR, Inc.*, 2019 WL 1873294, at *4 (C.D. Cal. Feb. 6, 2019) (Bernal, J.) (citation omitted).  The CLRA, similarly, prohibits (among other things) "[r]epresenting that goods or services have . . . characteristics . . . that they do not have."  Cal. Civ. Code § 1770.  The disputed advertisement must be objectively "likely to deceive a reasonable consumer" in order to be actionable.  *Sperling*, 2016 WL 354319, at *5.

A complaint under either statute must also establish the plaintiff's "injury and its connection to Defendant's alleged misconduct," which in practice requires an allegation of "reliance on the allegedly misleading advertisements."  *Avila v. Vital Pharms., Inc.*, 2013 WL 12124054, at *3 (C.D. Cal. Feb. 7, 2013) (Bernal, J.); *see also Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1022 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (plaintiff must show that "the deceptive practice caused pecuniary loss").

The Complaint fails on all of these fronts.  First, although Plaintiffs claim that InComm used deceptive marketing to conceal "the truth" about its Vanilla Gift Cards, they do not explain what "truth" they are talking about.  Second, Plaintiffs do not identify—much less with the required particularity—the statements or omissions that InComm made and that they purportedly relied upon.  Third, Plaintiffs fail the

1   "reasonable consumer" test to the extent they insinuate that they believed that the

2   gift cards were entirely fraud-proof.

3       **A.**    **The Complaint fails to identify how the Gift Cards fell short of**

4              **Plaintiffs' expectations**

5         As an initial matter, Plaintiffs have not pleaded facts sufficient to establish

6   how, if at all, their Vanilla Gift Cards underperformed.  Plaintiffs speculate that

7   third-party fraud accounted for the depletion of their balances, and that the cards

8   were unduly vulnerable.  But all Plaintiffs offer in support of this speculation is that

9   their balances were depleted, at unspecified times and under unspecified

10   circumstances.  Plaintiffs make no effort to account for the possibility that they, or

11   persons whom they gave access to the cards, depleted the balances.  And although

12   Plaintiffs acknowledge that they can easily check their balances online for "specific

13   charges made by unknown third parties," they do not allege that they bothered to do

14   this.  Compl. ¶ 4.  Nor do they identify their cards with sufficient detail to enable

15   InComm to do so.  Based on this minimal information, Plaintiffs ask the Court to

16   conclude not only that their balances were fraudulently accessed, but also that

17   InComm's lack of "reasonable, industry-standard, and appropriate security

18   measures" was to blame.  *Id.* ¶ 54.

19         The Court should do no such thing.  Even under Rule 8, "naked assertions

20   devoid of further factual enhancement" are unworthy of credence.  *Iqbal*, 556 U.S.

21   at 678 (quoting *Twombly*, 550 U.S. at 557).  Accordingly, this Court has dismissed

22   consumer fraud claims brought by plaintiffs who fail to "set forth any facts to support

23   [their] claims regarding [the product's alleged deficiency]."  *Avila*, 2013 WL

24   12124054, at *3 (dismissing claim relating to alleged presence of undisclosed

25   ingredient for failure to allege that the product actually contained the ingredient);

26   *see also Sperling*, 2016 WL 354319, at *6–7 (dismissing claim for allegedly

27   misleading representations about prevailing market prices, when Plaintiff provided

28   merely "conclusory allegations that Defendants' [representations] do not [reflect]

the prevailing market prices," and gave "no details at all regarding Plaintiff's efforts to investigate" the market prices).  The result can be no different here.  Plaintiffs' Complaint gives "no details at all" about why they believe they were victims of fraud, or why they believe InComm is to blame.  This Court need not and should not credit their unsupported hypotheses.

Given how little information Plaintiffs have provided, it is no wonder that some of them complain of unsatisfying experiences with InComm's customer service.  Those experiences are characterized with precious little detail.  *See* Compl. ¶¶ 7, 9-11.  But if Plaintiffs were as cryptic with InComm's customer service representatives as they are in their Complaint, there is little InComm could have done to help.  By contrast, as discussed above, InComm resolved each and every one of the customer concerns posted to the BBB's website that are exhibited in the Complaint.  The Complaint therefore offers zero factual basis from which to conclude that InComm "intentionally erect[ed] barriers through difficult and time-consuming customer service."  *Id.* ¶¶ 64, 72.

In short, Plaintiffs have not pleaded facts showing that there was anything wrong with their cards.  Neither Plaintiffs' bare speculation about the depletion of their balances, nor their subjective frustration with their customer service experiences, can form the basis of a consumer fraud claim.

**B.    The Complaint fails to identify any misleading communications about the Gift Cards**

Even if Plaintiffs had alleged that their Vanilla Gift Card balances were appropriated by fraudsters—which they have not—that does not give them a claim against InComm.  Plaintiffs must also plead facts establishing that these misfortunes occurred because the Vanilla Gift Cards did not live up to InComm's "marketing." They have barely even attempted to do this.  Though their entire Complaint centers upon InComm's purportedly misleading "marketing" of the Vanilla Gift Cards (*see id.* ¶¶ 25, 29, 42, 64, 72, 92), nowhere do they say what "marketing" they are

referring to.  The Complaint does not identify a single advertisement, product label, or other communication that allegedly misrepresented the products, much less one that Plaintiffs relied upon.  This falls well short of the standards of Rule 9(b). *Kearns*, 567 F.3d at 1126; *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (complaint must "state the time, place, and specific content of the false representations" to avoid dismissal under Rule 9(b) (internal quotation marks omitted)).

Plaintiffs appear to believe that, by basing their claims primarily on "omissions" rather than affirmative misrepresentations, they have relieved themselves of the obligation to plead these essential facts.  *See, e.g.*, Compl. ¶ 65. That is not how it works.  Like claims involving affirmative misrepresentations, claims of deception through "nondisclosure . . . must be pleaded with particularity under Rule 9(b)."  *Kearns*, 567 F.3d at 1127.  Many courts in this District have assessed these omission-based claims using the standard established in *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009).  *See, e.g.*, *Lee v. Toyota Motor Sales, U.S.A.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014).  By that standard, a plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples . . .  [of] representations that [the] plaintiff relied on to make her purchase and that failed to include the allegedly omitted information."  *Marolda*, 672 F. Supp. 2d at 1002.  Other courts have held omission-based claims to a slightly modified standard, requiring plaintiffs to identify the "advertisement rendered misleading by an omission," and to "provide sufficient detail [about] the material on which they relied" in the advertisement.  *Mack*, 2019 WL 1873294, at *6-7.

This Court need not opine on which of these standards is appropriate here, because Plaintiffs' Complaint fails under both.  Plaintiffs have not even referenced, let alone described with particularity, an advertisement or other marketing communication that contained a material omission.  They simply allege that

somewhere, sometime, InComm should have provided information and failed to do so.  That is not enough.

 Tellingly, the omission-based complaint at issue in *Mack*—which also flunked both standards—was supported by considerably more detail than Plaintiffs provide.  There, at least, the plaintiffs alleged that they had seen advertisements via Facebook "pop-ups," described generally the pictures of the product featured in the pop-ups, and identified the information that those pictures allegedly concealed.  *Id.* at *7.  This was not enough to avoid dismissal, this Court held, because the plaintiffs had not proffered facts giving the defendant "sufficient notice of its own alleged misconduct," such as the "details of the particular image they saw," when they saw it, and who posted it.  *Id.*  But even that deficient complaint was better than this one, which contains no information at all about when or where InComm's supposed "omissions" of information occurred.

Thus, Plaintiffs' "omission" theory cannot fix their failure to identify a single marketing communication that they relied upon—a fundamental defect for which courts in this Circuit routinely dismiss consumer fraud complaints.  *See Avila*, 2013 WL 12124054, at *2 (citing *Kearns*, 567 F.3d at 1126) (dismissing UCL and CLRA claims for failure to allege "any facts regarding what advertisements he saw, when he was exposed to them, or which ones he found material and relied on in making his purchase"); *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1175 (C.D. Cal. 2014) ("[A]bsent an express allegation that [plaintiff] viewed the misleading content, there can be no reliance and the claim fails under Rules 8(a) and 9(b)."); *In re NJOY, Inc.*, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014) (dismissing claims where plaintiffs did not state what deceptive materials they saw or "the medium through which the allegedly misleading representations were communicated to them").  Their Complaint should be dismissed for this reason.

Notably, even if Plaintiffs could point to some marketing communication that withheld information they would have preferred to receive, that would still not

suffice for an "omission" claim.  Not every omission of information that might interest consumers is actionable under California law.  Rather, to be actionable, the "omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant . . . had a duty to disclose." *Hodsdon*, 162 F. Supp. 3d at 1024. Here, Plaintiffs have not alleged that InComm made any such omission.  For that matter, they have not plausibly alleged that InComm omitted ***any*** information in particular.  To the extent Plaintiffs claim that InComm concealed the fact that the cards were "not likely to retain the[ir] [f]ace [v]alue," that is facially implausible.  Compl. ¶¶ 64, 72.  The cards' face value is intended to be spent, not "retained" indefinitely, and Plaintiffs cannot claim that InComm made a secret of that fact.

To the extent Plaintiffs claim that InComm concealed security vulnerabilities of the cards, they have no factual support for that claim, either.  As set forth above, the Plaintiffs' allegations do not support the inference that their card balances were depleted by fraud at all.  But even laying that issue aside, Plaintiffs do not attempt to explain what "security measures" they believe were not taken.  *Id.* ¶ 54. Furthermore, although the Complaint references InComm's supposed failure to employ "industry-standard" security measures, it says nothing about what the standard is or in what respect InComm failed to meet it.  *Id.*  And as a court within this Circuit recently concluded in a roughly analogous case, the occurrence of fraud does not constitute a security defect requiring disclosure. *Barrett v. Apple Inc.*, 2022 WL 2119131, at \*11–12 (N.D. Cal. June 13, 2022) (dismissing UCL "omission" claims on the grounds that the "existence, prevalence, and nature of . . . gift card scams" was not a "safety hazard or physical defect" of the cards that the issuer was obligated to disclose).  Thus, not only have Plaintiffs failed to say ***when*** and ***where*** InComm's purported "omissions" appeared, but they have also failed to explain ***what*** information InComm omitted.

Plaintiffs' allegations of a misrepresentation or omission are nowhere close to adequate.  Plaintiffs do not identify any communication that they relied upon and from which material information was purportedly "omitted."  On top of that, they do not even make clear what information they are accusing InComm of omitting.  Each of these deficiencies is independently fatal to Plaintiffs' UCL and CLRA claims.

## C.   No reasonable consumer would expect an impenetrably fraud-proof gift card

Given Plaintiffs' failure to allege that InComm misrepresented the initial face value or "security measures" associated with the cards, one possible reading of their Complaint is that Plaintiffs believed the cards to be fraud-proof, and felt misled when they learned otherwise.  Even putting aside Plaintiffs' failure to allege that they were in fact victims of fraud, that theory is a non-starter.  No reasonable consumer would expect a prepaid debit card to be utterly impervious to fraud.

Claims under the UCL and CLRA "are governed by the 'reasonable consumer' test," which requires a showing that "members of the public are likely to be deceived" by the challenged communication. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  This "objective" standard demands more than "a mere possibility" that the disputed representation "might conceivably be misunderstood by [a] few consumers viewing it in an unreasonable manner." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).  When applying the standard, courts take account of not only the disputed representation, but also of "contextual inferences regarding the product" that a reasonable consumer would make.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *Becerra*, 945 F.3d at 1228 (court must "consider the [representation] in its proper context").  When a court "can conclude as a matter of law that members of the public are not likely to be deceived," *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010), the complaint must be dismissed.  *See, e.g., Moore*, 4 F.4th at 880–

86; *Becerra*, 945 F.3d at 1228–31; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–67 (9th Cir. 2016).

This principle makes fast work of any claim that Plaintiffs expected the Vanilla Gift Cards to be indefeasibly fraud-proof.  Reasonable consumers are aware that ***all*** payment cards may occasionally be targeted by fraud, and that the Vanilla Gift Cards are no exception.  Courts consistently reject UCL claims premised on consumers' ignorance of products that are "commonplace in the market."  *Ebner*, 838 F.3d at 966 (concluding that "commonplace" lip balm dispenser was not objectively misleading about the amount of available product, since "the reasonable consumer understands the general mechanics of these dispenser tubes"); *Becerra*, 945 F.3d at 1228 (concluding that reasonable consumers would not be misled by the term "diet" on a soft drink, given that such products are "common in the marketplace" and there is a "prevalent understanding of the term ['diet'] in that context"); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (concluding that depiction of vegetables on a cracker box was not misleading because reasonable consumers understand the "fact of life" that crackers are not made primarily of "fresh vegetables.").  This Court should do the same here.

The same principle disposes of Plaintiffs' vague gripes about InComm's customer service.  It is not clear what happened when Plaintiffs called customer service, or what they think should have happened.  But in any event, Plaintiffs cannot claim that InComm "omitted" material information by failing to warn them that they might experience frustration during a customer service interaction.  Although InComm strives to deliver excellent customer service—and, according to the BBB, succeeds—no customer service department can please everyone at all times, as reasonable consumers know.  Thus, Plaintiffs cannot base their claims on their disappointment with InComm's customer service, or on InComm's failure to warn them about the possibility of disappointment.  If they could, the UCL and CLRA would essentially transform the courts into backup customer service centers.

1    In short, Plaintiffs have failed to allege (1) that their cards fell short of their

2    expectations; (2) that anything in InComm's marketing (or omitted from InComm's

3    marketing) gave rise to misplaced expectations; or (3) that a reasonable consumer

4    would share their expectations.  Each of these is a separate and independent reason

5    to dismiss their consumer fraud claims.

6    **II.   Mere "Recipients" of Vanilla Gift Cards Have No Standing**

7    All of the Plaintiffs' claims must be dismissed for the reasons set forth above.

8    But the Recipients, Cooper and Manier, have yet another problem.  Having never

9    purchased gift cards, they suffered no injury from InComm's alleged misconduct,

10   and have no standing to sue.  *See* Compl. ¶¶ 8-9.  Were it otherwise, InComm would

11   be liable twice over for the same gift card, first by the purchaser and then by the gift

12   recipient.

13   **A.    Recipients lack Article III standing**

14   Article III requires a plaintiff to plead facts establishing that he or she

15   "suffered an injury in fact" caused by the defendant's alleged misconduct.  *Dutta v.*

16   *State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (quoting *Lujan*

17   *v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Plaintiffs bear the burden of

18   demonstrating standing.  *Carney v. Adams*, 141 S. Ct. 493, 499 (2020).

19   The Recipients have not plausibly alleged that they suffered an injury in fact

20   attributable to InComm's purportedly deceptive marketing.  Having never purchased

21   Vanilla Gift Cards, these Plaintiffs took no action based on InComm's marketing, so

22   cannot claim that it caused them any injury.  Their alleged disappointment with the

23   cards they received as gifts is not an injury-in-fact attributable to InComm.

24   For these reasons, courts in this Circuit have rejected the gambit the

25   Recipients are trying here.  In *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL

26   6737800 (N.D. Cal. Dec. 28, 2012), two plaintiffs sued a snack-bar company for

27   allegedly misleading labeling, though only one of the plaintiffs had purchased the

28   bars at issue.  *Id.* at *1–2.  The other, like the Recipients here, had only received

them as gifts.  *Id.* at \*4–5.  The court dismissed all of the latter plaintiff's statutory and common-law claims for lack of Article III standing, reasoning that "standing in product mislabeling cases is predicated on the purchase of at least ***some*** product."  *Id.* at \*5.  This Court should reach the same result here, and dismiss the Recipients' claim in their entirety for lack of standing.

## B.   Recipients lack standing under the UCL

The Recipients also lack statutory standing under the UCL, the only statute under which they assert claims.  (The CLRA claim is limited to the Purchasers.)  UCL claims may be prosecuted only by those who have ***"lost money or property as a result of*** the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  This requirement renders statutory standing "substantially narrower than federal standing" and "more difficult to satisfy."  *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 886–87 (Cal. 2011).  Accordingly, even if the Recipients' remoteness from InComm's alleged misconduct did not defeat their constitutional standing, it would defeat their statutory standing.

*In re Intel Laptop Battery Litigation*, 2010 WL 5173930 (N.D. Cal. Dec. 15, 2010), is instructive.  There, the plaintiffs alleged that Intel had misled consumers about certain features of its laptops.  *Id.* at \*1.  The court concluded that one of the plaintiffs did not have standing under the UCL, however, because "corporate funds were used to purchase the laptop at issue."  *Id.* at \*3.  Accordingly, the court reasoned, that plaintiff "did not personally [lose] any money in association with the transaction."  *Id.*  So too here:  Recipient Plaintiffs cannot claim to have "personally" lost any money as a result of InComm's purportedly misleading statements.  This precludes them from demonstrating the "actual reliance on the allegedly deceptive or misleading statements" necessary to confer standing.  *Kwikset*, 246 P.3d at 888.

This defect cannot be cured by Recipients' conclusory allegation that they suffered "damages from lost time and effort . . . by contacting, or trying to contact, [InComm] to remedy the issue(s) and recoup the Face Value of the Cards."  Compl.

¶ 75. Expenditure of time is not a cognizable injury under the UCL; only "loss of money or property" is.  *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2018 WL 10072961, at *9 (C.D. Cal. May 1, 2018) (dismissing UCL claims where the plaintiffs did not allege facts showing how "lost time or resources" or "unnecessary efforts" resulted in "lost money or property"); *Shaouli v. Saks Fifth Ave.*, 2015 WL 13917124, at *5 (C.D. Cal. Apr. 2, 2015) (same).  The Recipients' failure to allege any such loss is fatal to their claims.

This is not a mere technicality.  Allowing the Purchasers ***and*** the Recipients to proceed with their claims, as Plaintiffs urge, would expose InComm to liability multiple times—once to the initial purchaser and once to each subsequently aggrieved "recipient"—for its sale of a single gift card.  By limiting claims to the directly and concretely injured, the principles of standing avert that unjust result.

## III.   The Complaint Does Not State a Claim for Unjust Enrichment

The Purchasers' claim for unjust enrichment fails for substantially similar reasons as their UCL and CLRA claims.  Unjust enrichment claims that are merely derivative of deficient claims under the UCL and CLRA are routinely dismissed.  *See, e.g.*, *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 n.4 (N.D. Cal. Nov. 24, 2020) ("Plaintiff's unjust enrichment claim also fails because it is a derivative cause of action."); *Frison v. Accredited Home Lenders, Inc.*, 2011 WL 2729241, at *5 (S.D. Cal. July 13, 2011) ("Because all other claims . . . are dismissed, Plaintiff's claim for unjust enrichment is also dismissed . . . .").

Furthermore, Rule 9(b) applies to "unjust enrichment claim[s] based on fraud."  *Mack*, 2018 WL 6927860, at *14.  Here, the unjust enrichment claim relies on InComm's alleged "scheme to deceive the public to collect fees for its own business purposes," Compl. ¶ 91, and must therefore comply with Rule 9(b).  As discussed above, Plaintiffs fail to allege the underlying circumstances of fraud "with particularity."   *See Mack*, 2018 WL 6927860, at *7, *14 (dismissing unjust

enrichment claim where plaintiffs "failed to plead the when, what, and who of the alleged misrepresentations").[4]

Finally, Plaintiffs' Complaint does not explain how the purported "scheme" resulted in InComm's "enrichment." Plaintiffs allege that the card balances were spent by fraudsters, not used to enrich InComm. That leaves the card fees, which Plaintiffs allege range from $2.95–$9.95, as the only potential enrichment source. But weighing these modest fees against InComm's cost of manufacturing, distributing and servicing the cards, ***and*** attending to Plaintiffs' purportedly extensive complaints, it is implausible that InComm was enriched at all.

## IV.   The Complaint Does Not State a Claim for Breach of Implied Contract

Finally, Plaintiffs' claim for breach of implied contract also fails, because it too is utterly unsupported by specific factual allegations. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (Cal. Ct. App. 2008). To state a claim, Plaintiffs must allege the conduct that "manifested an intent to create a contract," the terms of the implied contract, and the "bargained for exchange at the core of the implied contract." *Brod v. Sioux Honey Ass'n Coop.*, 895 F. Supp. 2d 972, 982 n.7 (N.D. Cal. 2012). Courts thus dismiss implied-contract claims for "fail[ure] to allege the parties' conduct that form[ed] the basis of the implied contract." *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1049 (C.D. Cal. 2019).

---

[4] Plaintiffs' unjust enrichment claim also fails for the additional reason that such a claim cannot lie where a binding contract governs the transaction. *See Paracor Fin., Inc. v. GE Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."). As discussed at *supra* n.3, the Vanilla Gift Cards are governed by written "cardholder agreements."

Plaintiffs' implied-contract claim should be dismissed for this reason.  They rely entirely on the conclusory allegation that InComm "entered into implied contracts with Plaintiffs . . . promising that the Face Value of [their cards] would be available to spend when used," and that this implied contract—whenever or however it was made—required InComm to "safeguard" the cards for Plaintiffs' use through "reasonable or industry-standard means," whatever Plaintiffs believe those to be. Compl. ¶¶ 78-79, 84-85.  That is not enough.  To state a claim for breach of implied contract, Plaintiffs must allege what InComm purportedly contracted to do, how that contract was formed, and how InComm breached it.  *See*, *e.g.*, *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *6 (C.D. Cal. Aug. 12, 2010) (dismissing claim for breach of implied contract to prevent "unauthorized access" to health information, where plaintiffs did not allege any "promise on the part of [d]efendant to prevent such loss or unauthorized access").

The implied contract claims fail for the additional reason that the Complaint does not allege privity between the parties, "a necessary element of an implied-in-fact-contract claim."  *Benay v. Warner Bros. Ent., Inc.*, 607 F.3d 620, 634 (9th Cir. 2010), *overruled on other grounds by Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1067 (9th Cir. 2020).[5]  Plaintiffs' claims for breach of implied contract should be dismissed.

---

[5] Plaintiffs' implied-contract claim is further precluded by the existence of the cardholder agreements.  "[T]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring a different result."  *Starzynski v. Cap. Pub. Radio, Inc.*, 88 Cal. App. 4th 33, 38 (Cal. Ct. App. 2001) (internal quotation marks omitted).  Where the terms of an alleged implied contract vary from those of an express contract, "[t]he express term is controlling."  *Id.*  As noted *supra* n.3, Plaintiffs have not provided sufficient detail to enable InComm to identify the cardholder agreements applicable to their cards, but InComm reserves all rights based on those agreements.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, InComm respectfully requests that the Court dismiss the Complaint with prejudice.

1

Respectfully submitted,

2

3

Dated: December 14, 2022

By: */s/ William A. Delgado*

4

5

6

7

8

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

9

10

11

12

13

14

15

16

17

18

Jane Metcalf (*pro hac vice* pending)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice* pending)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice* pending)
  pvogel@pbwt.com
Basil Williams (*pro hac vice* pending)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

19

20

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for InComm Financial Services, Inc., certifies that this brief is twenty-five pages, which complies with the page limit set by court order dated October 20, 2022.


Dated: December 14, 2022          By: */s/ William A. Delgado*

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice* pending)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice* pending)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice* pending)
  pvogel@pbwt.com
Basil Williams (*pro hac vice* pending)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.