Graham B. LippSmith (SBN 221984)
g@lippsmith.com
MaryBeth LippSmith (SBN 223573)
mb@lippsmith.com
Jaclyn L. Anderson (SBN 258609)
jla@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA  90071
Tel: (213) 344-1820 / Fax: (213) 513-2495

Jason T. Dennett (WSBA #30686), *Pro Hac Vice*
jdennett@tousley.com
Kaleigh N. Boyd (WSBA #52684), *Pro Hac Vice*
kboyd@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA  98101
Telephone: (206) 682-5600 / Fax: (206) 682-2992

Attorneys for Plaintiffs and the Putative Classes

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CAROLYN CLARK, et al.; | Case No. 5:22-cv-01839-JGB-SHK |
| Plaintiffs, | Hon. Jesus G. Bernal |
| v. | |
| INCOMM FINANCIAL SERVICES, INC., a Delaware corporation, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S MOTION TO DISMISS** |
| Defendant. | Date:  March 6, 2023 |
| | Time:  9:00 a.m. |
| | Dept.:  1 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .........................2

LEGAL STANDARD FOR MOTION TO DISMISS ..........................................2

ARGUMENT .........................................................................................................5

    I.    The Motion Misapplies Rule 9(b) to the Complaint as a Whole ........5

        A.    The Complaint, as a Whole, Does Not Allege Fraud ...............5

        B.    Rule 9(b) Applies Only to Plaintiffs' Unjust Enrichment Claim ........................................................................................6

    II.    The Motion Misconstrues the Claims Plaintiffs Actually Allege .......9

    III.    The Motion Ignores the Standard for a Motion to Dismiss .............10

    IV.    The Motion Improperly Augments Rule 8's Requirements .............11

    V.    The Motion Misapprehends and Misapplies the Substantive Law ...12

        A.    Plaintiffs State a Valid CLRA Claim ....................................12

        B.    Plaintiffs State Valid UCL Claims ........................................13

            i.    Plaintiffs State a Valid Unlawful Business Practices Claim ...............................................................................14

            ii.    Plaintiffs State Valid Unfair Business Practices Claims ...................................................................................15

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

**TABLE OF CONTENTS**

2

**Page**

3       iii.   Plaintiffs' UCL Claims Do Not Require Allegations

4            About the Reasonable Consumer's Likelihood of

5            Deception ...................................................................17

6    C.   Plaintiffs State a Valid Unjust Enrichment Claim.................18

7       i.   Plaintiffs' Unjust Enrichment Allegations Are

8            Sufficient ..................................................................18

9       ii.   Plaintiffs' Unjust Enrichment Allegations Sounding in

10           Fraud Satisfy Rule 9(b) ...............................................19

11    D.   Plaintiffs State Valid Breach of Implied Contract Claims .....21

12  VI.   Recipient Plaintiffs Have Standing...................................................23

13    A.   Recipient Plaintiffs Each Suffered an Injury in Fact..............23

14    B.   Recipient Plaintiffs Have Standing to Pursue UCL Claims ...24

15  VII.  In the Alternative, the Court Should Grant Leave to Amend ...........25

16  CONCLUSION .................................................................................25

17  CERTIFICATE OF COMPLIANCE ................................................27

18

19

20

21

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Beaver v. Tarsadia Hotels Corp.*, 816 F.3d 1170 (9th Cir. 2016).........................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................4

*Brod v. Sioux Honey Ass'n Co-op.*, 895 F. Supp. 2d 972 (N.D. Cal. 2012) ..........23

*Brown v. Starbucks Corp.*,
    No. 18cv2286 JM (WVG), 2019 WL 4183936 (S.D. Cal. Sep. 3, 2019) ........21

*Camacho v. Automobile Club of Southern California*,
    142 Cal. App. 4th 1394 (Cal. Ct. App. 2006) .................................................15

*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006)............14

*Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247 (2010).......15, 16

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ..............25

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951 (1997) ............................6

*Gonzales v. Allstate Ins.*, 19-5569,
    2019 WL 4972327 (W.D. Wash. Oct. 7, 2019) ...............................................25

*Hishon v. King Spalding*, 467 U.S. 69 (1984)..................................................4, 10

*Holley v. Gilead Scis., Inc.*, 410 F. Supp. 3d 1096 (N.D. Cal. 2019)...................20

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......16

*In re Marriott Int'l, Inc.*,
    No. 19-md-2879, 2020 WL 869241 (D. Md. Feb. 21, 2020).........................20

*In re: Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ......................................................14, 17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3
*Jacobson v. AEG Capital Corp.*, 50 F.3d 1493 (9th Cir. 1995)...........................11

4
*Johnson v. Superior Court*, 38 Cal. App. 4th 463 (1995) ....................................22

5
*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)................................5, 7

6
*Lack v. Cruise Am., Inc.*,
   No. 17-cv-03399-YGR, 2017 WL 3841863 (N.D. Cal. Sep. 1, 2017)............20

7
*Land O'Lakes v. Gonsalves*, 281 F.R.D. 444 (E.D. Cal. 2012) ...........................20

8
*Mack v. LLR, Inc.*, 2019 WL 1873294 (C.D. Cal. Feb. 6, 2019) ...........................9

9
*Marie Y. v. Gen. Star Indemnity Co.*, 110 Cal. App. 4th 928 (2003)...................22

10
*Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008 (S.D. Cal. 2009)..............24

11
*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009) ...........6, 9, 14

12
*McGraw v. Aegis Gen. Ins. Agency, Inc.*,
   2016 U.S. Dist. LEXIS 91124 (N.D. Cal. 2016)...........................................5, 6

13
*McVicar ex rel. Situated v. Goodman Global, Inc.*,
14
   1 F. Supp. 3d 1044 (C.D. Cal. 2014)...............................................................24

15
*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ..........................6

16
*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) ..............13

17
*Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811 (2011)...............................21

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998)......................................................4

18
*Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)................................................12

19
*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008)..................................19

20
*Root v. Super. Court for Los Angeles Cty.*, 209 Cal. App. 2d 242 (1962)...........22

21

iv

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

*Sonoma Cty. Assoc. of Retired Emps. v. Sonoma Cty.*,
   708 F.3d 1109 (9th Cir. 2013)..........................................................................25

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001).........................4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)..........................................................3

*Svenson v. Google, Inc.*, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015)................17

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................4, 5, 8, 9

*Williams v. Gerber Prods.*, 552 F.3d 934 (9th Cir. 2008)...............................12, 17

*Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. 2017) ......................16

*Yari v. Producers Guild of America, Inc.*, 161 Cal. App. 4th 172 (2008) ...........21

**Statutes**

Cal. Bus. Prof. Code. § 17200...............................................................................14

Cal. Civ. Code § 1749.6(a)....................................................................................24

Fed. R. Civ. P. 8(a)(2) .............................................................................................3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT INCOMM**

2    **FINANCIAL SERVICES, INC.'S MOTION TO DISMISS**

3    **INTRODUCTION**

4    Defendant InComm Financial Services, Inc. ("Vanilla" or "Defendant")

5    sells Visa and MasterCard debit cards ("Cards") with preloaded funds of a

6    specified amount ("Face Value"), available to be used by purchasers or recipients

7    of the Cards. Plaintiffs, both purchasers and recipients of the Cards, discovered

8    that unknown third parties ("Unauthorized Users") had already partially or

9    completely spent the Face Value of the Cards before Plaintiffs tried to use them.

10   Complaint ¶¶ 4, 7–12, 43–46. Plaintiffs unsuccessfully sought refunds of

11   purchase fees or the full Face Value of the Cards from Vanilla. *Id.* 7, 9–12.

12   Vanilla omitted two material facts: (1) The Cards may have less purchasing

13   power than their Face Value, and (2) Vanilla's security measures may allow

14   Unauthorized Users to access and spend the Face Value of Plaintiffs' Cards. But

15   no reasonable consumer would buy a Card that may have less than its Face Value.

16   Plaintiffs brought the underlying putative class action on behalf of

17   themselves, purchasers ("Purchaser Class"), and recipients ("Recipient Class") of

18   the Cards. Defendant seeks to dismiss Plaintiffs' Complaint in a motion that

19   mischaracterizes Plaintiffs' claims as sounding only in fraud; misconstrues the

20   allegations as alleging claims based on false and misleading advertising rather

21   than omissions; ignores the legal standard for a motion to dismiss; creates new

1

1   requirements for Rule 8's notice pleading; and misapprehends and misapplies the

2   substantive law. Plaintiffs have more than adequately placed Vanilla on notice of

3   the claims against it. This Court should deny the Motion or, in the alternative,

4   grant Plaintiffs leave to amend to cure any deficiencies.

5               **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

6          Defendant sells pre-loaded Visa and MasterCard debit cards with values of

7   $10 to $500 ("Face Value"), marketed as "Vanilla" gift cards ("Cards").

8   Complaint, ¶¶ 1–2, 21. Consumers purchase Cards online and in stores

9   nationwide for fees that vary based on each Card's Face Value. *Id.* ¶¶ 2, 18, 22.

10         Card purchasers and recipients have complained for years that when they

11  first tried to use the Cards, the Cards did not have their specified Face Value.

12  Complaint ¶¶ 3, 24. These consumers learn from Vanilla's website or phone line

13  that unknown third parties ("Unauthorized Users") incurred charges that depleted

14  the Cards' Face Value. *Id.* ¶¶ 4, 9–10. For each Plaintiff, Vanilla failed to refund

15  either the missing Face Value or the Card purchase fees. *Id.* ¶ 12.

16         Plaintiffs brought the underlying putative class action against Vanilla for

17  violations of consumer protection laws on behalf of two proposed California

18  classes: a Purchaser Class and a Recipient Class. Complaint ¶¶ 26–95. Defendant

19  filed a Motion to Dismiss ("Motion") on December 14, 2022. Dkt. 23.

20               **LEGAL STANDARD FOR MOTION TO DISMISS**

21         The Motion obfuscates the purported basis for dismissal. Vanilla's Notice

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   of Motion states that it moves to dismiss "pursuant to Federal Rules of Civil

2   Procedure 12(b)(1) and 12(b)(6)." Notice of Mot. 1. But Vanilla's Motion, at best,

3   implies those bases, failing to cite Rule 12(b)(6) or discuss any related caselaw.

4   Vanilla's citations to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Starr v.*

5   *Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011), point to discussions of the notice

6   pleading standard in Federal Rule of Civil procedure 8, though most of the

7   Motion seems to argue that the Complaint does not meet Federal Rule of Civil

8   Procedure 9(b)'s pleading standard for fraud. Whatever the basis for Vanilla's

9   Motion, this Court should deny it.

10      "The theory of Rule 8(a) . . . is notice pleading." *Starr*, 652 F.3d at 1212. A

11   pleading must contain "a short and plain statement of the claim" showing that

12   Plaintiffs are "entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 applies "to all

13   civil cases, whatever the cause of action or subject matter[.]" *Starr*, 652 F.3d at

14   1212. The Complaint must provide "notice of the claim" so that Vanilla "may

15   defend [itself] effectively." *Id.* Following service of "notice-giving pleadings,"

16   the parties "conduct discovery . . . to learn more about the underlying facts." *Id.*

17      Pleading allegations need only plausibly suggest Plaintiffs are entitled to

18   relief and "raise a reasonable expectation" that discovery will reveal supportive

19   evidence. *Id.* at 1213 (internal quotation marks, citation omitted). Plausibility

20   "does not impose a probability requirement," but, instead, "calls for enough

21   fact[s] to raise a reasonable expectation that discovery will reveal evidence of

3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

[liability]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, "[a] court may dismiss a complaint only if it is clear that *no relief* could be granted under *any set of facts* that could be proved consistent with the allegations." *Hishon v. King Spalding*, 467 U.S. 69, 73 (1984) (emphasis added).

A motion to dismiss pursuant to "Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Each dismissal "has the same consequence," so the dismissals "are treated in the same manner." *Id.* "[I]n a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1105. "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should" "'strip' them from the claim" "then examine the allegations that remain to determine whether they state a claim." *Id.*

The Court must read the complaint in the light most favorable to Plaintiffs and accept as true all the Complaint's material allegations and the reasonable inferences that can be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). This Court should not dismiss the Complaint "unless it appears beyond doubt that [Plaintiffs] can prove no set of facts" that "would entitle [them] to relief." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

**ARGUMENT**

2

**I.      The Motion Misapplies Rule 9(b) to the Complaint as a Whole**

3

      **A.      The Complaint, as a Whole, Does Not Allege Fraud**

4      "Where fraud is not an essential element of a claim, only those allegations

5   of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading

6   standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To

7   the extent a party does not aver fraud, the party's allegations need only satisfy the

8   requirements of Rule 8(a)(2)." *Id.* A "claim is said to be 'grounded in fraud' or to

9   'sound in fraud'" if the plaintiff alleges "a unified course of fraudulent conduct

10  and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess*, 317

11  F.3d at 1103. Then, "the pleading of that claim as a whole must satisfy the

12  particularity requirement of Rule 9(b)." *Id.* at 1103–04. "[A] plaintiff may choose

13  not to allege a unified course of fraudulent conduct in support of a claim, but

14  rather to allege some fraudulent and some non-fraudulent conduct." *Id.* at 1104.

15  "In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened

16  pleading requirements." *Id.*

17      *McGraw v. Aegis Gen. Ins. Agency, Inc.* is instructive. 2016 U.S. Dist.

18  LEXIS 91124 (N.D. Cal. 2016). There, the plaintiffs alleged fraud and theft. *Id*. at

19  *10. The court considered each cause of action, noting where plaintiffs alleged

20  fraud and where fraud was not the *only* basis of a claim. *Id*. at *9–*10. The court

21  held that the "unified course of conduct" rule did not "extend a heightened-

5

1   pleading requirement" to "the whole complaint" where that complaint alleges

2   nonfraud claims. *Id.* at *7. Only fraud allegations and claims that "rest 'entirely'

3   in fraudulent conduct need be stated with particularity under Rule 9(b)." *Id.* at *8.

**B.    Rule 9(b) Applies Only to Plaintiffs' Unjust Enrichment Claim**

5        Fraud is not an essential element of Plaintiffs' claims. "[G]iven that a

6   defendant can violate the UCL . . . and CLRA by acting with mere negligence,"

7   Rule 9(b)'s particularity requirements are not necessary. *Moore v. Mars Petcare*

8   *US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020) (citations omitted).

9        Moreover, Plaintiffs do not allege a uniform course of conduct throughout

10  the Complaint that sounds in fraud. Although the unjust enrichment claim

11  mentions fraud (discussed, *infra*, in Section V.D), no other claim alleges Vanilla

12  acted with any intent to induce reliance, a required element of fraud. *Engalla v.*

13  *Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 973 (1997) (listing fraud elements as

14  misrepresentation, scienter, intent to defraud, justifiable reliance, and damage);

15  *see also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009)

16  (holding "fraud is not an essential element of a proper CLRA claim," and "only

17  three of the five elements of fraud are necessary to state" a CLRA claim:

18  "misrepresentation, reliance, damages").

19       Specifically, Plaintiffs do not allege Vanilla intended to deceive or induce

20  reliance. Although Plaintiffs do allege Defendant knowingly failed to inform

21  consumers that its Cards were vulnerable to unauthorized use due to sub-standard

6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  security measures, they have not claimed that this conduct was intended to

2  deceive or induce reliance. Since Plaintiffs have not alleged Vanilla had the intent

3  to defraud, they have not alleged a uniform course of conduct that avers fraud.

4       Vanilla relies on *Kearns*, which is readily distinguishable. In *Kearns*, the

5  plaintiff claimed that Ford "conspires with its dealerships to misrepresent the

6  benefits of its Certified Pre-Owned ("CPO") program to sell more cars and

7  increase revenue" and that Ford acted "with an intent to induce reliance and

8  defraud consumers." 567 F.3d at 1125–27. The *Kearns* plaintiff alleged that

9  "marketing materials and representations led him to believe that CPO vehicles

10  were inspected by specially trained technicians and that the CPO inspections were

11  more rigorous and therefore more safe" but, ultimately, Ford intended "to conceal

12  from customers that CPO vehicles were essentially the same as ordinary used

13  vehicles." *Id.* at 1125, 1127. The court found the complaint alleged "a unified

14  fraudulent course of conduct," so, the claims were "grounded in fraud." *Id.*

15       Here, Plaintiffs do not allege that Defendant is acting in concert with

16  Unauthorized Users to deplete Card funds, that Vanilla made any affirmative

17  misrepresentations promising adequate security measures to safeguard Card

18  funds, or any intent to induce reliance or defraud consumers. Rather, Plaintiffs

19  allege that they were reasonable to "assume" Vanilla would use industry-standard

20  measures to safeguard the Cards' Face Value. Complaint, ¶¶ 55, 66. The

21  Complaint's marketing allegations relate only to Vanilla continuing to sell

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

preloaded debit Cards with a specified Face Value available for use by purchasers or recipients.

Plaintiffs allege Defendant's material omissions were, at most, "negligent, knowing and willful, and/or wanton and reckless[,]" (Complaint ¶¶ 56, 67), not that Vanilla made these failures with the intent to defraud or to induce reliance on its omissions (*id.* ¶¶ 43, 45). In fact, Plaintiffs allege that if a consumer inquires, Defendant informs those consumers via its website or phone line about Unauthorized Users accessing Card funds, suggesting Defendant is not engaged in an overall scheme to defraud Card purchasers and recipients. *See Id.* ¶ 10.

Here, the Complaint is more like the pleading in *Vess*, where only some claims alleged fraud. 317 F.3d 1097. *Vess* concerned claims that the defendant Ritalin manufacturer failed to disclose substantial financial contributions to entities that could help push Ritalin prescriptions, conspired with those entities to promote ADD/ADHD diagnoses "to increase the market for Ritalin," and failed to disclose both Ritalin's side effects and "the drug's 'limited effectiveness.'" *Id.* at 1101. The complaint also alleged "fraud," purposeful actions to further fraud, and claims for violations of the CLRA and UCL. *Id.* at 1100–01.

The district court dismissed the complaint, in part, "for failure to plead fraud with particularity" per Rule 9(b)." *Id.* The Ninth Circuit reversed, holding that because fraud was not an essential element of the claims, "only allegations" " of fraudulent conduct" were held to Rule 9(b)'s particularity requirements. *Id.* at

8

1105, 1106. The *Vess* Court disregarded allegations of the fraudulent conspiracy because they did not satisfy Rule 9(b) and held the "non-conspiracy allegations" "neither mention[ed]" "'fraud,' nor allege[d] facts that would necessarily constitute fraud." *Id.* As the allegations did "not rely entirely on a unified course of fraudulent conduct" they were not "grounded in fraud." *Id.* at 1106. Similar to *Vess*, only one claim, Plaintiffs' unjust enrichment claim, sounds in fraud.

## II.    The Motion Misconstrues the Claims Plaintiffs Actually Allege

The Motion incorrectly assumes that Plaintiffs' CLRA and UCL claims pertain to specific advertising and repeatedly refer to the Complaint as being focused on "marketing." Mot. 12.[1] But Plaintiffs' CLRA and UCL claims are not based on misleading advertisements or marketing. Plaintiffs allege the Cards fail in their basic function of making preloaded funds available for use by purchasers or recipients. *See, e.g.*, Complaint ¶¶ 43–44, 54, 65, 72.

The Motion also claims Plaintiffs did not identify "misleading communications" or marketing about the Cards. Mot. 14–15. But Plaintiffs' claims are not rooted in affirmative representations. Nor do Plaintiffs claim that they "believed the cards to be fraud-proof, and felt misled when they learned

---

[1] The Complaint uses the word "marketing" three times. Defendant uses it 30 times. *See also* Mot. 14–16 (arguing that Plaintiffs be held to standards articulated in *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009) and *Mack v. LLR, Inc.*, 2019 WL 1873294 (C.D. Cal. Feb. 6, 2019), cases which alleged affirmative representations on which the plaintiffs relied).

9

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

otherwise." Mot. 18. Plaintiffs paid for or received a Card that had a wrongfully depleted Face Value. The depletion occurred because the Cards were "vulnerable to fraudulent use and theft because [Defendant's] security measures were inadequate" and that Plaintiffs "were reasonable to assume, and did assume, that [Defendant] would take appropriate measures to keep the Face Value of Cards secure and safe." Complaint ¶ 55, *see also id.* ¶¶ 45, 65, 74.

## III.   The Motion Ignores the Standard for a Motion to Dismiss

Vanilla ignores the standard on a motion to dismiss, which requires taking the material allegations in the Complaint as true. *Hishon*, 467 U.S. at 73. Rather than hewing to the Complaint, Vanilla makes sweeping, unsupported claims, like that Vanilla "devotes considerable resources to preventing and mitigating" the "inherent risk of fraudulent inference by third parties." Mot. 3; *see also id.* at 3–4 (explaining, for an entire paragraph with no citations, how the Cards work). Vanilla also resorts to speculation outside the Complaint, arguing, "Plaintiffs make no effort to account for the possibility that they, or persons whom they gave access to the cards, depleted the balances." *Id.* at 13. This "possibility" is an improper inference that Vanilla asks the Court to make in its favor. Rather than discuss the sufficiency of the allegations, Vanilla also accuses Plaintiffs of asking the Court to make conclusions on the merits. *Id.* at 13–14.

Vanilla also improperly argues the merits of its defense. Defendant claims to have refunded some fraudulently depleted funds (though not Plaintiffs'). Mot.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  10, 14. These arguments are improperly based on evidence extrinsic to the

2  Complaint (*see Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir.

3  1995)), and they miss the point. Defendant's provision of refunds to some

4  unnamed customers who took their complaints to a public forum does not absolve

5  it from liability for the harm resulting from its omissions.

6  **IV.   The Motion Improperly Augments Rule 8's Requirements**

7        Defendant argues for a level of detail and proof Rule 8 does not require.

8  Vanilla asks the Court to require that Plaintiffs prove that unauthorized use

9  depleted their Card funds. Mot. 13. But Plaintiffs need not provide evidence of

10  fraudulent Card use at this stage; they must simply state clear, concise allegations

11  that give Vanilla notice of the claims against it. Accepting the allegations as true

12  and construing them in the light most favorable to Plaintiffs, the Card funds were

13  depleted due to no action of the intended recipients. As the manager of the Card

14  program, Vanilla maintains control of Card funds. Thus, only Vanilla and Card

15  recipients can access Card funds, absent hacking or other unauthorized third party

16  use. Plaintiffs do not have information suggesting Defendant is wrongfully

17  accessing and depleting Card funds before Recipients use them and have not

18  alleged Defendant is wrongfully taking funds. But Plaintiffs do have information

19  that fraudulent access is common with the Cards. Complaint ¶¶ 24–25.

20        Vanilla similarly demands that Plaintiffs must "explain what 'security

21  measures' they believe were not taken" and how it failed to meet industry-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    standard security measures. Mot. 17. But, at this stage, only Vanilla has access to

2    details about its security practices and purchase activity on its Cards; the pleading

3    requirements are relaxed as to those facts. *Park v. Thompson*, 851 F.3d 910, 928

4    (9th Cir. 2017) (upholding pleading "upon information and belief" and "relax[ed]

5    pleading requirements" where the facts are peculiarly within the possession and

6    control of defendant" (internal quotation marks, citation omitted).

7    **V.    The Motion Misapprehends and Misapplies the Substantive Law**

8         Plaintiffs bring seven claims: violation of the Consumers Legal Remedies

9    Act ("CLRA") on behalf of the proposed Purchaser Class (claim 1); violation of

10   the unlawful business practices prong of California's unfair competition law

11   ("UCL") on behalf of each proposed class (claims 2 & 3); violation of the UCL's

12   unfair businesses practices prong on behalf of the proposed Recipient Class

13   (claim 4); breach of implied contract on behalf of each proposed class (claims 5

14   & 6); and unjust enrichment on behalf of the proposed Purchaser Class (claim 7).

15        The Motion lumps together Plaintiffs' CLRA claims with their UCL

16   unlawful business practices claims *and* unfair business practices claims. Mot. 12–

17   13. The Motion also misapprehends and misapplies the law, as well as disregards

18   the specific elements of the CLRA and UCL claims. Mot. 12–20. This is not "the

19   rare situation in which granting a motion to dismiss [under the [UCL] is

20   appropriate." *Williams v. Gerber Prods.*, 552 F.3d 934, 939 (9th Cir. 2008).

21        **A.    Plaintiffs State a Valid CLRA Claim**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The CLRA "prohibits unfair methods of competition and unfair or deceptive acts or practices." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) (internal quotation marks, citation omitted). Sections 1770(a)(5) and 1770(a)(7) of the CLRA, alleged here, apply to material omissions that are contrary to a representation a defendant made is obligated to disclose. *Id.* at 996. A material omission is one "a reasonable consumer would deem" "important in determining how to act[.]" *Id.* (internal quotation marks, citation omitted). Specifically, a defendant must disclose where it "had exclusive knowledge of material facts not known to the plaintiff." *Id.*

Plaintiffs allege violations of the CLRA based on Vanilla's material omissions, including that its Cards could hold less than their Face Value and that its substandard security practices left the Cards vulnerable to fraudulent use, such that the Cards would fail to perform their basic function. Complaint ¶¶ 42–43. Vanilla owed a duty to disclose its exclusive knowledge about its inadequate security systems, which left the Cards exposed to unauthorized depletion of their Face Value. *Id.* ¶ 44. These omissions were material "because a reasonable consumer would have considered them important in deciding whether to purchase a Vanilla gift Card and/or deciding how much to purchase in Face Value amount(s)," which determines Vanilla's fees. *Id.* ¶ 46; *Mui Ho*, 931 F. Supp. at 996. Plaintiffs have pled a valid CLRA claim.

**B.     Plaintiffs State Valid UCL Claims**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    "The UCL is a California consumer protection statute that broadly

2    proscribes the use of any 'unlawful, unfair or fraudulent business act or

3    practice.'" *Beaver v. Tarsadia Hotels Corp.*, 816 F.3d 1170, 1177 (9th Cir. 2016)

4    (quoting Cal. Bus. Prof. Code. § 17200). "The UCL operates as a three-pronged

5    statute: Each of these three adjectives [unlawful, unfair, or fraudulent] captures a

6    separate and distinct theory of liability." *Id.* (internal quotation marks, citation

7    omitted); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837

8    (2006) ("[T]here are three varieties of unfair competition: practices which are

9    unlawful, unfair or fraudulent."). "To state a [UCL] claim" "a plaintiff must plead

10   that: (1) defendant engaged in one of the practices prohibited by the statute; and

11   (2) plaintiff suffered actual injury in fact as a result of defendant's actions."

12   *Marolda*, 672 F. Supp. 2d at 1003–04.

13       Plaintiffs allege valid UCL claims for unlawful business practices and

14   unfair business practices. Complaint ¶¶ 49–76.

15          **i.    Plaintiffs State a Valid Unlawful Business Practices Claim**

16       "The unlawful prong of the UCL prohibits anything that can be properly

17   called a business practice" that "is forbidden by law." *In re: Anthem, Inc. Data*

18   *Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) ("*Anthem I*").

19   "[V]iolation of almost any law may serve as a basis for a UCL claim." *Id.*

20       Plaintiffs allege Defendant engaged in unlawful business practices that

21   violate California Civil Code Sections 1770(a)(5) and (a)(7) (Complaint ¶ 53) by

14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   continuing to process Card purchases and collect fees for the preloaded Cards

2   while knowing "that it did not employ reasonable, industry-standard, and

3   appropriate security measures that would have kept the Face Value of the Cards

4   secure and prevented the loss or misuse of the Cards' funds" (*id.* ¶ 54). Plaintiffs

5   further allege they and proposed Purchaser Class Members suffered damages

6   because the Cards were particularly vulnerable to unauthorized misuse that

7   resulted in loss of the Cards' Face Value. *Id.* ¶ 60. Thus, Plaintiffs have alleged

8   that Defendant engaged in unlawful business practices and that Plaintiffs suffered

9   injury as a result, stating a valid UCL unlawful business practices claim.

10              **ii.    Plaintiffs State Valid Unfair Business Practices Claims**

11          "[C]onsumer cases" provide "three different tests" for a UCL unfair

12   business practices claim. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App.

13   4th 247, 253, 256–58 (2010). First, Plaintiffs may allege the three-part test set

14   forth in *Camacho v. Automobile Club of Southern California*: "(1) The consumer

15   injury must be substantial; (2) the injury must not be outweighed by any

16   countervailing benefits to consumers or competition; and (3) it must be an injury

17   that consumers themselves could not reasonably have avoided." 142 Cal. App.

18   4th 1394, 1403 (Cal. Ct. App. 2006). Second, Plaintiffs may allege that Vanilla's

19   business practices are "immoral, unethical, oppressive, unscrupulous or

20   substantially injurious to consumers," which "requires the court to weigh the

21   utility of the defendant's conduct against the gravity of the harm to the alleged

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

victim." *Drum*, 182 Cal. App. 4th at 257. Finally, Plaintiffs may point to a public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Id.* at 256 (internal quotation marks and citations omitted).

Here, Plaintiffs pled that "Vanilla continues to market and sell Cards as though they contain the Face Value and as though the Face Value is available for spending." Complaint ¶ 25. "Vanilla knew or should have known that its computer systems and data security practices were inadequate to safeguard the Face Value of the Cards and that the risk of theft was high;" only Vanilla had this knowledge, and Vanilla failed to disclose this information. *Id.* ¶¶ 65, 67, 72, 74. These business practices were immoral, unethical, unscrupulous, and unconscionable, as Vanilla continued selling a product it knew often failed to perform its basic functions without advising consumers of the Cards' security vulnerabilities or implementing security measures to fix those vulnerabilities. *Id.* ¶¶ 63, 64, 72, 73. Vanilla's unfair business practices were substantially injurious, as they caused "tens of thousands" of California consumers to lose funds and spend substantial time and effort in attempting to recoup the missing funds. *Id.* ¶ 28. Numerous courts have found that allegations of failure to implement reasonable information security measures, as alleged here, are sufficient to state a UCL unfairness claim. *Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *24 (N.D. Cal. 2017); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014); *Svenson v.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Google, Inc.*, 2015 WL 1503429, at \*10 (N.D. Cal. Apr. 1, 2015).

### iii.    Plaintiffs' UCL Claims Do Not Require Allegations About the Reasonable Consumer's Likelihood of Deception

Vanilla contends "[c]laims under the UCL and CLRA are governed by the reasonable consumer test, which requires a showing that members of the public are likely to be deceived by the challenged communication." Mot. 18 (internal quotation marks, citations omitted). But *Williams v. Gerber*, 552 F.3d at 936 concerned false advertising claims that challenged product packaging. *Gerber* held that the specific false advertising claims were "governed by the 'reasonable consumer' test." *Id.* at 938. Here, Plaintiffs do not bring a false advertising claim.

In addition, neither the law applicable to UCL unlawful or unfair claims requires proof of whether members of the public were likely to be deceived. *Anthem I*, 162 F. Supp. 3d at 989 (unlawful); *Allen v. Hylands, Inc.*, No. 17-56184, 773 F. App'x. 870, 874 (9th Cir. May 15, 2019) (unfair).

Even if the "likelihood of deception" test applied to Plaintiffs' CLRA and UCL claims, the Complaint readily meets that standard. Complaint ¶¶ 25, 43, 66, 73. Plaintiffs allege Vanilla sold, distributed, and marketed its Cards as having a particular Face Value, knowing the Cards were vulnerable to fraud due to Vanilla's inadequate security measures. *Id.* The Complaint alleges these actions were likely to deceive reasonable consumers into believing they were purchasing Cards that contained the stated Face Value on the Cards. *Id.*

17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Vanilla ignores these allegations, adopting clunky shorthand that changes the meaning of the "likely to deceive" standard. Vanilla contends the "Complaint fails to identify how the Gift Cards fell short of Plaintiffs' expectations" (Mot. 13) and that "Plaintiffs have not pleaded facts showing there was anything wrong with their cards" (*id.* at 14). But these subjective standards relate neither to reasonable consumers nor to deception. Vanilla also argues that "[n]o reasonable consumer would expect a prepaid debit card to be utterly impervious to fraud" (*id.* at 18), but Plaintiffs make no such claim. Rather, Plaintiffs allege they expected (as any reasonable consumer would) that funds loaded on the preloaded cards would be available for use by intended recipients, but the Cards ultimately did not have their Face Value available. *Id.* at ¶¶ 1–3, 24. Plaintiffs allege that the Cards fail to perform their basic and fundamental purpose. *Id.* ¶¶ 45, 52.

### C.   Plaintiffs State a Valid Unjust Enrichment Claim

#### i.   Plaintiffs' Unjust Enrichment Allegations Are Sufficient

Vanilla argues the Purchaser Plaintiffs' claim for unjust enrichment should be dismissed as derivative of their CLRA and UCL claims. Mot. 22–23. As discussed, however, Plaintiffs allege valid CLRA and UCL claims.

Vanilla also contends, "[I]it is implausible that InComm was enriched at all" because the Card fees are "the only potential enrichment source," which "weigh[s]" "against InComm's cost of manufacturing, distributing and servicing the cards, *and* attending to Plaintiffs' purportedly extensive complaints[.]" Mot.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

23. But fees collected for the Cards, which are up to $9.95 per Card (Complaint ¶ 22), aggregated across tens of thousands of proposed Class Members (*id.* at ¶ 28), is undoubtedly a significant sum. And Vanilla again misunderstands the law. "The elements of an unjust enrichment claim are the receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (internal quotation marks, citation omitted). These elements do not consider a defendant's costs of doing business, and the Court should not accept Vanilla's invitation to go beyond the bounds of the Complaint to make inferences in its favor. The Complaint alleges that "Vanilla receives the benefit of processing fees that it collects," (Complaint ¶ 90); "has knowledge of said benefits received at Plaintiffs' and Purchase Class Members' expense," (*id.* at ¶ 94); and "did not refund" "the fees associated with purchasing the Cards," (*id.* at ¶ 12.). These allegations are sufficient.

### ii.   Plaintiffs' Unjust Enrichment Allegations Sounding in Fraud Satisfy Rule 9(b)

Plaintiffs bring a claim for unjust enrichment on behalf of the proposed Purchaser Class. Complaint ¶¶ 89–95. This claim is the only one that avers fraud, and those fraud allegations are based on material omissions—not affirmative misrepresentations. *Id.* ¶ 92 ("Vanilla operated a fraud on the public, acting to hide that its Cards would retain their Face Value as promised."). The Complaint's allegations provide sufficient particularity to satisfy Rule 9(b).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  Claims for fraud by omission must meet Rule 9's requirements, but the rule

2  "is less strictly applied . . . because an omission cannot be described in terms of

3  the time, place, and contents of the misrepresentation." *In re Marriott Int'l, Inc.*,

4  No. 19-md-2879, 2020 WL 869241, at *32 (D. Md. Feb. 21, 2020). "[A] plaintiff

5  in a fraud by omission suit will not be able to specify the time, place, and specific

6  content of an omission as precisely as would a plaintiff in a false representation

7  claim," and such a claim "will not be dismissed purely for failure to precisely

8  state the time and place of the fraudulent conduct." *Holley v. Gilead Scis., Inc.*,

9  410 F. Supp. 3d 1096, 1101 (N.D. Cal. 2019) (internal quotation marks, citations

10  omitted). Further Rule 9(b)'s "heightened pleading standard is not an invitation to

11  disregard Rule 8's requirement of simplicity, directness, and clarity[.]" *Land*

12  *O'Lakes v. Gonsalves*, 281 F.R.D. 444 (E.D. Cal. 2012) (internal quotation

13  marks, citation omitted). Rule 9(b) "is not so stringent as to bar claims where

14  specific details, not essential to preparing a defense, are not alleged." *Lack v.*

15  *Cruise Am., Inc.*, No. 17-cv-03399-YGR, 2017 WL 3841863, at *4 (N.D. Cal.

16  Sep. 1, 2017).

17  In *Brown v. Starbucks Corp.*, the complaint satisfied Rule 9(b) where the

18  plaintiff alleged "that Starbucks (the who) intentionally failed to disclose the

19  presence of artificial flavors on the Gummies' front packaging (the what) when

20  [plaintiff] purchased the candies in December 2017 (the when) in Santee,

21  California (the where)." Case No.: 18cv2286 JM (WVG), 2019 WL 4183936, at

20

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    *6 (S.D. Cal. Sep. 3, 2019). The packaging "misled Brown to believe the

2    Gummies contained only natural ingredients . . . (the how)." *Id.*

3         Similarly here, Plaintiffs allege that Vanilla (the who) intentionally and/or

4    knowingly failed to disclose its substandard security measures that left its Cards

5    particularly susceptible to fraudulent use (the what) (Complaint ¶¶ 45, 54–56,

6    64–65), that Plaintiffs purchased or received Vanilla Cards in December 2021 at

7    the earliest (the when) that were purchased and received electronically, at

8    Walmart and/or in Riverside County, California (the where) (*id.* ¶¶ 7–12, 20),

9    which led Plaintiffs to believe the Cards' Face Value would be available for use

10   until used by recipients (the how) (*id.* ¶¶ 66, 73, 92).[2] *See also id.* ¶ 89.

11   **D.      Plaintiffs State Valid Breach of Implied Contract Claims**

12        Breach of implied contract and breach of contract have the same elements

13   "except that the promise is not expressed in words but is implied from the

14   promisor's conduct." *Yari v. Producers Guild of America, Inc.*, 161 Cal. App. 4th

15   172, 182 (2008). The elements of breach of contract are (1) a contract,

16   (2) plaintiffs' performance, (3) defendant's breach, and (4) damages. *Oasis West*

17   *Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011).

18        Plaintiffs allege Vanilla impliedly "promis[ed] that the Face Value of the

19   purchased Cards would be available to spend" (Complaint ¶ 78), which

20

21   [2] These same allegations are made as to all of Plaintiffs' other claims, satisfying
     Rule 9(b). *See* Complaint ¶¶ 7–12, 20, 43–45, 54–56, 64–65, 73–74, 77, 83.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

necessarily includes the "promise that Vanilla would safeguard the Face Value of the Cards for Purchasers' exclusive use, using reasonable or industry-standard means" (*id.* ¶ 79). An implied contract formed when Vanilla sold "preloaded" debit cards to Purchasers, necessarily promising Purchasers could then use those funds as they wanted. *Id.* ¶¶ 1–3. This is not a case "where plaintiffs did not allege any promise on the part of [d]efendant to prevent such loss or unauthorized access." Mot. 24 (internal quotation marks, citation omitted).

Vanilla argues the breach of implied contract claims fail for lack of privity but never ties this contention to the Plaintiff Purchasers or Recipients. The Purchaser Plaintiffs are in privity of contract with Vanilla when they purchased their Cards. *See Johnson v. Superior Court*, 38 Cal. App. 4th 463, 472 (1995) (describing purchaser as "the party in privity"). The Recipient Class is in privity of contract with Vanilla by virtue of Purchasers' assignment of the Cards to the Recipients. *See Marie Y. v. Gen. Star Indemnity Co.*, 110 Cal. App. 4th 928, 955 (2003). Vanilla's product packaging contemplates that its contractual agreement with purchasers will ultimately be assigned. *See* Dkt. 23-2 ("Be sure to provide the enclosed Cardholder Agreement to the Gift Card recipient."); *see also Root v. Super. Court for Los Angeles Cty.*, 209 Cal. App. 2d 242, 246 (1962) (discussing privity in the context of assignment of contract).

Vanilla also argues that the cardholder agreements preclude a breach of implied contract claim but provides no information to show that the terms in those

purported agreements embrace the exact same subject. Mot. 24, n.5. Vanilla also admits that "different cards are subject to different agreements," (Mot. 8, n. 3) undermining any argument the express agreements supplant an implied contract.

## VI.   Recipient Plaintiffs Have Standing

### A.   Recipient Plaintiffs Each Suffered an Injury in Fact

Recipient Plaintiffs each suffered an injury in fact. To confer standing, "a plaintiff must . . . demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Brod v. Sioux Honey Ass'n Co-op.*, 895 F. Supp. 2d 972 (N.D. Cal. 2012). Here, Vanilla's inadequate security measures rendered the Cards vulnerable to fraud and likely to lose their purchasing power through no Recipients action. Mot. 20. Both Ms. Cooper and Ms. Manier had Cards with purchasing power less than the Cards' Face Value. Complaint, ¶¶ 8–9.

Vanilla claims that "Recipients have not plausibly alleged that they suffered an injury in fact attributable to Defendant's purportedly deceptive marketing" because, as Recipients, they could not have taken any action based on Vanilla's marketing. Mot. 20. But Recipient Plaintiffs do not claim their injuries are from affirmative statements made in marketing materials. Rather, Recipient Plaintiffs claim their injuries stem from having their Card funds prematurely depleted due to fraudulent use given Vanilla's substandard security. Recipient Plaintiffs did not have to purchase their Cards to suffer the alleged injury in fact.

23

**B.     Recipient Plaintiffs Have Standing to Pursue UCL Claims**

Recipient Plaintiffs also have standing to bring their UCL claims. A person has standing to assert a UCL claim if that person "(1) suffered an injury in fact and (2) has lost money or property as a result of the unfair competition[.]" *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012 (S.D. Cal. 2009). "A plaintiff suffers an injury in fact for purposes of standing under the UCL when" they have (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Id.* (cleaned up). That someone else purchased the product at issue does not limit a person's standing to assert UCL claims. *McVicar ex rel. Situated v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1050 (C.D. Cal. 2014). "[P]rivate standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Id.* at 1051.

Card Recipients are the parties *most* harmed by Vanilla's unfair business practices. Recipients are the ones who have claim to the Face Value of the Cards, whether they purchased the Cards for themselves or received the Cards as gifts. *See* Cal. Civ. Code § 1749.6(a) ("A gift certificate constitutes value held in trust by the issuer of the gift certificate on behalf of the beneficiary of the gift certificate. The value represented by the gift certificate belongs to the beneficiary[.]"). Thus, Recipients are the ones who lose out on the money that is supposed to be on the preloaded debit cards when Vanilla's substandard security

24

1   systems give way to unauthorized use. Recipients have lost "money or property"

2   resulting from Vanilla's unfair competition.

3   ## VII.   In the Alternative, the Court Should Grant Leave to Amend

4   "[A] court should liberally allow a party to amend its pleading." *Sonoma*

5   *Cty. Assoc. of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir.

6   2013). The Court should consider whether there is "strong evidence of undue

7   delay, bad faith or dilatory motive on the part of the movant, repeated failure to

8   cure deficiency by amendments previously allowed, undue prejudice to the

9   opposing party by virtue of allowance of the amendment, [or] futility of

10  amendment, etc." *Id.* (internal quotation marks, citations omitted)). While

11  prejudice to the opposing party is the primary consideration, "[d]ismissal with

12  prejudice and without leave to amend is not appropriate unless it is clear . . . the

13  complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon,*

14  *Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Gonzales v. Allstate Ins.*, 19-

15  5569, 2019 WL 4972327, at *2 (W.D. Wash. Oct. 7, 2019) (granting leave to

16  amend "because it is at least unclear whether any amendment would be futile.").

17  Plaintiffs respectfully request leave to amend if the Court is inclined to find

18  that any of Plaintiffs' causes of action are subject to dismissal.

19  ## CONCLUSION

20  Plaintiffs respectfully request that the Court deny the Motion or, in the

21  alternative, grant Plaintiffs leave to amend to cure any deficiencies.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    Dated: January 23, 2023            **LIPPSMITH LLP**

2                                       By:  *s/ Graham B. LippSmith*
                                             GRAHAM B. LIPPSMITH
3                                            MARYBETH LIPPSMITH
                                             JACLYN L. ANDERSON
4
                                        **TOUSLEY BRAIN STEPHENS PLLC**
5                                            JASON T. DENNETT (*Pro Hac Vice*)
                                             KALEIGH N. BOYD (*Pro Hac Vice*)
6
                                        Attorneys for Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief does not exceed twenty-five pages, which complies with the page limit set in paragraph 9b in the Court's Standing Order dated October 20, 2022.

Dated: January 23, 2023                    **LIPPSMITH LLP**

By:  *s/ Graham B. LippSmith*
GRAHAM B. LIPPSMITH

Attorney for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS