1 | Jane Metcalf (*pro hac vice*)
2 |   jmetcalf@pbwt.com
   | David S. Kleban (*pro hac vice*)
3 |   dkleban@pbwt.com
4 | Peter Vogel (*pro hac vice*)
   |   pvogel@pbwt.com
5 | Basil Williams (*pro hac vice*)
6 |   bwilliams@pbwt.com
   | PATTERSON BELKNAP WEBB & TYLER LLP
7 | 1133 Avenue of the Americas
8 | New York, NY 10036
   | Tel: (212) 336-2000
9 | Fax: (212) 336-2222
10 |
   | William A. Delgado (SBN 222666)
11 |   wdelgado@dtolaw.com
   | DTO LAW
12 | 601 S. Figueroa St. Suite 2130
13 | Los Angeles, CA 90017
   | Tel: (213) 335-7010
14 | Fax: (213) 335-7802
15 |
   | Attorneys for Defendant
16 | INCOMM FINANCIAL SERVICES, INC.

17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al., | Case No.: 5:22-CV-01839-JGB-SHK |
| Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S MOTION TO DISMISS** |
| v. | |
| INCOMM FINANCIAL SERVICES, INC., | Hon. Jesus G. Bernal |
| Defendant. | Date:  Mar. 6, 2023 |
| | Time: 9:00 A.M. |
| | Courtroom: 1 |

1

**TABLE OF CONTENTS**

2

Page

3  TABLE OF AUTHORITIES ........................................................................................ii

4  PRELIMINARY STATEMENT ................................................................................ 1

5  ARGUMENT ............................................................................................................. 2

6  I.    Rule 9(b) Applies to All of Plaintiffs' Claims .............................................. 2

7  II.   Plaintiffs Have Not Stated a CLRA or UCL "Unlawful" Claim ................. 4

8      A.    Plaintiffs have not adequately alleged a factual omission. ....................... 4

9      B.    Plaintiffs' excuses are insufficient to justify these failings. ..................... 6

10     C.    Plaintiffs fail to allege the circumstances of the alleged omissions. .......... 7

11     D.    Plaintiffs have not adequately alleged InComm's duty to disclose ............ 8

12  III.  Plaintiffs' UCL "Unfair Business Practices" Claims Fail ............................ 9

13  IV.   Mere Recipients Have No Standing .............................................................. 10

14  V.    Plaintiffs' Common-Law Claims Also Fail ................................................... 11

15  CONCLUSION ......................................................................................................... 12

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................................10

*Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*,
   2019 WL 4137605 (C.D. Cal. June 3, 2019)......................................................12

*Antonyan v. Ford Motor Co.*,
   2022 WL 1299964 (C.D. Cal. Mar. 30, 2022) .....................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................4, 5

*Barrett v. Apple Inc.*,
   2022 WL 2119131 (N.D. Cal. June 13, 2022) ..................................................8, 9

*Brown v. Starbucks Corp.*,
   2019 WL 4183936 (S.D. Cal. Sept. 3, 2019) .......................................................7

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997).............................................................................4

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015).............................................................................4

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012)...........................................................................10

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ..............................................................10

*Feins v. Goldwater Bank NA*,
   2022 WL 17552440 (D. Ariz. Dec. 9, 2022)......................................................6

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021).................................................................6

*Hammerling v. Google LLC*,
   2022 WL 2812188 (N.D. Cal. July 18, 2022) ...............................................8, 10

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ................................................................................4

*Joseph v. Costco Wholesale Corp.*,
   2016 WL 759559 (C.D. Cal. Feb. 24, 2016) ......................................................11

*Katz v. China Century Dragon Media, Inc.*,
   2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) .....................................................2

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..............................................................................3

*Knuttel v. Omaze, Inc.*,
   2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) ....................................................10

*Marilao v. McDonald's Corp.*,
   632 F. Supp. 2d 1008 (S.D. Cal. 2009) ..............................................................11

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................................3

*McVicar v. Goodman Glob., Inc.*,
   1 F. Supp. 3d 1044 (C.D. Cal. 2014) ..................................................................11

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) .............................................................3, 6

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) .............................................................................6, 7

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ..............................................................................3

*Saavedra v. Everi Payments, Inc.*,
   2022 WL 17886025 (C.D. Cal. Apr. 11, 2022) ..................................................10

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ................................................................................2

*Svenson v. Google Inc.*,
   2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ......................................................10

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..............................................................................3

1

2

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................................................9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................10

3

4

5

**Statutes**

6

Cal. Civ. Code § 1770 ............................................................................................4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

1

**PRELIMINARY STATEMENT**

2      In their opposition to InComm's motion to dismiss, Plaintiffs backtrack on

3  many of their Complaint's core allegations.  Although the Complaint repeatedly

4  accuses InComm of "affirmatively misrepresent[ing]" its Vanilla Gift Cards,

5  Compl. ¶¶ 58, 92, Plaintiffs now disclaim any suggestion that InComm "made any

6  affirmative misrepresentations."  Opp'n at 7, ECF No. 36.  Though the Complaint

7  alleges that InComm "deliberately conceal[ed] material facts" while "intend[ing]

8  to" induce consumers to buy the cards, Plaintiffs now concede that InComm did

9  not have "any intent to induce reliance or defraud consumers" after all.  Compl.

10  ¶¶ 42–43; Opp'n at 7.  And while Plaintiffs' Complaint is premised on the charges

11  allegedly "made against [Plaintiffs' cards] by Unauthorized Users," Plaintiffs

12  admit that all payment products present some risk of unauthorized use, and they

13  never expected "the cards to be fraud-proof."  Compl. ¶ 12; Opp'n at 9.

14      Aside from these explicit concessions, Plaintiffs make several implicit ones,

15  too.  They have seemingly abandoned their allegation that InComm "intentionally

16  erect[ed] barriers" to effective customer service.  Compl. ¶¶ 64, 72.  And they do

17  not defend the sufficiency of their allegations that their cards' balances were

18  depleted by unauthorized users.  *See* Opp'n at 10.

19      There was not much to Plaintiffs' Complaint before all this backtracking,

20  and now almost nothing remains.  Plaintiffs continue to maintain that InComm

21  "omitted" that "its substandard security practices left the Cards vulnerable to

22  fraudulent use."  *Id.* at 13.  But they do not explain, in either the Complaint or

23  opposition, what the "standard" for security was or how InComm failed to meet it.

24  They also do not say where or when InComm "omitted" this information, or why

25  InComm had a duty to disclose it.  All Plaintiffs have offered is their bare

26  speculation that some unspecified characteristic of InComm's security falls short

27  of some unspecified industry standard; that InComm "omitted" this failing from

28  some unspecified communication; and that, if not for this omission, Plaintiffs

1    would somehow be better off.  That is not enough to state a claim under the UCL

2    or CLRA.  For these reasons, among others that Plaintiffs fail to rebut in their

3    opposition, the Court should dismiss the Complaint with prejudice.

4                                      **ARGUMENT**

5    **I.      Rule 9(b) Applies to All of Plaintiffs' Claims**

6            Plaintiffs treat their failure to plead the elements of fraud as a feature rather

7    than a bug of the Complaint, arguing that this deficiency excuses them from the

8    particularity requirement of Rule 9(b).  They emphasize that they have not alleged

9    certain "required element[s] of fraud," such as "inten[t] to deceive or induce

10   reliance."  *Id.* at 6.  To the contrary, they argue, their Complaint alleges that

11   InComm routinely "informs . . . consumers" about the possibility of unauthorized

12   card depletion, "suggesting [InComm] is ***not*** engaged in an overall scheme to

13   defraud Card purchasers and recipients."  *Id.* at 8 (emphasis added).

14           On that much, Plaintiffs are correct: they have not sufficiently alleged any

15   intentional deception or "scheme to defraud."  They have, by their own description,

16   fallen short of the pleading requirements of Rule 9(b).  But Plaintiffs cannot escape

17   those requirements just by admitting their failure to satisfy them.   "[N]ominal

18   efforts" to disclaim a theory of fraud are "unconvincing where the gravamen of the

19   complaint is plainly fraud."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2

20   (9th Cir. 1996); *see also Katz v. China Century Dragon Media, Inc.*, 2011 WL

21   6047093, at *3 (C.D. Cal. Nov. 30, 2011) ("A complaint's disclaimer that its claims

22   do not sound in fraud does not affect the requirement to plead in accordance with

23   Rule 9(b) if the claims in fact sound in fraud.").

24           As set forth in InComm's opening brief, Plaintiffs' claims indeed sound in

25   fraud, and are thus subject to the pleading standards of Rule 9(b).  *See* Mot. to

26   Dismiss at 10–23, ECF No. 23 ("Mot.").  In their opposition, Plaintiffs allow that

27   ***one*** of their claims—unjust enrichment—sounds in fraud.  Opp'n at 6–9.  But that

28   claim relies on the same factual allegations as all the others.  S*ee* Compl. ¶¶ 36, 89,

1  91–92.  Accordingly, by conceding that their unjust enrichment claim sounds in

2  fraud, Plaintiffs have effectively admitted that the rest of the Complaint does, too.

3  *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009)

4  ("Where . . . a complaint employs the exact same factual allegations to allege [one

5  cause of action] as it uses to allege fraudulent conduct under [another], we can

6  assume that it sounds in fraud.").

7  　　　Plaintiffs cannot escape this principle with the assertion that merely

8  negligent omissions may suffice to violate the UCL and CLRA.  *See* Opp'n at 8–9

9  (discussing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)).  First,

10  the case that Plaintiffs cite for that proposition pre-dates the Ninth Circuit's holding

11  in *Kearns* that "nondisclosure is a claim . . . in a cause of action for fraud," and

12  therefore "must be pleaded with particularity under Rule 9(b)."  *Kearns v. Ford*

13  *Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).[1]  Indeed, the *Marolda* and *Mui*

14  *Ho* cases (on which Plaintiffs rely) reaffirm that after *Kearns*, a "plaintiff must now

15  plead nondisclosure with particularity."  *Marolda v. Symantec Corp.*, 672 F. Supp.

16  2d 992, 997 n.2 (N.D. Cal. 2009); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d

17  987, 991 (N.D. Cal. 2013) (applying Rule 9(b) to nondisclosure claims).  Second,

18  even assuming some statutory claims can be premised on mere negligence,

19  Plaintiffs' claims here are not.  The Complaint accuses InComm of "knowing and

20  willful" deception, *e.g.*, Compl. ¶ 56, of "***deliberately*** concealing material facts,"

21  *id.* ¶ 43 (emphasis added), and of doing so with the "inten[t]" to induce "the sale of

22  goods," *id.* ¶ 42 (emphasis added).  These are classic allegations of fraud, not

23  "negligence."

24  　　　In short, notwithstanding Plaintiffs' revisionist account, their Complaint

25  sounds in fraud, and is subject to Rule 9(b).  Plaintiffs' failure to plead the elements

26  of fraud does not entitle them to relaxation of those standards.  It compels dismissal

27

28
[1] Because this is a categorical statement of law, Plaintiffs' lengthy attempt to distinguish *Kearns* on its facts is of no consequence.  *See* Opp'n at 7–8.

1   of their Complaint.  And in any event, Plaintiffs' Complaint would also fail under

2   Rule 8, given the absence of sufficient "factual content that allows the court to draw

3   the reasonable inference that the defendant is liable for the misconduct alleged."

4   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5   **II.     Plaintiffs Have Not Stated a CLRA or UCL "Unlawful" Claim**

6           Plaintiffs' UCL "unlawful prong" claims and CLRA claims are all premised

7   on InComm's alleged violations of Civil Code Sections 1770(a)(5) and 1770(a)(7).

8   These provisions forbid merchants from "[r]epresenting" that goods (i) have

9   "characteristics, uses, benefits, or quantities that they do not have," or (ii) are of a

10  "standard, quality, or grade" that they are not.  *See* Compl. ¶ 42; Opp'n at 13.

11          Although the Complaint accuses InComm of having "affirmatively

12  misrepresented" its cards through "direct and indirect representations," Compl.

13  ¶¶ 58, 92, Plaintiffs now back away from these allegations, and explain that their

14  CLRA-based claims are premised on InComm's misleading "omissions."  Opp'n

15  at 7, 9.  For an omission to be actionable under the CLRA (or UCL), it "must be

16  contrary to a representation actually made by the defendant, or an omission of a

17  fact the defendant was obliged to disclose," *Hodsdon v. Mars, Inc.*, 891 F.3d 857,

18  861 (9th Cir. 2018) (cleaned up), and the plaintiff must have relied on the omission

19  to their detriment, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

20          Plaintiffs must also plead the circumstances of the alleged omission, with

21  particularity.  *See* Mot. at 15–16.  And they "must set forth an explanation as to

22  *why* the . . . omission complained of was false or misleading."  *Cooper v. Pickett*,

23  137 F.3d 616, 625 (9th Cir. 1997) (emphasis added).  Plaintiffs' Complaint fails on

24  every one of these criteria, and each failure is an independent reason to dismiss the

25  Complaint.

26          **A.     Plaintiffs have not adequately alleged a factual omission.**

27          The foundational defect of Plaintiffs' Complaint is its failure to identify, with

28  particularity, the information that InComm is accused of "omitting."  On the first

1   page of their opposition, Plaintiffs contend that InComm "omitted two material

2   facts: (1) The Cards may have less purchasing power than their Face Value; and

3   (2) [InComm's] security measures may allow Unauthorized Users to access" and

4   spend the card balances.  Opp'n at 1.  But as Plaintiffs admit, they never expected

5   InComm's cards to be "fraud-proof."  *Id.* at 9.  No reasonable consumer would,

6   given that all prepaid products are at some risk of unauthorized use.  Thus, by

7   Plaintiffs' own telling, the fact that unauthorized access "may" occur is common

8   knowledge.

9       Later in their opposition, Plaintiffs zero in on the idea that InComm

10   "knowingly failed to inform consumers that its Cards were vulnerable to

11   unauthorized use *due to sub-standard security measures*."  *Id.* at 6–7 (emphasis

12   added).  In other words, they accuse InComm of "omitting" the fact that an

13   unspecified security deficiency left the cards uniquely vulnerable to fraud.  But

14   their Complaint contains no facts suggesting that such a deficiency existed, or

15   explaining what it was.  All Plaintiffs have alleged is the "sheer possibility" that

16   their own gift cards were depleted by unauthorized users.  *Iqbal*, 556 U.S. at 678

17   (internal quotation marks omitted); Mot. at 5–7, 13–14.  And Plaintiffs' opposition

18   does not elaborate on the facts underlying their suspicions of unauthorized use,

19   though those suspicions form the sole basis of their "omissions"-based claim.

20       In any event, even assuming that Plaintiffs' cards indeed fell prey to

21   "unauthorized use," that does not establish that InComm's security measures were

22   "substandard."  As Plaintiffs concede, episodes of unauthorized use can occur with

23   any kind of gift card, and are not a reflection of InComm's security measures.  Any

24   given cardholder's risk of unauthorized use may be increased by, *e.g.*, the sudden

25   emergence of a new hacking technique, or by the cardholder's failure to safeguard

26   her PIN, among many other possibilities.  Indeed, given the regular occurrence of

27   electronic security breaches and the diversity of factors that contribute to them,

28   courts have consistently declined to treat such breaches, standing alone, as

1    indicative of substandard security.  *See Griffey v. Magellan Health Inc.*, 562 F.

2    Supp. 3d 34, 50 (D. Ariz. 2021); *Feins v. Goldwater Bank NA*, 2022 WL 17552440,

3    at \*7 (D. Ariz. Dec. 9, 2022).

4         For these reasons, reports of unauthorized use cannot support Plaintiffs'

5    claim that InComm "omitted" information about "substandard" security practices.

6    Instead, Plaintiffs' allegations must identify the "standards" for security in similar

7    products, the ways in which InComm's fell short, and the security-related

8    information that it should have provided.  Notably, the complaint in the *Mui Ho*

9    decision, on which Plaintiffs rely, included information of this sort.  *See Mui Ho*,

10   931 F. Supp. 2d at 991.  That complaint alleged that the defendants' headlamps

11   were "prone to condensation and moisture retention," which caused them "to

12   become dangerously dim or to fail completely."  *Id.*  Here, by contrast, Plaintiffs

13   offer no more than vague references to InComm's "inadequate security measures,"

14   Compl. ¶ 45, and "sub-standard security practices and procedures," *id.* ¶ 52.

15   Plaintiffs have failed to make clear what information they are accusing InComm of

16   "omitting."

17       **B.     Plaintiffs' excuses are insufficient to justify these failings.**

18       Plaintiffs acknowledge their failure to allege facts supporting their claim of

19   InComm's "substandard" security practices.  But they ask to be excused from doing

20   so, on the basis that they do not actually know anything about InComm's security

21   practices.  As they explain, "only [InComm] has access to details about its security

22   practices."  Opp'n at 11–12 (citing *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

23   2017)).[2]  Therefore, according to Plaintiffs, they cannot be expected to identify

24

25

26   [2] Plaintiffs also say that InComm has exclusive access to "purchase activity on its

27   Cards," Opp'n at 12, but that is wrong, as their own Complaint shows.  There, they
     allege that InComm's website provides cardholders with information about

28   "specific charges" against a gift card's balance.  Compl. ¶ 4.

1    InComm's security flaw until they have had the chance to root around in discovery

2    and find it.

3            Plaintiffs have it backwards.  It is their burden, in the first instance, to set

4    forth sufficient "factual context" to make their account of InComm's conduct

5    plausible.  *Park*, 851 F.3d at 928.  Here, the Complaint does not offer a single fact

6    that is indicative of deficient security practices at InComm.  Even the most

7    "relaxed" pleading standard requires more than rank speculation.  In any event,

8    Plaintiffs' professed ignorance of InComm's security practices does not square

9    with their allegations about their own reliance on InComm's alleged omissions.

10   Plaintiffs say they "assume[d]" that InComm "would use industry-standard

11   measures" when they purchased the cards.  Opp'n at 7.  If that is true, then they

12   should at least be able to say what measures they had in mind.

13           In short, although Plaintiffs premise their claim on InComm's supposed

14   "omission" of information, they have not said what information InComm omitted.

15   This dooms their UCL "unlawful" and CLRA claims.

16           **C.      Plaintiffs fail to allege the circumstances of the alleged omissions.**

17           In another fatal defect, the Complaint offers no information about the

18   circumstances of the purported omission—including "how, where, and when"

19   InComm was supposed to disclose whatever it is accused of omitting.  *See* Mot. at

20   15–17.  A case cited by Plaintiffs, *Brown v. Starbucks Corp.*, 2019 WL 4183936

21   (S.D. Cal. Sept. 3, 2019), highlights this failure.  Opp'n at 20.  In *Brown*, the

22   plaintiff clearly alleged "what" Starbucks intentionally failed to disclose (the

23   presence of artificial flavors in violation of California law), and "how" that misled

24   her—by omitting a specific piece of information (that gummies contained artificial

25   flavors) from a specific place (the package).  *See id.* at *4.

26           Here, by contrast, Plaintiffs provide no information about the setting of

27   InComm's purportedly unlawful "omission."  As discussed above, they do not say

28   "what" the omission was or "how" it misled them.  But they also fail to say "where"

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

1    it occurred.  That is, from what communication(s) did InComm supposedly "omit"

2    the information—and what reason is there to believe that, if it had not been omitted,

3    Plaintiffs would have seen it and acted differently?  Plaintiffs clarify in their

4    opposition that they have no quarrel with InComm's "advertisements or

5    marketing," so none of those materials was the scene of the offending omission.

6    Opp'n at 9.  Though the product label is another possibility, neither Plaintiffs'

7    Complaint nor their opposition hints at product labeling as the offender, either.

8    Accordingly, Plaintiffs have left InComm in the dark not only about what

9    information it supposedly omitted, but where and when it did so.

10          **D.      Plaintiffs have not adequately alleged InComm's duty to disclose.**

11          The pleading deficiencies discussed above doom Plaintiffs' claims several

12   times over, but those claims also fail for an additional reason:  Even if InComm

13   failed to reveal some deficiency in its security measures, Plaintiffs have not shown

14   that InComm had a ***duty to disclose*** that deficiency to begin with.  A defendant has

15   a duty to disclose only those defects that (1) create unreasonable "safety hazards"

16   or (2) are central to the product's functionality.  *Hammerling v. Google LLC*, 2022

17   WL 2812188, at *7–9 (N.D. Cal. July 18, 2022).

18          Here, Plaintiffs have not attempted to allege a safety hazard, and cannot

19   plausibly allege an impediment to their cards' central function.  As Plaintiffs

20   acknowledge, that central function is to permit the user to make purchases against

21   the card balance.  *See* Opp'n at 9.  Plaintiffs do not allege that their cards failed to

22   perform this function, but rather that the wrong people (*i.e.*, unauthorized users)

23   reaped its benefits.  At least one court has dismissed omission-based CLRA and

24   UCL claims under analogous circumstances.  *See Barrett v. Apple Inc.*, 2022 WL

25   2119131, at *11 (N.D. Cal. June 13, 2022).  The allegations in *Barrett* related to

26   Apple's purported failure to alert gift card purchasers about the risk that third-party

27   "gift card scam[mers]" would appropriate and use their funds.  *Id.*  The court found

28   that Apple had no duty to disclose this risk, because the fact that the "scammers"

1   ultimately redeemed the cards showed that the "central function of the gift card—

2   to serve as a form of payment . . . —was not, in fact, at all impeded." *Id.* Therefore,

3   the risk could not have impeded the products' "central function."

4          The same is true here.  Even laying aside Plaintiffs' failure to allege that

5   InComm withheld information about its purported security defects, Plaintiffs'

6   claims would still fail, because Plaintiffs' own allegations show that the cards'

7   "central function" of funding purchases was unimpaired.  Accordingly, Plaintiffs

8   do not and cannot allege that InComm had a duty to disclose the information in

9   question (whatever it was).[3]

10                                    *       *       *

11         According to Plaintiffs' opposition, their claims target InComm's

12  "omission" of information about the cards' substandard security.  Yet their

13  Complaint contains no facts about how InComm's security was substandard; what

14  the "standard" was; what facts InComm omitted; when or where it did so; or the

15  basis of its duty to disclose those facts.  Each of these is a separate and independent

16  basis for dismissing their CLRA claims and UCL claims under the "unlawful"

17  prong.

18  **III.   Plaintiffs' UCL "Unfair Business Practices" Claims Fail**

19         Plaintiffs' UCL "unfair" claims are based on the same set of allegations as

20  all of their other statutory claims:  InComm's alleged omission of its "failure to

21  implement . . . security measures."  Opp'n at 16.  But the "unfair" prong of the

22  UCL is not a fallback option for complaints that fail under the statute's "unlawful"

23

24  _____

25  [3] Furthermore, even if the cards had a security defect, InComm would have had to
    know "of the defect at the time of sale" in order to have a duty to disclose it.

26  *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017).  On that
    point, too, Plaintiffs have made no non-conclusory allegations. This is another

27  ground for dismissing their Complaint.  *See*, *e.g.*, *Antonyan v. Ford Motor Co.*,
    2022 WL 1299964, at *5 (C.D. Cal. Mar. 30, 2022) (dismissing UCL claims for

28  failure to allege knowledge of undisclosed defect at time of sale).

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

1   prong.  Accordingly, courts routinely dismiss UCL "unfair" claims that, like this

2   one, "overlap[] entirely" with the conduct alleged in failed claims under other

3   prongs of the statute.  *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647

4   (N.D. Cal. 2021); *accord Hammerling*, 2022 WL 2812188, at *15; *Saavedra v.*

5   *Everi Payments, Inc.*, 2022 WL 17886025, at *5 (C.D. Cal. Apr. 11, 2022); *Knuttel*

6   *v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022).  This Court

7   should do the same.

8          In any event, Plaintiffs' UCL "unfair" claim is a nonstarter, and none of the

9   data-breach cases cited by Plaintiffs suggests otherwise.  *See* Opp'n at 16–17.  In

10  those cases, the plaintiffs alleged specific facts about the ways in which defendants'

11  security practices fell short of industry standards or the defendants' own policies.

12  *See Svenson v. Google Inc.*, 2015 WL 1503429, at *1 (N.D. Cal. Apr. 1, 2015)

13  (plaintiffs alleged that defendant "deliberately" shared data in violation of its

14  privacy policy); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1231–

15  32 (N.D. Cal. 2014) (plaintiffs identified "a number of specific industry-standard

16  security measures that [defendant] did not implement" even as "competitors did");

17  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *24

18  (N.D. Cal. Aug. 30, 2017) (plaintiffs alleged that defendants had "violated [their]

19  own privacy policy").  As set forth above, Plaintiffs here allege nothing of the sort.[4]

20  **IV.   Mere Recipients Have No Standing**

21         Plaintiffs' opposition also does not offer a persuasive argument that the

22  Recipient Plaintiffs have standing.  Because Recipients never bought the product,

23  they cannot "show that [they] actually relied on the alleged omission," as they must

24

---

25  [4] Even had it contained a plausible allegation of an unfair practice, the Complaint
26  does not provide allegations adequate to permit the Court to "weigh the utility of
    the defendant's conduct against the gravity of the harm," or apply any of the other
27  standards used by courts evaluating the sufficiency of UCL "unfair practices"
    claims.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169–70 (9th Cir.
28  2012) (cleaned up).

1    in order to establish standing.  *Joseph v. Costco Wholesale Corp.*, 2016 WL

2    759559, at *3 (C.D. Cal. Feb. 24, 2016), *aff'd* 691 F. App'x 865 (9th Cir. 2017).

3    At most, by Plaintiffs' telling, disclosure of the allegedly-omitted information

4    about InComm's security might have deterred Recipients' loved ones from

5    purchasing the cards and giving them to Recipients as gifts.

6         Plaintiffs offer no meaningful rejoinder to this point, or to decisions rejecting

7    gift recipients' claim to UCL standing.  *See* Mot. at 21.  And the decisions they

8    cite, Opp'n at 24, do not help them.  The *Marilao* court **dismissed** UCL claims for

9    failure to state a claim and for lack of standing.  *Marilao v. McDonald's Corp.*, 632

10   F. Supp. 2d 1008, 1012–13 (S.D. Cal. 2009).  Meanwhile, the plaintiffs in

11   *McVicar*—unlike the Recipients here—"*paid for*, and were stuck with," the

12   defective product.  *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1051

13   (C.D. Cal. 2014) (emphasis added).  Recipients here never paid for the cards.

14        If Plaintiffs had their way, the UCL would be a vehicle for any person to

15   bring suit over any grievance about any product, no matter how it came into their

16   possession and regardless of whether they lost any money as a result.  And any

17   defendant would be subject to liability (at least) twice—once to the purchaser and

18   once to anybody who subsequently received the product as a gift.  As cases cited

19   both by InComm and by Plaintiffs show, that is not the law.

20   **V.    Plaintiffs' Common-Law Claims Also Fail**

21        Plaintiffs do not meaningfully dispute that their unjust enrichment claim is

22   barred by the existence of a contract governing their relationship with InComm.

23   *See* Mot. at 23 n.4.  Indeed, they concede that InComm had a "contractual

24   agreement with purchasers" in the form of the cardholder agreements.  Opp'n at

25   22.  Separately, the unjust enrichment claim must also be dismissed because it is

26   based on the same deficient allegations discussed above (and, even Plaintiffs agree,

27   is subject to Rule 9(b)'s particularity requirement).

28

1    Plaintiffs' claim for breach of implied contract is also barred by the written

2   contracts.  Mot. at 24 n.5.  Plaintiffs respond that InComm has not shown that the

3   cardholder agreements "embrace the exact same subject" as the purported implied

4   contract.  *See* Opp'n at 22–23.  But that is only because the Complaint is so utterly

5   lacking in detail that InComm cannot determine which cardholder agreements

6   apply.  *See* Mot. at 8 n.3.  As in the Rule 9(b) context, Plaintiffs cannot rely on the

7   deficiencies in their Complaint to excuse the deficiencies in their Complaint.

8    Plaintiffs' argument also misstates the law, which precludes implied-

9   contract claims relating to issues that "fall[] within the same umbrella" as a written

10   contract, whether or not the latter covers "every possible scenario" involving those

11   issues.  *Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*, 2019 WL 4137605, at *3–

12   4 (C.D. Cal. June 3, 2019) (finding that written contract defeated implied contract

13   claim).  Finally, Plaintiffs' implied-contract claim fails for the other reasons set

14   forth in InComm's motion to dismiss, *see* Mot. at 22–23, including Plaintiffs'

15   failure to allege facts suggesting that InComm had "substandard" security features.

16                              **CONCLUSION**

17    Plaintiffs could have amended their Complaint in response to InComm's

18   motion, but chose not to do so.  They also provide no reason to think that

19   amendment would be anything other than futile.  The Court should therefore deny

20   Plaintiffs' request for leave to amend and dismiss the Complaint with prejudice.

21

22

23

24

25

26

27

28

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

1

2

3
Dated: February 20, 2023

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: */s/ William A. Delgado*

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF

1

## CERTIFICATE OF COMPLIANCE

2        The undersigned, counsel of record for InComm Financial Services, Inc.,

3   certifies that this brief is twelve pages, which complies with the page limit set by

4   court order dated October 20, 2022.

5

6   Dated: February 20, 2023                By: */s/ William A. Delgado*

7
                                            William A. Delgado (SBN 222666)
8                                             wdelgado@dtolaw.com
                                            DTO LAW
9                                           601 S. Figueroa St. Suite 2130
                                            Los Angeles, CA 90017
10                                          Tel: (213) 335-7010
                                            Fax: (213) 335-7802
11

12
                                            Jane Metcalf (*pro hac vice*)
13                                            jmetcalf@pbwt.com
                                            David S. Kleban (*pro hac vice*)
14                                            dkleban@pbwt.com
                                            Peter Vogel (*pro hac vice*)
15                                            pvogel@pbwt.com
                                            Basil Williams (*pro hac vice*)
16                                            bwilliams@pbwt.com
                                            PATTERSON BELKNAP WEBB &
17                                          TYLER LLP
                                            1133 Avenue of the Americas
18                                          New York, New York 10036
                                            Tel: (212) 336-2000
19                                          Fax: (212) 336-2222
20
                                            Attorneys for Defendant
21                                          INCOMM FINANCIAL SERVICES, INC.
22

23

24

25

26

27

28

14

DEF. INCOMM FINANCIAL SERVICES, INC.'S REPLY BRIEF