1 | Graham B. LippSmith (SBN 221984)
g@lippsmith.com
2 | MaryBeth LippSmith (SBN 223573)
mb@lippsmith.com
3 | Jaclyn L. Anderson (SBN 258609)
jla@lippsmith.com
4 | **LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
5 | Los Angeles, CA  90071
Tel: (213) 344-1820 / Fax: (213) 513-2495
6 |
7 | Jason T. Dennett (WSBA #30686), *Pro Hac Vice*
jdennett@tousley.com
Kaleigh N. Boyd (WSBA #52684), *Pro Hac Vice*
8 | kboyd@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
9 | 1200 Fifth Avenue, Suite 1700
Seattle, WA  98101
10 | Telephone: (206) 682-5600 / Fax: (206) 682-2992
11 | Attorneys for Plaintiffs and the Putative Classes

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CAROLYN CLARK, SHELBY COOPER, SHARON MANIER, TARIKA STEWART, and AQUILLA THOMPSON individually, and on behalf of all others similarly situated; | Case No. 5:22-cv-01839-JGB-SHK |
| | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| Plaintiffs, | |
| v. | **1) VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT CAL. CIV. CODE §§ 1750, ET SEQ.;** |
| INCOMM FINANCIAL SERVICES, INC., a Delaware corporation, | |
| Defendant. | |

_____

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

**2) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.* – UNLAWFUL BUSINESS PRACTICES;**

**3) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.* – UNFAIR BUSINESS PRACTICES;**

**4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.* – UNFAIR BUSINESS PRACTICES; AND**

**5) UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

FIRST AMENDED CLASS ACTION COMPLAINT

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, individually and on behalf of the Classes defined below, allege the following against Defendant InComm Financial Services, Inc., doing business as Vanilla Gift ("Vanilla"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE CASE

1.     Vanilla sells Visa and MasterCard pre-loaded virtual ("E-Cards") and physical debit cards ("Physical Cards") online and in retail stores across the country that it markets as "Gift Cards".[1]

2.     E-Cards and Physical Cards (collectively "Cards") have preloaded funds of a specified amount ("Face Value") from $10 to $500, available to be used by whomever purchased or received the Cards.

3.     Consumers who buy Cards ("Purchasers") pay Vanilla the Face Value plus a fee.

4.     People who receive these Cards ("Recipients") from Purchasers as gifts report that their Cards have no value or less than Face Value. Purchasers

---

[1] https://www.vanillagift.com/ (last visited Mar. 29, 2023).

1

FIRST AMENDED CLASS ACTION COMPLAINT

1   who use the Cards for their own purposes also report that their Cards have no

2   value or less than the Face Value.

3       5.      Plaintiffs each purchased or received Cards that had purchasing

4   power less than the Face Value when they first attempted to use their Cards.

5       6.      The Face Value of Plaintiffs' Cards was partially or completely spent

6   by unknown third parties ("Unauthorized Users") *before* Plaintiffs tried to use the

7   Cards.

8       7.      Each Plaintiff asked Vanilla to reimburse them the full Face Value of

9   their depleted Cards. Vanilla did not do so.

10      8.      Plaintiffs' experiences are not isolated incidents. Purchasers and

11  Recipients across the country report on multiple consumer websites that their

12  Cards contain less than Face Value and that their online Vanilla accounts show

13  Unauthorized User purchases against the Face Value of their Cards. They further

14  complain that Vanilla failed to reimburse them and that Vanilla's customer

15  service seemed intentionally designed to frustrate attempts to be reimbursed.

16      9.      Through these complaints, Vanilla has known for years that the Face

17  Value of their Cards is insecure.

18      10.     In continuing to sell Cards while knowing that the Face Value of

19  their Cards is insecure, Vanilla fraudulently omits three material facts.

20      11.      First, Vanilla omits that Cards commonly have less purchasing

21  power than their Face Value at the time of purchase due to theft.

FIRST AMENDED CLASS ACTION COMPLAINT

12.     Second, Vanilla omits that Unauthorized Users exploit a specific flaw in Vanilla's online security measures, detailed below, that allow them to access and spend the Face Value of Plaintiffs' and Class Members' Cards before Plaintiffs and Class Members can do so.

13.     Third, Vanilla omits that it avoids reimbursing Purchasers and Recipients for fraud losses when they occur.

14.     Vanilla should have disclosed the facts in Paragraphs 11 through 13 above on the exterior of the packaging of Physical Cards and on the webpage[2] through which Vanilla sells E-Cards.

15.     Vanilla knows that no reasonable consumer would intentionally gamble by buying a gift card that is particularly vulnerable to fraud and is, therefore, likely to contain less than its Face Value, so Vanilla does not disclose its security problems.

16.     Vanilla could but does not implement additional security measures that would decrease or eliminate Card fraud because those measures would increase its costs and reduce its profits. So rather than protecting Purchasers and Recipients, Vanilla chooses to secretly shift the risk of fraud loss to innocent consumers.

_____

[2] https://www.vanillagift.com/catalog?type=email_animated (last visited Apr. 5, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

1   17. Plaintiffs, on behalf of themselves and other similarly situated

2 individuals who also purchased or received Cards, seek to recover economic

3 losses from Vanilla for violation of applicable California consumer protection

4 statutes and unjust enrichment.

5           **PARTIES**

6   18. Plaintiff Carolyn Clark ("Clark") is a resident of Riverside County in

7 the State of California. Clark purchased a $100 Vanilla E-Card online for her own

8 use in 2021 or early 2022. She did not share her E-Card information with anyone

9 else. When Clark tried to use the Face Value of her E-Card for the first time, it

10 was rejected. Based on the facts explained herein, the only plausible explanation

11 is that the Face Value of Clark's Card was depleted by an Unauthorized User(s).[3]

12 Clark phoned Vanilla, and Vanilla told her to try using the E-Card again in a few

13 days because some "issues" should be resolved by then. Clark tried using her E-

14 Card again; again, the E-Card did not work. Clark called Vanilla several times

15 since her card was rejected a second time, but Vanilla never restored the Face

16 Value of her E-Card. Clark has never been able to use the Face Value of the E-

17 Card she purchased. Clark estimates that she spent approximately 30 hours in

18 total trying to recoup the funds she paid for her E-Card.

19

20

21

_____

[3] No one has reported that Vanilla never loaded the Face Value onto the Cards in the first place.

FIRST AMENDED CLASS ACTION COMPLAINT

19.     Plaintiff Shelby Cooper ("Cooper") is a resident of Riverside County in the State of California. Cooper received seven Physical Cards as gifts from family members in 2021. After that transfer of ownership, which Vanilla explicitly anticipates by marketing Cards as gifts, Cooper had the exclusive right to spend the Face Value of her seven Physical Cards. Three of Cooper's Physical Cards had purchasing power less than the Face Value when she went to use them for the first time. Her fourth Physical Card had no value. Cooper did not share her Physical Card information with anyone else, nor were those Physical Cards out of her possession at any time. The only plausible explanation is that the Face Value of Cooper's Cards was depleted by an Unauthorized User(s). The total amount of Face Value missing from Cooper's Physical Cards was approximately $300.

20.     Plaintiff Sharon Manier ("Manier") is a resident of Riverside County in the State of California. Manier received a $100 Vanilla Physical Card as a gift in December 2021. After that transfer of ownership, which Vanilla explicitly anticipates by marketing Cards as gifts, Manier had the exclusive right to spend the Face Value of her Physical Card. When she went to use the Physical Card at a retailer for the first time, the Card was declined. Manier did not share her Physical Card information with anyone else, nor was her Physical Card out of her possession at any time. Manier learned that the Card did not have any funds on it when it was declined, so she called Vanilla. Manier recalls that Vanilla indicated that the lack of funds was a problem it could not, or would not, do anything about.

1   The only plausible explanation is that the Face Value of Manier's Card was

2   depleted by an Unauthorized User(s). Vanilla did not point Manier toward any

3   claims process or other way to try to recoup the Face Value of her Physical Card.

4        21.   Plaintiff Tarika Stewart ("Stewart") is a resident of Riverside County

5   in the State of California. Stewart purchased a $100 Vanilla Physical Card for her

6   son at WalMart in December 2021. Stewart's son reported to her that when he

7   attempted to use the Physical Card for the first time, the Physical Card had only

8   about $2.00 on it. The Physical Card was not out of his possession at any time.

9   Stewart called Vanilla and verified that the Face Value was depleted from the

10  Card by Unauthorized Users. Vanilla explained the funds were most likely

11  depleted due to fraudulent activity. Vanilla did not point Stewart toward any

12  claims process or other way to try to seek reimbursement from Vanilla for the

13  Face Value of the Physical Card she purchased. Stewart estimates that she spent

14  approximately 50 hours attempting to resolve the issue of depleted Face Value

15  with Vanilla.

16       22.   Plaintiff Aquilla Thompson ("Thompson") is a resident of Los

17  Angeles County in the State of California. Thompson purchased a $250 Vanilla

18  E-Card for her daughter in December 2021. Soon after receiving the E-Card, and

19  after attempting to use it for the first time, Thompson's daughter reported that the

20  E-Card had no value. Thompson called Vanilla and verified that no funds were on

21  the E-Card. The only plausible explanation is that the Face Value of the Card

FIRST AMENDED CLASS ACTION COMPLAINT

1  Thompson purchased was depleted by an Unauthorized User(s). Thompson called

2  Vanilla multiple times to have the issue rectified, unsuccessfully, and described

3  the process of trying to obtain a refund from Vanilla as nothing but the runaround.

4  Thompson was never provided with an E-Card that held the Face Value of the E-

5  Card she purchased, and she estimates having spent approximately 6 hours during

6  the course of one or two months trying to recoup the $250 she spent on it.

7       23.    Each of the Plaintiffs and putative Class Members suffered injury

8  because the Card they purchased and/or received had charges made against it by

9  Unauthorized Users, and Vanilla did not refund the missing amount of Face

10 Value, or the fees associated with purchasing the Cards.

11      24.    Defendant InComm Financial Services, Inc. ("Vanilla"), is a

12 Delaware corporation based in Atlanta, Georgia. Vanilla is the entity managing

13 the Card program.

14                    **JURISDICTION AND VENUE**

15      25.    This Court has original jurisdiction over this action under 28 U.S.C.

16 § 1332(d)(2) because: (i) there are 100 or more class members; (ii) there is an

17 aggregate amount in controversy exceeding $5,000,000, exclusive of interest and

18 costs; and (iii) there is minimal diversity because at least one plaintiff and

19 defendant are citizens of different states. This Court also has supplemental

20 jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21

FIRST AMENDED CLASS ACTION COMPLAINT

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the conduct described in this Complaint was carried out in this district. Furthermore, Vanilla provides and markets its products and services within this district, thereby establishing sufficient contact to subject it to personal jurisdiction.

27.     At all relevant times, Vanilla was directly engaged in the business of marketing, issuing, and managing gift Cards that are the subject of this Complaint throughout the United States and the State of California.

28.     This Court has personal jurisdiction over Vanilla. Facts giving rise to this action occurred in the State of California. Vanilla has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in, and carried on a business venture in this State;  provided services in this State; committed a statutory violation within this State related to the allegations made herein; and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the State of California, during the relevant time period.

## STATEMENT OF FACTS

**A.     Vanilla fails to secure the Face Value of Cards from widespread theft by Unauthorized Users.**

29.     Purchasers can buy Vanilla Cards from retail stores or online.

FIRST AMENDED CLASS ACTION COMPLAINT

30.     Purchasers select a Card with a Face Value of between $10 and $500, and that amount is loaded on the Card to be used for future purchases.

31.     Vanilla charges Purchasers a fee of at least $2.95 for each Card purchased, whether purchased in a retail store or purchased online directly from Vanilla. These fees can increase depending on the amount being purchased for the Face Value of the Card(s) and range from $2.95 to $9.95, depending on when the Cards were purchased, the gifted amounts, and the number of Cards purchased. So, for example, Vanilla may charge a purchaser of a $25 Face Value Visa gift Card a total of $29.95 ($25, plus a fee of $4.95), and charge a purchaser of a $200 Face Value Visa gift Card a total of $207.95 ($200, plus a fee of $7.95).

32.     Vanilla retains the fees that it charges Purchasers. The fees are an out-of-pocket cost to Purchasers, and those fee amounts are not available for use on the Cards after purchase.

33.     Purchasers can buy Physical Cards for set amounts at retail stores such as drug stores, most often from a point-of-purchase display at a store register. Packaging for Physical Cards displays the Face Value that will be loaded on each Card when purchased, and that is the amount that should be available for use by the intended Recipient.

34.     As they sit on the rack, Physical Cards are worthless. If a thief were to simply grab a handful and run out of the store, the stolen Physical Cards would have no value.

9

FIRST AMENDED CLASS ACTION COMPLAINT

35.    A clerk at a retail store must activate Physical Cards at the time of purchase for the Physical Cards to hold any value. Activation makes the Face Value of Physical Cards ready to spend. The Physical Cards are then ready to use within 24 hours with no additional activation needed.

36.    Yet when Plaintiff Stewart's son and Plaintiffs Cooper and Manier went to use their Physical Cards for the first time, all or a portion of the Face Value had already been spent by Unauthorized Users.

37.    Purchasers can also purchase virtual E-Cards of various denominations at www.vanillagift.com.

38.    At the time of purchase, Purchasers indicate the "Card Value" that is to be loaded on the purchased E-Card[4] and designate a Recipient to receive the E-Card by email. When an E-Card is activated, the loaded Card Value, or Face Value, is supposed to be available for use by the intended Recipient.

39.    Vanilla's online database contains sixteen-digit E-Card account numbers available to transmit to E-Card Recipients after purchase.

40.    When a Purchaser buys an E-Card, Vanilla transmits one of those existing account numbers to the designated Recipient.

41.    Vanilla sends Recipients of E-Cards an email that contains a link to its website. The website then provides a sixteen-digit card number, an expiration

---

[4] *See, e.g.*, https://www.vanillagift.com/gold-script (last visited Mar. 30, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

1  date, and a three-digit Card Verification Value (CVV) security code, and the E-

2  Card is activated.

3      42.    But as with Physical Cards, the Face Value of Vanilla's E-Cards are

4  frequently drained by Unauthorized Users before Purchasers and Recipients can

5  use the funds, just as Plaintiffs Clark and Thompson experienced.

6      43.    Plaintiffs' experiences were mirrored by Purchasers and Recipients

7  around the country, as they reported in online reviews. Examples of these

8  complaints and reviews are shown below.

9      44.    After 102 reviews, consumers rate Vanilla 1.17 stars out of a

10  possible 5 on Sitejabber,[5] a prominent online rating site backed by the National

11  Science Foundation. The stories in the reviews mirror Plaintiffs' experiences. For

12  example:



<hr>

21  [5] https://www.sitejabber.com/reviews/vanillagift.com (last visited Mar. 29, 2023).

11

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



### Scammers! Stealing your money! The worst system in the world

★☆☆☆☆   February 24th, 2023   Verified purchase ✓

Scammers! I bought vanilla gift card in Walgreens 100$ and could not access the money when I went online to check balance SYSTEM ERROR they steal your money!
I did call the phone on the back of the card i was on the line for 40 minutes to get connect and the customer service told me that someone else try to claim the money? And make a problems with giving me back my money! I have prove that i bought the card I have Receipt! Never ever buy again.! Stole my 100$ and waist my time on the phone biggest scammers

**Tip for consumers:**
Scammers ! Stole 100$ from me !
Never ever buy the vanilla gift card product! They steal money & waist of time scammers !

**Products used:**
Vanilla gift cards 100$

◉○○○○   Service
◉○○○○   Value
◉○○○○   Returns
◉○○○○   Quality

▲ Show less

Melissa B.
1 review  •  5 helpful votes

⋮

### I lost $470 and they let it happen!

★☆☆☆☆   January 12th, 2023   Verified purchase ✓

I purchased one of their cards and put $500 on it. Within an hour someone had made a purchase of $470 at an Apple store in CA and cleared my balance. I reported it immediately though it took 40 mins on hold to speak to someone only to be told there was nothing that could be done because the purchases made with the cards are considered as cash. I would never suggest anyone purchase on of these cards.

**Products used:**
Vanilla Visa Gift Card

◉○○○○   Service
◉○○○○   Value
◉○○○○   Quality

▲ Show less

Comment ▾  |  ❤ Thank you  |  Respond as company

👍 Helpful (5)

12

FIRST AMENDED CLASS ACTION COMPLAINT



45.    After 288 reviews, consumers rate Vanilla 1.1 stars out of a possible 5 on Trustpilot,[6] another leading online rating site. The stories in the reviews mirror Plaintiffs' experiences. For example:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



14

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



**D B**
1 review   US

★☆☆☆☆                                                Jan 27, 2023

**Professional scammers**

Got a $100 gift card, went to use it next day, and it was declined. When I did some research I found out it was used in a different state the same day of purchase. Called customer service, said I needed to file dispute and would take up to 6 months to see an update. Complete trash and lost $100.

**Date of experience:** September 17, 2022

👍 Useful **2**   ⊷ Share

**Kevin**
1 review   US

★☆☆☆☆                                                Jan 19, 2023

**Merry Christmas from Vanilla Visa!**

Unbelievable! I got a $100 card as a gift and attempted to use it a few times. It almost never worked. Eventually, I was able to use about $8, but that was it. Someone else had already charged merchandise using the card. It looks like the card number must have been stolen or worse the company could be committing some kind of fraud. Attempts to contact the company to get a credit are not productive. The company tells you need to dispute the charges, which according to them takes 45 to 90 days. What a joke. They aren't trying to resolve anything. They just want you to go away.

**Date of experience:** December 24, 2022

👍 Useful **1**   ⊷ Share

FIRST AMENDED CLASS ACTION COMPLAINT

46.     Vanilla's low ratings and complaints are consistent across review sites. Pissedconsumer.com rates Vanilla 1.3 stars out of 5 based on 561 reviews[7]. The Better Business Bureau rates Vanilla 1.05 out of 5 based on 220 reviews[8].

47.     The stories are consistent: Purchasers and Recipients try to use their Cards and find that Unauthorized Users have almost instantly spent all or most of the Face Value. As explained below, that almost instant use is the key to understanding how Unauthorized Users steal Face Value and how Vanilla fails to prevent the theft.

///

///

[7] https://vanilla-gift.pissedconsumer.com/review.html (last visited Mar. 29, 2023).

[8] https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-financial-services-inc-0743-4118/customer-reviews (last visited Mar. 29, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

**B.**     **Vanilla is responsible for every possible explanation for how Unauthorized Users obtain Card numbers and steal Cards' Face Value.**

**B.1.   In-store tampering with Physical Cards is likely not the cause.**

48.     Early gift card fraud involved thieves tampering with the packaging of Physical Cards in a store to open them and obtain the sixteen-digit card number, CVV, and expiration date right off the back of the Physical Cards.

49.     Here, such in-store tampering is not likely to be the cause of the fraud. Vanilla packages its Physical Cards in sealed cardboard envelopes that a vendor, Travel Tags, specifically designed to be tamper-proof.[9] Travel Tags explains:

---

[9] http://www.traveltags.com/assets/uploads/TT_specialtypacks_FINAL_woh.pdf (last visited Mar. 29, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



## SECURE PACK

Our selection of Secure Packs for open and closed loop cards include several unique security features that create highly visible evidence of tampering prior to purchase.

- Multi-panel concepts
- Inner security slits
- Perforated tear strips
- Bar code window for scan activation
- Mag stripe on package for swipe activation
- Foil or spot foil capabilities
- Scratch-offs and security labels

18
FIRST AMENDED CLASS ACTION COMPLAINT

50.     Further, package tampering cannot explain how Unauthorized Users are able to access E-Card information for fraudulent use.

### B.2.   Vanilla's employees could be stealing Card information.

51.     Given that tampering with physical packaging doesn't explain the widespread fraud endemic to Vanilla Cards, there are only three plausible explanations as to how this widespread fraud, which seems unique to Vanilla Cards, is occurring. The first and simplest possible explanation for the widespread, unauthorized use of Card funds is that the Unauthorized Users are Vanilla insiders who use their position within Vanilla to obtain access to Card information to steal Face Value from Purchasers and Recipients.

52.     If this is the case, Vanilla is responsible for failing to safeguard its customers' Cards from its employees or contractors.

### B.3.   Vanilla's insufficient data security could allow cybercriminals to illegally access Vanilla's database of Card information.

53.     The second possible explanation is that Vanilla's electronic databases of Card information have been illegally accessed by cybercriminals, enabling Card information to be stolen for use by Unauthorized Users.

54.     Illegal markets for Card information exist on the Dark Web, an encrypted portion of the internet that is not indexed by search engines and only accessible by means of special software, allowing users to remain anonymous.

FIRST AMENDED CLASS ACTION COMPLAINT

55.     Cybercriminals target gift card companies' data systems to steal Card information that they can later sell on the Dark Web. *See e.g.* https://geminiadvisory.io/gift-card-shop-breached/ (reporting a 2021 attack on Cardpool.com and the subsequent sale of 330,000 stolen numbers on the Dark Web) (last visited Mar. 29, 2023).

56.     If a cyberattack was the cause of Plaintiffs' losses, Vanilla is responsible for those losses because it failed to implement adequate and industry-standard data security to prevent a widespread data breach.

57.     Vanilla can stop such attacks with reasonable investment in adequate cybersecurity.

**B.4.    Unauthorized Users may have Vanilla's formula for generating Card information.**

58.     The final possible explanation is that Vanilla uses an algorithmic formula to create Card numbers, expiration dates, and CVVs, that Unauthorized Users have deciphered this formula, and that Unauthorized Users use their own algorithm to generate Card information.

59.     Many Cards have the same first 12 digits, and only the last four are randomized, making it easy for Unauthorized Users to guess or use computer programs to discern the last four digits.

///

///

60.     Unauthorized Users have been draining Card value for years. If a cracked algorithm is to blame, Vanilla would need only establish a new algorithm to stop the theft.

**B.5.    Each possible explanation for the widespread, fraudulent use of Face Value requires that Unauthorized Users exploit a security flaw in Vanilla's systems.**

61.     Each of the three possible explanations (and tampering with Physical Card packaging) would only give Unauthorized Users unactivated Card numbers.

62.     It is only after Cards are activated at the time of purchase, either in-person at a store for Physical Cards or when a Recipient receives a link to the Card information on Vanilla's website, that the Face Value is available for use.

63.     Unauthorized Users are able to access and spend Face Value very close in time to Card activation. The only way they can do that is if they are watching Vanilla's website to see when Cards are activated.

64.     Purchasers and Recipients can access the account balance of their cards at https://balance.vanillagift.com/#/. The page looks like this:

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8



9    65.    Unauthorized Users use this site to check the validity of the Card

10   information that they illegally obtain through one of the three methods described

11   above and to learn when Cards are activated.

12   66.    Before a Card is activated, when an Unauthorized User enters the

13   Card information into Vanilla's site, the balance shows as zero because the Card

14   does not have any purchasing power until activated.

15   67.    To access and spend Face Value very close in time to Card

16   activation, Unauthorized Users must continuously and remotely monitor the

17   balances of unactivated Cards through Vanilla's website.

18   68.    No human could monitor the balances of hundreds or thousands of

19   unactivated Cards often enough to catch each Card's activation with the

20   consistency that Unauthorized Users achieve.

21

69.     Unauthorized Users use a computer program to constantly monitor unactivated Cards for activation. Such programs repeatedly query https://balance.vanillagift.com/#/ looking for a balance on a previously unactivated Card.  As soon as a spendable balance shows up on a Card, the program notifies Unauthorized Users, who then quickly spend that Face Value.

70.     Vanilla could, but chooses not to, take steps to prevent Unauthorized Users' computer programs from accessing https://balance.vanillagift.com/#/.

**C.     Vanilla facilitates each of the three possible methods of Card fraud because it allows Unauthorized Users to continuously, remotely, and automatically monitor balances of unactivated Cards.**

71.      Regardless of which method Unauthorized Users are employing to obtain Vanilla's Card numbers, Unauthorized Users could not exploit their wrongfully obtained Card information unless they know when Cards are activated.

72.     Unauthorized Users would not be able to determine when Cards are activated without using automated computer programs.

///

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

73.     Online security tools exist that prevent access to websites by automated computer programs. Since at least 2017, cybersecurity experts have advocated using these tools to prevent criminal access to gift card balance-checking sites.[10]

74.     One of the most common such tools is CAPTCHA (Completely Automated Public Turing test to tell Computers and Humans Apart), which requires users to solve a visual puzzle that automated computer programs would not be able to solve before allowing access to a website. An example of a CAPTCHA appears below.

---

[10] Andy Greenberg, *Hacking Retail Gift Cards Remains Scarily Easy* (Aug. 31, 2017), https://www.wired.com/story/gift-card-hacks/, WIRED.COM (last visited Mar. 29, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT



75.     Implementing CAPTCHA or something similar on

https://balance.vanillagift.com/#/ would prevent Unauthorized Users from using

automated computer programs to access the site to check balances, disrupting a

key part of Unauthorized Users' fraudulent scheme to steal Face Value from

Purchasers and Recipients.

76.     Vanilla not only knows about the existence of tools like CAPTCHA,

it also knows how those tools can be implemented to prevent malicious computer

programs from accessing a balance inquiry site. Vanilla's Australian Card balance

FIRST AMENDED CLASS ACTION COMPLAINT

inquiry site, https://www.vanillabalance.com/cholder/, shown below, utilizes

CAPTCHA ("I'm not a robot").[11]



77.   Employing CAPTCHA or a similar tool on its United States website

would cost Vanilla money. Rather than spend that money to thwart Unauthorized

Users, Vanilla chooses to shift the risk of loss to Purchasers and Recipients.

---

[11] Australia's equivalent of the U.S. Securities Exchange Commission, the
Australian Securities and Investments Commission (ASIC), regulates gift cards in
Australia. ASIC regulates gift cards as credit cards, which may explain the extra
security measures Vanilla takes on its Australian site.

FIRST AMENDED CLASS ACTION COMPLAINT

78.  Vanilla could also eliminate the balance inquiry website entirely and substitute a phone system that could not be exploited by Unauthorized Users' software. Building and maintaining such a phone system would cost Vanilla money.

79.  Vanilla could also, but does not, monitor its website for balance inquiries on unactivated Cards. No legitimate Purchaser or Recipient would check the balance of an unactivated Card because they do not have Card information until after purchase when the Card has been activated. The only reason anyone would monitor unactivated Card numbers is to steal the balance as soon as the Card is activated.

80.  Vanilla could then flag Card numbers that experience balance checking prior to activation for automatic reimbursement should there be a claim of fraud. Such monitoring would require investment into software and personnel, reducing Vanilla's profit.

81.  Thus, no matter what method of fraud Unauthorized Users are employing to obtain Card numbers, Vanilla has the same fundamental security problem: allowing Unauthorized Users to track the Card activation so that Cards can be used by Unauthorized Users at or near the time of activation.

82.  Vanilla and its substandard security measures discussed above are responsible for the widespread, fraudulent depletion of Card funds regardless of which of the three possible explanations is being exploited by Unauthorized

27

Users. In other words, because Unauthorized Users can track when Plaintiffs' and Class Members' Cards are activated—as a direct result of Vanilla's failure to prevent such tracking—Unauthorized Users deplete the Face Value of Plaintiffs' and Class Members' Cards, and Plaintiffs and Class Members are unable to use them. Plaintiffs' and Class Members' losses are, therefore, the direct and proximate result of Vanilla's negligent, reckless, and/or willful security lapses.

83.    Acknowledging and addressing the widespread fraudulent use of Card funds would further cut into Vanilla's profit because it would also have to reimburse Purchasers and Recipients for charges made by Unauthorized Users. As explained below, Vanilla takes affirmative steps to avoid paying fraud losses.

**D.    Vanilla fraudulently fails to inform Purchasers and Recipients of the likelihood of theft, that it could remedy that theft but chooses not to, and that if theft occurs, Vanilla will actively try to avoid reimbursement.**

84.    Vanilla knows that its Cards are extremely prone to access by Unauthorized Users, and it knows that Unauthorized Users steal Face Value from Purchasers and Recipients. Vanilla knows this, at least in part, because it received hundreds if not thousands of complaints from its customers about depleted funds.

85.    Vanilla also knows that it could substantially decrease the incidence of Face Value theft if it chose to implement additional security protections. Vanilla is not the only gift card company whose gift cards experience fraud. However, based on investigation and belief, Vanilla is unique among its peers in

28

FIRST AMENDED CLASS ACTION COMPLAINT

the incidence of fraud on its Cards. Yet Vanilla has apparently taken no steps to follow industry standards in preventing that fraud and reimbursing consumers who experience fraud.

86.    Vanilla also fails to inform consumers about the prevalence of theft. Vanilla's Physical Card packages contain no disclosure about the prevalence of theft. They contain no disclosure that Physical Cards could be worth less than the Face Value because of theft by Unauthorized Users. They contain no disclosure that Vanilla could increase security measures for Cards but chooses not to implement such measures, leaving Cards particularly vulnerable to fraudulent use.

87.    Vanilla makes only two statements on its packaging that even vaguely refer to the possibility of fraud: (1) "IF TAMPER EVIDENT, DO NOT PURCHASE;" and (2) "For security purposes, please check that the underlined portion of the number matches the number below."

88.    By making only these two statements, Vanilla misleads consumers into believing that (1) as long as there is no evidence of tampering on the packaging, and (2) as long as the underlined portion of the card number matches what is on the packaging, then its Cards are secure from fraud.

89.    That belief, however, is untrue, as set forth above and below. Vanilla omits any mention of the widespread fraud that its Cards experience from Unauthorized Users and fails to disclose that there is a substantial risk that its Cards will have less than their Face Value.

29

90.     Vanilla's website page on which it sells E-Cards contains no mention of Unauthorized Users or theft of E-Card Face Value. Even if a Purchaser sought out information about stolen gift cards in Vanilla's Frequently Asked Questions, those FAQs mention theft only in the context of a physically stolen card and falsely suggests that Vanilla will provide replacement Cards to Purchasers or Recipients for such theft[12]—though only if the individual still has the card number, which seems unlikely in cases in which a physical card is stolen, and impossible in cases in which an E-Card is depleted, as explained below. The website contains no disclosure that Vanilla could increase security measures for Cards but chooses not to implement such measures, leaving Cards particularly vulnerable to fraudulent use. Vanilla has a "Security & Fees" portion of the FAQ section on its website, but none of the listed questions has anything to do with security—let alone Vanilla's failure to implement reasonable security measures.

91.     Perhaps most importantly, Vanilla fails to tell Purchasers and Recipients either on the packaging of Physical Cards or on its website where it sells E-Cards that it will not reimburse them if Unauthorized Users steal all or a portion of Cards' Face Value.

///

///

---

[12] https://balance.vanillagift.com/#/faq (last visited Mar. 29, 2023).

**E.   Vanilla takes affirmative steps to avoid reimbursing Purchasers and Recipients for theft losses.**

92.     As demonstrated by Plaintiffs' experiences and the internet reviews above, Vanilla takes affirmative steps to avoid reimbursing Purchasers and Recipients for theft losses. Vanilla uses long telephone hold times, nonresponsive telephone operators, onerous and lengthy claims processes, and unfulfilled promises of replacement Cards to discourage Purchasers and Recipients from obtaining reimbursement.

93.     After E-Card funds are expended/depleted, Recipients can no longer access their E-Card number on Vanilla's website, making it more difficult for them to seek redress. Even before E-Card Purchasers or Recipients get to customer service, Vanilla takes steps to ensure that they lack the information they need to be able to seek reimbursement: the E-Card number. After an E-Card's Face Value is depleted, the card number is no longer available to the intended user. The card number does not appear in the email that Vanilla sends to an E-Card Purchaser or Recipient, and it is visible only when an E-Card user opens the link to the E-Card that Vanilla sends them via email.

94.     Once the Face Value of an E-Card is depleted, however, clicking the link to an E-Card does nothing; the user is unable to see what the E-Card's number was, and is thus unable to provide the E-Card number to Vanilla's customer service (or anyone else).

FIRST AMENDED CLASS ACTION COMPLAINT

95.     Plaintiff Clark spent 30 hours trying to obtain reimbursement from Vanilla. Plaintiff Stewart spent 50 hours. Most people would have stopped long before that. In short, Vanilla gives Purchasers and Recipients the runaround until they give up.

96.     Vanilla omits these facts because it knows that no reasonable consumer would buy a Card for the Face Value, plus taxes and Vanilla's fees if they knew there was a substantial chance that the Card will contain less purchasing power than the Face Value because Vanilla's products are plagued by theft. Nor would a reasonable consumer buy a Card for the Face Value, plus Vanilla's fee, if they knew that even after Unauthorized Users depleted the Face Value of the Card because of Vanilla's failure to secure that Face Value, Vanilla would intentionally erect barriers to reimbursement.

97.     Furthermore, when Purchasers and Recipients give up on getting a reimbursement from customer service, it is to Vanilla's benefit. While it was Vanilla's failure to implement reasonable security measures that caused Purchaser's and Recipient's losses, Vanilla avoids reimbursing those individuals for those losses, reaping direct monetary benefit.

98.     Adequate disclosures and listing the above-described omitted facts (¶¶ 11–13) on Physical Cards' packaging or on the website selling E-Cards, explaining the true risk that Cards may not have purchasing power equal to the Face Value, would substantially reduce Vanilla's sales or halt them entirely. No

FIRST AMENDED CLASS ACTION COMPLAINT

reasonable Purchaser would purchase Cards if they knew the facts Vanilla omits.

If no Purchasers purchased Cards, no Recipients would receive Cards.

## CLASS ALLEGATIONS

99.     Under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs

bring this action as a class action on behalf of the Classes of persons defined as:

**California Recipient Class:** All California residents who are Recipients of any Vanilla gift Card that, through no action by the Recipient, had less than the Face Value amount of funds when they went to use the Card.

**California Purchaser Class:** All California residents who are Purchasers of a Vanilla gift Card that, through no action by the Purchaser or Recipient, had less than the Face Value amount of funds when either the Purchaser or a Recipient went to use the funds on the Card.

100.   Excluded from the Classes are Vanilla and any entities in which it

has a controlling interest, Vanilla's agents and employees, the Judge to whom this

action is assigned, and any member of the Judge's staff and immediate family.

101.   **Numerosity**. The Classes are so numerous that joinder of all

members is impracticable. Plaintiffs are informed and believe, based on publicly

available information, that there are tens of thousands of Class Members in both

the California Recipient Class and the California Purchaser Class, making joinder

impracticable. Those individuals' identities are available through Vanilla's

records, and Class Members may be notified of the pendency of this action by

recognized, Court-approved notice methods. Moreover, the disposition of the

FIRST AMENDED CLASS ACTION COMPLAINT

claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

102.   **Commonality**. Plaintiffs and the Classes share a number of common questions of law and fact, including—but not limited to—the following:

a.   Whether Vanilla marketed and sold Cards as purporting to contain the Face Value of the Cards while knowing that a substantial portion of their Cards in fact held less than the Face Value;

b.    Whether Vanilla withheld information from Purchasers and Recipients about whether its Cards commonly hold less than their Face Value;

c.   Whether Vanilla failed to take reasonable, industry-standard measures to safeguard its Cards against fraud and/or other security threats;

d.   Whether Vanilla withheld information from Purchasers and Recipients about its failure to take reasonable, industry-standard measures to safeguard its Cards against fraud and/or other security threats;

FIRST AMENDED CLASS ACTION COMPLAINT

e.  Whether Vanilla failed to implement additional security measures for its Cards once it was aware of instances of fraud on those Cards;

f.  Whether Vanilla failed to provide refunds or replacement funds for Cards that had funds wrongfully depleted;

g.  Whether Vanilla failed to provide refunds of fees associated with the purchase of Cards that had funds wrongfully depleted;

h.  Whether Vanilla employed a prohibitive and discouraging process of handling reports of wrongfully depleted funds in an effort to avoid paying refunds or providing replacement funds;

i.  Whether Vanilla withheld information from Purchasers and Recipients about its prohibitive and discouraging process of handling reports of wrongfully depleted funds;

j.  Whether Vanilla is liable for violating the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*;

k.  Whether Vanilla is liable for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

l.  Whether Vanilla was unjustly enriched by the acts and omissions alleged herein;

m. Whether Plaintiffs and the Classes are entitled to punitive

damages; and

n. Whether other, additional relief is appropriate and the nature of

such relief.

103.    **Typicality**. Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' claims, like the claims of the Classes, arise out of the same common course of Vanilla's conduct. Specifically, as a Recipient whose Card contained less than the Face Value, Recipient Plaintiffs assert claims that are typical of each Recipient Class Member whose Card contained less than the Face Value. As a Purchaser of a Card that contained less than the Face Value, Purchaser Plaintiffs assert claims that are typical of each Purchaser Plaintiff who paid fees for a Card with full Face Value that could not be used by the Recipient.

104.    **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

105.   **Predominance Under Fed. R. Civ. P. 23(b)(3)**. Vanilla has engaged in a common course of conduct toward Plaintiffs and the Classes. The common issues arising from this conduct that affect Plaintiffs and the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

106.   **Superiority Under Fed. R. Civ. P. 23(b)(3)**. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Vanilla to comply with applicable law. The interest of individual Class members in individually controlling the prosecution of separate claims against Vanilla is small because the damages in any individual action are small. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

107.   **Appropriateness of Final Injunctive Relief Under Fed. R. Civ. P. 23(b)(2)**. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Vanilla. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class Members and would impair those

interests. Vanilla has acted and/or refused to act on grounds generally applicable to the Classes, making final injunctive relief or corresponding declaratory relief appropriate.

108.   Injunctive relief is particularly necessary in this case because: (1) Plaintiffs and the Classes want to use the Face Value of their Cards; (2) Plaintiffs and putative Class Members may purchase or receive Cards in the future; (3) Vanilla has not cured the security defect that is leading to Cards holding less than their Face Value; and (4) Plaintiffs and the Classes do not have the ability to determine whether Vanilla intends to (a) remedy the security defect(s), or (b) continue to conceal material information about whether the Cards hold their full Face Value. Indeed, Plaintiffs and putative Class Members expect that without injunctive relief, Vanilla will continue to sell Cards that will have less than Face Value when Recipients use, or try to use, them and will continue to conceal that fact.

## CLAIMS FOR RELIEF

**First Claim for Relief**
**Violations of the Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750,** *et seq.*
*(On Behalf of Plaintiffs Clark, Stewart, and Thompson and the California Purchaser Class)*

109.   Plaintiffs individually and on behalf of the Class reallege and incorporate by reference each and every allegation set forth above.

FIRST AMENDED CLASS ACTION COMPLAINT

110.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), is a comprehensive statutory scheme liberally construed and applied to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

111.   Vanilla Cards constitute "goods" as defined in California Civil Code §§ 1761(a)–(b).

112.   Plaintiffs and the putative California Purchaser Class Members are "consumers" as defined in California Civil Code § 1761(d), and they and Vanilla have engaged in a "transaction" as defined in California Civil Code § 1761(e).

113.   Plaintiffs, Purchaser Class Members, and Vanilla are each a "person" as defined in California Civil Code § 1761(c).

114.   As alleged herein, Vanilla made numerous omissions concerning the security of its Cards and concerning the Face Value of its Cards, its security practices, and its reimbursement practices, while collecting fees from Purchasers to issue, facilitate, and process the Cards, including the use of funds on the Cards.

115.   Vanilla engaged in unfair or deceptive acts or practices in violation of Civil Code § 1770. Specifically, Vanilla's acts, practices, and omissions were intended to, and did result in, the sale of goods in violation of Civil Code § 1770. Vanilla violated the CLRA by:

a. Representing that its goods and services have characteristics, uses, benefits, or quantities that they do not have; and

b. Representing that its goods and services are of a particular standard, quality, or grade when they were not.

116.   As alleged herein, Vanilla distributed, marketed, and advertised its goods as "gift cards" holding the worth of their Face Value while deliberately concealing material facts about, and central to the function of, those goods and services. Vanilla's omissions were material because they were likely to deceive reasonable consumers into believing they were purchasing Cards that would have purchasing power equal to the Face Value when first used by the intended Recipient. Plaintiffs and putative Purchaser Class Members had no way of unraveling Vanilla's deception on their own, and they could not have known the truth about whether Vanilla's Cards were likely to retain their Face Value after purchase. Had Vanilla disclosed that its Cards were particularly vulnerable to fraud because of Vanilla's inadequate security measures such that they were likely to hold less than their Face Value, and that Vanilla would not reimburse for theft loss of Face Value, Plaintiffs and Purchaser Class Members would not have purchased them.

117.   Vanilla owed Plaintiffs and Purchaser Class Members a duty to disclose the truth about the value of the Cards because Vanilla: (1) possessed exclusive knowledge of those matters, (2) was engaging in purchase transactions

FIRST AMENDED CLASS ACTION COMPLAINT

with Plaintiffs and Purchaser Class Members as "consumers" of the Cards, and

(3) intentionally concealed the foregoing from Plaintiffs and Purchaser Class

Members.

118.    As a direct and proximate cause of Vanilla's violations of the CLRA,

Plaintiffs and the Purchaser Class have suffered injury-in-fact and actual damages

resulting from Vanilla's material omissions. Plaintiffs and Purchaser Class

Members would not have purchased Vanilla Cards had Vanilla disclosed that the

funds were likely to be depleted by fraudulent use and theft. Vanilla knew the

Cards were insecure because of Vanilla's inadequate security measures, and

Vanilla did not inform consumers that Card funds would be improperly depleted,

leaving consumers to fend for themselves in discovering the problem and

attempting to remedy these issues.

119.    The facts Vanilla omitted and concealed from Plaintiffs and

Purchaser Class Members are material because a reasonable consumer would

have considered them important in deciding whether to purchase a Vanilla gift

Card and/or deciding how much to purchase in Face Value amount(s), which

determines the fee amount collected by Vanilla.

120.    Plaintiffs sent a demand letter to Vanilla via certified mail pursuant

to the requirements of the CLRA, providing the notice required by Cal. Civ. Code

§ 1782(a). Vanilla has not corrected or otherwise rectified the harm alleged by

Plaintiffs in their letter or the initial Complaint within the statutorily required

thirty-day period. Therefore, Plaintiffs seek monetary damages against Vanilla pursuant to California Civil Code §§ 1781 and 1782.

121.   Plaintiffs also seek an order awarding costs and attorney fees pursuant to California Civil Code § 1780(e).

**Second Claim for Relief**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Unlawful Business Practices**
*(On Behalf of Plaintiffs Clark, Stewart, and Thompson and the Purchaser Class)*

122.   Plaintiffs individually and on behalf of the Purchaser Class reallege and incorporate by reference each and every allegation set forth above.

123.   Plaintiffs, Purchaser Class Members, and Vanilla are each a "person" under Cal. Bus. & Prof. Code § 17201.

124.   California Business and Professions Code §§ 17201, *et seq.* prohibits acts of unfair competition, which includes unlawful business practices.

125.   Vanilla engaged in unlawful acts and practices with respect to its payment card services by establishing and maintaining sub-standard security practices and procedures for protecting the Face Value of its Cards; by representing that its goods and services have characteristics, uses, benefits, or quantities that they do not have in violation of Civil Code § 1770; and by representing that its goods and services are of a particular standard, quality, or grade when they were not, which violates California Civil Code § 1770.

126.    Vanilla's unlawful acts and practices include violations of California Civil Code Sections 1770(a)(5) and (a)(7).

127.    Based on information and belief, Vanilla did process and continues to process purchases of its Cards with purchasing fees, did issue and continues to issue Physical Cards or electronic E-Cards after purchase, and did process and continues to process spending transactions for funds loaded on its Cards using electronic and computer systems. Vanilla also did maintain and continues to maintain electronic systems that store information about the Face Value of Cards and available funds. Thus, Vanilla knew or should have known that it did not employ reasonable, industry-standard, and appropriate security measures that would have kept the Face Value of the Cards secure and prevented the loss or misuse of the Cards' funds. Vanilla did not disclose to Plaintiffs and Purchaser Class Members that its processing and data systems were insecure and contained a security flaw that allowed Unauthorized Users to steal Face Value. Thus, Vanilla represented that its goods and services have characteristics, uses, benefits, or quantities that they do not have and represented that its goods and services are of a particular standard, quality, or grade when they were not, which violates California Civil Code Section 1770.

128.    Plaintiffs and Purchaser Class Members were reasonable to assume, and did assume, that Vanilla would take appropriate measures to keep the Face Value of Cards secure and safe. Vanilla was in sole possession of and had a duty

FIRST AMENDED CLASS ACTION COMPLAINT

to disclose the material information that the Face Value of Cards was vulnerable to fraudulent use and theft because Vanilla's security measures were inadequate and below industry standards. Vanilla did not disclose at any time that the Face Value of Cards was left particularly vulnerable to fraudulent use and theft.

129.   Vanilla knew or should have known that its computer systems and data security practices were inadequate to safeguard the Face Value of their Cards and that the risk of theft was, therefore, high. Vanilla's actions in engaging in the herein-described unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the California Purchaser Class.

130.   Because Vanilla is in the business of issuing payment gift cards as methods of payment after storing purchased funds, the Purchaser Plaintiffs and Class Members relied on Vanilla to advise the public if its processing and data systems were not secure and that Card funds could thereby be compromised.

131.   When purchasing Vanilla's Cards, Plaintiffs and Purchaser Class Members relied upon Vanilla's direct and indirect representations regarding its data security, including its failure to alert consumers that its Cards were not secure and, thus, were vulnerable to improper use of funds by persons other than the Recipients.

132.   Had Vanilla disclosed that its systems were insecure and, thus, vulnerable to fraudulent use and theft, Plaintiffs and Purchaser Class Members

1   would not have purchased Vanilla's Cards.

2       133.   As a direct result of their reliance on Vanilla to be truthful and

3   forthcoming about the vulnerability of its data systems and the characteristics of

4   the Cards it sold, Plaintiffs and Purchaser Class Members purchased Vanilla

5   Cards that did not retain their Face Value, causing Plaintiffs and Purchaser Class

6   Members to suffer damages.

7       134.   As a direct and proximate cause of Vanilla's unfair and unlawful

8   methods and practices of competition, Plaintiffs and Purchaser Class Members

9   suffered actual damages including, but not limited to: damages arising from the

10  unauthorized charges on their Cards if they are Recipients of Cards they

11  purchased; damages arising from their inability to use their Cards because the

12  funds were depleted through fraudulent use if they are Recipients of Cards they

13  purchased; damages from lost time and effort to mitigate the actual and potential

14  impact of the improperly depleted funds by contacting, or trying to contact,

15  Vanilla to remedy the issue(s); and fees Purchaser Class Members paid for Cards

16  that did not have the characteristics, uses, benefits, or quantities that Vanilla

17  represented they would have.

18      135.   As a proximate result of their unlawful practices, Vanilla has been

19  unjustly enriched and should be required to make restitution to Plaintiffs and

20  Purchaser Class Members pursuant to §§ 17203 and 17204 of the California

21  Business & Professions Code, disgorgement of all profits accruing to Vanilla

FIRST AMENDED CLASS ACTION COMPLAINT

1    because of its unfair business practices, declaratory relief, attorney's fees and

2    costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable

3    relief.

**Third Claim for Relief**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Unfair Business Practices**
*(On Behalf of Plaintiffs Clark, Stewart, and Thompson and the Purchaser Class)*

7        136.   Plaintiffs individually and on behalf of the Purchaser Class reallege

8    and incorporate by reference each and every allegation set forth above.

9        137.   Vanilla engaged in unfair business practices by marketing Cards as

10   "gift cards" holding the worth of their Face Value while knowing that Cards are

11   not likely to retain the Face Value when used by Recipients; by failing to secure

12   the Face Value of the Cards and using sub-standard security practices and

13   procedures; by soliciting and collecting monies, including fees, from Plaintiffs

14   and Purchaser Class Members with knowledge that the Face Value of the Cards

15   would not be adequately protected; and by intentionally erecting barriers through

16   difficult and time-consuming customer service processes to prevent consumers

17   from recouping the Face Value of Cards.

18       138.   Plaintiffs and Purchaser Class Members were entitled to assume, and

19   did assume, that Vanilla would take appropriate measures to keep the Face Value

20   of Cards secure and safe. Vanilla was in sole possession of and had a duty to

21   disclose the material information that the Face Value of Cards was particularly

FIRST AMENDED CLASS ACTION COMPLAINT

vulnerable to fraudulent use and theft because Vanilla's security measures were inadequate and flawed. Vanilla did not disclose at any time that the Face Value of Cards was particularly vulnerable to fraudulent use and theft.

139.   The unfair acts and practices described above were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Purchaser Class Members. These unfair acts and practices were also likely to deceive the public into believing they were purchasing Cards carrying the purchase power of their Face Value when they were not. The harm these practices caused to Plaintiffs and the Purchaser Class outweighed their utility, if any.

140.   Vanilla knows or should know that its computer systems and data security practices are and were flawed and inadequate to safeguard the Face Value of the Cards and that the risk of theft was high. Vanilla's actions in engaging in the above-described unfair practices and acts were, therefore, negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Purchaser Class.

141.   Had Vanilla disclosed to Plaintiffs and Purchaser Class Members that its systems were not secure and, thus, vulnerable to fraudulent use and theft, Plaintiffs and Purchaser Class Members would not have purchased and/or used Vanilla's Cards.

FIRST AMENDED CLASS ACTION COMPLAINT

142.   As a direct and proximate result of Vanilla's unfair practices and acts, Plaintiffs and Purchaser Class Members were injured and lost money or property, including but not limited to the fees received by Vanilla for its products and services, the loss of their legally-protected interest in the Face Value of the Cards, and additional losses described herein.

143.   Plaintiffs and Purchaser Class Members seek relief under California Business and Professions Code Section 17200, *et. seq.*, including, but not limited to, restitution to Plaintiffs and the Purchaser Class Members of money that Vanilla acquired by means of its unfair business practices, disgorgement of all profits accruing to Vanilla because of its unfair business practices, declaratory relief, attorney fees and costs (pursuant to California Code of Civil Procedure Section 1021.5), and injunctive or other equitable relief.

**Fourth Claim for Relief**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Unfair Business Practices**
*(On Behalf of Plaintiffs Cooper and Manier and the Recipient Class)*

144.   Plaintiffs individually and on behalf of the Recipient Class reallege and incorporate by reference each and every allegation set forth above.

145.   Vanilla engaged in unfair business practices by knowingly marketing Cards as "gift cards" holding the worth of their Face Value, all while knowing that Cards are not likely to retain the Face Value when used by Recipients; by failing to secure the Face Value of the Cards through sub-standard security

48

FIRST AMENDED CLASS ACTION COMPLAINT

practices and procedures; and by intentionally erecting barriers through difficult and time-consuming customer service processes to prevent Recipients from recouping the Face Value of Cards.

146.   The unfair acts and practices described above were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Recipient Class Members. These unfair acts and practices were also likely to deceive the public into believing they were receiving Cards carrying the purchase power of their Face Value when they were not. The harm these practices caused to Plaintiffs and Recipient Class Members outweighed their utility, if any.

147.   Vanilla knows or should know that its computer systems and data security practices are and were inadequate to safeguard the Face Value of the Cards and that the risk of theft was high because those security practices are flawed. Vanilla's actions in engaging in the above-described unfair practices and acts were, therefore, negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Recipient Class.

148.   As a direct and proximate result of Vanilla's unfair practices and acts, Plaintiffs and Recipient Class Members tried to make purchases using the Cards only to find that the Cards did not retain their Face Value, causing them to suffer damages. As a direct and proximate result of Vanilla's unfair practices and acts, Plaintiffs and Recipient Class Members were injured and lost money or

1  property, including but not limited to the loss of their legally-protected interest in

2  the Face Value of the Cards; damages arising from their inability to use their

3  Cards because the funds were depleted through fraudulent use, including being

4  responsible to pay for items and/or services when a Card is declined due to

5  insufficient Face Value funds or having to forego purchases when a Card is

6  declined; damages from lost time and effort to mitigate the actual and potential

7  impact of the improperly depleted funds by contacting, or trying to contact,

8  Vanilla to remedy the issue(s) and recoup the Face Value of the Cards; and

9  additional losses described above.

10       149.   The Plaintiffs and Recipient Class Members seek relief under

11  California Business and Professions Code Section 17200, *et. seq.*, including, but

12  not limited to, restitution to the Plaintiffs and Recipient Class Members of money

13  or property that Vanilla acquired by means of its unfair business practices,

14  disgorgement of all profits accruing to Vanilla because of its unfair business

15  practices, declaratory relief, attorney fees and costs (pursuant to California Code

16  of Civil Procedure Section 1021.5), and injunctive or other equitable relief.

17
                        **Fifth Claim for Relief**
18                       **Unjust Enrichment**
      *(On Behalf of Plaintiffs Clark, Stewart, and Thompson and the Purchaser Class)*
19

20       150.   Plaintiffs individually and on behalf of the Purchaser Class reallege

21  and incorporate by reference each and every allegation set forth above.

FIRST AMENDED CLASS ACTION COMPLAINT

1    151.   Vanilla receives the benefit of processing fees that it collects in

2    conjunction with the purchase of Cards online and at retail stores.

3    152.   Vanilla directly, or indirectly, operates a scheme to deceive the

4    public to collect fees for its own business purposes. Vanilla knowingly and

5    intentionally engages in these deceptive practices.

6    153.   Vanilla operated a fraud on the public, acting to hide that its Cards

7    would not retain their Face Value because of its inadequate data security

8    practices and that Vanilla would not reimburse for theft loss.

9    154.   Plaintiffs and Purchaser Class Members suffered ascertainable loss

10    and actual damages as a direct and proximate result of Vanilla's concealment

11    and failure to disclose material information.

12    155.   Vanilla has knowledge of said benefits received at Plaintiffs' and

13    Purchaser Class Members' expense.

14    156.   As a direct and proximate result of Vanilla's unjust enrichment,

15    Plaintiffs and Purchaser Class Members are entitled to restitution, restitutionary

16    disgorgement, and damages, in an amount to be proven at trial.

17    ///

18    ///

19    ///

20    ///

21    ///

FIRST AMENDED CLASS ACTION COMPLAINT

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiffs, on behalf of themselves and the Classes,

3   respectfully request that the Court enter judgment in their favor that:

4      A.      Certifies the Classes requested, appoints the Plaintiffs as Class

5   Representatives, and appoints their Counsel as Class Counsel;

6      B.      Awards the Plaintiffs and Class Members appropriate monetary

7   relief, including actual and statutory damages, restitution, and disgorgement;

8      C.      Enters an injunction against Vanilla's deceptive trade practices,

9   requiring that Vanilla implement and maintain adequate security measures to

10  protect the Face Value of Cards from Unauthorized Users;

11     D.      Awards Plaintiffs and the Classes pre- and post-judgment interest,

12  reasonable attorney fees, costs, and expenses as allowable by law; and

13     E.      Awards such other and further relief as this Court may deem just

14  and proper.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

FIRST AMENDED CLASS ACTION COMPLAINT

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 7th day of April, 2023.

Respectfully submitted,

**LIPPSMITH LLP**

By:  */s/ Graham B. LippSmith*
  GRAHAM B. LIPPSMITH
  MARYBETH LIPPSMITH
  JACLYN L. ANDERSON

**TOUSLEY BRAIN STEPHENS PLLC**

By:  */s/ Jason T. Dennett*
  JASON T. DENNETT, WSBA #30686
  *Pro Hac Vice*
  KALEIGH N. BOYD, WSBA #52684,
  *Pro Hac Vice*

Attorneys for Plaintiffs and the Putative Classes

## CERTIFICATION

Pursuant to Local Rule 5-4.3.4, I hereby attest that concurrence of the filing of the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** has been obtained.

*/s/ Graham B. LippSmith*
Graham B. LippSmith

FIRST AMENDED CLASS ACTION COMPLAINT