Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al., | Case No.: 5:22-CV-01839-JGB-SHK |
| Plaintiffs, | **DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| INCOMM FINANCIAL SERVICES, INC., | |
| Defendant. | Hon. Jesus G. Bernal |
| | Date:  June 5, 2023 |
| | Time:  9:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on June 5, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California, 92501, before the Honorable Jesus G. Bernal, Defendant InComm Financial Services, Inc. will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing with prejudice Plaintiffs' Amended Complaint.

Plaintiffs have not cured the defects the Court previously identified in their claims under the California Consumers Legal Remedies Act ("CLRA") and "unlawful business practices" prong of the Unfair Competition Law ("UCL"). Plaintiffs have still not plausibly alleged that a concealed security defect caused depletion of their Vanilla® Gift Card balances, or even that the cards have a security defect at all.  They have provided virtually no factual support for their vague claims about shortcomings in InComm's customer service.  They have not alleged that they relied to their detriment on any omission of information InComm was required to disclose, as is required for standing under the CLRA and UCL.  Plaintiffs' UCL "unfair business practices" claims likewise fail, because they are duplicative of Plaintiffs' "unlawful business practices" claims, and because Plaintiffs have not alleged that InComm violated any legislative policy.

Plaintiffs' unjust enrichment claim also fails because Plaintiffs have not pleaded with particularity that InComm concealed "inadequate data security practices" or that it "would not reimburse for theft loss[es]."  Finally, Plaintiffs lack standing to seek injunctive relief because they have not alleged any future intent to purchase Vanilla Cards.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Jane Metcalf and exhibits thereto, the pleadings and records on file, and such other matters as the Court deems necessary and proper to adjudicate this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 21, 2023.

Dated: April 28, 2023                    By: */s/ William A. Delgado*

William A. Delgado (SBN 222666)
 wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
 jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
 dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
 pvogel@pbwt.com
Basil Williams (*pro hac vice*)
 bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................iii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

    A.    Plaintiffs' Initial Complaint and InComm's Initial Motion to Dismiss ........................................................................................................ 2

    B.    The Court's Dismissal of the Initial Complaint ................................... 4

    C.    Plaintiffs' Amended Complaint .............................................................. 5

        1.    Plaintiffs' Failure to Allege that InComm Concealed a "Security Defect" .......................................................................... 6

        2.    Plaintiffs' Failure to Identify Any Other "Omitted" Information ...................................................................................... 8

        3.    Plaintiffs' Failure to Allege Reliance or Injury ...................... 10

ARGUMENT ............................................................................................................. 10

I.    Plaintiffs Have Not Stated a Claim Under the CLRA or UCL "Unlawful Business Practices" Prong .......................................................... 11

    A.    Plaintiffs Have Not Plausibly Alleged that a Security Defect Caused the Depletion of Their Balances .............................................. 12

        1.    Plaintiffs Have Not Plausibly Alleged That Their Cards Were Depleted by Fraud .......................................................... 12

        2.    Plaintiffs Have Not Alleged That the Vanilla Cards Had a Concealed Security Flaw or Vulnerability ............................... 13

        3.    Plaintiffs Have Not Linked Their Card Depletions to Any Alleged Security Defect ............................................................ 16

    B.    Allegations About Inadequate Customer Service Also Fail .............. 17

    C.    Plaintiffs Have Not Alleged That They Relied to Their Detriment on Any "Omission" of Information .................................... 19

    D.    Plaintiffs Have Not Alleged InComm's Duty to Disclose ................. 21

1.    Plaintiffs Have Not Alleged a Safety Hazard or "Central" Defect ......................................................................................22

2.    Plaintiffs Have Not Alleged a *LiMandri* Factor .......................22

II.    Plaintiffs' UCL "Unfair Business Practices" Claims Fail ............................23

III.    Plaintiffs' Unjust Enrichment Claim Fails .....................................................24

IV.    Plaintiffs Lack Standing to Seek Injunctive Relief .......................................25

CONCLUSION ..........................................................................................................25

DEF. INCOMM'S MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2

3

**Cases**                                                                          **Page(s)**

4

*Ajzenman v. Off. of Comm'r of Baseball*,

5

   492 F. Supp. 3d 1067 (C.D. Cal. 2020)................................................................. 23

6

*Armstrong v. Allied Ins. Co.*,

7

   2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) ................................................... 14

8

*Ashcroft v. Iqbal*,

9

   556 U.S. 662 (2009) ..................................................................................... 11, 15

10

*Barrett v. Apple Inc.*,

   2022 WL 2119131 (N.D. Cal. June 13, 2022) ..................................................... 22

11

*Browning v. Am. Honda Motor Co.*,

12

   549 F. Supp. 3d 996 (N.D. Cal. 2021) ................................................................. 13

13

*Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*,

14

   20 Cal. 4th 163 (Cal. 1999) ................................................................................. 23

15

*City of Los Angeles v. Lyons*,

16

   461 U.S. 95 (1983) ............................................................................................... 24

17

*Clark v. Hershey Co.*,

18

   2019 WL 6050763 (N.D. Cal. Nov. 15, 2019)..................................................... 18

19

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,

20

   2021 WL 3878654 (9th Cir. Aug. 31, 2021)........................................................ 25

21

*Colucci v. ZonePerfect Nutrition Co.*,

   2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ..................................................... 21

22

23

*Davidson v. Kimberly-Clark Corp.*,

   889 F.3d 956 (9th Cir. 2018)................................................................................ 25

24

*Durell v. Sharp Healthcare*,

25

   183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) ..................................................... 23

26

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,

27

   751 F.3d 990 (9th Cir. 2014) ............................................................................... 13

28

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal. 2021) ............................................................. 23

*In re Ethereummax Inv. Litig.*,
  2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) ................................. 20

*Feins v. Goldwater Bank NA*,
  2022 WL 17552440 (D. Ariz. Dec. 9, 2022)..................................................... 15

*Gregory v. Albertson's, Inc.*,
  104 Cal. App. 4th 845 (Cal. Ct. App. 2002) ..................................................... 23

*Griffey v. Magellan Health Inc.*,
  562 F. Supp. 3d 34 (D. Ariz. 2021) ................................................................... 15

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................. 12, 21, 23

*Joseph v. Costco Wholesale Corp.*,
  2016 WL 759559 (C.D. Cal. Feb. 24, 2016)..................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................. 16

*Paracor Fin. Inv., Inc. v. GE Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................. 24

*Ramin M. Roohipour, M.D., Inc. v. Blue Cross Blue Shield of Ill.*,
  2021 WL 5104383 (C.D. Cal. Oct. 21, 2021) ................................................... 23

*Reed v. NBTY, Inc.*,
  2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) ................................................ 19

*Rubke v. Capitol Bancorp, Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ........................................................................... 11

*Saavedra v. Everi Payments, Inc.*,
  2022 WL 17886025 (C.D. Cal. Apr. 11, 2022).................................................. 23

*Schertzer v. Samsonite Co. Stores, LLC*,
  2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ................................................... 25

*Simon v. SeaWorld Parks & Ent., Inc.*,
  2022 WL 1594338 (S.D. Cal. May 19, 2022) .............................................. 20, 21

DEF. INCOMM'S MOTION TO DISMISS

*Sotelo v. Rawlings Sporting Goods Co.*,
   2019 WL 4392528 (C.D. Cal. May 8, 2019) .......................................................... 13

*Stewart v. Electrolux Home Prods., Inc.*,
   2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ..................................................... 20

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................................ 16

**Statutes**

Cal. Bus. & Prof. Code § 17204 ................................................................................ 11

Cal. Bus. & Prof. Code § 17535 ................................................................................ 11

Cal. Civ. Code § 1780(a) ........................................................................................... 11

Defendant InComm Financial Services, Inc. (together with its affiliates, "InComm") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint, like their original one, contends that InComm misleadingly omitted information from some communication, regarding some inadequate security feature of its Vanilla® Visa Prepaid Gift Cards, which led in some way to the depletion of Plaintiffs' own Vanilla Card balances. Yet once again, Plaintiffs offer almost no information beyond that. Their Amended Complaint suffers from the same deficiencies as their first one, and should be dismissed for the same reasons.

In dismissing the initial Complaint, the Court emphasized that Plaintiffs had not "alleged that anything [InComm] did or failed to do" caused their cards to be depleted by third-party fraudsters. These crucial facts are also absent from Plaintiffs' Amended Complaint. Though Plaintiffs' foundational contention is that InComm uses "inadequate security measures," they name just one specific "inadequacy": that InComm neglects to employ CAPTCHA at vanillagift.com, the website where Vanilla cardholders can check their balances. But Plaintiffs do not offer any basis for suspecting that InComm has failed to implement CAPTCHA on the website in question, and indeed, a visit to the site reveals that Plaintiffs are wrong. That Plaintiffs are still making ill-informed guesses about basic elements of their claim, after seven months and two pleadings, reveals their Amended Complaint to be not only deficient but a waste of the Court's time.

Plaintiffs' other attempts to supplement their claims fare no better. Plaintiffs recite several commonly-reported mechanisms of card fraud, and speculate that each of these is a "possible explanation" for occurrences of fraud on the Vanilla Cards. But Plaintiffs' open indulgence in speculation only confirms that they have no *facts* to plead. What is more, these allegations undermine, rather than support, Plaintiffs'

assertion that the Vanilla Cards lacked "reasonable" or "industry standard" security measures. Plaintiffs' account of these common fraud mechanisms demonstrates that fraud is a pervasive and ever-evolving threat affecting all payment cards, irrespective of their security features. Accordingly, although Plaintiffs' claims are premised entirely on the assertion that something is wrong with the Vanilla Cards' security, they have failed to say what that something is.

The Amended Complaint also repeats other fatal deficiencies of Plaintiffs' initial Complaint. As the Court held, their initial Complaint failed to "specify what misrepresentations [InComm] made, why they were misleading, [or] whether Plaintiffs relied on them." None of those facts is in the Amended Complaint, either. Plaintiffs have even persisted in their refusal to provide any information about their own Vanilla Cards or the unauthorized charges supposedly made on them. Thus, they have alleged neither that InComm's security was lacking nor that they suffered card fraud themselves—much less articulated a causal link between the two.

After two attempts, Plaintiffs' pleading is still utterly deficient. Enough is enough. The Amended Complaint should be dismissed with prejudice and without leave to amend.

## BACKGROUND

### A.    Plaintiffs' Initial Complaint and InComm's Initial Motion to Dismiss

In Plaintiffs' initial Complaint, filed on October 18, 2022, they alleged that InComm had deliberately deceived them and other consumers by marketing Vanilla Gift Cards as though the cards' balances would be available for spending, when in fact the balances were vulnerable to depletion by fraudsters. *See* Initial Complaint ("Compl.") ¶¶ 1-4, Dkt. No. 1. Plaintiffs insinuated that their own Vanilla Card balances had been so depleted, though they provided no information identifying the cards or supporting their suspicions of fraud. *Id.* ¶¶ 5-11. Plaintiffs also did not

allege that they had ever read or relied upon any misleading communication from InComm.

Among the Plaintiffs were three California consumers who claimed to have purchased one or more Vanilla Cards (the "Purchasers"), and two who claimed to have received one or more cards as gifts (the "Recipients").  *Id.*[1]  Plaintiffs alleged that after finding their card balances depleted, they invested hours upon hours in futile attempts to obtain reimbursement from InComm.  *Id.*  But they provided no facts about the content, timing, or manner of those communications.

On the basis of these vague contentions, Plaintiffs asserted claims under the California Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"), as well as claims for breach of implied contract and unjust enrichment. The same day that they filed their initial Complaint, Plaintiffs sent InComm a purported CLRA notice letter, which contained no more information than their threadbare pleading.  Metcalf Decl., Ex. A.

In December 2022, InComm filed a motion to dismiss, which catalogued the initial Complaint's many deficiencies.  *See* Motion to Dismiss, Dkt. No. 23 ("MTD").  In Plaintiffs' opposition to that motion, they retreated from their more ambitious theories, such as their contention that InComm had deliberately misrepresented the Vanilla Cards.  *See* Opp'n to MTD ("Opp'n") at 6-9, Dkt. No. 36.  Instead, they explained, InComm had "omitted" information about the cards, whether deliberately or "negligent[ly]."  *Id.* at 1, 8.  Plaintiffs also maintained that they had not expected "fraud-proof" cards, but merely "industry-standard" security. *Id.* at 7, 9.  They asserted that their Vanilla Cards had fallen short of that standard, though they did not say in what way.  And although they acknowledged that their

---

[1] As set forth in more detail in InComm's original motion, the Vanilla Cards are designed to be easily transferred as gifts.  Accordingly, individual cards are not linked to specific "authorized users" or accounts.   *See* Motion to Dismiss at 2-5, Dkt. No. 23.

DEF. INCOMM'S MOTION TO DISMISS

Vanilla Cards were governed by express contracts (the "Cardholder Agreements") whose precise terms vary depending on card number and purchase date, Plaintiffs refused to specify which agreement(s) applied to their own cards, or to supply details enabling InComm to do so. *Id.* at 21-22.

## B. The Court's Dismissal of the Initial Complaint

On March 16, 2023, this Court granted InComm's motion to dismiss. *See* Order Granting MTD, Dkt. No. 41 ("Order"). The Court held that Plaintiffs' statutory claims and unjust enrichment claim failed because they had not "specif[ied] what representations Defendant made, why they were misleading, whether Plaintiffs relied on them, or where the omitted information should have been disclosed." Order at 6-7. The Court also held that Plaintiffs' statutory claims failed "for the independent reason that they d[id] not allege causation," because they did not "specifically attribute" their cards' depletion to "anything [InComm] did or failed to do." *Id.* at 7. Because this failure defeated all five Plaintiffs' claims to statutory standing, the Court did not reach InComm's separate arguments that without having purchased the cards, the Recipients could not claim Article III standing or that they "lost money or property" for purposes of the UCL. *See id.* at 7 n.5.

The Court went on to hold that Plaintiffs' claim for breach of implied contract failed because, among other reasons, the express written Cardholder Agreements potentially precluded such a claim by covering the same subject matter as the alleged implied contract. *Id.* at 8. The Court instructed that Plaintiffs "are well advised to explain what the Cardholder Agreement covers"—which would require them, in the first instance, to specify which Cardholder Agreement(s) applied to their cards. *Id.* The Court dismissed the entire complaint, but afforded Plaintiffs the opportunity to amend. *Id.* at 9.

On March 30, 2023, shortly after the Court issued its decision, InComm advised Plaintiffs that their October 18 letter had not provided sufficient notice of their claims under the CLRA. Metcalf Decl., Ex. B. In the letter, InComm also

renewed its request for identifying information about Plaintiffs' cards, which it had previously made in its motion to dismiss.  InComm emphasized that the Plaintiffs' failure to provide information about their cards had, among other things, precluded InComm from attempting to investigate or redress their concerns.  *Id.*  InComm also noted that, based on the limited information Plaintiffs provided, InComm had been unable to locate any record of any Plaintiff's contacts with its customer service team.  *Id.*

### C.    Plaintiffs' Amended Complaint

On April 7, 2023, Plaintiffs filed their Amended Complaint.  *See* Am. Compl., Dkt. No. 44 ("AC").  Once again, they have provided no facts about which Vanilla Cards they had or what unauthorized charges they believe were made.  They do not even specify which Cardholder Agreement(s) governed their cards, as this Court urged them to do in support of their implied contract claim.  Rather than provide a single shred of information about their Vanilla Cards, Plaintiffs have elected to drop their claim for breach of implied contract altogether.

Otherwise, however, their Amended Complaint contains substantially similar claims to their first one, all premised on InComm's supposedly deficient security practices.  The Purchaser Plaintiffs allege that InComm violated the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), by misleadingly concealing information about "its security practices[] and its reimbursement practices."  Count One, AC ¶¶ 109-21. Using these purported CLRA violations as a predicate "unlawful" act, the Purchaser Plaintiffs also assert a claim under the "unlawful" prong of the UCL, Cal. Bus. & Prof. Code § 17201.  Count Two, AC ¶ 126.  Both the Purchaser Plaintiffs and the Recipients seek relief under the "unfair" prong of the UCL, which InComm purportedly violated by marketing the cards "as gift cards" despite "knowledge" of its own "sub-standard security practices and procedures."  Count Three, AC ¶ 137; Count Four, AC ¶¶ 144-49.  Finally, the Purchaser Plaintiffs assert a claim for unjust

enrichment, based on InComm's purported "fraud" regarding "its inadequate data security practices." Count Five, AC ¶¶ 150-56.

Plaintiffs have not, however, heeded the Court's clear guidance regarding the facts needed to support these claims. None of their new allegations is sufficient to identify a security defect, "specifically attribute" their purported injuries to such a defect, or even establish that they suffered any injury to begin with.

### 1. Plaintiffs' Failure to Allege that InComm Concealed a "Security Defect"

Plaintiffs' central contention continues to be that InComm concealed unflattering information about the Vanilla Cards' security—namely, the fact that "Unauthorized Users exploit a specific flaw in Vanilla's online security measures" to deplete cardholder balances. *Id.* ¶ 12. Yet they still offer no information about what "specific flaw" InComm allegedly concealed. They list several commonly-known avenues of illicit access to payment card numbers, each of which they posit as a "possible explanation" for the fraud that afflicts Vanilla Cards. *Id.* ¶¶ 51-59. According to Plaintiffs, the "simplest explanation" is that "Vanilla insiders," such as InComm employees, have used their position to gain access to card numbers and information. *Id.* ¶ 51. Then again, another "possible explanation" is that "cybercriminals" have illegally accessed InComm's "electronic databases" of card numbers. *Id.* ¶ 53. And still another is that fraudsters have "deciphered" InComm's algorithm for generating card numbers. *Id.* ¶ 58. Plaintiffs concede that they do not know which of these scenarios, if any, occurred with the Vanilla Cards. *See id.* ¶ 61. But they are confident that whatever happened, "Vanilla [was] responsible" for failing to maintain adequate security. *Id.* ¶¶ 47-48.

In fact, nothing in Plaintiffs' menu of "possible explanations" suggests that InComm's security was deficient. Any of these "possible" modes of infiltration could affect any payment card, from any company. Plaintiffs allege no facts to suggest that the Vanilla Cards are uniquely vulnerable to these modes of attack, *e.g.*,

that InComm inadequately vets its employees or fails to protect its computer systems.  On the contrary, Plaintiffs acknowledge that no company is immune, by relying on a public report of a gift card cyberattack affecting 3,000 "*top companies across various industries*."  *See id.* ¶ 55 (emphasis added); Metcalf Decl., Ex. E.  Notably, the article mentions several affected brands, but InComm/Vanilla is not among them.  Thus, Plaintiffs' allegations only reinforce that the risk of fraud exists across products and companies, and is not indicative of "substandard" security practices.

In addition to their speculation about common industry-wide "explanations" for gift card fraud, Plaintiffs name one "specific flaw" that they claim is unique to InComm: a failure to implement CAPTCHA.  Plaintiffs' contentions on this point are not only speculative, but demonstrably wrong, as shown by the Amended Complaint's incorporated materials.  Plaintiffs explain that, once a criminal has accessed Vanilla Card numbers in one way or another, he must then keep track of when each card is activated and its cash balance becomes available.  *Id.* ¶ 63.  According to Plaintiffs, this requires the fraudster to "use a computer program to constantly monitor" card balances on vanillagift.com.  *Id.* ¶ 69.  Once a card's balance becomes available, the fraudster "quickly" redeems or sells it.  *Id.*

Plaintiffs contend that InComm could "prevent" this entire process simply by implementing CAPTCHA, which uses "visual puzzle[s]" to weed out malicious computer programs, on vanillagift.com.  *Id.* ¶¶ 74-75.  Plaintiffs allege that InComm knows all about this easy fix, and even uses it on its Australian website, but has refused to "spend th[e] money to thwart" stateside fraudsters with this cure-all.  *Id.* ¶¶ 76-77.  Instead, they claim, InComm "chooses to shift the risk of loss to Purchasers and Recipients."  *Id.* ¶ 77.  Thus, Plaintiffs allege, "no matter what method" fraudsters use to access Vanilla Card information, the absence of CAPTCHA is the "fundamental security problem" enabling criminals to track and exploit those cards' balances.  *Id.* ¶ 81.

But Plaintiffs offer scant factual support for their claim that the website lacks CAPTCHA, and in fact that claim is false.  This is apparent from the website itself, which Plaintiffs have incorporated in their Amended Complaint.  *Id.* ¶ 64.  Plaintiffs point to a screenshot of the website's page for checking card balances, which prompts users to enter their card information, and which, Plaintiffs emphasize, does not feature a check box with the phrase "I'm not a robot."  *See id.* ¶¶ 64–76.  Because that check box is absent, Plaintiffs conclude, CAPTCHA must be altogether absent from vanillagift.com.  That is not a logical inference but a leap of faith, and an unfounded one at that.  In point of fact, the site ***does*** present CAPTCHA "challenges" after users enter their card information, as shown in the screenshot submitted with this motion.  *See* Metcalf Decl., Ex. C (showing a CAPTCHA challenge from vanillagift.com, which prompts the user to "click each image containing a vinyl").  Thus, the issue that Plaintiffs have diagnosed as InComm's "fundamental security problem" does not exist.

Oddly, Plaintiffs' only other InComm-specific allegation does not identify a "security defect" at all, but rather a state-of-the-art security feature.  One mechanism of card fraud that Plaintiffs deem "not likely" to affect the Vanilla Cards is physical tampering, *i.e.*, opening the physical package to access card numbers.  AC ¶ 49.  Plaintiffs allege that physical tampering accounted for many instances of "[e]arly gift card fraud," but that InComm has averted this fraud mechanism with Vanilla Card packaging "specifically designed to be tamper-proof."  *Id.* ¶¶ 48-49.  It is striking that Plaintiffs' only non-speculative factual allegation about the Vanilla Cards' security features highlights their effectiveness, not their "flaws."

### 2.     Plaintiffs' Failure to Identify Any Other "Omitted" Information

In addition to their claim of a "specific flaw," Plaintiffs allege that InComm omitted that Vanilla Cards are "commonly" victimized by fraud and that InComm "avoids reimbursing Purchasers and Recipients for fraud losses when they occur."

*Id.* ¶¶ 11-13.  For both theories, Plaintiffs rely primarily on a smattering of negative comments about Vanilla Cards on websites such as pissedconsumer.com.  *Id.* ¶¶ 43-47.  Plaintiffs' Amended Complaint excerpts material from several such websites, purportedly reflecting consumers' dissatisfaction with Vanilla Cards after they experienced third-party fraud and, in some cases, a 60-day wait for reimbursement. *Id.*  Based on this handful of anonymous online comments, Plaintiffs conclude that "widespread fraud . . . seems unique to Vanilla Cards."  *Id.* ¶ 51.  But these anonymous comments offer no clue as to how "widespread" or "unique" Vanilla Card fraud is.  They suggest only that Vanilla Card consumers occasionally experience fraud—a fact that InComm has never denied.  Neither the online reviews nor Plaintiffs' allegations reveal any information about how InComm's card security, or its customer service, compares to that of other companies in the industry. *Id.* ¶¶ 43-47.

Tellingly, to create the impression that InComm is uniquely underperforming, Plaintiffs once again misrepresent their own incorporated sources, alleging that "[t]he Better Business Bureau rates [InComm] 1.05 out of 5 based on 220 reviews." *Id.* ¶ 46.  In fact, the BBB's website explicitly says that consumer "[r]eviews" ***do not factor*** into its overall rating, perhaps because of those reviews' unreliability. Metcalf Decl., Ex. F.  Instead, the BBB rating reflects a holistic assessment of the company's complaint history and dealings with consumers.  As detailed in InComm's motion to dismiss, that assessment has earned InComm a BBB rating of A+.  *See* MTD at 10.

Moreover, even as Plaintiffs cast aspersions on InComm's customer service team, they are curiously silent about their own purported customer service experiences.  Although Plaintiffs vaguely allege that they had unsatisfactory communications with InComm, they still say almost nothing about the content of those communications, and certainly do not explain what InComm did to indicate "avoidance" of reimbursement.  AC ¶¶ 18-22.  No Plaintiff's account of her

customer service experience includes a clear allegation that she requested reimbursement at all.  *Id.*  Accordingly, Plaintiffs' Amended Complaint fails to add meaningful new information about just what facts InComm is accused of having "omitted," regarding either its security practices or its customer service function.

### 3.    Plaintiffs' Failure to Allege Reliance or Injury

Another fatal flaw of the initial Complaint was its failure to explain "whether Plaintiffs relied" on the omissions, and "where the omitted information should have been disclosed."  Order at 6-7.  The Amended Complaint does not address this failure, either.  None of the Plaintiffs claims to have read or relied on the product label, or any other communication from InComm, when deciding whether to purchase the Vanilla Cards (and the Recipients do not allege that they bought the Vanilla Cards at all).  *See* AC ¶¶ 18-21.  Nor does any Plaintiff contend that she expected the cards to have any particular security feature, level of security performance, or customer service practices.  Thus, Plaintiffs do not and cannot allege that InComm's disclosure of information about the purported "flaws" in its security or customer service would have affected their purchasing decisions.  Moreover, because Plaintiffs did not expect the Vanilla Cards to be entirely "fraud-proof," a warning about the mere possibility of fraud would not have moved the needle, either.  *See* Opp'n at 9.  Accordingly, Plaintiffs have not alleged that any "omission" by InComm caused their purported injuries.

### ARGUMENT

The Court has already held that Rule 9(b)'s heightened pleading standard applies to Plaintiffs' claims under the CLRA and for unjust enrichment, because those claims sound in fraud.  *See* Order at 6.  That has not changed in the Amended Complaint, which again alleges that InComm "***deliberately*** conceal[ed] material facts" about its gift cards, AC ¶ 116 (emphasis added), "***intentionally*** concealed" the truth, *id.* ¶ 117 (emphasis added), and "operated a fraud on the public," *id.* ¶ 153. Thus, Rule 9(b) continues to govern these claims.

In addition, the Amended Complaint relies on InComm's purported CLRA violation as the sole predicate "unlawful" act for Plaintiffs' claim under the UCL's "unlawful" prong. *Id.* ¶ 126. Accordingly, the UCL "unlawful" claim is governed by the same standard as the CLRA claim, *i.e.*, Rule 9(b). Finally, Plaintiffs' claims under the UCL's "unfair" prong are based on the same factual allegations as their other causes of action, and are therefore subject to the same pleading standard. *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (explaining that "[w]here . . . a complaint employs the exact same factual allegations to allege [one cause of action] as it uses to allege fraudulent conduct," Rule 9(b) applies to that cause of action).

Although Rule 9(b) applies to the entire Amended Complaint, Plaintiffs' claims fail under any pleading standard. They have not satisfied their burden under Rule 8 to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

## I.     Plaintiffs Have Not Stated a Claim Under the CLRA or UCL "Unlawful Business Practices" Prong

The UCL and CLRA provide remedies only to consumers who suffered cognizable injury "as a result of" the disputed trade practices. *See* Cal. Bus. & Prof. Code §§ 17204, 17535 (limiting UCL claims to those who have "lost money or property as a result of" the alleged misconduct); Cal. Civ. Code § 1780(a) (CLRA plaintiff must have suffered damages "as a result of" the alleged misconduct). In its March 16 Order, the Court found that Plaintiffs' initial Complaint did not meet this requirement, because Plaintiffs had not adequately alleged that "anything [InComm] did or failed to do caused their harms." Order at 7. Their Complaint also failed to say "where" or "when" the supposedly misleading omissions appeared, or "whether Plaintiffs relied" on those omissions. *Id.* at 6-7. Each of these deficiencies was independently fatal to Plaintiffs' statutory claims.

The Amended Complaint retains all of these shortcomings.  Plaintiffs once again claim that InComm misleadingly "omitted" unspecified information about its unspecified security deficiencies, and that this omission led to Plaintiffs' losses.  This claim requires Plaintiffs to allege each of several causally related occurrences: (1) that their Vanilla Cards were depleted by fraud; (2) that the Vanilla Cards had a security defect that permitted fraudsters to drain Plaintiffs' cards, *see id.* at 7; (3) that InComm "omitted" this security defect from communications that Plaintiffs read and relied upon, causing Plaintiffs to buy the cards under false pretenses, *see id.* at 6-7; and (4) that InComm had a duty to disclose the alleged security defect, *see Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022).  Plaintiffs have failed on every front, and each of these failures is an independent basis for dismissal.

## A. Plaintiffs Have Not Plausibly Alleged that a Security Defect Caused the Depletion of Their Balances

Plaintiffs' UCL and CLRA claims require them to plead facts "specifically attribut[ing] their own Cards' loss in value to [InComm's] inadequate security." Order at 7.  But the allegations in the Amended Complaint do not raise a plausible inference that Plaintiffs lost their balances to fraudsters, that InComm had inadequate security, or that there was any connection between the two.

### 1. Plaintiffs Have Not Plausibly Alleged That Their Cards Were Depleted by Fraud

Although Plaintiffs insist that their Vanilla Card balances were wrongfully depleted by third parties, they still have not provided any of the key facts underlying this assertion.  Most crucially, they remain unwilling to identify *any* of the unauthorized purchases made on their cards—even though, as their initial Complaint acknowledged, each card's transaction history is available to cardholders at vanillagift.com.  *See* Compl. ¶ 4.

Plaintiffs' failure to provide this information is inexcusable, and fatal to their claims.  To clear the plausibility threshold, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  In cases involving alleged product deficiencies, this standard demands factual allegations that go "beyond the *symptoms* of the alleged defect[]" and identify the purported defect itself "with greater specificity." *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1006 (N.D. Cal. 2021) (emphasis added).  Yet here, Plaintiffs have not only refused to say what was allegedly wrong with their Vanilla Cards, they have failed to adequately explain the basis of their belief that anything was wrong to begin with.  Without this basic information, InComm cannot prepare a defense to Plaintiffs' claims.  Nor can InComm attempt to investigate or resolve their concerns.  InComm has repeatedly urged Plaintiffs to provide this information, most recently in its March 30 letter, and they have never explained their refusal to do so.  *See* Metcalf Decl., Ex. B.

Because all of Plaintiffs' statutory claims arise from their suppositions of third-party fraud, this lacuna disposes of each such claim.  Moreover, as InComm communicated in its March 30 letter, Plaintiffs' withholding of this information has rendered their CLRA pre-suit notice inadequate, as Plaintiffs have not afforded InComm "sufficient opportunity to correct or replace" the allegedly "deficient product." *Sotelo v. Rawlings Sporting Goods Co.*, 2019 WL 4392528, at *6 (C.D. Cal. May 8, 2019).  This is another ground for dismissal of their CLRA claim, and hence their UCL "unlawful" claim.

### 2. Plaintiffs Have Not Alleged That the Vanilla Cards Had a Concealed Security Flaw or Vulnerability

In a second fatal error, Plaintiffs have failed to allege facts suggesting that the Vanilla Cards' security features were "inadequate" in any respect.  The Amended

Complaint alleges, in conclusory fashion, that fraudsters "commonly" deplete Vanilla Card balances by "exploit[ing] a specific flaw in [InComm's] online security measures."  AC ¶¶ 11-12.  But Plaintiffs offer no facts to back these claims up. Instead, they rely on explicitly speculative musings about "possible" ways that Vanilla Cards may be compromised.

As an initial matter, these "possible" theories all proceed from Plaintiffs' belief that there is "widespread fraud, which *seems unique* to Vanilla Cards."  *Id.* ¶ 51 (emphasis added).  Why it "seems" this way to Plaintiffs is not clear from their factual allegations, which consist primarily of Vanilla Card reviews from unknown posters on an arbitrary selection of websites.  The reliability of these online comments is questionable at best, and the grievances they express do not align perfectly with Plaintiffs': one commenter, for example, posited that his fraud issues were caused not by a security vulnerability, but by "a coordinated scam involving both [InComm]" and something called "Right Wing Gear."  *Id.* ¶ 45.  Plaintiffs cannot premise their statutory claims on "implausible and inconsistent factual allegations" drawn from anonymous posters around the internet.  *Armstrong v. Allied Ins. Co.*, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014).  Furthermore, Plaintiffs' allegation that the BBB gives InComm a "low rating" is a patent misrepresentation of the BBB website, which is incorporated by reference in the Amended Complaint, and which gives InComm a rating of A+.

Moreover, even assuming that all the stories Plaintiffs found on the internet are true, they *still* do not support Plaintiffs' claim that the Vanilla Cards are "uniquely" vulnerable to fraud.  None of these online accounts suggests that the Vanilla Cards are any more susceptible to fraud than other, similar products.  At most, the online comments suggest that Vanilla Card fraud happens from time to time—but even Plaintiffs did not expect the Vanilla Cards to be fraud-proof, and neither would any reasonable consumer.  *See* Opp'n at 9.  Thus, the occasional

occurrence of fraud does not support Plaintiffs' claim of a unique security vulnerability.

For that matter, even if Plaintiffs could allege a large-scale cyberattack on InComm implicating many Vanilla Card consumers, that would be insufficient to support their claim, absent "specific reasons explaining why [InComm's] data security was inadequate." *See Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021) (finding the plaintiff's allegation of "two data breaches in a year" insufficient to support inference that the defendant lacked "an adequate data security infrastructure"); *Feins v. Goldwater Bank NA*, 2022 WL 17552440, at *7 (D. Ariz. Dec. 9, 2022) (large-scale data breach did not support inference that the defendant had failed to "provide . . . measures to protect customer data in accordance with industry standards"). This brings the inadequacy of Plaintiffs' allegations into sharp relief. If two large-scale data breaches in a year do not indicate a security inadequacy, a handful of individual occurrences of fraud comes nowhere close to doing so. Accordingly, these thirdhand reports cannot sustain Plaintiffs' claim that the Vanilla Cards have a security flaw.

When Plaintiffs finally get around to trying to allege a "specific flaw" in the Vanilla Cards' security, they offer nothing but shots in the dark. The Amended Complaint names several hypothetical methods by which, Plaintiffs speculate, fraudsters "could" gain access to Vanilla Card information. Plaintiffs say that InComm "employees *could be* stealing Card information," that it is "*possible*" that "electronic databases of Card information have been illegally accessed by cybercriminals," and that someone "*may* have" obtained a "formula" or "algorithm" in some way related to InComm's cards. AC ¶¶ 20-21, 51, 53 (emphases added). But nowhere do they allege that any of these attacks actually *has* befallen the Vanilla Cards, much less that any feature of the Vanilla Card leaves them uniquely vulnerable to these attacks. Plaintiffs cannot stave off dismissal by raising the "sheer possibility" of a security weakness. *Iqbal*, 556 U.S. at 678.

Plaintiffs' few allegations about InComm's security, as opposed to payment card security in general, are not just speculative but demonstrably inaccurate. After listing the ways that wrongdoers "could" be accessing card information, Plaintiffs go on to posit that these hypothetical fraudsters then use that information to monitor balances on InComm's balance-inquiry site, vanillagift.com. This theoretical criminal enterprise is "facilitate[d]," Plaintiffs allege, by one "fundamental" oversight: InComm's failure to employ CAPTCHA on its balance-inquiry webpage. *See* AC ¶¶ 71-77. Plaintiffs' suspicion that InComm does not use CAPTCHA is the closest they come to finding a "specific flaw" in InComm's security. But they offer no factual basis for that suspicion, and in fact there is none. As detailed above, InComm ***does*** use CAPTCHA on the balance-inquiry site, presenting visitors with just the type of "visual puzzle," *see id.* ¶ 74, that Plaintiffs endorse in their Amended Complaint, *see* Metcalf Decl. ¶ 5; *id.* Ex. C (screenshot of the CAPTCHA prompt).[2] Thus, Plaintiffs' claim of a security flaw is premised on a wild—and incorrect— guess.

In short, Plaintiffs have alleged no facts to support their claim that the Vanilla Cards are unusually vulnerable to fraud, much less that the cards suffer from an identifiable security defect. This is another dispositive shortcoming of their Amended Complaint.

### 3. Plaintiffs Have Not Linked Their Card Depletions to Any Alleged Security Defect

---

[2] The Court can consider "documents incorporated by reference in the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document is incorporated by reference if the plaintiff "refers extensively to [it] or the document forms the basis of the plaintiff's claim." *Id.* This principle prevents a plaintiff "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Here, Plaintiffs refer extensively to InComm's website, AC ¶¶ 63-70, 77-82, and they paste a screenshot of InComm's webpage for checking card balances, *id.* ¶ 64.

In its March 16 order, this Court emphasized Plaintiffs' obligation to allege that they "suffered economic injury *because* [InComm] failed to maintain 'reasonable, industry-standard, and appropriate security measures.'"   Order at 7 (emphasis added) (quoting Compl. ¶ 54).  As set forth above, Plaintiffs have not even alleged adequately that they suffered economic injury or that InComm failed to maintain industry-standard security.  But even if they could clear those hurdles, they have also failed to allege any facts suggesting a causal link between the two, *i.e.*, that the alleged security flaw affected them.

For example, Plaintiffs hypothesize that the "possible" fraudsters carry out their hypothetical scheme by monitoring individual card balances for activation, then spending each card's balance "quickly" once it is activated.  AC ¶¶ 68-69.  Thus, by Plaintiffs' reasoning, an allegation that their own balances were spent "quickly" would be consistent with their theory that these theoretical fraudsters depleted their own cards.  Yet Plaintiffs' Amended Complaint says nothing about how "quickly" their balances were spent.  Nor does it contain any other facts linking their alleged losses to InComm's purported security "flaw."  This is yet another missing piece in their Amended Complaint.

In short, Plaintiffs have not alleged facts supporting an inference (1) that their cards were depleted by fraud; (2) that the Vanilla Cards had a security defect; or (3) any causal connection between these two items.  Each one of these is an independent reason that their Amended Complaint must be dismissed.

### B.    Allegations About Inadequate Customer Service Also Fail

In addition to their primary theory about the adequacy of InComm's security, Plaintiffs also throw out a secondary claim that InComm "avoids reimbursing Purchasers and Recipients for fraud losses when they occur."  *Id.* ¶ 13; *see also id.* ¶ 96.  But that theory is equally unsupported by factual allegations.  Though Plaintiffs vaguely claim to have wanted reimbursement, they provide no factual basis for their claim that InComm "avoided" providing it.  *See id.* ¶¶ 18-22.  For example,

they do not say what reasons InComm gave for denying reimbursement; for that matter, their accounts of their customer service experiences do not clearly allege that they ever requested reimbursement.  And as InComm advised in its March 30 letter, InComm has been unable to locate any record of contact from any of the Plaintiffs based on the limited information provided to date.  Plaintiffs' opacity on this subject not only dooms their claim; it borders on Kafkaesque.  InComm faces an accusation that it "avoided" reimbursement in some customer-service communication, at some point, with somebody, relating to some Vanilla Card where there was some suspicion of fraud.  But Plaintiffs refuse to tell InComm any more than that.

Plaintiffs' Amended Complaint does contain a cryptic allegation that "[o]nce the Face Value of an E-Card is depleted," the cardholder can no longer click a link to access the E-Card number, and is thus "unable to provide the E-Card number to [InComm] customer service," as they must do to seek reimbursement.  *Id.* ¶ 94. Plaintiffs offer no basis for this puzzling assertion, nor do they allege that this supposed link expiration has ever led InComm to deny reimbursement to a single consumer.  In any event, Plaintiffs do not allege that ***they*** could not access their card numbers through the link, that InComm refused to reimburse ***them*** as a result, or that this link issue affected them in any way.  Three of the Plaintiffs did not even have E-Cards; they had Physical Cards.  *Id.* ¶¶ 19-21.  Accordingly, Plaintiffs lack standing to pursue statutory claims based on this purported customer-service failing. *See Clark v. Hershey Co.*, 2019 WL 6050763, at *2 (N.D. Cal. Nov. 15, 2019) (limiting UCL and CLRA standing "to consumers who suffer an injury as a result of the alleged misconduct").

It also bears notice that the BBB website Plaintiffs rely upon refutes Plaintiffs' claim that InComm aims to avoid reimbursement.[3]  The BBB gives InComm an A+

---

[3]  *See InComm Financial Services, Inc.*, Better Business Bureau, https://www.bbb.org/us/ga/columbus/profile/credit-cards-and-plans/incomm-

rating based on its analysis of, among other things, the extent to which InComm "appropriately responded" to complaints, "resolved the complaints in a timely manner to the customer's satisfaction," "made a good faith effort to resolve complaints, even if the customer was not satisfied with the resolution," and "resolve[d] the underlying cause(s) of a pattern of complaints." *Overview of Ratings*, Better Business Bureau, https://www.bbb.org/overview-of-bbb-ratings, Metcalf Decl., Ex. G. Thus, Plaintiffs' own allegations show that InComm responds to instances of reported fraud "appropriately," "timely," and "in good faith"—the opposite of what Plaintiffs suggest. For all of these reasons, Plaintiffs' throwaway "customer service"-related claims cannot salvage their Amended Complaint.

### C.  Plaintiffs Have Not Alleged That They Relied to Their Detriment on Any "Omission" of Information

As set forth above, Plaintiffs have not alleged that there was anything deficient about InComm's security or customer service; that they experienced economic loss; or that there was a causal relationship between the two. But the problems with their Amended Complaint do not end there. The crux of Plaintiffs' claim is not just that the Vanilla Cards had these alleged flaws, but that InComm deceptively omitted them from its communications with consumers. Thus, to establish standing, Plaintiffs must allege that these purported omissions influenced their own decisions to purchase Vanilla Cards, leading to loss of money or property. Because they have once again failed to do this, they "have not pled the omissions claim with sufficient detail to permit Defendant to prepare an adequate answer." Order at 6-7.

"In order to have standing under the UCL [or] CLRA, the named plaintiff must demonstrate actual reliance" on the misrepresentation or omission at issue. *See Reed v. NBTY, Inc.*, 2014 WL 12284044, at *7 (C.D. Cal. Nov. 18, 2014) (Bernal, J.). This "critical" requirement prevents class actions brought by

---

financial-services-inc-0743-4118/customer-reviews (emphasis added) (last visited Apr. 28, 2023).

"consumers with . . . highly attenuated connection[s] to the misrepresentations at the center of the litigation."  *Id.* at *9.  In an omission-based case, this means that the plaintiff must show that "***had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently***."  *Simon v. SeaWorld Parks & Ent., Inc.*, 2022 WL 1594338, at *4 (S.D. Cal. May 19, 2022) (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)) (granting motion to dismiss CLRA and UCL claims based on fraudulent omission for failure to plead actual reliance on the omission).  In other words, the plaintiff must allege that if the defendant had only disclosed the omitted information, the plaintiff would have read it ***and*** made a different purchasing decision based on it.

California courts regularly dismiss omission-based CLRA and UCL claims for failure to allege these facts.  *See, e.g.*, *In re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968, at *56 (C.D. Cal. Dec. 6, 2022) ("Without allegations that each Plaintiff actually saw or heard the allegedly deceptive statements, Plaintiffs have not plausibly alleged that they would have been aware of the omitted information had it been disclosed."); *Simon*, 2022 WL 1594338, at *1–4 (dismissing claims that SeaWorld fraudulently omitted information concerning its "All-Day Dining Deal" from its website because plaintiff "fail[ed] to identify what representations [he] reviewed and relied on in making his decision" to purchase his All-Day Dining ticket); *Stewart v. Electrolux Home Prods., Inc.*, 2018 WL 1784273, at *6 (E.D. Cal. Apr. 13, 2018) (dismissing omissions claims where plaintiffs did not allege that "if omitted information [regarding an allegedly defective component of an oven] had been disclosed, *they would have been aware of it*" prior to purchasing their ovens); *Joseph v. Costco Wholesale Corp.*, 2016 WL 759559, at *4 (C.D. Cal. Feb. 24, 2016), *aff'd*, 691 F. App'x 865 (9th Cir. 2017) (rejecting claim based on defendant's omission of a country of origin designation from a drug label because plaintiff did not allege that he "actually read the label or relied on the absence of a . . . designation in purchasing" the drug).

Similarly, this Court dismissed the initial Complaint because it did not "specify what representations Defendant made, why they were misleading, whether Plaintiffs relied on them, or where the omitted information should have been disclosed." Order at 6-7. The Amended Complaint does not fix this flaw. Like the plaintiffs in the cases listed above, Plaintiffs do not claim to have even ***read*** any website, product label, or other source of information before purchasing the Vanilla Cards. Therefore, even if InComm had disclosed the disputed information, Plaintiffs do not allege that they "would have been aware of it" such that it could have caused them to "behave[] differently" with regard to their Vanilla Card purchases. *Simon*, 2022 WL 1594338, at *4. Plaintiffs lack standing to complain about the omission of information from communications they do not claim to have read or relied on.

For the Recipient Plaintiffs, the analysis is even more straightforward. Not only did they not rely on the supposedly incomplete communications when purchasing the Vanilla Cards, they did not purchase the Vanilla Cards at all. Accordingly, as detailed in InComm's initial motion to dismiss, they did not suffer the requisite "loss of money or property" to confer standing under the UCL. *See Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *5 (N.D. Cal. Dec. 28, 2012) ("[S]tanding in product mislabeling cases is predicated on the purchase of at least *some* product."); *see also* MTD at 20-22.

### D.   Plaintiffs Have Not Alleged InComm's Duty to Disclose

Finally, Plaintiffs' omission-based claims fail for the additional and independent reason that Plaintiffs have not adequately alleged that InComm had a duty to disclose any of the alleged "flaws" of the Vanilla Cards.

Even if Plaintiffs could demonstrate that InComm omitted information and they relied on that omission, that is not enough to sustain a claim under the UCL or CLRA. Rather, they must also show that InComm had a "duty to disclose" the disputed information about its product. Such a duty exists only for product features that (1) create unreasonable "safety hazards" or (2) are central to the product's

functionality.  *Hammerling*, 615 F. Supp. 3d at 1086.  Moreover, even these limited classes of defects need not be disclosed unless plaintiffs *also* allege a "*LiMandri* factor."  *Id.* at 1085.  "The *LiMandri* factors are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts."  *Id.*  Plaintiffs fail on both fronts.

### 1.    Plaintiffs Have Not Alleged a Safety Hazard or "Central" Defect

Plaintiffs have not alleged that the ostensibly omitted information related to a safety hazard posed by, or a defect central to the function of, the Vanilla Cards.  As Plaintiffs previously acknowledged, the central function of the cards is to permit the user to make purchases against the card's balance.  *See* Opp'n at 9.  Plaintiffs do not and cannot allege an impediment to this central function.

At least one court in the Ninth Circuit has dismissed omission-based CLRA and UCL claims under roughly analogous circumstances.  *See Barrett v. Apple Inc.*, 2022 WL 2119131, at *11 (N.D. Cal. June 13, 2022).  There, the court found that the defendant had no duty to alert gift card purchasers about the risk that third-party "gift card scam[mers]" would appropriate and use their funds.  *Id.*  The court reasoned that the "central function of the gift card[]—to serve as a form of payment . . . —was not, in fact, at all impeded."  *Id.*

The same reasoning applies here.  Plaintiffs do not allege that the Vanilla Cards' central function failed, but simply that the wrong people accessed that function.  That is not sufficient to establish a duty to disclose.

### 2.    Plaintiffs Have Not Alleged a *LiMandri* Factor

Plaintiffs have also failed to plead one or more of the *LiMandri* factors, as they must do to establish InComm's duty to disclose the information in question.  Though Plaintiffs summarily state that InComm "possessed exclusive knowledge"

of its supposed security vulnerabilities, AC ¶ 117, the allegations in the Amended Complaint fail to bear this out.   According to Plaintiffs, the only "plausible" explanations for the cards' supposed vulnerability are that either "Vanilla insiders" or "cybercriminals" are accessing card information.  *Id.* ¶¶ 51, 53, 58.  The generic knowledge that employees can steal from their employers, or that third-party cybercriminals can hack payment instruments, is hardly "exclusive" to InComm. These are widely reported mechanisms of fraud, as Plaintiffs' own citations to news articles reflect.   *See, e.g.*, *id.* ¶¶ 55, 73.  Accordingly, Plaintiffs have not alleged facts supporting the *LiMandri* factor of exclusive knowledge.  InComm therefore owed no duty to disclose any purported security defect identified in the Amended Complaint.

## II.   Plaintiffs' UCL "Unfair Business Practices" Claims Fail

Plaintiffs' claims under the UCL's "unfair" prong are based on the same allegations as their other deficient statutory claims, and are clearly intended as an insurance policy against those claims' dismissal.  *Compare id.* ¶¶ 136-49 ("unfair" allegations), *with id.* ¶¶ 109-35 (CLRA and "unlawful" allegations).  But that is not how it works.  Courts routinely dismiss UCL "unfair" claims, like this one, that "overlap[] entirely" with failed claims under other prongs of the statute.  *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021); *accord Hammerling*, 615 F. Supp. 3d at 1094; *Saavedra v. Everi Payments, Inc.*, 2022 WL 17886025, at *5 (C.D. Cal. Apr. 11, 2022).  The Court should do the same.

Furthermore, since the California Supreme Court's decision in *Cel-Tech Communications Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163 (Cal. 1999), courts require that claims under the UCL's "unfair" prong identify a specific "legislative policy [d]efendants have violated."  *Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1080–81 (C.D. Cal. 2020); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (Cal. Ct. App. 2002); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (Cal. Ct. App. 2010) (rejecting "a vague

test of unfairness" that does not require an unfair claim to be tethered to "any underlying constitutional, statutory, or regulatory provision"); *Ramin M. Roohipour, M.D., Inc. v. Blue Cross Blue Shield of Ill.*, 2021 WL 5104383, at \*7 (C.D. Cal. Oct. 21, 2021). Here, the State's "legislative policy" with respect to misleading omissions is set forth in the CLRA, and Plaintiffs have failed—after two tries—to allege that InComm violated it. Nor have they identified any other standard, provision, or policy under which InComm's behavior may be judged "unfair." Accordingly, they have not stated a claim under the UCL "unfair" prong.

## III.  Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs have also failed to state a claim for unjust enrichment, which the Court already held is subject to the heightened pleading requirements of Rule 9(b). *See* Order at 8. Plaintiffs allege that InComm unjustly enriched itself by "act[ing] to hide that its Cards would not retain their Face Value because of its inadequate data security practices." AC ¶ 153. But as set forth above, Plaintiffs have not pleaded with the required particularity that there was any security defect to begin with, much less that InComm "acted to hide" the defect. Likewise, Plaintiffs' allegation that InComm acted to hide that it "would not reimburse for theft loss[es]" is unsupported by any particularized allegations concerning Plaintiffs' own experiences, and flatly contradicted by Plaintiffs' incorporated sources. *Id.*

The express contract between InComm and Plaintiffs, in the form of the Cardholder Agreement(s), also defeats Plaintiffs' unjust enrichment claim. *See Paracor Fin. Inv., Inc. v. GE Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (unjust enrichment claim is precluded "when an enforceable binding agreement exists defining the rights of the parties"). As Plaintiffs concede, InComm had a "contractual agreement with purchasers" in the form of Cardholder Agreements. *See* Opp'n at 22; *see also* Order at 8. This defeats an unjust enrichment claim relating to the same subject matter.

## IV.    Plaintiffs Lack Standing to Seek Injunctive Relief

Finally, Plaintiffs lack standing to seek injunctive relief, as they have failed to allege any "real or immediate threat" of future injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  To satisfy this requirement in a false-labeling case, a plaintiff must allege that she intends to purchase the product at issue again, but is "unable to rely on [the defendant's] representations" without an injunction. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 968–70 (9th Cir. 2018).  Thus, a consumer with no "stated desire to purchase [the product] in the future . . . do[es] not have standing to pursue injunctive relief."  *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021).

Plaintiffs here have alleged no such desire or intent.  They allege only that they "***may*** purchase or receive Cards in the future."  AC ¶ 108 (emphasis added). But "the imminent injury requirement is not met by alleging that the plaintiff[] would *consider* purchasing [the product]."  *In re Coca-Cola,* 2021 WL 3878654, at *2; *see also Schertzer v. Samsonite Co. Stores, LLC*, 2020 WL 4281990, at *11 (S.D. Cal. Feb. 25, 2020) (allegation that plaintiff "may in the future shop at Defendant's [store]" was insufficient to confer standing to pursue injunctive relief).  Accordingly, Plaintiffs have alleged no imminent threat of injury, and accordingly lack standing to seek injunctive relief.

### CONCLUSION

For the foregoing reasons, InComm respectfully requests that the Court dismiss the Amended Complaint with prejudice.

1

Respectfully submitted,

2

3    Dated: April 28, 2023                By: */s/ William A. Delgado*

4
5    William A. Delgado (SBN 222666)
       wdelgado@dtolaw.com
6    DTO LAW
     601 S. Figueroa St. Suite 2130
7    Los Angeles, CA 90017
     Tel: (213) 335-7010
8    Fax: (213) 335-7802
9
10   Jane Metcalf (*pro hac vice*)
       jmetcalf@pbwt.com
11   David S. Kleban (*pro hac vice*)
       dkleban@pbwt.com
12   Peter Vogel (*pro hac vice*)
       pvogel@pbwt.com
13   Basil Williams (*pro hac vice*)
       bwilliams@pbwt.com
14   PATTERSON BELKNAP WEBB &
15   TYLER LLP
     1133 Avenue of the Americas
16   New York, New York 10036
     Tel: (212) 336-2000
17   Fax: (212) 336-2222
18
19
20   Attorneys for Defendant
     INCOMM FINANCIAL SERVICES, INC.
21

22

23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2

      The undersigned, counsel of record for InComm Financial Services, Inc.,

3

certifies that this brief is twenty-five pages, which complies with the page limit set

4

by court order dated October 20, 2022.

5

6

Dated: April 28, 2023                By: */s/ William A. Delgado*

7

8

                        William A. Delgado (SBN 222666)
                         wdelgado@dtolaw.com

9

                        DTO LAW

10

                        601 S. Figueroa St. Suite 2130
                        Los Angeles, CA 90017

11

                        Tel: (213) 335-7010
                        Fax: (213) 335-7802

12

13

                        Jane Metcalf (*pro hac vice*)
                         jmetcalf@pbwt.com

14

                        David S. Kleban (*pro hac vice*)
                         dkleban@pbwt.com

15

                        Peter Vogel (*pro hac vice*)
                         pvogel@pbwt.com

16

                        Basil Williams (*pro hac vice*)
                         bwilliams@pbwt.com

17

                        PATTERSON BELKNAP WEBB &

18

                        TYLER LLP
                        1133 Avenue of the Americas

19

                        New York, New York 10036

20

                        Tel: (212) 336-2000
                        Fax: (212) 336-2222

21

22

                        Attorneys for Defendant

23

                        INCOMM FINANCIAL SERVICES, INC.

24

25

26

27

28