1  Graham B. LippSmith (SBN 221984)
   g@lippsmith.com
2  MaryBeth LippSmith (SBN 223573)
   mb@lippsmith.com
3  Jaclyn L. Anderson (SBN 258609)
   jla@lippsmith.com
4  **LIPPSMITH LLP**
   555 S. Flower Street, Suite 4400
5  Los Angeles, CA 90071
   Tel: (213) 344-1820 / Fax: (213) 513-2495
6
   Jason T. Dennett (WSBA #30686), *Pro Hac Vice*
7  jdennett@tousley.com
   Kaleigh N. Boyd (WSBA #52684), *Pro Hac Vice*
8  kboyd@tousley.com
   **TOUSLEY BRAIN STEPHENS PLLC**
9  1200 Fifth Avenue, Suite 1700
   Seattle, WA 98101
10 Telephone: (206) 682-5600 / Fax: (206) 682-2992

11 *Attorneys for Plaintiffs and the Putative Classes*

12                    UNITED STATES DISTRICT COURT
13              FOR THE CENTRAL DISTRICT OF CALIFORNIA
14                          EASTERN DIVISION

15 CAROLYN CLARK, SHELBY              Case No.: 5:22-CV-01839-JGB-
16 COOPER, SHARON MANIER,            SHK
   TARIKA STEWART, and AQUILLA
17 THOMPSON individually, and on     Hon. Jesus G. Bernal
   behalf of all others similarly situated;
18
                                     **PLAINTIFFS' OPPOSITION TO**
19          Plaintiffs,              **DEFENDANT'S MOTION TO**
                                     **DISMISS PLAINTIFFS'**
20      v.                           **AMENDED COMPLAINT**
21
   INCOMM FINANCIAL SERVICES,
22 INC., a Delaware corporation,     Date: June 5, 2023
                                     Time: 9:00 a.m.
23          Defendant.               Dept.:  1
24
25
26

                                    i

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*In re Adobe Sys., Inc. Privacy Litig.,*
   66 F. Supp. 3d 1197 (N.D. Cal. 2014)................................................18

*Anderson v. Apple Inc.,*
   500 F. Supp. 3d 993 (N.D. Cal. 2020)................................... *passim*

*In re APA Assessment Fee Litig.,*
   766 F.3d 39 (D.C. Cir. 2014)................................................20

*In re Apple Inc. Device Performance Litig.,*
   347 F. Supp. 3d 434 (N.D. Cal. 2018)........................................13, 14

*Barrett v. Apple Inc.,*
   2022 WL 2119131 (N.D. Cal. June 13, 2022)..............................13, 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................7

*Brod v. Sioux Honey Ass'n Co-op.,*
   895 F. Supp. 2d 972 (N.D. Cal. 2012)................................21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal.4th 163 (1999)........................................18, 19

*Daniel v. Ford Motor Co.,*
   806 F.3d 1217 (9th Cir. 2015)................................9, 10, 12

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018)................................23

*Herron v. Best Buy Co. Inc.,*
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................15

*Joseph v. Costco Wholesale Corp.,*
   2016 WL 759559 (C.D. Cal. 2016) ................................11

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
   519 F.3d 1025 (9th Cir. 2008)................................7

*Marilao v. McDonald's Corp.,*
   632 F. Supp. 2d 1008 (S.D. Cal. 2009) ................................21, 22

ii

*Marsikian v. Mercedes Benz USA, LLC*,
    2009 WL 8379784 (C.D. Cal. May 4, 2009) ........................................................15

*Simon v. SeaWorld*,
    2022 WL 1594338 (S.D. Cal. 2022) ..................................................................11

*McVicar ex rel. Situated v. Goodman Global, Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) ................................................................22

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) .......................................................................18, 19

*Stewart v. Electrolux Home Prod.*,
    2018 WL 1784273 (E.D. Cal. 2018) ...............................................................11

*Svenson v. Google, Inc.*,
    2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .....................................................18

**Statutes**

Am. Law ............................................................................................................20

Cal. Civ. Code § 1749.6(a) ...............................................................................22

Cal. Civ. Code § 1798.100(e) ...........................................................................19

**Other Authorities**

Fed. R. Civ. P. 56 ...............................................................................................6

Federal Rule of Civil Procedure 11(b)(3) ..........................................................5

https://balance.vanillagift.com/#/ ...................................................................4, 6

Restatement (Third) of Restitution and Unjust Enrichment § 2(2) ...................20

Rule 8(a) .............................................................................................................7

Rule 9(b) .............................................................................................................8

Rule 11 ................................................................................................................6

Rule 12(b)(6) .......................................................................................................3

iii

# INTRODUCTION

Defendant InComm Financial Services, Inc. ("Vanilla" or "Defendant") knows that it defrauds people who buy its Cards ("Purchasers") and who receive them as gifts ("Recipients") by failing to tell them crucial facts. Vanilla knows that Unauthorized Users [1] frequently steal the preloaded funds ranging from $10 to $500 ("Face Value") of Vanilla's virtual ("E-Cards") and physical debit cards ("Physical Cards") before Purchasers and Recipients have a chance to spend it.

 Vanilla knows that at least three flaws in Vanilla's data security facilitate theft: (a) Vanilla uses a Card balance inquiry website rather than a more secure phone line, that Unauthorized Users exploit by using automated computer programs to check the balance of unactivated Card, which is crucial to the theft scheme. Amended Complaint ("AC") ¶ 78); (b) Vanilla fails to implement security tools like CAPTCHA on that website to prevent access by automated balance checkers (*id.* ¶¶ 73–77); and (c) Vanilla fails to monitor that website for balance inquiries on unactivated Cards, which would show when Unauthorized Users wrongfully obtain Card data (*id.* ¶¶ 79–80). Vanilla knows that instead of investing in adequate data security, Vanilla shifts the risk of fraud loss to customers.

---

[1] Third parties with no legal right to spend the Card value who obtain Card data through criminal acts and spend that Card value.

1

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Vanilla also knows that when Purchasers and Recipients, like Plaintiffs, complain that their Cards have no value, Vanilla implements an intentionally difficult process designed to frustrate consumers into quitting and walking away empty-handed. Vanilla told Plaintiff Manier that it could not or would not take any action to reimburse her. Plaintiffs Thompson, Clark, and Stewart each spent between six and 50 hours seeking reimbursement. All gave up without being reimbursed.

Vanilla knows that no one would buy Vanilla's Cards if it disclosed that: (1) its Cards often have less purchasing power than their Face Value at the time of purchase due to theft; (2) Unauthorized Users exploit Vanilla's security flaws to access and spend the Face Value of Cards; and (3) Vanilla avoids reimbursing Purchasers and Recipients for fraud losses when they occur. (AC ¶¶ 116, 118, 130–31, 133)

Vanilla knows that if it made disclosures that comply with the law, no reasonable consumer (including Plaintiffs) would buy Card that may contain less than its Face Value. No person who buys a Card to pay the electric bill because they lack the resources to access traditional banking systems would take that risk. No grandparent would buy a Card knowing that there is a substantial chance that their grandchild would be disappointed after receiving a worthless gift on Christmas morning. *See* AC ¶¶ 44–46 ("Merry Christmas from Vanilla Visa!"). No

2

one has to buy a gift Card—they can pay or give cash or a check. Vanilla knows this too, which is why it stays quiet.

Plaintiffs brought the underlying putative class action on behalf of themselves, Card purchasers ("Purchaser Class"), and Card recipients ("Recipient Class") to hold Vanilla responsible for its actions and to recover their losses. Rather than tie its Motion to the applicable legal standards, Vanilla attempts to litigate factual disputes through the guise of what it unilaterally deems is "plausible." That is not an appropriate basis on which to dismiss a complaint under Rule 12(b)(6). Plaintiffs state their claims with particularity on behalf of themselves and the proposed Classes. The Court should deny Vanilla's Motion, and order Vanilla to file an Answer.

## BACKGROUND

### 1. Plaintiffs Identify Three Security Flaws that Vanilla (a) Failed to Fix, Allowing Card Theft, and (b) did not Disclose at the Time of Purchase

The Amended Complaint lists ways Unauthorized Users could obtain Card data, including employee theft, hacking Vanilla's database of Card information, and discerning Vanilla's Card number generation algorithm, for context. AC ¶¶ 48–60. These possibilities are not the security flaws on which Plaintiffs base their claims. *Id.* ¶¶ 48–60. Vanilla's three security flaws allow Unauthorized Users to quickly recognize when they can exploit Cards after they obtain Card data.

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Regardless of how Unauthorized Users *obtain* Card data, they need access to Vanilla's Card balance inquiry website https://balance.vanillagift.com/#/ to complete their scheme. Until a legitimate Purchaser buys a Card, no actual dollar value is associated with the Card data. *Id*. ¶¶ 61–62. Unauthorized Users must exploit the days or hours between (1) Card purchase and activation and (2) when legitimate Purchasers or Recipients spend the balance themselves. *Id*. ¶ 63.

Unauthorized Users must continuously and automatically check whether Cards have been activated to spend Face Value after activation but before use. *Id*. ¶¶ 65–67. No human could check often enough to catch each Card's activation with the consistency that Unauthorized Users achieve. Instead, they use a computer program to monitor unactivated Cards by repeatedly querying Vanilla's balance inquiry website, looking for balances to appear on newly activated Cards. As soon as a spendable balance shows up on a Card, the program notifies Unauthorized Users, who then quickly spend that Face Value. *Id*. ¶¶ 68–69.

Without automated queries, Unauthorized Users would not be able to complete their theft because they would not know when Face Value was available. *Id*. ¶¶ 68–69, 72. Vanilla could, but does not, implement three security measures to prevent such information gathering through automated queries.

First, Vanilla could stop using a Card balance inquiry website. Given the security risks described above, Vanilla could provide only a phone number for

4

checking balances and employ people to help. *Id.* ¶ 78. Such a system, while more expensive, would completely eliminate the ability of Unauthorized Users to remotely and rapidly check unactivated Card balances.

Second, Vanilla could use security tools like CAPTCHA to block automated programs from accessing unactivated Card balances. *Id*. ¶¶ 73–77.

Third, Vanilla could monitor the balance inquiries on unactivated Cards. *Id.* ¶¶ 79–81. Legitimate Purchasers and Recipients would not check a Card balance before activation because they would not have a Card number before purchase and activation. Only Unauthorized Users would check Card balances before activation. Thus, Vanilla could isolate and flag queried Card numbers. Vanilla could then block or recall Cards with queried numbers, or it could create a reimbursement program for such queried numbers if a Card experiences fraud.

Vanilla's implementation of one of these security strategies would stop Unauthorized Users from stealing the Cards' Face Value. Vanilla's failures to implement security measures leave Cards particularly vulnerable to fraud.

## 2. Whether Vanilla's Site Uses CAPTCHA Is a Disputed Fact

Vanilla submitted Ms. Metcalf's Declaration to contradict Plaintiffs' factual allegation that Vanilla fails to use CAPTCHA on its balance inquiry site, which it characterizes as an "ill-informed guess," "speculative," and "a wild – and incorrect – guess." Speculative, ill-informed, wild guesses would not satisfy counsels'

5

Federal Rule of Civil Procedure 11(b)(3) obligation to certify that "the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Before filing the Amended Complaint, undersigned counsel, as part of their investigation and to ensure compliance with their Rule 11 obligations, purchased an E-Card and entered the number into Vanilla's balance inquiry website, https://balance.vanillagift.com/#/, to determine whether Vanilla employed CAPTCHA. Declaration of Jason T. Dennett ("Dennett Dec.") ¶¶ 2-3. No CAPTCHA appeared. *Id*. Counsel was able to access the account balance without a CAPTCHA window or box appearing. *Id*.

After reviewing Vanilla's Motion, Plaintiffs' counsel again entered the E-Card number into Vanilla's balance inquiry website. The result was the same: no CAPTCHA appeared, and counsel was able to access the account balance. *Id.* ¶ 4. Counsel then entered a Physical Card number into the site. *Id.* Again, no CAPTCHA appeared, and the website displayed the account balance. *Id*. ¶ 5. It is unknown why Vanilla's website allegedly displays a CAPTCHA for Defendant's counsel but not for Plaintiffs' counsel. This disputed issue of fact cannot be resolved during these motion to dismiss proceedings and could not even be resolved on summary judgement. *See* FED. R. CIV. P. 56.

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

### 3. Vanilla's Customer Service Is Fruitless and Time-Consuming

Each Plaintiff asked Vanilla to reimburse them the full Face Value of their Cards; Vanilla failed to do so. AC ¶ 7. Plaintiffs spent between six and 50 hours trying to obtain reimbursement. *Id.* ¶¶ 18–22. Most people would have given up long before that, which is exactly what Vanilla intends. *Id.* ¶ 95. Vanilla could set up a quick, orderly, and convenient way to reimburse customers for fraud.

Online reviewers' experiences mirror Plaintiffs': "I purchased one of their cards and put $500 on it. Within an hour someone had made a purchase of $470 at an Apple store in CA and cleared my balance. I reported it immediately . . .. [I]t took 40 mins on hold to speak to someone only to be told there was nothing that could be done because the purchases made with the cards are considered as cash;" "Got a $100 gift card, went to use it the next day, and it was declined[.] Called customer service, said I needed to file a dispute and would take up to 6 months to see an update;" "I was scammed $250 right after I purchased it[.] I called them had to do a dispute and could take 45–90 days to get a response." *Id.* ¶¶ 44–46.

### LEGAL STANDARD FOR MOTION TO DISMISS

Under Rule 8(a), Plaintiffs need only set forth enough facts to state a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, on a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). "In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1004 (N.D. Cal. 2020). Under Rule 9(b), a defendant's knowledge "may be alleged generally." FED. R. CIV. P. 9(b).

## ARGUMENT

### 1. The Amended Complaint Specifies What Representations Vanilla Made, Why They Were Misleading, Plaintiffs' Reliance, and Where the Omitted Information Should Have Been Disclosed

The Court ruled that Plaintiffs failed to plead Vanilla's omissions with particularity. Order Granting Motion to Dismiss ("Order"), Dkt.  41, at 8. The Amended Complaint provides the connection between the omissions (Cards may be worth less than face value) with the harm (Purchasers paid for Cards they would not have purchased).

### a. Vanilla's Omissions and Misleading Representations

### i.   Vanilla's Cards often do not hold the represented Face Value.

Vanilla represented that its Cards are "gift cards" holding the worth of their Face Value (AC ¶¶ 1, 116, 137), but it omits the material fact that Cards often have less purchasing power than their Face Value due to theft. *Id.* ¶¶ 11, 30.

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Vanilla's Cards say they have a Face Value of $5 and $100, but there is a substantial chance that they do not have that Face Value because of Unauthorized Users' theft. AC ¶¶ 11, 84. The prevalence of Face Value theft is shown, in part, by Plaintiffs' experiences with Vanilla's Cards. Plaintiff Cooper received seven Physical Cards as gifts; three of them had less than Face Value when she tried to use them, and the fourth had no value. *Id.* ¶ 19. Unauthorized Users drained fifty-seven percent of Plaintiff Cooper's Cards. Yet, Vanilla casts this theft as a consumer "occasionally experienc[ing] fraud." Vanilla's Motion to Dismiss Amended Complaint at 10.  Only Vanilla knows what percentage of Vanilla Cards suffer Unauthorized Users' theft. But a reasonable consumer would not consider a fifty-seven percent fraud rate normal, within industry standards, or acceptable. Plaintiff Cooper's experience and online reviews suggest that such fraud is widespread.

### ii.  Vanilla's security flaws enable and facilitate fraud on its Cards.

Vanilla omitted that Unauthorized Users exploit three security flaws in its Card balance inquiry website that facilitate the accessing and spending of the Cards' Face Value before Plaintiffs and Class Members can use the Cards and that Vanilla avoids reimbursing Purchasers and Recipients for fraud losses.

### b. Purchasers Relied on Vanilla's Omissions

"To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of plaintiff's injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Proving reliance does not require "that the omission [be] the only cause or even the predominant cause;" rather, a plaintiff may simply plead "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (internal quotation marks and citation omitted).

Plaintiffs plead that they would not have purchased the Cards (acted differently) had they known that the Cards are particularly susceptible to fraud. AC ¶ 118. No reasonable consumer, which includes each Plaintiff, would buy a Card for the Face Value, plus Vanilla's fees and taxes, if they knew there was a substantial chance that the Card would be worth less than its Face Value, or they would have paid far less. *Id.* ¶ 96. Nor would a reasonable consumer suspect that Vanilla facilitates the theft through inadequate security practices. *Id.* ¶¶ 85–86. "When purchasing Vanilla's Cards, Plaintiffs and Purchaser Class Members relied upon Vanilla's direct and indirect representations regarding its data security, including its failure to alert consumers that its Cards were not secure and, thus, were vulnerable to improper use of funds[.]" *Id.* ¶ 131.

Plaintiffs sufficiently plead that they relied on Vanilla's omissions when purchasing their Cards and would have acted differently had Vanilla disclosed its exclusive knowledge about its own security flaws. No reasonable consumer buys a cash-equivalent asset with only downside risk. An investor would not buy an asset that could lose value unless it could also gain value. A gambler will pay to take a chance, but only if they might win. Vanilla Cards are like a lottery ticket that costs five dollars, that might pay a maximum of five dollars, and that is also likely to pay nothing. No one would buy a Vanilla Card if they knew about the downside risks of those Cards through the facts that Vanilla omits.

The reliance cases Vanilla relies on are distinguishable. Here, Purchasers relied on the Cards' Face Value in buying the Cards. In the cases Vanilla cites, the consumer still would have purchased an item that maintained some utility despite the complained-of factor. *Simon v. SeaWorld*, 2022 WL 1594338 (S.D. Cal. 2022) (SeaWorld tickets without all-day dining); *Stewart v. Electrolux Home Prod*., 2018 WL 1784273 (E.D. Cal. 2018) (ovens lacked self-cleaning function); *Joseph v. Costco Wholesale Corp*., 2016 WL 759559 (C.D. Cal. 2016) (mislabeled cholesterol medication). Here, a Card's sole function is to purchase goods and services—it is a cash-equivalent and has no other utility. A Card that lacks purchasing power equivalent to Face Value is useless.

11

### c. Vanilla's Material Omissions Should be Disclosed on Card Packaging and On the Webpage Where Cards Are Sold

In an omission-based case like this, "a plaintiff will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *Anderson*, 500 F. Supp. 3d at 1006 (internal quotation marks and citation omitted). Thus, "[b]ecause such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff [sometimes] cannot point out the specific moment when the defendant failed to act." *Id.* "The plaintiffs do not have to point to a hypothetical, counterfactual piece of marketing in which the disclosure would have occurred." *Id.* at 1018 (collecting cases and discussing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). Instead, plaintiffs must plausibly allege that the defendant's pre-purchase disclosures would have altered their purchases. *Id.* Plaintiffs meet this standard.

Plaintiffs allege Vanilla should have disclosed the omissions on the Physical Cards' exterior packaging and on the site where it sells E-Cards. AC ¶ 14. Plaintiffs also allege that had Vanilla made these disclosures, they would have changed their purchasing decisions. *Id.* ¶¶ 96, 116, 118, 130–131, 133, 137.

A reasonable consumer would not miss a disclosure on its packaging and website that would cure Vanilla's omission: "A substantial likelihood exists that criminals will access and spend this Card's funds soon after purchase because our

12

data security procedures are inadequate and facilitate that access. If your Card value is stolen, we will try to avoid reimbursing those funds through lengthy and frustrating claims processes." Had such a warning been prominently displayed at the point of purchase, no Purchaser Plaintiff would have bought a Card.

### d. Vanilla's Omissions Caused Plaintiffs' Harm

"Plaintiffs . . . have suffered injury-in-fact and actual damages resulting from Vanilla's material omissions." AC ¶ 118; *see also id.* ¶¶ 132–34, 141–42, 148, 154. Had Vanilla made adequate disclosures, no Purchaser would have bought a Card (*id.* ¶¶ 116, 118, 132, 141), and no Recipient would have received a Card only to find that it would not hold Face Value (*id.* ¶ 148). Plaintiffs suffered harm because they purchased or received Cards that would not have been purchased with full disclosure of Vanilla's security vulnerabilities, its Cards' susceptibility to fraud, and its frequent unwillingness to reimburse for fraud.

### 2. Vanilla Owed Plaintiffs a Duty to Disclose Its Material Omissions

### a. Vanilla's omissions go to the Cards' central functionality.

Vanilla had a duty to disclose the material omissions. "[M]anufacturers may have a duty to disclose a defect when it affects the central functionality of a product." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 459 (N.D. Cal. 2018) (internal quotation marks and citation omitted). Here, Vanilla's

13

omissions go to a central functionality of Vanilla's Cards: the intended recipients' ability to use the Face Value of Cards to make purchases. *See* AC ¶ 4.

Vanilla's reliance on *Barrett* is misplaced. *See* Mot. at 22 (citing *Barrett v. Apple Inc.*, 2022 WL 2119131, at *11 (N.D. Cal. June 13, 2022)). In *Barrett*, the plaintiffs complained that Apple failed to disclose that its gift cards were used as part of scams in which a third party would encourage purchases of Apple gift cards and then transfer them to the scammers. *See Barrett*, 2022 WL 2119131, at *10. There, the plaintiffs failed to plead that the prevalence of those types of scams impeded the functionality of the cards: to act as a payment for Apple products and services for the intended recipients, which were the scammers themselves. *Id.* at *11. Unlike the *Barrett* plaintiffs, Plaintiffs *do* allege that Vanilla's omissions impede a central functionality of the card: to act as a form of payment *for the intended recipient*. That is, Plaintiffs are Purchasers or Recipients of Cards that are supposed to hold Face Value, specifically for Purchasers or Recipients to spend those funds. But, as a result of Vanilla's omissions, Plaintiffs did not know that the central function of the card—to act as a payment method in the amount of the Face Value—was impeded, and, therefore, that the Face Value of the card would not be available for Purchasers or Recipients to spend.

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

**b. Vanilla has superior knowledge of the omitted facts.**

Plaintiffs adequately plead a duty to disclose material facts if they allege that "the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff." *Apple Device Performance*, 347 F. Supp. 3d at 459 (citation omitted). Notably, pleading *superior* knowledge is sufficient to meet this exclusivity requirement. *Anderson*, 500 F. Supp. 3d at 1014–15 ("The defendant need not have literally been the sole holder of the knowledge. It is generally sufficient for defendants to have had 'superior knowledge' and for the information to have not been reasonably discoverable by the plaintiffs."). That is, "[a] defendant has exclusive knowledge giving rise to a duty to disclose when according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (internal quotation marks and citation omitted); *see also Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) (holding defendant "was in a superior position to know" of an alleged defect, and, thus, plaintiffs' pleading was "plainly sufficient"). "[C]ourts have looked to the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant." *Anderson*, 500 F. Supp. 3d at 1015 (citation omitted).

Plaintiffs plead Vanilla's superior knowledge of omitted facts and that Vanilla concealed that knowledge from Plaintiffs and the putative class. *See, e.g.*, AC ¶¶ 84–85 ("Vanilla knows that its Cards are extremely prone to access by Unauthorized Users . . . Vanilla knows this, at least in part, because it received hundreds if not thousands of complaints from its customers about depleted funds. Vanilla also knows that it could substantially decrease the incidence of Face Value theft if it chose to implement additional security protections.").

First, Plaintiffs could not have known that Vanilla was not using adequate security measures to keep Cards from losing Face Value prior to purchasing or receiving their Cards. No one but Vanilla would have information regarding balance inquiries for its Cards, including queries that automated computer programs made. *See* AC ¶¶ 71–73. Nor could a reasonable consumer know that Vanilla's balance-checking website lacked tools like CAPTCHA to prevent malicious access to the site prior to purchasing or receiving a Card—in part because no reasonable consumer would or could check for a card balance before they purchased or received a Card because they do not have access to the Cards' unique number until after purchase. *See* AC ¶¶ 75–76. While Vanilla argues that it is "widely reported" that gift cards generally are prone to fraud—and thus it had no duty to inform consumers that it does nothing to prevent that fraud—Vanilla fails

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

to acknowledge that it had superior knowledge regarding the true prevalence of fraud and its security failures.

### 3. Vanilla's Inadequate Data Security Caused Recipient Plaintiffs' Harm

Recipient Plaintiffs bring a UCL claim (the Fourth Claim for Relief), alleging that Vanilla's woefully lacking data security caused them to lose money. This claim specifically attributes Plaintiffs' losses to Vanilla's inadequate security measures.

#### a. Vanilla's inadequate data security facilitates Face Value theft.

As described in the Background Section, *supra*, Unauthorized Users need access to Vanilla's Card balance inquiry site to know when Cards are loaded with funds so that Unauthorized Users can then drain Cards of those funds in the time between the Cards' purchase and the initial attempts to use Cards. There are three security measures that Vanilla could have, but did not, take to prevent Unauthorized Users from having that necessary access to Vanilla's Card balance inquiry site. Vanilla's security lapses caused widespread theft of Cards' Face Value.

#### b. Plaintiffs lost Face Value due to Unauthorized Users' theft.

Each Plaintiff did not share Card information with anyone else, and Plaintiffs with Physical Cards maintained possession of their Cards. AC ¶¶ 18–22. The *first* time each Plaintiff tried to use a Card, the Card was missing all or a portion of the Face Value; the Cards were <u>not</u> depleted from Plaintiffs' use. *Id*. As Plaintiffs each plead, "[t]he only plausible explanation is that the Face Value of [each Plaintiff's]

17

Cards was depleted by an Unauthorized User(s)." Plaintiffs did not allow anyone to make charges on their Cards, but their Cards were missing funds when Plaintiffs *first* tried to use them. And Vanilla has not claimed that Plaintiffs' Cards were somehow never loaded with funds, which would have been a quick fix through customer service. The only plausible explanation for the losses is Unauthorized Users' theft. Indeed, Vanilla told Plaintiff Stewart that her "funds were most likely depleted due to fraudulent activity." *Id.* ¶ 21.

Accepting Plaintiffs' allegations as true, and drawing all reasonable inferences in their favor, Plaintiffs allege their losses are due to theft that Vanilla failed to guard against through reasonable data security measures used in the industry. *See Anderson*, 500 F. Supp. 3d at 1004.

**4. Plaintiffs State Valid Unfair Business Practices Claims**

Plaintiffs' UCL Unfair Business Practices claims are based on Vanilla's omissions (Third Claim for Relief) and its data security failures (Fourth Claim for Relief). Courts have widely recognized insufficient data security systems as satisfying the UCL's unfairness prong. *Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *24 (N.D. Cal. 2017); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014); *Svenson v. Google, Inc.*, 2015 WL 1503429, at *10 (N.D. Cal. Apr. 1, 2015).

18

In consumer cases like this, California courts continue to apply the test articulated in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999), to assess the sufficiency of claims made for unfair business practices, even after the California Supreme Court decision in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 183 (1999). In *Lozano v. AT&T Wireless Svcs., Inc.*, the Ninth Circuit held that "[i]n the absence of further clarification by the California Supreme Court," courts can apply either the *Cel-Tech* or *South Bay* test. 504 F.3d 718, 736 (9th Cir. 2007).

The *South Bay* test does not require a legislative purpose. Rather, a business practice is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet*, 72 Cal. App. 4th at 886–87. Vanilla's data security failures are substantially injurious to consumers. *See, e.g.*, *Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *24 (N.D. Cal. 2017) (applying *South Bay* test).

Plaintiffs' unfair business practices claim also satisfies the *Cel-Tech* test. California has clear legislative policy requiring reasonable data security practices for the Cards' numbers. CAL. CIV. CODE § 1798.100(e) ("A business that collects a consumer's personal information shall implement reasonable security procedures and practices . . . to protect the personal information from unauthorized or illegal

19

access, destruction, use, modification, or disclosure in accordance with Section 1798.81.5."); § 1798.81.5 ("[T]he purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."); § 1798.81.5(d)(1)(A)(iii) (defining "personal information" to include credit card numbers). Again, Vanilla does not employ reasonable security practices to protect the Cards' numbers, which satisfies the UCL unfairness prong.

## 5. Plaintiffs' Unjust Enrichment Claim Is Outside the Scope of Cardholder Agreements

Vanilla fails to show that Cardholder Agreements concern or relate to Plaintiffs' claim for Unjust Enrichment. "A valid contract defines the obligations of the parties *as to matters within its scope*, *displacing to that extent* any inquiry into unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (Am. Law Inst. 2011) (emphasis added); *see also In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) ("'Restitution claims of great practical significance' do arise 'in a contractual context' when the contract does not 'regulate the parties' obligations' in relevant part.") (quoting Restatement § 2 cmt. c). Thus, claims for unjust enrichment may proceed unless they challenge conduct within the scope of an applicable contract.

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Here, Plaintiffs' unjust enrichment claim is substantially focused on Vanilla's *pre-sale* conduct—namely its failing to disclose that Cards often do not hold their full Face Value because of Vanilla's inadequate data security. But for Vanilla's pre-sale omission of material information, Plaintiffs would not have purchased Cards, and Vanilla would not have profited from selling Cards with a substantial likelihood of being fraudulently depleted. Vanilla's Cardholder Agreements apply only to *post-sale* conduct.

### 6. Recipient Plaintiffs Have Standing

### a. Recipient Plaintiffs Each Suffered an Injury in Fact

Recipient Plaintiffs each "suffered an injury in fact." To confer standing, "a plaintiff must . . . demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Brod v. Sioux Honey Ass'n Co-op.*, 895 F. Supp. 2d 972 (N.D. Cal. 2012). Here, Vanilla's substandard and inadequate security measures rendered the Cards particularly vulnerable to fraud and likely to lose their value and purchasing power through none of Recipients' actions. Background Section, *supra*. Both Plaintiffs Cooper and Manier had purchasing power less than the Cards' Face Value when they tried to use their Cards. AC ¶¶ 19–20.

Defendant claims that Recipients lack standing because they did not purchase Cards and did "not rely on the supposedly incomplete communications"

OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

made at the time of purchase. Mot. at 21. But Recipient Plaintiffs do not claim their injuries are from affirmative statements made in marketing materials. Rather, their injuries stem from having their Card funds prematurely depleted due to fraudulent use as a result of Vanilla's lacking security measures. Recipient Plaintiffs did not have to purchase their Cards to suffer the injury in fact alleged.

### b. Recipient Plaintiffs Have Standing to Pursue UCL Claims

A person has standing to assert a UCL claim if that person "(1) suffered an injury in fact and (2) has lost money or property as a result of the unfair competition[.]" *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012 (S.D. Cal. 2009). "A plaintiff suffers an injury in fact for purposes of standing under the UCL when [they have] (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Id.* (cleaned up). That someone else purchased the product at issue does not limit a person's standing to assert UCL claims. *McVicar ex rel. Situated v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1050 (C.D. Cal. 2014). "[P]rivate standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Id.* at 1051.

Card Recipients are the parties *most* harmed by Vanilla's unfair business practices. Recipients are the ones who have claim to the Face Value of the Cards, whether they purchased the Cards for themselves or received the Cards as gifts. *See*

22

CAL. CIV. CODE § 1749.6(a) ("A gift certificate constitutes value held in trust by the issuer of the gift certificate on behalf of the beneficiary of the gift certificate. The value represented by the gift certificate belongs to the beneficiary[.]"). Thus, Recipients are the ones who lose out on the money that is supposed to be on the preloaded Cards when Vanilla's substandard security systems give way to unauthorized use, so Recipients have lost "money or property" resulting from Vanilla's unfair competition.

### 7. Plaintiffs Have Standing for Injunctive Relief

Plaintiffs have standing to pursue their injunctive relief claims because they raise the reasonable inference that they are unable to rely on Vanilla's representations in the future. "Past wrongs, though insufficient by themselves to grant standing, are evidence bearing on whether there is a real and immediate threat of repeated injury." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (internal quotation marks and citation omitted). The Ninth Circuit identified two categories of allegations sufficient to confer standing for injunctive relief in this context: (1) where a plaintiff alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to;" and (2) where a consumer plausibly alleges that "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the

23

product was improved." *Id.* at 969–70, 971 (finding plaintiff had standing to bring a claim for injunctive relief under the UCL and CLRA).

Plaintiffs allege that Vanilla will continue to employ inadequate security practices that fail to safeguard the Face Value of their Cards without disclosing that to consumers. AC ¶ 108. Plaintiffs provide a sample of the hundreds of complaints about Vanilla's failure to secure its Cards—yet Vanilla has done nothing to remedy the issue. *See* AC ¶¶ 44–46. Plaintiffs specifically allege that there is no way for them to know whether Plaintiffs intend to (or will) remedy its security defects, and, thus, sufficiently allege that they "will be unable to rely on the product's advertising or labeling in the future," although they may purchase more Cards. *Davidson*, 889 F.3d at 969.

## CONCLUSION

Plaintiffs respectfully request that the Court deny the Motion or, in the alternative, grant Plaintiffs leave to amend to cure any deficiencies.

DATED this 15th day of May, 2023.

**LIPPSMITH LLP**

By: */s/ Graham B. LippSmith*
Graham B. LippSmith (SBN 221984)
g@lippsmith.com
MaryBeth LippSmith (SBN 223573)
mb@lippsmith.com
Jaclyn L. Anderson (SBN 258609)
jla@lippsmith.com
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Tel: (213) 344-1820 / Fax: (213) 513-2495

24

1

2

**TOUSLEY BRAIN STEPHENS PLLC**

3

By: */s/ Jason T. Dennett*

Jason T. Dennett (WSBA #30686),

4

*Pro Hac Vice*

jdennett@tousley.com

5

Kaleigh N. Boyd (WSBA #52684),

*Pro Hac Vice*

6

kboyd@tousley.com

1200 Fifth Avenue, Suite 1700

7

Seattle, WA 98101

Tel: (206) 682-5600 / Fax: (206) 682-2992

8

9

*Attorneys for Plaintiffs and the Putative Classes*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

25