Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
pvogel@pbwt.com
Basil Williams (*pro hac vice*)
bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CAROLYN CLARK, et al.,

Plaintiffs,

v.

INCOMM FINANCIAL SERVICES, INC.,

Defendant.

Case No.: 5:22-CV-01839-JGB-SHK

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S MOTION TO DISMISS**

Hon. Jesus G. Bernal

Date: June 5, 2023
Time: 9:00 a.m.
Courtroom: 1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ........................................................................................................ 2

I. The CLRA and UCL "Unlawful Business Practices" Claims Must Be Dismissed ........................................................................................................ 2

A. Plaintiffs Do Not Adequately Plead that InComm's Security Practices Were Deficient ........................................................................ 2

B. Plaintiffs Do Not Adequately Plead that Their Cards Were Subject to Unauthorized Use Caused by Security Defects .................. 5

C. Plaintiffs Do Not Adequately Plead that InComm Deliberately Provided Deficient Customer Service ................................................ 6

D. Plaintiffs Do Not Claim that They Would Have Seen the "Omitted" Information If InComm Had Disclosed It .......................... 7

E. Plaintiffs Do Not Allege Facts Establishing that InComm Had a Duty to Disclose Anything It Purportedly Omitted ............................ 8

II. The UCL "Unfair Business Practices" Claims Must Be Dismissed ............ 10

III. Plaintiffs Cannot Maintain an Unjust Enrichment Claim ............................ 12

IV. Plaintiffs Have No Standing to Seek Injunctive Relief ................................ 12

CONCLUSION .................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Adobe Sys., Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........ 10

*Ajzenman v. Off. of Comm'r of Baseball*,
492 F. Supp. 3d 1067 (C.D. Cal. 2020) ........ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Calixte v. Walgreens Co.*,
2023 WL 2612595 (N.D. Ill. Mar. 23, 2023) ........ 6

*Choon's Design, LLC v. ContextLogic Inc.*,
2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) ........ 12

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
2021 WL 3878654 (9th Cir. Aug. 31, 2021) ........ 12

*Colony Cove Props., LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011) ........ 3

*Cork v. CC-Palo Alto, Inc.*,
534 F. Supp. 3d 1156 (N.D. Cal. 2021) ........ 4

*Grimstad v. FCA US, LLC*,
2018 WL 6265087 (C.D. Cal. May 24, 2018) ........ 9

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........ 9

*McVicar v. Goodman Glob., Inc.*,
1 F. Supp. 3d 1044 (C.D. Cal. 2014) ........ 11, 12

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ........ 8

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
72 Cal. App. 4th 861 (Cal. Ct. App. 1999) ........ 10

*Simon v. SeaWorld Parks & Ent., Inc.*,
2022 WL 1594338 (S.D. Cal. May 19, 2022) ........ 7, 8

*Svenson v. Google Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .......... 10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 10

**Statutes**

Cal. Bus. & Prof. Code § 17204 .......... 11

Cal. Civ. Code § 1798.81.5(d)(1)(A)(iii) .......... 11

InComm respectfully submits this Reply Memorandum of Points and Authorities in further support of its Motion to Dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

Federal court is not a forum for plaintiffs to make marginally educated guesses, in the hopes that discovery will one day prove them true. Yet in their Amended Complaint, Plaintiffs have once again done just that. And once again, having been called out in a motion to dismiss, their opposition retreats from the most outlandish theories and attempts vainly to salvage the others. For example, it turns out that many of the "possibl[e]" security flaws detailed in the Amended Complaint are just there for "context," and are ***not*** the basis of Plaintiffs' claims. Instead, Plaintiffs now explain, the basis for their claims is their speculation that InComm's balance-checking website is insufficiently secure, and their suspicion that this accounted for their own cards' depletion.

The trouble is that, after several chances, Plaintiffs' claims of "security flaws" are still just guesses. They vaguely accuse InComm of failing to monitor user activity on its website, but offer no facts to support that accusation. They suggest, absurdly, that InComm might be better off scrapping the website altogether and using a phone hotline instead. And they claim that InComm does not use CAPTCHA on the website, which is both speculative and demonstrably wrong, as InComm's opening brief showed. In their opposition, Plaintiffs scramble to create a "disputed fact" on this point by offering an improper after-the-fact declaration from one of their lawyers, who claims to have recently visited the website without encountering a CAPTCHA challenge. That suggests, at most, that not every user sees a challenge on every visit. But Plaintiffs have never alleged that InComm could or should improve its security by issuing ***indiscriminate*** CAPTCHA challenges, as opposed to tailoring challenges to specific circumstances. Their Amended Complaint alleged

[1] Capitalized terms not defined here have the same meaning as in InComm's opening brief, ECF No. 45 ("MTD").

that InComm exposed its products to fraud by failing to use CAPTCHA ***at all***. That claim is speculative and false, and Plaintiffs' belated declaration does nothing to revive it.

Weak though they are, Plaintiffs' speculative allegations of a "security flaw" are not even the weakest link in their Amended Complaint. For other elements of their claims, Plaintiffs offer no factual allegations at all. Plaintiffs' Amended Complaint is bereft of facts suggesting (1) that InComm's security falls short of any "industry standard"; (2) that Plaintiffs read and relied on any of the communications from which InComm supposedly omitted information; or (3) that InComm had a duty to make any such disclosures. In their opposition, they sidestep or ignore these oversights, each of which is fatal to their Amended Complaint.

## ARGUMENT

Plaintiffs do not dispute that their pleading is subject to the Rule 9(b) standard. Instead of resisting this conclusion, Plaintiffs invite it: The first sentence of their opposition accuses InComm of "defraud[ing] people." Opp'n to Mot. to Dismiss Am. Compl. ("Opp'n") at 1, ECF No. 46. That sentence sets the tone for the opposition, which—like the Amended Complaint and the original Complaint—offers nothing more than speculation and bare legal conclusions.

### I. The CLRA and UCL "Unlawful Business Practices" Claims Must Be Dismissed

#### A. Plaintiffs Do Not Adequately Plead that InComm's Security Practices Were Deficient

As Plaintiffs' opposition confirms, their core contention is that InComm failed to inform consumers of the fact that "[its] data security practices are inadequate and facilitate [] access" by "criminal[s]." Opp'n at 12-13; *see also id.* at 18 (arguing that InComm "fail[ed] to [employ] reasonable data security measures used in the industry"). Yet as their opposition also confirms, they have nothing to offer in support of that claim but an ever-changing menu of undeveloped theories. In their

latest brief, Plaintiffs abandon their speculative assertions about "ways Unauthorized Users could obtain Card data," saying that these are "***not*** the security flaws on which Plaintiffs base their claims." *Id.* at 3 (emphasis added). Instead, they now stake their claim on three security practices that they say InComm "could" employ to get its website security up to snuff, but purportedly does not. *Id.* at 4-5.

This latest round of theories is just as vague and speculative as the last. Plaintiffs first suggest that InComm should have done away with the website and replaced it with a ***phone hotline***. But Plaintiffs do not and cannot allege that this drastic measure comports with the "industry standard," or that the purported security benefits of this switch would outweigh its tremendous added inconvenience. For that matter, they allege no facts to suggest that the switch to an old-fashioned phone line would improve security at all.

Plaintiffs also offer two armchair recommendations as to how InComm could, in their estimation, have improved the security of the website itself. First, they posit that InComm "could" deter fraudsters by "monitor[ing] its website for balance inquiries on unactivated cards." Am. Compl. ¶ 79, ECF No. 44. But the notion that InComm has failed to do this is pure conjecture (which also happens to be false), and Plaintiffs offer no facts to support it. Nor do they allege any facts about the "industry standard" for monitoring. Claims of this sort, which are "no more than conclusions, are not entitled to the assumption of truth." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).

Plaintiffs' second idea for a security improvement that InComm "could" implement on its website is CAPTCHA. Again, however, the claim that InComm has failed to use CAPTCHA on its website is facially improbable, unsupported by factual allegations, and simply wrong—as InComm showed through content from the website itself. MTD at 8; Metcalf Decl. Ex. C, ECF No. 45-4. In their opposition, Plaintiffs protest at length that the Amended Complaint's misrepresentations of the website did not violate Rule 11, *see* Opp'n at 5-6, but that

question is not presented by InComm's motion, which seeks only dismissal. Whether or not a complaint grounded in unsubstantiated and incorrect speculation triggers sanctions under Rule 11, it definitely cannot survive dismissal under Rule 12.

Plaintiffs also attempt to salvage their CAPTCHA theory by offering an after-the-fact declaration from their attorney, Mr. Dennett, who now claims that he did not encounter a CAPTCHA challenge on his own visit to the website. This is improper, given that Plaintiffs could have included this account in their initial or Amended Complaint. Even better, they could have included allegations about the actual ***Plaintiffs'*** visits to the website, a subject on which their Amended Complaint is silent. Instead, they chose to make a false and unsupported allegation about the InComm website, then backtrack with an untimely declaration once called out. A complaint cannot be a constantly moving target. *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n.8 (N.D. Cal. 2021) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). This Court should reject Plaintiffs' belated attempt at an unauthorized amendment.

Even if the Court considers Mr. Dennett's declaration, it does not create a disputed "issue of fact" as to the assertions in Plaintiffs' Amended Complaint. There, Plaintiffs alleged that InComm did not "[e]mploy[] CAPTCHA" on its balance-inquiry site, period. Am. Compl. ¶ 77. That is wrong, as shown by the appearance of CAPTCHA challenges on the balance-inquiry site. At most, counsel's belated declaration suggests that the website deploys CAPTCHA challenges to a subset of visitors, rather than doing so indiscriminately. If Plaintiffs consider this targeted issuance of CAPTCHA challenges to be a security "flaw," they had two opportunities to so allege, and did not do so. In fact, neither of their complaints alleged anything at all about the frequency of InComm's CAPTCHA challenges, the relationship between targeted CAPTCHA issuance and security, or the standard in

the industry for frequency of CAPTCHA challenges. They alleged only that InComm failed to "[e]mploy[] CAPTCHA," which was wrong. *Id.* They cannot now swap that claim out for yet another, equally unsupported theory about the methodology by which InComm deploys CAPTCHA challenges.[2] After multiple tries, Plaintiffs still have nothing but wild guesses to support their claim of a "security flaw," and should not be permitted to make any more.

**B. Plaintiffs Do Not Adequately Plead that Their Cards Were Subject to Unauthorized Use Caused by Security Defects**

Plaintiffs' failure to allege the existence of a "security flaw" in the Vanilla Gift Cards is fatal to their Amended Complaint. But they have also failed to "attribute their own Cards' loss in value to [InComm's] inadequate security measures," another defect that this Court recognized as dispositive. Order at 7, ECF No. 41.

As an initial matter, it remains unclear that the "loss in value" of Plaintiffs' cards was attributable to fraudulent interference at all. Plaintiffs give no reason why, despite repeated invitations, they have declined to support their claims of third-party fraud with any specific information about their cards, or about the transactions that they believe were unauthorized. *See* MTD at 3-5, 12-13. Meanwhile, the scant

[2] It is also not self-evident that universal deployment of CAPTCHA challenges is indicative of stronger security than targeted deployment. For example, perhaps Mr. Dennett did not encounter a CAPTCHA challenge because InComm's servers recognized, based on his IP address or other factors, that he was likely a human user rather than an "automated computer program." *See* Dennett Decl. ¶¶ 2-3, ECF No. 46-1; Am. Compl. ¶¶ 73-74. Such targeting of CAPTCHA challenges depending on threat level suggests ***more*** sophisticated security than indiscriminate deployment of such challenges. It also casts doubts on another of Plaintiffs' theories, by suggesting that in fact InComm "monitor[s]" user patterns on its website after all. Opp'n at 4. However, because Plaintiffs have made no allegations of any kind about the security consequences of targeted versus universal CAPTCHA challenges, the Court need not delve into this question.

allegations that they reference in their opposition, *see* Opp'n at 17-18 (citing Am. Compl. ¶¶ 18-22), do not support the inference of third-party fraud. Ms. Clark, for example, does not even expressly plead that her card's balance was depleted. *See* Am. Compl. ¶ 18. All she says is that the card was "rejected" and that the issue had not been resolved when she later tried to use the card again. *Id.* Similarly, each of the Recipients alleges that she did not share the card information with others. *See id.* ¶¶ 19-20. But the Recipients say nothing about whether the individuals who gave them the cards (who are not named or described) might have done so. In short, it remains no more than a "sheer possibility" that any Plaintiff's card balance was misappropriated by third parties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The problems do not end there. Even assuming Plaintiffs were victims of third-party fraud, they have alleged no facts whatsoever connecting their experiences to "[***InComm's***] inadequate ***security measures***," as this Court and others have required. Order at 7 (emphasis added); *see also Calixte v. Walgreens Co.*, 2023 WL 2612595, at *4 (N.D. Ill. Mar. 23, 2023) (dismissing similar complaint for, among other reasons, failure to allege "facts supporting his assertion that security vulnerabilities were the reason funds were taken from *his* gift cards" (emphasis in original)). No Plaintiff identifies unauthorized charges, for example, that occurred "quickly" after her card was activated, which would at least be consistent with Plaintiffs' theory about how malefactors exploit vulnerabilities on the balance-inquiry site. *See* Am. Compl. ¶ 69. Plaintiffs have therefore failed to cure this defect of their initial Complaint.

### C. Plaintiffs Do Not Adequately Plead that InComm Deliberately Provided Deficient Customer Service

Plaintiffs do not attempt to defend the Amended Complaint's conclusory allegations that InComm "intentionally erect[ed] barriers to reimbursement" in their opposition. *Id.* ¶ 96; *see also* MTD at 17-19. Instead, they vaguely reiterate their allegations that some of them spent a long time dealing with InComm's customer

service. Opp'n at 7. InComm strives for promptness and efficiency, and regrets that Plaintiffs were evidently not satisfied with their experiences. But Plaintiffs' allegations do not remotely suggest that InComm "intentionally" avoids providing reimbursement to deserving cardholders. In fact, the sources incorporated in Plaintiffs' pleading demonstrate just the opposite, revealing that InComm has an exemplary customer service record and provides refunds with regularity. *See* MTD at 18-19. Plaintiffs have offered no facts to support their theory of "intentional" avoidance, and though InComm sympathizes with their apparent frustration at being put on hold for a long time, that does not salvage their CLRA claims.

### D. Plaintiffs Do Not Claim that They Would Have Seen the "Omitted" Information If InComm Had Disclosed It

For the reasons described above, Plaintiffs have not adequately alleged any security deficiency or other shortcoming that InComm omitted from its communications. But they have also not alleged that they relied on any of those communications when deciding to buy the Vanilla Gift Cards. This dooms the Purchaser Plaintiffs' claim to standing under the CLRA and UCL. (The Recipient Plaintiffs, whose claims arise only under the "unfair" prong of the UCL, lack standing for an additional reason, discussed *infra* at 11-12.)

In their opposition, Plaintiffs cagily claim "that they would not have purchased the Cards . . . ***had they known***" about the cards' supposed security limitations. Opp'n at 10 (emphasis added). But this response assumes away the predicate question of ***whether***, in fact, the Plaintiffs would have learned about the purportedly omitted facts if InComm had included them in its consumer-facing representations. To clear that hurdle, Plaintiffs must identify "what representations [they] reviewed and relied on before making [their] [purchasing] decisions," which they have failed to do. *Simon v. SeaWorld Parks & Ent., Inc.*, 2022 WL 1594338, at *4 (S.D. Cal. May 19, 2022). As courts have repeatedly concluded, a consumer plaintiff lacks standing to challenge the "omission" of information from a

representation that she does not claim to have read or relied upon. *See id.* (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)); *see also* MTD at 20 (collecting cases).

Plaintiffs urge the Court to disregard those cases because they involved products that had "some utility" to the plaintiffs who purchased them, whereas the Vanilla Gift Cards were purportedly "useless." Opp'n at 11. It is false that the risk of fraud rendered the Vanilla Gift Cards "useless," but more importantly, it is irrelevant. Reliance does not turn on the objective value or "utility" of the product a plaintiff bought; it depends on the representations that she subjectively considered and valued when deciding whether to buy it. *See, e.g.*, *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (actual reliance requires, among other things, an allegation that the plaintiff "heard, read, or saw" the disputed representation, and that it caused her to "purchas[e] the product for more money" than she otherwise would have). Plaintiffs' Amended Complaint offers no allegations on this key point.

**E. Plaintiffs Do Not Allege Facts Establishing that InComm Had a Duty to Disclose Anything It Purportedly Omitted**

Plaintiffs have also failed to allege either of the factual predicates necessary to establish that InComm had a "duty to disclose" the purportedly omitted information. This is yet another fatal defect of their Amended Complaint.

*First*, Plaintiffs do not and cannot allege that the purported omission concerned a defect central to the product's functionality. As one California court has already held, the alleged susceptibility of a gift card to fraud does not constitute such a defect. *See* MTD at 22 (citing *Barrett v. Apple Inc.*, 2022 WL 2119131, at *11 (N.D. Cal. June 13, 2022)). Plaintiffs' attempt to distinguish *Barrett* by defining the "central functionality" of Vanilla Cards as "a form of payment ***for the intended recipient***" only, *see* Opp'n at 14 (emphasis added), is unavailing. A key feature of the Vanilla Gift Cards is that they are not linked to designated individuals, and can be transferred to new users as easily as cash. *Id.* at 11. Plaintiffs acknowledge this

elsewhere, asserting that "a Card's ***sole function*** is to purchase goods and services—it is a ***cash-equivalent and has no other utility***." *Id.* (emphasis added). Here, as in *Barrett*, Plaintiffs do not and cannot allege that their cards failed to discharge this function. Accordingly, they have not alleged that the supposed defect implicated the cards' "central functionality," such that InComm had a duty to disclose it.

*Second*, Plaintiffs have not alleged InComm's exclusive knowledge of the information at issue. Though Plaintiffs say it is enough to allege that InComm had merely "superior" knowledge, *id.* at 15, the Ninth Circuit has endorsed the "exclusive knowledge" standard as "the better reading of California law." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 n.5 (9th Cir. 2018). In any event, Plaintiffs cannot satisfy either standard. *See* MTD at 22-23. In their opposition, they point to their allegations of online "complaints" about Vanilla Gift Card fraud, which they claim provided InComm with "superior knowledge" of the cards' vulnerability. Opp'n at 16 (citing Am. Compl. ¶¶ 84-85). But all the complaints show is that there is ***some*** risk of fraud on the Vanilla Gift Cards, as there is with any other payment product. Reasonable consumers already know that. *Cf.* Am. Compl. ¶¶ 55, 73 (discussing public awareness of card fraud). And even if these complaints offered any insight to consumers, they were readily available on such public sites as Sitejabber, Pissedconsumer, and Trustpilot. *Id.* ¶¶ 44-46. Whatever "knowledge" InComm could have gleaned from these complaints was not "superior" or "exclusive" at all.

Plaintiffs also suggest that, even if consumers knew there was ***some*** risk of fraud, InComm "had superior knowledge regarding the true prevalence" of the issue. Opp'n at 17. But that claim is not backed up by any particularized allegation in the Amended Complaint. Nowhere have Plaintiffs attempted to explain what "true prevalence" means, how InComm knew it, or what InComm was supposed to have disclosed about it. Plaintiffs' reliance on "conclusory allegations that [the] defendant has superior knowledge" is inadequate. *Grimstad v. FCA US, LLC*, 2018 WL 6265087, at *7 (C.D. Cal. May 24, 2018). Thus, for two independent reasons,

Plaintiffs have failed to allege that InComm had a duty to disclose the cards' purported susceptibility to fraud.

**II. The UCL "Unfair Business Practices" Claims Must Be Dismissed**

InComm has explained that Plaintiffs' UCL "unfair" claims overlap entirely with their inadequate "unlawful" claims and so should be dismissed. MTD at 23. Plaintiffs ignore, and therefore concede, this point. Moreover, the attempt that Plaintiffs do make to defend their "unfairness" claims is unavailing.

First, Plaintiffs cite a trio of irrelevant decisions about breaches of consumers' personal data. Opp'n at 18. Each of those cases involved violations of some objective measure of fairness, such as the defendant's own policies or well-pleaded industry standards. In *Svenson*, plaintiffs alleged that the defendant deliberately shared customers' data in violation of its own privacy policy. *Svenson v. Google Inc.*, 2015 WL 1503429, at *1 (N.D. Cal. Apr. 1, 2015). The *Yahoo!* plaintiffs similarly alleged that the defendants "violated [their] own privacy policy" and admitted to failing to remedy a data breach. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *3, *5, *24 (N.D. Cal. Aug. 30, 2017). And in *Adobe*, the defendant allegedly violated its own license agreement and failed to implement "a number of specific industry-standard security measures." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1206-07, 1227, 1232 (N.D. Cal. 2014). Thus, each case involved specific, judicially manageable standards for "fairness." Plaintiffs' Amended Complaint identifies no such standard.

Second, Plaintiffs ask the Court to apply the amorphous *South Bay* standard, which invites the Court to weigh "the utility of the defendant's conduct against the gravity of the harm," *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (Cal. Ct. App. 1999) (internal quotation marks omitted), and which many California courts have rejected as insufficiently rigorous, *see Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1080-81 (C.D. Cal. 2020) (collecting cases). But Plaintiffs do not even satisfy that standard. For example,

Plaintiffs propose that InComm ***eliminate its balance-inquiry webpage entirely*** and replace it with a phone hotline, but fail to explain why the supposed security benefits of that regressive measure would outweigh its substantial diminution of the customer experience. For that matter, they do not allege facts suggesting that a phone line would be ***any*** less prone to fraudulent access than a website. Plaintiffs' claims therefore fail even under *South Bay*.

Third, Plaintiffs attempt to satisfy the *Cel-Tech* inquiry by reference to Cal. Civ. Code § 1798, which Plaintiffs claim embodies a "legislative policy requiring reasonable data security practices for" the maintenance of "personal information," including "credit card numbers." Opp'n at 19-20 (citing Cal. Civ. Code § 1798.81.5(d)(1)(A)(iii)). But as discussed above, Plaintiffs have disavowed any claim against InComm based on its "data security practices" with respect to card information, in favor of their equally vague claims about its balance-inquiry website. *See supra* at 2-5; Opp'n at 3. What is more, Plaintiffs' argument misrepresents the statute, which defines card numbers as "personal information" ***only when combined*** with "the individual's last name." *See* Cal. Civ. Code § 1798.81.5(d)(1)(A)(iii). Plaintiffs' reliance on this statute is therefore woefully misplaced.

Finally, the Recipients' "unfair" claims should be dismissed for all the same reasons, and also because they cannot meet the UCL's basic prerequisite to standing: a loss of money or property. MTD at 21; Cal. Bus. & Prof. Code § 17204. The Recipients did not purchase any cards, and have therefore lost nothing. And while disappointment with a gift may be frustrating, it is not a cognizable harm under the UCL. Plaintiffs' reliance on *McVicar* for the proposition that one can assert UCL claims even if "someone else purchased the product" is misplaced. Opp'n at 22 (citing *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1050 (C.D. Cal. 2014)). There, the court emphasized that although someone else had made the purchase, it was the plaintiffs who "***paid for***, and were stuck with," the defective product.

*McVicar*, 1 F. Supp. 3d at 1051 (emphasis added). Because the Recipients here did not pay for the cards, *McVicar* is of no use to them.

**III. Plaintiffs Cannot Maintain an Unjust Enrichment Claim**

As InComm argued, Plaintiffs continue to offer no particularized allegations supporting a claim for unjust enrichment. MTD at 24. Plaintiffs ignore this argument, and do not even attempt in their opposition to identify such allegations. Opp'n at 20-21. This is enough to dismiss the claim. Plaintiffs' unjust enrichment claim should also be dismissed as derivative of their failed UCL and CLRA claims. *See*, *e.g.*, *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 n.4 (N.D. Cal. Nov. 24, 2020).

Plaintiffs also give no reason why their unjust enrichment claims should proceed despite the existence of written contracts. They argue that the claim is "[o]utside the [s]cope" of the Cardholder Agreements because it is "substantially focused on Vanilla's *pre-sale* conduct." Opp'n at 20-21 (emphasis in original). But Plaintiffs cannot rely upon the "scope" of the relevant agreements after refusing to "explain what the Cardholder Agreement covers," as the Court requested, or even to provide information enabling InComm to do so. Order at 8. This is yet another basis for dismissing their unjust enrichment claim.

**IV. Plaintiffs Have No Standing to Seek Injunctive Relief**

Plaintiffs essentially concede this point. *See* Opp'n at 23-24. Though they insist that "they ***may*** purchase more Cards," *id.* at 24 (emphasis added); *see also* Am. Compl. ¶ 108, equivocal statements of this sort are inadequate to establish an "actual or imminent threat of future harm." *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021).

**CONCLUSION**

For these reasons, InComm respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Respectfully submitted,

Dated: May 22, 2023

By: */s/ William A. Delgado*

William A. Delgado (SBN 222666)
wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
pvogel@pbwt.com
Basil Williams (*pro hac vice*)
bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for InComm Financial Services, Inc., certifies that this brief is twelve pages, which complies with the page limit set by Court order dated October 20, 2022.

Dated: May 22, 2023

By: */s/ William A. Delgado*

William A. Delgado (SBN 222666)
wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
pvogel@pbwt.com
Basil Williams (*pro hac vice*)
bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.