UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1839 JGB (SHKx)** | Date | July 17, 2023 |
|---|---|---|---|
| Title | *Carolyn Clark, et al. v. InComm Financial Services, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| TANISHA CARRILLO | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**  Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendant's Motion to Dismiss (Dkt. No. 45); and (2) VACATING the July 24, 2023 Hearing (IN CHAMBERS)

  Before the Court is Defendant InComm Financial Services, Inc.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ("Motion," Dkt. No. 45.)  The Court determines this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART and DENIES-IN-PART** the Motion.  The Court **VACATES** the July 24, 2023 hearing.

## I.  BACKGROUND

  On October 18, 2022, Plaintiffs Carolyn Clark, Shelby Cooper, Sharon Manier, Tarika Stewart, and Aquilla Thompson (collectively, "Plaintiffs") filed a class action complaint against Defendant InComm Financial Services, Inc., doing business as Vanilla Gift ("Defendant" or "Vanilla").  ("Complaint," Dkt. No. 1.)  On December 14, 2022, Defendant moved to dismiss the Complaint.  (Dkt. No. 23.)  On March 16, 2023, the Court granted Defendant's motion to dismiss and granted Plaintiffs leave to amend.  ("MTD Order," Dkt. No. 41.)

  On April 7, 2023, Plaintiffs filed a first amended complaint.  ("FAC," Dkt. No. 44.)  The FAC asserts causes of action for violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and unjust enrichment.  (See id.)

On April 28, 2023 Defendant moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  (See Motion.)  In support of the Motion, Defendant filed a declaration of Jane Metcalf ("Metcalf Decl.," Dkt. No. 45-1) and attached exhibits ("Metcalf Exs. A–G," Dkt. No. 45-2–8).  On May 15, 2023, Plaintiffs opposed the Motion.  ("Opposition," Dkt. No. 46.)  In support of the Opposition, Plaintiffs filed a declaration of Jason Dennett.  ("Dennett Decl.," Dkt. No. 46-1.)  On May 22, 2023, Defendant replied.  ("Reply," Dkt. No. 47.)

## II.   FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion.  See Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004).

Vanilla sells preloaded Visa and MasterCard debit cards ("Card(s)") that can be purchased online or in retail stores across the country.  (FAC ¶ 1.)  Purchasers can buy a physical card or a virtual "e-gift" card with any face value ("Face Value") between $10 and $500.  (Id. ¶ 2.)  Vanilla charges Purchasers a fee for each Card purchased.  (Id. ¶ 31.)  These fees range from $2.95 to $9.95 depending on the Face Value of the Cards, when the Cards were purchased, and the number of Cards purchased.  (Id.)

Plaintiffs each purchased or received Cards that had no value or less value than the purported Face Value of the Cards.  (Id. ¶ 4.)  When Plaintiffs first attempted to use their Cards, they discovered that the Face Value was partially or fully depleted by unknown third parties ("Unauthorized Users").  (Id. ¶¶ 5–6.)  Plaintiffs did not share their Card information with anyone else.  (Id. ¶¶ 18–22.)  Plaintiffs who had physical Cards did not let those Cards out of their possession at any time.  (Id. ¶¶ 19–21.)  The only plausible explanation is that the Face Value of the Cards Plaintiffs purchased or received were depleted by Unauthorized Users.  (Id. ¶¶ 18–22.)  Plaintiffs asked Vanilla to reimburse the full Face Value of their depleted Cards, but Vanilla did not do so.  (Id. ¶ 7.)

Plaintiffs' experiences are not isolated incidents.  (Id. ¶ 8.)  Purchasers and Recipients across the country report on multiple websites that their Cards contain less than Face Value and that their online Vanilla accounts show purchases by Unauthorized Users.  (Id.)  They further complain that Vanilla failed to reimburse them and that Vanilla's customer service seemed intentionally designed to frustrate attempts to be reimbursed.  (Id.)

Plaintiffs Shelby Cooper and Sharon Manier seek to represent a "Recipient Class" of "[a]ll California residents who are Recipients of any Vanilla gift card that, through no action by the Recipient, had less than the Face Value amount of funds when they went to use the card."  (Id. ¶ 99.)  Plaintiffs Carolyn Clark, Tarika Stewart, and Aquilla Thompson seek to represent a

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

"Purchaser Class" of "[a]ll California residents who are Purchasers of a Vanilla gift card that, through no action by the Purchaser or Recipient, had less than the Face Value amount of funds when either the Purchaser or a Recipient went to use the funds on the card." (Id.)  Each of the Plaintiffs and putative class members suffered injury because "the Card they purchased and/or received had charges made against it by Unauthorized Users, and Vanilla did not refund the missing amount of Face Value, or the fees associated with purchasing the Cards." (Id. ¶ 23.)

Through these complaints, Vanilla has known for years that the Face Value of their Cards is insecure. (Id. ¶ 9.)  In continuing to sell Cards while knowing that their Face Value is insecure, Vanilla fraudulently omits three material facts:  First, Vanilla omits that the Cards commonly have less value than their Face Value due to theft. (Id. ¶¶ 10–11.)  Second, Vanilla omits that Unauthorized Users exploit a specific flaw in Vanilla's data security measures that allow them to access and spend the Face Value of Plaintiffs' Cards before Plaintiffs can. (Id. ¶ 12.)  Third, Vanilla omits that it avoids reimbursing Purchasers and Recipients for fraud losses when they occur. (Id. ¶ 13.)  Vanilla should have disclosed these facts on the exterior packaging of physical cards and on their website through which it sells virtual cards. (Id. ¶ 14.)  No reasonable consumer, including Plaintiffs, would intentionally buy gift cards that are vulnerable to fraud and is therefore likely to contain less than their Face Value. (Id. ¶ 15.)  Rather than implementing additional security measures that would decrease or eliminate fraud, Vanilla shifts the risk of loss to its consumers. (Id. ¶ 16.)

Vanilla is responsible for every plausible explanation for how Unauthorized Users steal the Cards' Face Value.  First, Vanilla employees or contractors could be using their position within Vanilla to obtain access to Card numbers, expiration dates, and Card Verification Value ("CVVs") security codes. (Id. ¶¶ 48, 51.)  Second, Vanilla's electronic databases of Card information could have been subject to a cyberattack because Vanilla failed to implement adequate data security. (Id. ¶ 52.)  Finally, Vanilla's algorithm for creating Card numbers, expiration dates, and CVVs could have been cracked such that Unauthorized Users have access to that information. (Id. ¶¶ 58–60.)  It is only after Cards are activated, either in-person for physical cards or when a Recipient receives a link for virtual cards, that the Face Value becomes available for use. (Id. ¶ 62.)  Unauthorized Users use a computer program to constantly monitor Vanilla's website for newly activated Cards, and then spend the Face Value as soon as the balance is available. (Id. ¶¶ 63–69.)  Vanilla could monitor and prevent computer programs from monitoring its website for unactivated Cards. (See id. ¶ 79.)

### III. LEGAL STANDARD

### A. Rule 12(b)(1)

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B. Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and

plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).

## IV. DISCUSSION

Plaintiffs bring five causes of action. (See FAC.) On behalf of Clark, Stewart, and Thompson, and the proposed Purchaser Class, Plaintiffs assert a violation of the CLRA (Count One); violation of the UCL's "unlawful" prong (Count Two); violation of the UCL's "unfair" prong (Count Three); and unjust enrichment (Count Five). (Id.) On behalf of Cooper and Manier, and the proposed Recipient Class, Plaintiffs assert a violation of the UCL's "unfair" prong (Count Four). (Id.) Defendant moves to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6). (See Motion.)

### A. CLRA's Notice Requirement

Defendant argues that Plaintiffs failed to comply with the pre-suit notice provision of the CLRA and so the CLRA claim must be dismissed. (See Motion at 13.) Specifically, Defendant contends that Plaintiffs sent the notice letter on the same day they filed the Complaint and did not provide enough time or information for Defendant to correct or replace the allegedly defective product. (See id. at 3, 13; see also Metcalf Exs. A–B.) By failing to respond to these arguments in their Opposition, Plaintiffs waive them. See Garcia v. City of Los Angeles, 611 F. Supp. 3d 918, 933 n.17 (C.D. Cal. 2020); Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

Under the CLRA, thirty days or more before filing an action for damages,[2] a plaintiff must notify the person alleged to have committed a CLRA violation and demand that the person

---

[2] Notice is not required where a plaintiff seeks only injunctive relief. Cal. Civ. Code § 1782(d). "Section 1782(d) allows a plaintiff to file a complaint for injunctive relief under the

"correct, repair, replace or otherwise rectify" the alleged violation. Cal. Civ. Code § 1782(a). No action for damages may be maintained "if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." Id. § 1782(b). "The purpose of the notice requirement of section 1782 is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements." Outboard Marine Corp. v. Superior Ct., 124 Cal. Rptr. 852, 858 (Cal. Ct. App. 1975). California courts require the "literal application" of the notice provision to effectuate the "clear intent of the act [ ] to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." Id. at 859. Where a plaintiff fails to provide pre-suit notice, the damages "claim must simply be dismissed until 30 days or more after the plaintiff complies" with Section 1782. Corbett v. PharmaCare U.S., Inc., 567 F. Supp. 3d 1172, 1200 (S.D. Cal. 2021) (quoting Bitton v. Gencor Nutrientes, Inc., 654 F. App'x 358, 362 (9th Cir. 2016)).

Here, Plaintiffs sent a notice letter to Defendant on the same day they filed the Complaint, which sought "actual and statutory damages." (See Metcalf Decl. ¶ 3; Metcalf Ex. A; Complaint at 31.) The notice and the Complaint are both dated October 18, 2022. (See Metcalf Ex. A; Complaint at 32.) Clearly, Plaintiffs failed to provide notice **before** filing an action for damages. See Cal. Civ. Code § 1782(a). However, Plaintiffs **did** provide notice more than thirty days before filing their FAC on April 7, 2023. (See FAC at 53.) Although Defendant argues that it cannot correct or replace Plaintiffs' Cards without more identifying information, such as the specific unauthorized transactions on their Cards, Defendant did not appear to request this information within thirty days of receiving notice. (See Motion at 12; Metcalf Ex. B (Defendant's response dated March 30, 2023).) Defendant cannot now contend that Plaintiffs failed to provide an opportunity to cure the alleged defects when Defendant made no use of a potential opportunity to do so. Further, Plaintiffs allege general security defects that Defendant may be able to cure without any Plaintiff's particular information. To date, Defendant has not corrected or otherwise rectified the security defects alleged in the FAC. (FAC ¶ 120.) Thus, the Court finds that Plaintiffs have substantially complied with CLRA's notice requirement. See, e.g., Parrish v. Volkswagen Grp. of Am., Inc., 463 F. Supp. 3d 1043, 1059–60 (C.D. Cal. 2020) (finding substantial compliance with CLRA's notice requirement); Shein v. Canon U.S.A., Inc., 2009 WL 3109721, at *6–7 (C.D. Cal. Sept. 22, 2009) (same).

### B. Unlawful Business Practices

Defendant seeks to dismiss Plaintiffs' claims for "unlawful" business practices under California's consumer protection statutes. The CLRA prohibits "unfair or deceptive acts or practices" in transactions for the sale or lease of goods or services to consumers. Cal. Civ. Code § 1770(a). Unlawful practices include "[r]epresenting that goods or services have . . .

---

CLRA without the notice requirement and permits the plaintiff to subsequently amend the complaint to include a request for damages." Corbett v. PharmaCare U.S., Inc., 567 F. Supp. 3d 1172, 1200 (S.D. Cal. 2021).

characteristics . . . uses, benefits, or quantities that they do not have" and "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." Id. § 1770(a)(5), (a)(7); (see Metcalf Ex. A (citing these two provisions). Similarly, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, the UCL allows for separate theories of liability under the "unlawful," "unfair," and "fraudulent" prongs. See Hodsdon v. Mars, Inc., 891 F.3d 857, 865 (9th Cir. 2018); Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527, 540 (Cal. 1999).

Plaintiffs rely on a fraudulent omission theory of consumer fraud. (See FAC ¶¶ 114–19.) Fraudulent omissions are actionable under both the CLRA and the UCL. See Daniel v. Ford Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015) ("Daniel I"). To be actionable, an omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Hodsdon, 891 F.3d at 865 (quoting Daugherty v. Am. Honda Motor Co., 51 Cal. Rptr. 3d 118, 126 (Cal. Ct. App. 2006)). A defendant has a duty to disclose when the alleged defect relates to an unreasonable safety hazard or is central to the product's function, and the plaintiff alleges one of the four LiMandri factors. Hammerling v. Google LLC, 543 (Cal. Ct. App. 1997)). The LiMandri factors are:

> (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts.

Id. (citing LiMandri, 60 Cal. Rptr. 2d at 543).

1. **Duty to Disclose**

Defendant argues that Plaintiffs have not alleged that Defendant had a duty to disclose any security defects. (See Motion at 21–22.) Specifically, Defendant contends that the alleged defects are not central to the product's function, and Plaintiffs have not alleged a LiMandri factor. (See id. at 22–23.) Plaintiffs respond that Defendant's omissions go to the Cards' central functionality—as gift cards for intended recipients. (See Opposition at 13–14.) In addition, Plaintiffs assert that Defendant has superior knowledge of the omitted facts, including the inadequacy of its data security measures. (See id. at 15–17.)

The Court finds that Plaintiffs have plausibly alleged Defendant's duty to disclose security defects. First, Plaintiffs have shown that Defendant's Cards fail to serve their central function as a form of payment for the intended recipients. Plaintiffs have never been able to access the full Face Value of their Cards. (See FAC ¶¶ 18–22.) This case is distinguishable from Barrett v. Apple Inc., where the plaintiffs *could* access their gift card funds but gave scammers access to those funds. 2022 WL 2119131, at *1–2 (N.D. Cal. June 13, 2022). In Barrett, the court reasoned that since "the scammers were generally able to redeem the gift card funds for their own use[,] . . . [the] central function of the gift cards—to serve as a form of payment for Apple

products or services—was not, in fact, at all impeded." Id. at *11. Here, at no point were Plaintiffs able to redeem the gift card funds, or transfer the funds to someone else. Thus, the Cards fail to serve their central function as a cash-equivalent form of payment.

Second, Plaintiffs have plausibly alleged the second LiMandri factor, that Defendant had exclusive knowledge of material facts not known to Plaintiffs. (See FAC ¶ 117.) Only Defendant knows what data security measures it implements and whether those measures adequately prevent fraud. (See id. ¶ 118.) Defendant "need not have literally been the sole holder of the knowledge." Anderson v. Apple Inc., 500 F. Supp. 3d 993, 1014 (N.D. Cal. 2020). "It is generally sufficient for defendants to have had 'superior knowledge' and for the information to have not been reasonably discoverable by the plaintiffs." Id. at 1014–15. Although Defendant insists that Plaintiffs have only pled "widely reported mechanisms of fraud" that are within "generic knowledge" (Motion at 23), that some information is publicly available does not foreclose an exclusive-knowledge claim, see Anderson, 500 F. Supp. 3d at 1015. The existence of online reviews and news articles does not mean that Plaintiffs' knowledge is "on par" with Defendant's. See Anderson, 500 F. Supp. 3d at 1015. Defendant is in a "superior position to know" whether there is a security defect. See Marsikian v. Mercedes Benz USA, LLC, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009). Thus, for purposes of a motion to dismiss, Defendant had "exclusive knowledge" of material facts.

### 2. Reliance

In addition to a duty to disclose, a plaintiff must plead actual reliance to state a claim for fraudulent omission. See Daniel I, 806 F.3d at 1225. A plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." Id. (quoting Mirkin v. Wasserman, 858 P.2d 568, 574 (Cal. 1993)). That is, the defendant's nondisclosure must be an immediate cause of the plaintiff's injury-producing conduct. Id. The omission need not be "the only cause or even the predominant cause," but it must be a "substantial factor" in causing the plaintiff's harm. See id.

This Court has previously found that Plaintiffs did not state a claim under the CLRA or the UCL's "unlawful" prong because they did not plausibly allege that a security defect caused their harm. (MTD Order at 7.) Defendant argues, six ways from Sunday, that Plaintiffs have not cured this deficiency. (See Motion at 12–17.) Specifically, Defendant contends that Plaintiffs have not alleged "(1) that their Vanilla Cards were depleted by fraud; (2) that the Vanilla Cards had a security defect that permitted fraudsters to drain Plaintiffs' cards; (3) that [Defendant] 'omitted' this security defect from communications that Plaintiffs read and relied upon . . . and (4) that [Defendant] had a duty to disclose the alleged security defect." (Id. at 12.) In fact, Plaintiffs have alleged all of these elements. Plaintiffs allege that their Cards were depleted by Unauthorized Users. (See FAC ¶¶ 18–22.) Plaintiffs propose three theories for how Unauthorized Users perpetrate their fraud, but emphasize that "no matter what method of fraud Unauthorized Users are employing to obtain Card numbers, Vanilla has the same fundamental security problem: allowing Unauthorized Users to track the Card activation so that Cards can be used by Unauthorized Users at or near the time of activation." (Id. ¶ 81.) In other words,

Defendant's inadequate security measures allowed Unauthorized Users to track when Plaintiffs activated their Cards and deplete the Cards' Face Value before Plaintiffs' intended recipients could access the funds. (See id. ¶ 82.) Importantly, Plaintiffs state that they "would not have purchased Vanilla Cards had Vanilla disclosed that the funds were likely to be depleted by fraudulent use and theft." (Id. ¶¶ 118–19, 132.) Finally, as discussed above, Plaintiffs have pled Defendant's duty to disclose. (See id. ¶ 117.)

Accordingly, the Court finds that Plaintiffs have stated claims under the CLRA (Count One) and the UCL's "unlawful" prong (Count Two). The Court **DENIES** the Motion as to Counts One and Two.

### C. Unfair Business Practices

Defendant also seeks to dismiss Plaintiffs' claims for "unfair" business practices under the UCL. (See Motion at 23–24.) The UCL does not define the term "unfair." Hodsdon, 891 F.3d at 866. The "proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." Id. (quoting Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1169 (9th Cir. 2012)). "Before Cel-Tech, courts held that 'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Id. (quoting Davis, 691 F.3d at 1169); see S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 85 Cal. Rptr. 2d 301, 316 (Cal. Ct. App. 1999). In Cel-Tech, the California Supreme Court established a more concrete definition of "unfair" as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 973 P.2d at 544. It further required that "any finding of unfairness to competitors under section 17200 be *tethered* to some legislatively declared policy or proof of some actual or threatened impact on competition." Id. (emphasis added). However, the Cel-Tech test applied to actions by competitors, not by consumers. See Davis, 691 F.3d at 1170. "In the absence of a clear holding from the California Supreme Court," the Ninth Circuit has held that courts can apply either the South Bay or the Cel-Tech test in consumer actions alleging "unfair" business practices. Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007).

Courts in the Central District of California tend to "follow[ ] the California appellate courts in applying the Cel-Tech test" to consumer actions. See Ajzenman v. Off. of Comm'r of Baseball, 492 F. Supp. 3d 1067, 1080 (C.D. Cal. 2020); see also Honey Baked Ham Inc. v. Honey Baked Ham Co., 2021 WL 3264423, at *3 (C.D. Cal. Mar. 24, 2021) ("[T]he Court abides by its previous conclusion that the Cel-Tech test should be applied in all cases."). For example, one California Court of Appeal noted that Cel-Tech "may signal a narrower interpretation of the prohibition of unfair acts or practices in *all* unfair competition actions and provides reason for caution in relying on the broad language in earlier decisions that the court found to be 'too amorphous.'" Ajzenman, 492 F. Supp. 3d at 1080 (quoting Gregory v. Albertson's, Inc., 128 Cal. Rptr. 2d 389, 394 (Cal. Ct. App. 2002)). Another California Court of Appeal rejected the South Bay test, which asks whether a defendant's conduct is "immoral, unethical, oppressive,

and unscrupulous," as too vague a test of unfairness.  See id. (citing Durell v. Sharp Healthcare, 108 Cal. Rptr. 3d 682, 696 (Cal. Ct. App. 2010)).  This Court agrees and applies Cel-Tech.

Plaintiffs fail to state a claim under the Cel-Tech test.  To determine whether a claim is "sufficiently 'tethered' to a legislative policy for the purposes of the unfair prong, California courts require a close nexus between the challenged act and the legislative policy."  Hodsdon, 891 F.3d at 866 (citing Cel-Tech, 973 P.2d at 544).  Here, Plaintiffs have not identified any legislative policy Defendant has violated *in the FAC*.[3]  (Compare FAC ¶¶ 136–49 with Opposition at 19–20.)  Accordingly, the Court finds that Plaintiffs have failed to state claims under the UCL's "unfair" prong on behalf of either Purchasers (Count Three) or Recipients (Count Four).  The Court **GRANTS** the Motion as to Counts Three and Four.[4]

### D. Unjust Enrichment

Defendant argues that Plaintiffs' unjust enrichment claim is precluded because there is a valid Cardholder Agreement between the parties that expressly governs their respective rights.  (See Motion at 24 (citing Paracor Fin., Inc. v. Gen. Elec. Cap. Corp., 96 F.3d 1151, 1167 (9th Cir. 1996).)  Plaintiffs respond that their unjust enrichment claim "is substantially focused on Vanilla's *pre-sale* conduct," whereas Defendant's Cardholder Agreements apply only to post-sale conduct.  (See Opposition at 21.)  However, neither party provided the Cardholder Agreement for the Court's review.  In the absence of a judicially noticed Cardholder Agreement that may contradict Plaintiffs' allegations, the Court accepts Plaintiffs' allegations as true.  See Mullis, 828 F.2d at 1388.  Here, Plaintiffs have alleged that "Vanilla receives the benefit of processing fees that it collects"; "has knowledge of said benefits received at Plaintiffs' . . . expense"; and "did not refund" the fees associated with purchasing the Cards.  (FAC ¶¶ 23, 151, 155.)  These allegations are sufficient to state a claim for unjust enrichment.  See Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007) ("Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another.").  The Court **DENIES** the Motion as to Count Five.

---

[3] Even if the Court were to apply the South Bay test instead of the Cel-Tech test, Plaintiffs only summarily conclude that Defendant's acts and practices were "immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious."  (See FAC ¶¶ 139, 146.)  This is not enough to state a claim.  Plaintiffs must plausibly allege *why* such acts were immoral, unethical, or oppressive.  Mere conclusory allegations of law are insufficient to defeat a motion to dismiss.  See Gallinger v. Becerra, 898 F.3d 1012, 1016 (9th Cir. 2018).

[4] In the Reply, Defendant argues for the first time that Recipients' claim should be dismissed because they cannot satisfy statutory standing under the UCL.  (See Reply at 11–12.)  The Court declines to consider this argument because it was not raised in the Motion.  See United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (noting courts ordinarily decline to consider arguments raised for the first time in a reply brief); United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

### E. Injunctive Relief

Finally, Defendant argues that Plaintiffs lack standing to seek injunctive relief because they have not alleged any future intent to purchase Vanilla Cards. (See Motion at 25.) The Court agrees. The Ninth Circuit has held that a previously deceived consumer may have standing to seek injunctive relief in two contexts: (1) where a plaintiff alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; and (2) where a plaintiff alleges that "she might purchase the product in the future . . . as she may reasonably, but incorrectly assume the product was improved." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 970–71 (9th Cir. 2018); (see Opposition at 23–24). Here, Plaintiffs have not plausibly alleged either context. The most Plaintiffs plead is that they "*may* purchase or receive Cards in the future." (FAC ¶ 108.) Without any stated desire or intention to purchase Vanilla Cards in the future, Plaintiffs do not have standing to pursue injunctive relief. See In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig., 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021). Accordingly, the Court **DISMISSES** Plaintiffs' claims for injunctive relief.

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART and DENIES-IN-PART** the Motion. The Court **DISMISSES** Plaintiffs' claims under the UCL's "unfair" prong (Counts Three and Four) and Plaintiffs' claims for injunctive relief **WITH LEAVE TO AMEND**. Plaintiffs may file an amended complaint, if any, by August 7, 2023. The Court **VACATES** the July 24, 2023 hearing.

**IT IS SO ORDERED.**