Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al., <br><br>            Plaintiffs, <br><br>     v. <br><br> INCOMM FINANCIAL SERVICES, INC., <br><br>            Defendant. | Case No.: 5:22-CV-01839-JGB-SHK <br><br> **DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hon. Jesus G. Bernal <br><br> Date:  November 6, 2023 <br> Time:  9:00 a.m. <br> Courtroom:  1 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on November 6, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California, 92501, before the Honorable Jesus G. Bernal, Defendant InComm Financial Services, Inc. ("InComm") will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing with prejudice Plaintiffs' Second Amended Complaint.

Plaintiffs lack standing to bring their claims. They allege that InComm (1) concealed a security defect that enables fraudsters to steal card balances almost as soon as cards are activated; and (2) concealed that it does not reimburse cardholders for that theft. But Plaintiffs have not adequately alleged that InComm's purported security defect caused *their* cards to lose value or that InComm refused to reimburse *them*. Plaintiffs therefore have not alleged any injury traceable to InComm's alleged conduct. Furthermore, Plaintiffs do not appear to have ever contacted InComm to request reimbursements. Plaintiffs also lack Article III standing to seek injunctive relief because they have not alleged any ongoing injury arising from InComm's allegedly misleading communications.

For these reasons, the Court should dismiss Plaintiffs' SAC for lack of subject matter jurisdiction. However, the SAC suffers from substantive defects as well. Plaintiffs lack statutory standing because they have not alleged actual reliance on any communication from InComm, and the Recipient Plaintiffs have not even alleged any actual loss. Plaintiffs' "unfair" claim under the Unfair Competition Law fails because Plaintiffs have not adequately alleged that InComm violated any legislative policy, and their unjust enrichment claim fails because the parties' Cardholder Agreements preclude the quasi-contract claim of unjust enrichment.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Jane Metcalf and exhibits thereto, the Declaration

1  of Alison Ledford and exhibits thereto, the pleadings and records on file, and such

2  other matters as the Court deems necessary and proper to adjudicate this Motion.

3     This Motion is made following the conference of counsel pursuant to Local

4  Rule 7-3, which took place on August 25, 2023.

5

6  Dated: September 1, 2023      By: _____

7           William A. Delgado (SBN 222666)
          wdelgado@dtolaw.com
8           DTO LAW
9           601 S. Figueroa St. Suite 2130
         Los Angeles, CA 90017
10          Tel: (213) 335-7010
11          Fax: (213) 335-7802

12          Jane Metcalf (*pro hac vice*)
          jmetcalf@pbwt.com
13          David S. Kleban (*pro hac vice*)
14           dkleban@pbwt.com
         Peter Vogel (*pro hac vice*)
15           pvogel@pbwt.com
16          Basil Williams (*pro hac vice*)
          bwilliams@pbwt.com
17          PATTERSON BELKNAP WEBB &
18          TYLER LLP
19          1133 Avenue of the Americas
         New York, New York 10036
20          Tel: (212) 336-2000
21          Fax: (212) 336-2222

22          Attorneys for Defendant
23          INCOMM FINANCIAL SERVICES, INC.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................iii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 3

    A.   The Court Dismisses Plaintiffs' Initial Complaint ..................................... 3

    B.   The Court Dismisses in Part the First Amended Complaint ....................... 4

    C.   Plaintiffs' Second Amended Complaint .................................................... 6

    D.   InComm Can Find No Trace of Plaintiffs' Alleged Communications ........ 9

ARGUMENT ................................................................................................... 10

I.    Plaintiffs Have Not Established Article III Jurisdiction for Any Claim. ..... 12

    A.   The SAC Does Not Show that Plaintiffs' Injury is Traceable to InComm's Alleged Misconduct. ........................................................... 13

        1.   Plaintiffs have not adequately alleged that InComm's purported security defect caused *their* cards to lose value .............. 13

        2.   Plaintiffs have not adequately alleged that InComm refused to reimburse *them*. ................................................................ 14

    B.   Plaintiffs Apparently Never Contacted InComm. ................................... 15

    C.   At a Minimum, InComm Requests Limited Jurisdictional Discovery on Standing. ...................................................................................... 17

II.   Plaintiffs Still Lack Article III Standing to Seek Injunctive Relief. ............ 18

III.  Plaintiffs Have Not Cured the Other Deficiencies in the FAC ................... 20

    A.   Plaintiffs Have Again Failed to Plead Actual Reliance, as Required for Statutory Standing. ..................................................................... 20

    B.   Recipient Plaintiffs Have Again Failed to Plead Loss of Money or Property, as Required for Statutory Standing. ......................................... 21

1

C.   Plaintiffs' UCL "Unfair" Claim Fails Because They Have Not Identified a
     Legislative Policy That InComm Has Violated. ......................................22

D.   The Written Agreements Between Plaintiffs and InComm Bar Plaintiffs'
     Unjust Enrichment Claim...........................................................................23

CONCLUSION........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajzenman v. Off. of Comm'r of Baseball*,
492 F. Supp. 3d 1067 (C.D. Cal. 2020).............................................. 22

*Brown v. Van's Int'l Foods, Inc.*,
2022 WL 1471454 (N.D. Cal. May 10, 2022) ........................... 19, 20

*California v. Texas*,
141 S. Ct. 2104 (2021) ...................................................................... 12

*In re Capacitors Antitrust Litig.*,
154 F. Supp. 3d 918 (N.D. Cal. 2015) ......................................... 12, 17

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................ 18

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) .......................................................................... 14

*Colucci v. ZonePerfect Nutrition Co.*,
2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) .................................. 21

*Dailey v. A&W Concentrate Co.*,
519 F. Supp. 3d 668 (N.D. Cal. 2021) .............................................. 19

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018)............................................................. 18

*Dep't of Educ. v. Brown*,
143 S. Ct. 2343 (2023) ...................................................................... 12

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018)........................................................... 12

*In re Ethereummax Inv. Litig.*,
2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) ................ 21

*Gagetta v. Walmart, Inc.*,
2022 WL 17812924 (N.D. Cal. Dec. 19, 2022) ........................... 19, 20

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ................................................................. 22

*In re Intel Laptop Battery Litigation*,
2010 WL 5173930 (N.D. Cal. Dec. 15, 2010) .................................... 22

*Joseph v. Costco Wholesale Corp.*,
2016 WL 759559 (C.D. Cal. Feb. 24, 2016) ....................................... 21

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............................................................. 11

*Licea v. Caraway Home Inc.*,
2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) ....................................... 17

*O'Shea v. Epson Am. Inc.*,
566 F. App'x 605 (9th Cir. 2014) ........................................................ 21

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
96 F.3d 1151 (9th Cir. 1996) .......................................................... 23, 24

*Prescott v. Nestle USA, Inc., 2020 WL 3035798*
(N.D. Cal. June 4, 2020) ...................................................................... 19

*Rechnitz v. Transamerica Life Ins. Co.*,
2018 WL 5267184 (C.D. Cal. Apr. 6, 2018) ...................................... 22

*Reed v. NBTY, Inc.*,
2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) .................................. 20

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................................ 10, 11

*Sanchez v. Navy Fed. Credit Union*,
2023 U.S. Dist. LEXIS 142817 (C.D. Cal. Aug. 14, 2023) ........ 10, 11, 23

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) .................................................... 12, 13, 14, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................ 10, 12, 15

*Stewart v. Electrolux Home Prods., Inc.*,
2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .................................... 21

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012) ........................................................ 11, 15

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .................................................................... 12, 13

*Tristan v. Bank of Am.*,
2023 WL 4417271 (C.D. Cal. June 28, 2023) ..................................... 21

**Statutes**

Cal. Bus. & Prof. Code § 17204 ............................................................ 21

Cal. Bus. & Prof. Code § 17535 ............................................................ 21

Cal. Civ. Code § 1798.100(e) ............................................................ 8, 22

Cal. Civ. Code § 1798.81.5 ............................................................... 8, 22

**Other Authorities**

Cal. Bill Analysis, A.B. 1950 Sen., June 29, 2004 ................................. 22

Defendant InComm Financial Services, Inc. (together with its affiliates, "InComm") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Second Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' third attempt to plead their case against InComm was not the charm. Their Second Amended Complaint, Dkt. No. 54 ("SAC") repeats many of the same failings of the two previous ones.  It fails again to establish Plaintiffs' standing to pursue injunctive relief.  It fails again to identify any violation of legislative policy that would support a claim under the "unfair" prong of the UCL.  And it rehashes Plaintiffs' defective claim for unjust enrichment, which is barred by the existence of written Cardholder Agreements (which InComm has submitted with this motion).

But Plaintiffs' SAC also brings another, more fundamental problem into relief:  Plaintiffs have not invoked the Article III jurisdiction of this Court.  That is because they allege no facts demonstrating that they, as individuals, were injured by InComm's purported violations of law.  Plaintiffs' SAC offers an elaborate, but entirely speculative, account of those violations.  Plaintiffs contend that InComm fails to tell consumers about a "security defect" that permits fraudsters to monitor card balances, determine when cards are activated, and deplete the balances "very close in time to Card activation."  SAC ¶¶ 63, 108.  On top of that, according to Plaintiffs, InComm "fails to tell [consumers] . . . that it will not reimburse them" if this fraudulent depletion occurs.  *Id.* ¶ 91.

These speculations have no factual support, and Plaintiffs' SAC does not supply any.  But even accepting the SAC's outlandish theory of InComm's misconduct, Plaintiffs have failed to allege that this misconduct had any effect on them.  Though Plaintiffs' claims hinge on their theory that InComm's inadequate security permits fraudsters to deplete card balances "very close in time to Card activation," ***no Plaintiff*** alleges that this happened to her own balance.  For that matter, no Plaintiff provides any information at all about the supposedly

1   unauthorized transactions on her card, or any identifying information about her card.

2   Even if the "security defect" Plaintiffs posit is real (it is not), Plaintiffs offer no

3   reason to believe that this defect injured them, and thus no basis for standing to sue

4   over it.

5       The problems do not end there.  The other key contention in Plaintiffs' SAC

6   is that InComm "intentionally" avoids reimbursing cardholders affected by fraud.

7   *See, e.g.*, *id.* ¶ 138.  But again, none of the Plaintiffs alleges with particularity that

8   this happened to her.  A few Plaintiffs claim vaguely to have called a company called

9   "Vanilla" and been dissatisfied with the results, but it is not even clear from the SAC

10  that they contacted InComm—much less that InComm deliberately deprived them

11  of a justified reimbursement.  For these reasons, even assuming that Plaintiffs have

12  alleged a violation of California law, they have not shown that it affected them.

13  Having failed to allege a concrete injury traceable to InComm's purported misdeeds,

14  Plaintiffs lack Article III standing to sue in this Court.

15      Because Plaintiffs have not carried their burden to allege these crucial

16  jurisdictional facts, the Court can and should dismiss their SAC without looking

17  beyond its four corners.  But this Court is also empowered to consider "factual

18  attacks" on its subject-matter jurisdiction.  As detailed in the materials submitted

19  alongside this motion, InComm's investigation into the extrinsic facts has only cast

20  further doubt on this Court's jurisdiction.  Struck by Plaintiffs' increasingly

21  conspicuous refusal to provide the basic facts about their Vanilla Gift Card

22  experiences, InComm conducted a thorough search for any record that the Plaintiffs

23  or their family members ever contacted InComm to report problems with their cards.

24  That search came up empty.  Thus, as far as InComm can determine, the Plaintiffs

25  who are suing InComm over its purported intentional barriers to reimbursement have

26  never actually sought reimbursement from InComm.   There is simply no

27  indication—either within Plaintiffs' SAC or outside of it— that Plaintiffs have any

28  "case or controversy" with InComm at all.

# BACKGROUND

## A.     The Court Dismisses Plaintiffs' Initial Complaint

Plaintiffs' initial Complaint, filed in October 2022, alleged that InComm had deceptively marketed the Vanilla Gift Cards as though the cards' balances would be available for spending, when in fact the balances could be drained by fraudsters.  *See* Initial Complaint ("Compl.") ¶¶ 1–4, Dkt. No. 1.  Plaintiffs insinuated that their own cards had been compromised by fraud, but offered no facts to support that suspicion, let alone trace it to any wrongdoing by InComm.  *Id.* ¶¶ 5–11.  Three of the Plaintiffs, who claimed to have purchased their cards (the "Purchasers"), asserted claims under the California Consumers Legal Remedies Act ("CLRA") and the "unlawful" prong of the and Unfair Competition Law ("UCL"), as well as claims for breach of implied contract and unjust enrichment.  The Purchasers also asserted a claim under the "unfair" prong of the UCL, and were joined in that claim by the two other Plaintiffs, who claimed only to have received InComm's cards as gifts (the "Recipients").

In December 2022, InComm moved to dismiss on the grounds that, among other deficiencies, Plaintiffs had failed to (1) identify the purportedly deceptive marketing at issue; or (2) account for the Cardholder Agreement(s) applicable to their Vanilla Gift Cards.  *See* Mot. to Dismiss, Dkt. No. 23 ("MTD").  In response, Plaintiffs retreated from their deceptive marketing theory, and replaced it with a claim that InComm had merely "omitted" material information about the cards' security.  Opp'n to MTD at 1, 8, Dkt. No. 36.  Plaintiffs also conceded that their Vanilla Gift Cards were governed by express contracts (the "Cardholder Agreements") whose terms vary depending on card number and purchase date.  However, they declined to identify the agreement(s) applicable to their own cards, or to supply basic details—such as the 16-digit card numbers—that would enable InComm to do so.  *See generally id.*

The Court granted InComm's motion to dismiss on March 16, 2023.  *See* Order Granting MTD, Dkt. No. 41.  The Court held that Plaintiffs' claims all failed

because Plaintiffs had not identified any misleading representations, nor had they "specifically attribute[d]" their cards' depletion to "anything [InComm] did or failed to do." *Id.* at 7.  The Court also dismissed Plaintiffs' claim for breach of implied contract, given the existence of the express Cardholder Agreements.  It held that Plaintiffs would be "well advised to explain what the Cardholder Agreement covers" in their next complaint.  *See id.* at 8.

### B.    The Court Dismisses in Part the First Amended Complaint

On April 7, 2023, Plaintiffs filed their First Amended Complaint.  *See* Am. Compl., Dkt. No. 44 ("FAC").  Like the initial Complaint, the FAC contained no card numbers or other identifying facts about Plaintiffs' individual Vanilla Gift Cards (though InComm had reiterated its request for that information in a March 2023 letter).  Plaintiffs even declined the Court's invitation to identify or describe the Cardholder Agreement(s) applicable to their cards, which in turn would have required them to provide some information about their cards.  Instead, Plaintiffs opted to drop their implied-contract claim altogether.

Plaintiffs did, however, expand on their new theory that InComm had omitted material information about the Vanilla Gift Cards.  They accused InComm of omitting two critical facts:  (1) "that Unauthorized Users exploit a specific flaw in [InComm's] online security measures" to drain card balances upon activation; (2) that InComm then "avoids reimbursing Purchasers and Recipients for fraud losses when they occur."  *Id.* ¶¶ 12–13.  According to Plaintiffs, the specific flaw in InComm's security that makes this scheme possible is InComm's failure to implement "CAPTCHA" on vanillagift.com, the website where users can check their balances.  Plaintiffs alleged that fraudsters exploit this vulnerability on the website to keep tabs on when individual cards are "activated," since that is the point at which a card acquires its cash value.  Upon a card's activation, Plaintiffs claimed, fraudsters "quickly" redeem or sell the card balance, leaving the card worthless to the end user.

*See id.* ¶¶ 61–83.  Then, Plaintiffs alleged, InComm "intentionally erects barriers to reimbursement" for cardholders in this unlucky position.  *Id.*  ¶ 96.

Plaintiffs offered precious few facts to support this theory of InComm's wrongdoing.  The FAC contained no allegations establishing that InComm's website does not use CAPTCHA, and in point of fact, it does.  *See* Motion to Dismiss FAC, Dkt. No. 45 ("FAC MTD") at 8.  Plaintiffs likewise offered no factual basis for their speculation that fraudsters engage in constant online surveillance of card balances.  Most notably, Plaintiffs failed to allege with any specificity that this purported vulnerability affected them.

On July 17, the Court granted in part and denied in part InComm's motion to dismiss the FAC.  *See* Dkt. No. 53 ("July 17 Op.").  The Court concluded that Plaintiffs had identified a "fundamental security problem"—namely, a website that "'allow[s] Unauthorized Users to track the Card activation so that Cards can be used by Unauthorized Users at or near the time of activation.'" *Id.* at 8 (quoting FAC ¶ 18)).  On this basis, the Court accepted Plaintiffs' omission-based theories as sufficient to plead violations of the CLRA (and hence the "unlawful" prong of the UCL).  The Court did not address Plaintiffs' failure to provide the identifying details of their individual Vanilla Gift Cards.

The Court also rejected InComm's argument that the written Cardholder Agreement(s) precluded Plaintiffs' unjust enrichment claim, noting that "neither party provided the Cardholder Agreement for the Court's review." *Id.* at 10.  While it is true that neither party provided the Agreement(s), only Plaintiffs had the ability to do so, because slightly different Agreements apply to different cards.  Thus, Plaintiffs' failure to provide any information about their cards has prevented InComm from identifying the specific Agreement applicable to them.

The Court also found a number of defects in Plaintiffs' FAC.  The Court dismissed Plaintiffs' claims under the "unfair" prong of the UCL, citing Plaintiffs' failure to plead that InComm's alleged conduct violated a specific legislative policy.

*Id.* at 9–10.   Because this is the lone claim asserted by the two Recipients, this determination effectively dismissed the Recipients' claims altogether.

Finally, the Court held that Plaintiffs lacked standing to seek injunctive relief, because they had not plausibly alleged that InComm's conduct would cause them imminent injury.   The Court emphasized the Ninth Circuit's holding that "a previously deceived consumer" may satisfy this standard only when he alleges one of two possible injuries, both of which arise from an inability to rely on the products' labeling when making future purchases.   *Id.* at 11.   Plaintiffs' FAC alleged only that they "***may***" purchase "or receive" Vanilla Gift Cards in the future.   *Id.* (quoting FAC ¶ 108).   The Court deemed this equivocal statement insufficient to establish a "desire or intention to purchase Vanilla Cards in the future."   *Id.*   The Court invited Plaintiffs to file yet another complaint to try to cure these defects.

## C.   Plaintiffs' Second Amended Complaint

On August 7, 2023, Plaintiffs filed the SAC.   There, they re-commit to their theory that InComm withheld information about (1) the security defect of its balance-inquiry website and (2) its purported refusal to reimburse defrauded cardholders.   *See id.* ¶¶ 12–13.   They again claim that the defect on InComm's website permits third-party fraudsters to monitor balances, track card activation, and promptly steal the balances of activated cards.   *See id.* ¶¶ 71–83.

That "promptness" is central to Plaintiffs' theory.   Per the SAC, the hallmark of this mode of fraud is the speed at which fraudsters supposedly deplete card balances after activation.   According to Plaintiffs' SAC, criminals surveilling InComm's website deplete the balances "***quickly***," *id.* ¶ 69; "***[a]s soon as a spendable balance shows up on a Card***," *id.*; "***very close in time***," or "***almost instantly***" after activation.   *Id.* ¶¶ 63, 67; *see also id.* ¶ 47 (emphases added). Plaintiffs allege that InComm conceals this information from unwitting consumers, who then purchase the cards and find their balances immediately drained.   Finally, Plaintiffs allege that InComm "fails to tell Purchasers and Recipients . . . that it will

not reimburse them if Unauthorized Users steal" their card balances in this manner. *Id.* ¶ 91. Through this nefarious multi-part scheme, Plaintiffs posit, InComm has harmed California consumers.

Conspicuously absent from Plaintiffs' SAC, however, is any indication that InComm's supposed scheme harmed ***them***. Plaintiffs say nothing about when their cards were activated, or how "quickly" thereafter the balances were depleted. Accordingly, their SAC offers no reason to believe that their own cards fell prey to the "security defect" that they accuse InComm of concealing. This missing link is all the more perplexing since, as Plaintiffs acknowledge, the cards' transaction histories are readily available on vanillagift.com. *See, e.g.*, *id.* ¶ 64. Plaintiffs have also once again refused to provide any identifying details about their cards, thereby preventing InComm from locating the balance histories in its own records. Thus, although Plaintiffs have finally settled on a theory of how InComm's security was deficient, they have not alleged that this deficiency injured them at all.

Similarly, while Plaintiffs contend that InComm's "most important[]" misdeed was its refusal to reimburse cardholders who suffered fraud, *id.* ¶ 91, they do not allege that this caused them any injury, either. Plaintiffs Clark, Manier, Stewart, and Thompson vaguely claim that they called "Vanilla" to complain about their cards, with unsatisfactory results. *See id.* ¶¶ 18, 20–22. (Plaintiff Cooper, meanwhile, does not even allege that much.) But "Vanilla" is not a company, as far as InComm knows, and Plaintiffs do not say what number they used to reach "Vanilla." Accordingly, it is not clear from the SAC that Plaintiffs contacted InComm at all. And it is certainly not clear that they encountered "barriers to reimbursement" when doing so. Though Plaintiffs offer subjective descriptions of InComm's customer service as, *e.g.*, "nothing but the run around," *id.* ¶ 22, they allege no actual ***facts*** about their conversations with InComm. They do not say when they called, whom they spoke to, or what either party to the conversation said. They

thus fail to allege that InComm's alleged violations of law caused them any harm whatsoever.

Instead, Plaintiffs devote much of their SAC to the harms that these violations purportedly caused to other, unidentified consumers.  Plaintiffs reproduce a cherry-picked array of online consumer complaints, which supposedly support their theory of InComm's wrongdoing.  InComm disputes that these complaints reflect typical Vanilla Gift Card consumer experiences, though it regrets that any consumer was dissatisfied.  What *is* notable about these online comments, however, is how much more information they contain than Plaintiffs' SAC.  In one, a consumer reports that she bought a $500 Vanilla Gift Card, only to find that "**[w]***ithin an hour* someone had made a purchase of $470 at an Apple store in CA and cleared my balance."  SAC ¶ 44 (emphasis added).  In another, a consumer explains that "I bought a $300 gift card for my son on Saturday," and "***next day, Sunday*** . . . the card was without funds."  *Id.* (emphasis added).  By contrast, Plaintiffs have filed three federal Complaints, but have yet to provide these key details of their card experiences.  It is telling that Plaintiffs have relied on these casual online commenters' accounts of their experiences to distract from the deficiencies in their own.

Plaintiffs' SAC also fails to cure the defects the Court identified in its most recent Order.  Regarding the UCL "unfair" count, the SAC attempts to tether Plaintiffs' claims to the "legislative policy" embodied in Cal. Civ. Code §§ 1798.100(e) and 1798.81.5.  *See id.* ¶ 141.  But those are privacy-related provisions, governing the collection and protection of private, "personal information."  Consistent with this focus, they define "personal information" as including, at a minimum, "[a]n individual's first name or first initial and . . . last name."  Cal. Civ. Code § 1798.81.5.  In other words, information qualifies as "personal" under the statute only when it explicitly references an associated "person" by name.  Here, Plaintiffs have not alleged that they ever gave their names to InComm in connection with their Vanilla Gift Cards, much less that InComm

failed to protect this information.  (Nor could they make such an allegation, since Vanilla Gift Cards are designed to be easily transferrable as gifts and therefore are not linked to an individual person's identity.)  Their SAC accordingly does not implicate "personal information" at all.

Finally, Plaintiffs' attempt to revive their claim for injunctive relief is likewise unavailing.  They allege yet again that they "*may* purchase or receive Cards in the future"—the exact allegation that this Court already found too equivocal to confer standing.  SAC ¶ 108.  Although a few of the Plaintiffs have also thrown in an allegation that they "want[] to and would purchase and use Vanilla Cards in the future if Vanilla remedied its security practices and/or reimbursed customers when fraud occurs," *id.* ¶¶ 20–22, that is inconsistent with their allegation that they only "may" do so.  More crucially, none of these new allegations suggests an imminent injury from InComm's *communications* about its gift cards.

### D.    InComm Can Find No Trace of Plaintiffs' Alleged Communications

Plaintiffs, who are suing InComm over the supposed shortcomings of their Vanilla Gift Cards, have at every turn refused to provide any information identifying their Vanilla Gift Cards.  In the face of this evasion, InComm has invested significant resources of its own in a search for any complaints, or other communications, from Plaintiffs or their family members.   InComm's search efforts are detailed in the accompanying Declaration of Alison Ledford ("Ledford Decl."), a senior InComm employee.[1]  Ms. Ledford searched high and low for any trace of Plaintiffs' or their family members' communications, but this search was fruitless.  *See* Ledford Decl. ¶¶ 19, 39.   Accordingly, Ms. Ledford considers it unlikely that any of these individuals *ever* contacted InComm.  *Id.*

---

[1]    Citations to the "Ledford Decl." refer to the Declaration of Alison Ledford in Support of InComm's Motion to Dismiss the SAC, filed herewith.

As Ms. Ledford also notes, however, InComm's search is hobbled to some extent by Plaintiffs' refusal to provide any information about their cards. *See, e.g.*, *id.* ¶¶ 37–38. If Plaintiffs would provide their card numbers—or even the phone numbers they purportedly used to call "Vanilla" —InComm could verify the results of Ms. Ledford's name-based search. *Id.* Plaintiffs' card numbers would also enable InComm to pull other crucial records, including (1) the cards' transaction histories; and (2) logs showing when the cards' balances were checked online. *See id.* ¶¶ 12, 38. In other words, InComm could determine how "quickly" the cards were spent after activation, and could also determine whether the cards' balances were checked or "monitored" prior to that point, as Plaintiffs claim. But thanks to Plaintiffs' stonewalling on the basic facts of their claims, InComm has turned up no record of Plaintiffs' cards at all.

## ARGUMENT

To invoke the jurisdiction of this Court, Plaintiffs must allege, among other things, that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. *Id.* (quotations and alterations omitted).

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, this Court may entertain "either facial or factual" challenges to its jurisdiction. *Sanchez v. Navy Fed. Credit Union*, 2023 U.S. Dist. LEXIS 142817, at *15 (C.D. Cal. Aug. 14, 2023) (Bernal, J.) (citing *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court resolves such a challenge by "[a]ccepting the plaintiff's allegations as true" and "determine[ing] whether th[ey] are sufficient as a legal

matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Here, Plaintiffs' SAC cannot survive a "facial" challenge because Plaintiffs have failed to allege that InComm's purported misconduct caused them any injury. Even crediting Plaintiffs' speculative allegations that InComm has a security defect and intentionally avoids reimbursement, Plaintiffs offer no facts to show that either issue ever affected them personally. The Court should dismiss their SAC on this basis alone.

However, even if the Court finds Plaintiffs' allegations of standing to be facially sufficient, it may consider InComm's alternative "factual" attack, which refutes the accuracy of those allegations. "[I]n a factual attack, the challenger disputes the truth of the allegations . . . invoke[ing] federal jurisdiction." *Safe Air*, 373 F.3d at 1039. When considering a factual attack, "'no presumptive truthfulness attaches to plaintiff's allegations.'" *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)). Rather, "the plaintiff bears the burden of proving" the Court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d at 1121. Here, InComm's review of its records suggests that Plaintiffs' vague claims of injury are not only deficient, but false. Plaintiffs allege that InComm injured them by responding unsatisfactorily to their requests for reimbursement. But as far as InComm can tell, they ***never made*** any such requests. Thus, if the Court does not sustain InComm's "facial" challenge, it should grant InComm's motion on these alternative grounds.

Finally, because this Court lacks subject-matter jurisdiction, it need not reach InComm's motion under Rule 12(b)(6) to dismiss, among other things, Plaintiffs' claims for unjust enrichment, violations of the CLRA, and "unfair" conduct under the UCL. But if it does, the "the allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Sanchez*, 2023 U.S. Dist. LEXIS 142817, at *17 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**I.      Plaintiffs Have Not Established Article III Jurisdiction for Any Claim.**

The Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).   "That power includes the requirement that litigants have standing." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).   "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).   Article III standing is therefore a "threshold inquiry that must be undertaken at the outset of a case, before the Court proceeds any further." *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924 (N.D. Cal. 2015).

"For there to be a case or controversy under Article III, the plaintiff must have a '**personal stake**' in the case." *TransUnion*, 141 S. Ct. at 2203 (emphasis added) (citation and quotations omitted).   In other words, "named plaintiffs who represent a class 'must allege and show that they ***personally*** have been injured, not that injury has been suffered by other, unidentified members of the class." *Spokeo*, 578 U.S. at 338 n.6 (emphasis added) (quoting *Simon*, 426 U.S. at 40 n.20).   To demonstrate injury, Plaintiffs must allege "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.   The second element, "traceability," requires an allegation of a "causal connection between the injury and the conduct complained of." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018).   "Speculative inferences" are insufficient to demonstrate such a connection.   *Simon*, 426 U.S. at 45; *see also Dep't of Educ. v. Brown*, 143 S. Ct. 2343, 2354 (2023).

**A.    The SAC Does Not Show that Plaintiffs' Injury is Traceable to InComm's Alleged Misconduct.**

Here, Plaintiffs' claimed injury is the alleged theft of their Vanilla Gift Card balances.  Though Plaintiffs acknowledge that InComm did not steal the balances—unknown third-party fraudsters did—they attempt to "trace" their purported injuries to two omissions by InComm.  ***First***, Plaintiffs allege that InComm concealed its website's security defect, which purportedly permits fraudsters to "steal the balance as soon as the Card is activated." *Id.* ¶ 79; *see also id.* ¶¶ 69, 81.  ***Second***, InComm allegedly "fails to tell Purchasers and Recipients . . . that it will not reimburse them" when such theft occurs.  *Id.* ¶ 91.  In conclusory fashion, Plaintiffs attribute their injuries to the compound effect of these two failings: They allege that they "suffered injury because the Card[s] . . . had charges made against [them] by Unauthorized Users, ***and*** Vanilla did not refund" them for the cards.  *Id.* ¶ 23 (emphasis added).

If this case proceeded to discovery, the facts would show that InComm has outstanding security and excellent customer service.  But even assuming that Plaintiffs' account of InComm's failings is accurate, they have not shown—and cannot show—that these failings affected them.  They have no "personal stake" in this case.  *See TransUnion*, 141 S. Ct. at 2203.

**1.    Plaintiffs have not adequately alleged that InComm's purported security defect caused *their* cards to lose value.**

Plaintiffs trace the theft of their balances to InComm through a series of "[s]peculative inferences." *Simon*, 426 U.S. at 45.  They hypothesize that the unknown fraudsters must have exploited the "security defect" on InComm's website, which allows wrongdoers to deplete a card's balance "as soon as the card is activated."  SAC ¶ 79; *see also id.* ¶¶ 69, 81.  They further assume that, without this vulnerability, their cards would have been impenetrable, and the fraudsters could never have carried out their theft.

These conjectures about the conduct and motives of unknown third parties are insufficient to demonstrate "traceability."  Article III requires Plaintiffs to articulate an "injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."  *Simon*, 426 U.S. at 41–42; *see also Clapper v. Amnesty International USA*, 568 U.S. 398, 414 (2013).  Courts are accordingly "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors."  *Clapper*, 5568 U.S. at 414.  Plaintiffs' SAC rests entirely on such a theory.

Moreover, even if Plaintiffs' theory about nonparty fraudsters' conduct could establish standing, they have not marshaled the basic facts to support it.  Plaintiffs attribute their injuries to a particular mode of fraud, whose defining feature is the "almost instant[]" depletion of card balances upon activation.  *Id.* ¶ 47, 63, 67.  An allegation that their own balances were "almost instantly" depleted is, therefore, an essential factual component of this theory.  And with each card's activation and transaction history easily accessible at vanillagift.com, this information is not hard to come by.  Yet Plaintiffs, who bear the burden of invoking this Court's Article III jurisdiction, have now left these basic facts out of ***three*** successive Complaints.  Instead, they have staked their claim of standing on "purely speculative" theories about how and why unidentified third parties stole their balances.  *See Simon*, 426 U.S. at 42–43.  That is not sufficient, and warrants dismissal of their SAC.

### 2.     Plaintiffs have not adequately alleged that InComm refused to reimburse ***them***.

Even if Plaintiffs could link the theft of their balances to InComm's alleged "security defect," their claim of injury also depends on their allegation that InComm intentionally erected barriers to reimbursement.  *See* SAC ¶ 23 (claiming that Plaintiffs were injured by the combined effect of these two misdeeds).  But even if this is true (it is not), Plaintiffs again fail to say how it affected them.  Several of the Plaintiffs claim that they called "Vanilla," and offer subjective and generic

characterizations of what transpired on those calls.   *See id.* ¶¶ 18, 20–22 (alleging that Plaintiffs encountered "the run-around" and that "Vanilla . . . would not" assist them).   These characterizations are not accompanied by any facts about the calls. For example, Plaintiffs do not disclose the date(s) of the calls, phone number that they called (or how they found it), the number they called from, when they called, who they spoke with, what questions they were asked, or what information they provided.  *Id.*  All of this information, like the information about Plaintiffs' cards, is both central to Plaintiffs' claims and easy to provide.  But in three complaints, they have not provided any of it.

Plaintiffs seek to compensate for the SAC's deficiencies by curating online comments of unnamed consumers, many of which contain more detail than Plaintiffs' pleading.  *Id.* ¶ 44.  But Plaintiffs cannot borrow Article III standing from anonymous online posters.  They must show that "they ***personally*** have been injured," not that "other, unidentified members of the class" have.  *Spokeo*, 578 U.S. at 338 n.6 (emphasis added).  Because they have failed to clear this hurdle, their SAC should be dismissed.

## B. Plaintiffs Apparently Never Contacted InComm.

For the reasons set forth above, this Court need not look beyond Plaintiffs' pleading deficiencies to grant InComm's motion.  But InComm's review of the facts suggests that, in addition to being deficient, Plaintiffs' allegations of injury are not even true.   This extrinsic evidence, which the Court can consider as part of InComm's alternative factual attack on jurisdiction under Rule 12(b)(1), *see Terenkian*, 694 F.3d at 1131, confirms the need for dismissal.

Plaintiffs' contention that InComm systematically refuses to reimburse defrauded cardholders is central to their claims.  They allege that InComm's "most important[]" omission was its failure to warn consumers of this practice.  SAC ¶ 91. They accuse InComm of imposing "intentional[] . . . barriers to reimbursement."  *Id.* ¶ 96.  And they contend, in conclusory fashion, that they were personally injured by

those barriers.  *Id.* ¶ 23.  But if they never asked InComm for reimbursement, they cannot blame their injuries on InComm's "barriers."  And even assuming they did reach out to InComm, they cannot fault InComm's "barriers" if, for example, they refused to provide the necessary information to pursue that request.

Indeed, as far as InComm can determine, Plaintiffs never made any effort to obtain reimbursement.  Using the limited information that Plaintiffs provided, InComm conducted an exhaustive search for records of any complaints from Plaintiffs or their family members.  *See* Ledford Decl. ¶¶ 17–37 (describing components of search).  That search was fruitless.  *See id.* ¶¶ 19, 39.  Although InComm turned up a complaint matching the name of one Plaintiff, and another matching the name of another Plaintiff's family member, the timing and other details of these communications do not suggest that they are the same individuals involved in this case.  *Id.* ¶¶ 23–25, 29–31.  Nor do InComm's records indicate that either of these cardholders was injured by any so-called "barriers" to reimbursement.  *See* Ledford Decl. Exs. 3–4.  In one case the cardholder requested a form to initiate her claim for reimbursement, InComm provided its straightforward Dispute Form, and the cardholder never returned it.  *See* Ledford Decl. Ex. 4 at 1–2.  In the other, a cardholder submitted a Dispute Form seeking reimbursement for allegedly unauthorized transactions, ***and InComm reimbursed her.***  Ledford Decl. Ex. 3 at 1–2.  Neither of these sequences of events matches Plaintiffs' accounts of their customer service experiences.

Thus, InComm's review of its records casts grave doubt on Plaintiffs' allegation that they unsuccessfully sought reimbursement from InComm.  If the Court does not dismiss the SAC for its facial deficiencies, as InComm respectfully maintains that it should, this extrinsic evidence affords an alternative ground for dismissal.

## C. At a Minimum, InComm Requests Limited Jurisdictional Discovery on Standing.

This Court lacks jurisdiction over this case and should promptly dismiss it. But at a bare minimum, if the Court concludes otherwise, it should order targeted jurisdictional discovery on the issue of Plaintiffs' standing. "The Ninth Circuit has made it clear that a district court's discretion on [whether to grant jurisdictional discovery] is exceptionally broad.'" *Licea v. Caraway Home Inc.*, 2023 WL 1999496, at *10 (C.D. Cal. Feb. 9, 2023) (Bernal, J.) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). Here, InComm has, at the very least, raised serious doubts as to the "threshold" issue of Plaintiffs' standing. *In re Capacitors*, 154 F. Supp. at 924. Before this proceeding takes up any more of this Court's or InComm's resources, Plaintiffs should demonstrate that they have standing to bring it.

In addition, because the discovery on this issue would be discrete, this approach presents no risk of prejudice to Plaintiffs. InComm simply seeks discovery on basic facts that should not be onerous for Plaintiffs to provide, such as: the phone number(s) they dialed when allegedly contacting "Vanilla"; the phone numbers they called from; the 16-digit card numbers; and where and when they purchased or received the cards. This targeted discovery will not cause significant burden or delay, and if Plaintiffs manage to demonstrate standing, they can resume pursuing their case immediately thereafter. By contrast, absent an initial phase of jurisdictional discovery, InComm and this Court could be forced to invest prodigious resources in merits discovery and class certification motion practice—only to discover in the end that the Court lacked jurisdiction all along. Thus, if this Court chooses not to dismiss Plaintiffs' SAC for lack of jurisdiction, it should order phased discovery, with the first phase to focus exclusively on Plaintiffs' standing.

**II.     Plaintiffs Still Lack Article III Standing to Seek Injunctive Relief.**

For the reasons set forth above, Plaintiffs lack Article III standing to pursue any relief in this Court.  But as this Court concluded in connection with the FAC, their allegations of "future injury" are also insufficient to support their claim for standing to seek injunctive relief.  A plaintiff seeking an injunction must plausibly allege that, absent such relief, she faces a "real or immediate threat that [she] will be wronged again."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling," but such standing must be based on the consumer's "inability to rely on the advertising in the future."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967, 969 (9th Cir. 2018).

The Court dismissed the claims for injunctive relief in the FAC, concluding that the allegation that Plaintiffs "***may*** purchase or receive Cards in the future" was too equivocal to satisfy this standard.  July 17 Op. at 11 (emphasis in original) (quoting FAC ¶ 108).  Plaintiffs' SAC repeats that same deficient allegation, *see* SAC ¶ 108, and should meet with the same result.

Three of the Plaintiffs also seek to shore up their standing with a perfunctory allegation that they "want[] to and would purchase and use Vanilla Cards in the future if Vanilla remedied its security practices and/or reimbursed customers when fraud occurs."  SAC ¶¶ 20–22.[2]  This contradicts their allegation that they only "may" do so, but in any event, it too is inadequate.  Plaintiffs' abstract desire for InComm to improve its ***products*** cannot support a claim for injunctive relief.  Instead, Plaintiffs must allege an "inability to rely on [InComm's] ***advertising*** in the future" in the absence of an injunction.  *Davidson*, 889 F.3d at 967, 969 (emphasis added).

---

[2]  Plaintiff Clark does not allege that she would purchase or use Vanilla Cards in the future.  SAC ¶ 18.  Plaintiff Cooper alleges that she "wants to and would ***use*** Vanilla Cards in the future if Vanilla remedied its security practices and/or reimbursed customers when fraud occurs," but she does not allege that she would ***purchase*** Vanilla Cards in the future.  *Id.* ¶ 19.

Under "binding Ninth Circuit authority," previously deceived plaintiffs who seek injunctive relief must allege a particular class of injury, in which "they desire to purchase the [p]roducts from [the] [d]efendant in the future but ***cannot do so in an informed manner because they cannot rely on the labels going forward***." *Gagetta v. Walmart, Inc.*, --- F. Supp. 3d ---, 2022 WL 17812924, at *8 (N.D. Cal. Dec. 19, 2022) (emphasis added) (quotations omitted) (applying *Davidson*); *see also Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022); July 17 Op. at 11 (enumerating the two species of injury that can arise from plaintiffs' inability to rely on product labels for purchasing decisions).

Plaintiffs cannot meet this standard.  They do not allege an ongoing intention to rely on InComm's labels, or explain how InComm's purported misconduct will impair their ability to make informed purchasing decisions.   Indeed, they do not allege, even in conclusory fashion, ***any*** continuing injury to their ability to make informed purchasing decisions.   This dooms their claim for standing to seek injunctive relief.

Plaintiffs' assertion that they would be more inclined to purchase Vanilla Gift Cards, if only the product were more to their liking, does not confer standing.  If it did, then any consumer could establish standing just by articulating a wish to purchase, *e.g.*, an iPhone with longer battery life, or a McDonald's milkshake with fewer calories.  Courts in this Circuit have consistently rejected this limitless theory of standing.  For example, in *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668 (N.D. Cal. 2021), the court explained that an "allegation that [the plaintiff] would purchase the products again if they 'were reformulated' [to plaintiffs' liking was] not sufficient to allege standing for injunctive relief." *Id.* at 671 n.3.  In *Prescott v. Nestle USA, Inc.*, the court dismissed claims for injunctive relief where the plaintiffs merely alleged "that they d[id] not wish to purchase [the] 'fake' white chocolate" allegedly sold by the defendant, and preferred the real thing.  2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020).  And in *Brown v. Van's Int'l*, the court explained that

an allegation that the plaintiff "would . . . buy the products in the future if the products were 'reformulated'" was "insufficient for injunctive relief." 2022 WL 1471454, at *11. The result can be no different here. Having failed to allege that they "cannot rely on [InComm's] labels going forward," Plaintiffs still lack standing to seek injunctive relief. *See Gagetta*, 2022 WL 17812924, at *8.

## III. Plaintiffs Have Not Cured the Other Deficiencies in the FAC

Although Plaintiffs' lack of standing is dispositive of their SAC, the substantive allegations in their SAC are deficient for many of the same reasons as their prior complaints.

### A. Plaintiffs Have Again Failed to Plead Actual Reliance, as Required for Statutory Standing.

Plaintiffs lack statutory standing under the CLRA and UCL because they do not claim to have relied on any communication from InComm in making their purchases. As the Court has explained, to "plead actual reliance to state a claim for fraudulent omission . . . [a] plaintiff must show that 'had the omitted information been disclosed, [she] *would have been aware of it* and behaved differently.'" July 17 Op. at 8 (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (emphasis added)). This "critical" requirement of actual reliance bars claims from "consumers with . . . highly attenuated connection[s] to the misrepresentations at the center of the litigation." *Reed v. NBTY, Inc.*, 2014 WL 12284044, at *9 (C.D. Cal. Nov. 18, 2014) (Bernal, J.).

Plaintiffs' SAC does not meet this requirement. Plaintiffs accuse InComm of "omitting" various items from its packaging and other communications. Yet they do not allege that they *read* any such communication before purchasing the cards. If Plaintiffs never read InComm's communications, then it makes no difference to them what information InComm "omitted" from those communications. For this reason, courts routinely dismiss omission-based claims when plaintiffs fail to allege that they read the communications containing the alleged omissions. *See*, *e.g.*,

*O'Shea v. Epson Am. Inc.*, 566 F. App'x 605, 606 (9th Cir. 2014) (dismissing claims where plaintiffs never read defendant's disclosure); *Tristan v. Bank of Am.*, 2023 WL 4417271, at *5 (C.D. Cal. June 28, 2023) (holding plaintiffs could not have relied "on representations of which they were not aware"); *In re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968, at *56 (C.D. Cal. Dec. 6, 2022) (dismissing claims in absence of "allegations that each Plaintiff actually saw or heard the allegedly deceptive statements"); *Stewart v. Electrolux Home Prods., Inc.*, 2018 WL 1784273, at *6 (E.D. Cal. Apr. 13, 2018) (dismissing omissions claims where plaintiffs did not allege that if omitted information [regarding an allegedly defective component of an oven] had been disclosed, *they would have been aware of it*" prior to purchasing their ovens); *Joseph v. Costco Wholesale Corp.*, 2016 WL 759559, at *4 (C.D. Cal. Feb. 24, 2016), *aff'd*, 691 F. App'x 865 (9th Cir. 2017) (rejecting claim for omission of country-of-origin designation where plaintiff did not allege that he "actually read the label"). This Court should do the same here.

## B. Recipient Plaintiffs Have Again Failed to Plead Loss of Money or Property, as Required for Statutory Standing.

The Recipients' claims (which sound exclusively in the "unfair" prong of the UCL) should be dismissed for the additional reason that they have not suffered a loss of money or property, and therefore have no statutory standing. *See* Cal. Bus. & Prof. Code §§ 17204, 17535 (limiting UCL standing to those who have "lost money or property as a result of" the alleged misconduct).[3] Though a lackluster gift may be a disappointment, it is not a ticket into court. *See Colucci v. ZonePerfect Nutrition*

---

[3] The Court previously declined to address this argument, stating that it was not raised in InComm's motion to dismiss the FAC. July 17 Op. at 10 n.4. This determination had no practical effect, since the Court dismissed the UCL claims for other reasons. *See id.* at 9–10. However, InComm notes that it has argued that the Recipients lack standing for failure to plead a loss of money or property both in its motion to dismiss the original Complaint and in its motion to dismiss the FAC. *See* MTD at 21; FAC MTD at 21.

*Co.*, 2012 WL 6737800, at *5 (N.D. Cal. Dec. 28, 2012) (dismissing gift recipient's claim because "standing in product mislabeling cases is predicated on the purchase of at least *some* product"); *In re Intel Laptop Battery Litigation*, 2010 WL 5173930, at *1–2 (N.D. Cal. Dec. 15, 2010) (dismissing claims of individual who did not personally lose money because "corporate funds" were used to purchase product).

### C.   Plaintiffs' UCL "Unfair" Claim Fails Because They Have Not Identified a Legislative Policy That InComm Has Violated.

Plaintiffs have also not cured the defects in their UCL "unfair" prong claim. This Court has instructed that to state such a claim, a plaintiff must identify a specific "legislative policy [d]efendants have violated."   July 17 Op. at 9–10; *see also Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (requiring "a close nexus between the challenged act and the legislative policy"); *Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1080–81 (C.D. Cal. 2020).

The SAC tries, and fails, to fix this defect by alluding to Sections 1798.100(e) and 1798.81.5 of the California Civil Code.  *See* SAC ¶ 141.  These provisions are part of a statutory scheme "established to protect [p]laintiffs' privacy interests." *Rechnitz v. Transamerica Life Ins. Co.*, 2018 WL 5267184, at *3 (C.D. Cal. Apr. 6, 2018).[4]   They were adopted in response to incidents involving the inadvertent exposure of individuals' "sensitive personal information."  *See id.*  Consistent with this purpose, they require "reasonable security procedures" to protect "personal information," which Section 1798.81.5 defines as information that identifies an individual ***by name***.

None of this has anything to do with Plaintiffs' SAC.  Plaintiffs do not allege that InComm has compromised the "privacy" interests protected by this statute.

---

[4]   The law was originally passed in response to an incident where a TV show used papers "contain[ing] sensitive personal information about several show employees" as props in an episode, thus revealing their private personal information to the world.  *See Cal. Bill Analysis, A.B. 1950 Sen.*, June 29, 2004.

They have not even mentioned the word "privacy" in any of their complaints. Nor could they: Vanilla Gift Cards (unlike a credit or debit card), are not associated with any personal information, such as a cardholder's name, so even if a fraudster misappropriated a card balance, no cardholder's **privacy** would be at risk. All Plaintiffs allege here is that their money was misappropriated by fraudsters. That is a legitimate grievance (if it is true), but it has nothing to do with the "privacy" protections afforded by the California Legislature. Accordingly, this newly-adopted theory cannot salvage Plaintiffs' "unfair" claims.

### D. The Written Agreements Between Plaintiffs and InComm Bar Plaintiffs' Unjust Enrichment Claim.

Finally, Plaintiffs' unjust enrichment claim is barred by the Cardholder Agreements. An unjust enrichment claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Sanchez*, 2023 U.S. Dist. LEXIS 142817, at *70–72. That is the case here. As Plaintiffs have acknowledged, there are written Cardholder Agreements setting forth the complete terms and conditions of the relationship between InComm and Vanilla Gift cardholders. But the Court has previously declined to apply this principle, on the grounds that "neither party provided the Cardholder Agreement for the Court's review." July 17 Op. at 10.

As set forth above, InComm cannot identify the specific Agreement(s) applicable to Plaintiffs' Vanilla Gift Cards, because Plaintiffs have refused to provide any information about their cards. However, in accordance with this Court's prior Order, InComm includes with this motion a sample of the Cardholder Agreements, all of which are available online. *See* Ex. A.[5] These agreements cover a multitude of topics, including loading the card, card expiration, and the importance

---

[5] "Ex." citations refer to the exhibits to the Declaration of Jane Metcalf in Support of InComm's Motion to Dismiss the SAC, filed herewith.

of keeping receipts.  *See, e.g.*, Ex. C at 1.  Crucially, each agreement also establishes the terms and conditions governing InComm's handling of lost or stolen cards and unauthorized transactions.   *See* Ex. B at 1; Ex. C at 2; Ex. D at 2; Ex. E at 2.  Accordingly,     these     Cardholder     Agreements     are     "enforceable,     binding agreement[s] . . . defining the rights of the parties" as to the relevant issues, and therefore bar Plaintiffs' unjust enrichment claims.  *See Paracor*, 96 F.3d at 1167.

### CONCLUSION

For the foregoing reasons, InComm respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Respectfully submitted,

Dated: September 1, 2023

By: _____

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for InComm Financial Services, Inc., certifies that this brief is 24 pages, which complies with the page limit set by court order dated October 20, 2022.

Dated: September 1, 2023                    By: _____

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.