Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
Nicole G. Malick (SBN 335754)
  nmalick@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>INCOMM FINANCIAL SERVICES, INC.,<br><br>  Defendant. | Case No.: 5:22-CV-01839-JGB-SHK<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT INCOMM FINANCIAL SERVICES, INC.'S MOTION TO DISMISS**<br><br>Hon. Jesus G. Bernal<br>Date:   November 6, 2023<br>Time:   9:00 a.m.<br>Courtroom: 1 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 3

    I.    The SAC fails to satisfy Article III's traceability requirement on its face. ........................................................................................................ 3

    II.    Plaintiffs have not rebutted InComm's factual attack on standing. ................................................................................................... 5

        A.    Plaintiffs' efforts to discredit InComm are unavailing ............... 6

        B.    Plaintiffs' opposition confirms their lack of standing. ............... 7

    III.    Plaintiffs have no standing to pursue injunctive relief. ...................... 10

    IV.    The SAC should be dismissed in its entirety under Rule 12(b)(6). ............................................................................................... 10

        A.    Plaintiffs still fail to plead actual reliance. ............................... 10

        B.    Recipients lack statutory standing for additional reasons. ....... 11

        C.    Plaintiffs' UCL "unfair" claim fails. ......................................... 12

        D.    Cardholder Agreements bar Plaintiffs' unjust enrichment claim ............................................................................................ 12

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Diabetes Ass'n v. U.S. Dep't of Army*,
  938 F.3d 1147 (9th Cir. 2019) ................................................................... 5, 6, 7

*Anderson v. Apple, Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................ 11

*Bassett v. ABM Parking Servs., Inc.*,
  883 F.3d 776 (9th Cir. 2018) ............................................................................ 4

*Brown v. Van's Int'l Foods, Inc.*,
  2022 WL 1471454 (N.D. Cal. May 10, 2022) ................................................ 10

*Colucci v. ZonePerfect Nutrition Co.*,
  2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ................................................ 11

*Cork v. CC-Palo Alto, Inc.*,
  534 F. Supp. 3d 1156 (N.D. Cal. 2021) ............................................................ 4

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
  895 F.3d 1166 (9th Cir. 2018) .......................................................................... 3

*Gagetta v. Walmart, Inc.*,
  646 F. Supp. 3d 1164 (N.D. Cal. 2022) .......................................................... 10

*Hodsdon v. Mars*,
  891 F.3d 857 (9th Cir. 2018) .......................................................................... 12

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ............................................................. 2, 5, 6, 7

*Licea v. Caraway Home Inc.*,
  2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) .................................................... 9

*Marilao v. McDonald's Corp.*,
  632 F. Supp. 2d 1008 (S.D. Cal. 2009) .......................................................... 11

*Martindale v. MegaStar Fin. Corp.*,
  2022 WL 1129223 (E.D. Cal. Apr. 15, 2022) ................................................... 5

*Paracor Fin. Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .......................................................................... 12

ii
DEF. INCOMM'S REPLY BRIEF
14674732

*Sanchez v. Navy Fed. Credit Union*,
    2023 WL 6370235 (C.D. Cal. Aug. 14, 2023) ...................................................... 12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................................................. 9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................... 1, 4

*United States v. O'Connell v. Chapman Univ.*,
    245 F.R.D. 646 (C.D. Cal. 2007) ......................................................................... 8

**Statutes**

Cal. Bus. & Prof. Code §§ 17204, 17535 .................................................................. 11

**Other Authorities**

BATEMAN ET AL., 27A Fed. Proc., L. Ed. § 62:434 ..................................................... 6

Fed. R. Evid. 602 ........................................................................................................ 7

Fed. R. Civ. P. 12(d) ................................................................................................... 6

InComm respectfully submits this Reply Memorandum of Points and Authorities in further support of its Motion to Dismiss the Second Amended Complaint (the "SAC").[1]

**PRELIMINARY STATEMENT**

To demonstrate their standing, "plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quotation omitted). As set forth in InComm's Motion to Dismiss ("MTD"), Plaintiffs' SAC fails to answer that question. Plaintiffs accuse InComm of harboring a "security defect" that enables fraudsters to "instantly" deplete Vanilla Gift Card balances, but allege nothing about when, how, or even whether ***their*** card balances were depleted. Similarly, Plaintiffs contend that InComm erects "intentional barriers" to consumers seeking reimbursement for fraud, but say nothing about the "barriers," if any, that ***they*** encountered.[2] Accordingly, even if Plaintiffs' claims about InComm's conduct were true (they are not), Plaintiffs have not answered the critical question: *What's it to them?* Plaintiffs' opposition offers no meaningful response on this point, and the SAC should be dismissed for this facial deficiency.

Moreover, in responding to InComm's alternative "factual attack" on standing, Plaintiffs manage to make an even stronger case for dismissal than InComm could. As shown in the MTD, InComm cannot locate any record of Plaintiffs' alleged customer-service calls, or indeed of Plaintiffs' gift cards, based on the limited information Plaintiffs have provided. In response to this factual showing, Plaintiffs "bear the burden of proving by a preponderance of the evidence that . . . the requirements" of standing are met, and must do so with "competent

---

[1] Capitalized terms not defined here have the same meaning as in InComm's opening brief, Dkt. 58 ("MTD").

[2] In fact, Plaintiff Shelby Cooper, who unilaterally dismissed her claims this week, Dkt. 73, did not even allege that she ever contacted InComm. *See* SAC ¶ 19, Dkt. 54.

proof." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Plaintiffs have not come close to satisfying this burden. They adduce no "competent proof" at all, but rely on discovery responses that they admit are not based on Plaintiffs' personal knowledge. And they admit that they, too, have no phone records or other documentation reflecting their purported customer-service outreach to InComm.

But these, it turns out, are the least of Plaintiffs' problems. After their third attempt at pleading, Plaintiffs now concede for the first time that they have ***no information at all*** about the Vanilla Gift Cards allegedly at issue. They do not have the cards, card packaging, or proof of purchase. Most incredibly, they did not even retain the 16-digit card numbers associated with their cards. Thus, at some point between December 2021 (when the Plaintiffs claim to have acquired Vanilla Gift Cards, *see* SAC ¶¶ 18-22) and October 2022, when Plaintiffs brought this federal action—a span of about 11 months—each and every Plaintiff irretrievably lost or destroyed each and every piece of documentary evidence of their card ownership.

As the Cardholder Agreements make clear, InComm cannot assist cardholders with reimbursement claims unless they provide their card numbers. The absence of this information also makes it impossible to access the cards' transaction histories, so Plaintiffs have no way of identifying the purportedly "fraudulent transactions" on their cards. Nor, of course, can they say whether those transactions occurred "instantly" upon activation. Plaintiffs therefore have no factual basis whatsoever for claiming that their theorized "security defect" caused their purported losses. Indeed, having lost or discarded every trace of their cards, Plaintiffs have virtually no factual basis for claiming that they ever owned Vanilla Gift Cards at all.

Plaintiffs have failed to rebut InComm's factual attack, and their SAC should be dismissed for lack of subject matter jurisdiction. In addition, as set forth in InComm's MTD, each of Plaintiffs' claims fails under Rule 12(b)(6).

# ARGUMENT

## I. The SAC fails to satisfy Article III's traceability requirement on its face.

As set forth in InComm's MTD, even if Plaintiffs' allegations regarding InComm's conduct were true (they are not), Plaintiffs have not plausibly alleged that the conduct caused their claimed injuries. Although Plaintiffs complain of a security defect that permits balances to be spent "almost instantly" upon activation, they do not allege any facts suggesting that this happened to them. MTD at 14 (citing SAC ¶¶ 47, 63, 67). Nor do they allege any specific "barriers" to reimbursement that they faced. Accordingly, they have failed to allege that their injuries are "traceable" to InComm's purported misconduct.

Plaintiffs contend that they have satisfied the "traceability" requirement with their conclusory allegations that "Unauthorized Users stole Card funds," and that "Vanilla was responsible for security flaws leading to the depletion of Plaintiffs' cards." Opp'n at 6, Dkt. 62-2 (emphasis omitted). But this only highlights what is missing. Even assuming that "Unauthorized Users" indeed stole Plaintiffs' card funds, Plaintiffs must allege facts connecting that outcome to the purported "security flaw" for which "Vanilla was responsible." *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (plaintiff must "plausibly plead facts to establish" a "causal connection between the injury and the conduct complained of"). Here, Plaintiffs have described a "security flaw" characterized by "instant" depletion of balances but have not alleged that *they* experienced that outcome, nor any other "facts" attributing their losses to InComm's alleged defect. In the absence of such "plausibly ple[]d facts," conjecture alone does not suffice. *Id.*

Plaintiffs try to elide this deficiency by offering new, unpleaded, and contradictory theories of the injury they suffered. As Plaintiffs acknowledge, their SAC alleges they "suffered injury because the Card they purchased and/or received had charges made against it by Unauthorized Users, [which] Vanilla did not refund." Opp'n at 5 (citing SAC ¶ 23). But two pages later, Plaintiffs hedge by offering an

entirely different account of their purported injury, which, they explain, is not "reliant" in any way on InComm's purported failure to reimburse them. *Id.* at 7. According to this new theory, Plaintiffs "were harmed the moment they purchased or received Cards, even if they never sought reimbursement, because they did not get the Face Value of the Cards they purchased or received." *Id.*

Plaintiffs' abrupt effort to minimize the significance of reimbursement, right after the revelation that they did not seek reimbursement, is notable. But in any event, Plaintiffs' cryptic new theory that they were injured "at the moment they purchased or received Cards" is, under any interpretation, inconsistent with their SAC. If they are implying that InComm failed to load the cards' face value to begin with, that contradicts their long-standing allegation that "Unauthorized Users" depleted the cards. SAC ¶¶ 6, 12. If they are implying that "Unauthorized Users" had ***already*** depleted the cards "at the moment" Plaintiffs purchased them, that contradicts their allegation that the cards acquired value only when purchased and activated—an allegation that is central to the SAC's "security defect" theory. *See id.* ¶¶ 34-35; *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n.8 (N.D. Cal. 2021) (explaining that an opposition brief cannot amend a complaint).

The final possible interpretation of Plaintiffs' new theory is that they were injured by the sheer fact of purchasing cards with allegedly inadequate security, whether or not their cards were defrauded at all. But this, too, is irreconcilable with the SAC, which unequivocally alleges that each plaintiff "suffered injury because the[ir] Card . . . had charges made against it by Unauthorized Users." SAC ¶ 23. And in any event, it is not an injury sufficient to confer Article III standing. By Plaintiffs' newfound logic, all Vanilla Gift Card purchasers suffered an "injury"— even the ones who redeemed their full balances with no difficulty—simply by virtue of the cards' purportedly elevated risk of fraud. But the mere elevated risk of an undesirable outcome does not constitute an Article III injury, regardless of who is to blame for the elevation. *TransUnion*, 141 S. Ct. at 2210–11 (holding that "in a suit

for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm"); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 783 (9th Cir. 2018) (rejecting "theory of exposure to identity theft" as "too speculative for Article III purposes") (internal quotation marks omitted). Thus, Plaintiffs' latest theory of injury is neither consistent with their SAC nor legally sufficient. Plaintiffs have failed to allege any concrete injury "traceable" to InComm's alleged misconduct.

## II.  Plaintiffs have not rebutted InComm's factual attack on standing.

Although this facial deficiency is reason enough to dismiss the SAC, InComm's MTD mounted an alternative "factual attack" on Plaintiffs' standing, by presenting evidence of InComm's own inability to locate any trace of any dealings between Plaintiffs and InComm. Alison Ledford, an InComm employee, explained that InComm's exhaustive search for Plaintiffs' purported complaints, using the limited information in Plaintiffs' SAC, had yielded no records. *See* Dkt. 60-1.

Plaintiffs respond with a lengthy discussion of the standards applicable to "factual attacks," but their account of those standards is incorrect in every particular. *First*, contrary to Plaintiffs' claims, a factual attack need not be based on evidence in the "public record," Opp'n at 8-9, but may be supported by any "evidence outside the pleadings" that the movant chooses, *Leite*, 749 F.3d at 1121; *see also Am. Diabetes Ass'n v. U.S. Dep't of Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (affirming defendant's ability to mount a factual attack "by presenting affidavits or other evidence"). Accordingly, the fact that the Ledford Declaration is not a "matter of public record" does not preclude this Court from considering it.

*Second*, also contrary to Plaintiffs' claims, a plaintiff "**cannot rest on the mere assertion that factual issues may exist**" when rebutting a factual attack. *Martindale v. MegaStar Fin. Corp.*, 2022 WL 1129223, at *2 (E.D. Cal. Apr. 15, 2022) (emphasis added) (citing *Trentacosta v. Frontier Pac. Aircraft Ind., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). Rather, "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter

jurisdiction has been met," through "competent proof." *Leite*, 749 F.3d at 1121. That is, the plaintiff ***"must furnish affidavits or other evidence*** necessary to satisfy its burden of establishing subject matter jurisdiction." *Am. Diabetes Ass'n*, 938 F.3d at 1151 (emphasis added) (quotations omitted).

*Third*, by the same token, the Court is empowered to "resolve . . . factual disputes itself" when deciding the motion. *Leite*, 749 F.3d at 1121–22; *see also* Bateman et al., 27A Fed. Proc., L. Ed. § 62:434 (explaining that "[t]he court must weigh the evidence" on a factual attack). *Fourth*, the Court does ***not*** have the option of "conversion to summary judgment" under Rule 12(d), as Plaintiffs urge. That mechanism is available only for Rule 12(b)(6) and 12(c) motions, not Rule 12(b)(1) motions such as InComm's. Fed. R. Civ. P. 12(d).

To recap: (1) InComm has offered evidence of Plaintiffs' lack of standing; (2) Plaintiffs then bear the burden of proving standing by a "preponderance of the evidence"; and (3) to the extent that the briefing yields disputed factual issues, the Court may resolve them.

**A.  Plaintiffs' efforts to discredit InComm are unavailing.**

As this framework makes clear, Plaintiffs' critiques of the Ledford Declaration are largely irrelevant, since no such critiques can satisfy Plaintiffs' burden of demonstrating their own standing. And in any event, Plaintiffs' critiques are unpersuasive. They fault Ms. Ledford for failing to search through "purchase or receipt records," but do not explain what "purchase or receipt records" they are referring to or why they believe information about their alleged complaints would appear there. *See* Opp'n at 11. They criticize her for failing to search email addresses, but as her declaration shows, she ***did*** search complaints submitted by email. *Compare id.*, *with* Ledford Decl. ¶¶ 16, 22-23, Dkt. 60-1. They suggest that InComm's records are disorganized, Opp'n at 12, though they offer no factual basis for this, and have not even alleged it, *see generally* SAC.

Finally, Plaintiffs take Ms. Ledford to task for failing to search for their phone numbers, which they acknowledge they **had not provided** at the time of her declaration. Opp'n at 11. Since then, in response to discovery, three of the remaining Plaintiffs have provided the phone numbers they allegedly used to call InComm. (The fourth claims she "does not recall" which phone number she used. Dkt. 62-6 at 7-8.) Ms. Ledford searched those phone numbers, but they too yielded no record of any outreach by Plaintiffs. *See generally* Second Ledford Decl.[3] In short, Plaintiffs' critiques of the Ledford Declaration are meritless. But more importantly, none of them gets Plaintiffs any closer to showing that InComm's purported misconduct injured **them**.

### B. Plaintiffs' opposition confirms their lack of standing.

Although Plaintiffs bear the burden of proof, they should have been able to rebut InComm's factual attack with little effort. All they had to do was submit their own affidavits, recounting the facts about their experiences that are missing from their SAC. *See Am. Diabetes Ass'n*, 938 F.3d at 1151 ("[T]he party opposing the [factual attack] must furnish affidavits or other evidence."). Instead, Plaintiffs offered nothing to rebut InComm's factual showing, and much to reinforce it.

As an initial matter, Plaintiffs have provided no "competent proof" in response to the motion. *See Leite*, 749 F.3d at 1121. They rely instead on their responses to InComm's interrogatories, which none of the Plaintiffs has verified based on personal knowledge. Instead, each verification states, "*I am informed and believe that the matters stated in the [interrogatory] responses are true, except as to those matters stated on information and belief; as to those matters, I believe them to be true.*" Opp'n Exs. 3, 5–8 at 14, Dkt. 62-6, 62-8–62-11 (emphasis added). This tortured language leaves many questions unanswered: Who "informed" Plaintiffs, and on what basis? Which responses are "stated on information and

---

[3] Citations to "Second Ledford Decl." refer to the October 20, 2023 Declaration of Alison Ledford, filed herewith.

belief"? The one thing that is clear, however, is that Plaintiffs have not purported to offer testimony based on personal knowledge. Accordingly, they have failed to rebut InComm's factual attack with "competent proof." *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *United States v. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) (explaining that individuals "must answer interrogatories based on personal knowledge").

Moreover, putting aside this fundamental defect, Plaintiffs' responses reveal that their claim to standing is even weaker than previously thought. Like Ms. Ledford, Plaintiffs cannot locate any records, such as phone bills, confirming their purported calls to InComm. In addition, all four remaining Plaintiffs have also lost or discarded their Vanilla Gift Cards, and none of the four has even retained her 16-digit card number (ditto for former-plaintiff Cooper). *See* Opp'n Exs. 3–8, Dkt. 62-6–62-11. This revelation is devastating to Plaintiffs' case. The card number, displayed below with the first twelve digits redacted, is the sole identifier for Vanilla Gift Cards, since the cards are not associated with specific individuals.



Without a card number, no Plaintiff can access her transaction history, which means no Plaintiff can identify a single "unauthorized" transaction on her card, much less determine when such transactions occurred. Likewise, InComm cannot access this information without a card number—which is why its Cardholder Agreements make clear that a card number is necessary to seek reimbursement. *See* Dkt. 58-3 at 2 ("We cannot assist you if you do not have the Card/Virtual Account number."); *see also* Dkt. 58-4 at 3; 58-5 at 3; 58-6 at 3. Accordingly, without card numbers,

there is no possible way to determine what happened to Plaintiffs' card balances, when it happened, or whether InComm's alleged "security defect" was responsible. Plaintiffs have allowed these facts to be lost to history.

Plaintiffs' responses also give reason to doubt that they ever purchased (or received) Vanilla Gift Cards to begin with. No Plaintiff has proof of purchase, and their recollections of when and where they purchased their cards are hazy. *See* Opp'n Exs. 3–8. The two Plaintiffs who claim to have purchased e-cards do not have any e-receipts or emails from vanillagift.com. In fact, they are not sure whether they even bought their cards at vanillagift.com, as opposed to some other website selling some other brand of e-gift card. In other words, Plaintiffs think they had Vanilla Gift Cards, but do not know for sure, and have no information about their cards or what happened to their card balances. Plaintiffs' vague memories and unsupported hunches cannot confer Article III standing.

Plaintiffs cannot escape the import of these facts with their vague protest that "the jurisdictional issue and substantive issues are so intertwined" as to render a factual ruling inappropriate. Opp'n at 9. For purposes of InComm's Rule 12(b)(1) motion, this Court may assume that all of the allegations in Plaintiffs' SAC about InComm's conduct are true, ***and*** that Plaintiffs have statutory standing under the CLRA to sue InComm. That is, the Court's analysis need not touch on the "merits" at all. InComm's motion pertains only to the "irreducible constitutional minimum" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). And on that, Plaintiffs have failed to rebut InComm's factual showing.

\* \* \*

For these reasons, the Court should dismiss Plaintiffs' SAC. But to the extent the Court needs additional information to determine whether Plaintiffs can satisfy their burden, it should provide for an initial period of discovery focused exclusively on Plaintiffs' standing. Granting such limited discovery would be well within the Court's "exceptionally broad" authority, *see Licea v. Caraway Home Inc.*, 2023 WL

1999496, at *10 (C.D. Cal. Feb. 9, 2023) (Bernal, J.), and would avoid the potential waste of substantial judicial resources on a case over which this Court lacks jurisdiction.

### III. Plaintiffs have no standing to pursue injunctive relief.

In addition to lacking standing generally, Plaintiffs also do not have standing to pursue injunctive relief specifically, because they do not allege that "they desire to purchase the [p]roducts from [the] [d]efendant in the future but ***cannot do so in an informed manner because they cannot rely on the labels going forward***." *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (emphasis added); *see also Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022). Plaintiffs' allegation that they "do not have the ability to determine" the cards' features, Opp'n at 18 (quoting SAC ¶ 108), is inadequate to confer standing, absent an allegation that Plaintiffs plan to rely on InComm's communications, advertisements, or labels in the future. MTD at 18-19.

Plaintiffs' assurance that they would purchase Vanilla Gift Cards if only InComm "remedied its security practices or reimbursed consumers for depleted funds" is also insufficient. Opp'n at 16-17. Plaintiffs completely ignore the case law cited in InComm's MTD on this point. *See* MTD at 19-20. The Court should dismiss Plaintiffs' request for injunctive relief.

### IV. The SAC should be dismissed in its entirety under Rule 12(b)(6).

The Court need not consider the sufficiency of the SAC, given its lack of subject matter jurisdiction. However, the SAC is deficient in several respects.

#### A. Plaintiffs still fail to plead actual reliance.

This Court has held that to "plead actual reliance [in] a claim for fraudulent omission . . . [a] plaintiff must show that had the omitted information been disclosed, [she] would have been aware of it." July 17 Order at 8, Dkt. 53 (quotation omitted). Here, Plaintiffs do not allege that they read or listened to any communication from InComm prior to making their purchases, so cannot show that they "would have been

aware of" any allegedly omitted information had it been disclosed. This is fatal to their consumer fraud claims. *See, e.g.*, MTD at 20-21 (collecting cases).

Plaintiffs' claim that they read and relied on "the Cards' Face Value," Opp'n at 19, is irrelevant given that Plaintiffs have not accused InComm of misrepresenting the Cards' face value, by omission or otherwise. And their reliance on *Anderson v. Apple, Inc.*, 500 F. Supp. 3d 993 (N.D. Cal. 2020), is similarly misguided. In that case, Judge Orrick held that some plaintiffs had pled actual reliance because they claimed to have "reviewed marketing and similar materials . . . prior to making their purchase," but ***dismissed*** the claims of plaintiffs who made no such allegation. *Id.* at 1018 & n.7. Here, *Anderson* compels dismissal of Plaintiffs' claims because not a single one of them makes such an allegation.

Finally, Plaintiffs urge the Court to simply infer reliance on the omissions based on their allegation that the omissions occurred. Opp'n at 21. But if that inference were permitted, the "reliance" element would mean nothing. No matter what omissions InComm purportedly made, Plaintiffs must allege reliance on them, and have failed to do so.

### B. Recipients lack statutory standing for additional reasons.

For two other reasons, Recipients lack statutory standing. First, even if ***Purchasers*** had alleged reliance when making their purchases, ***Recipients*** never purchased their Cards and so cannot have relied on anything. Second, Recipients have not suffered the loss of "money or property" required for statutory standing. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; *see also Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *5 (N.D. Cal. Dec. 28, 2012) (holding gift recipient lacked standing). Were it otherwise, a seller could face limitless liability from strangers who are regifted its wares.[4]

---

[4] The only gift-card case that Plaintiffs cite, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008 (S.D. Cal. 2009), supports InComm's position, not Plaintiffs'.

### C. Plaintiffs' UCL "unfair" claim fails.

Plaintiffs concede that InComm has not violated Sections 1798.100(b) and 1798.81.5 of the California Code, and again fail to connect those provisions with their allegations, which have *nothing* to do with personal privacy. *See* Opp'n at 22. Thus, Plaintiffs have not alleged the "close nexus between the challenged act and [a] legislative policy" required to sustain a UCL "unfair" claim. *See Hodsdon v. Mars*, 891 F.3d 857, 866–67 (9th Cir. 2018). Plaintiffs' opposition offers no response to this point.

### D. Cardholder Agreements bar Plaintiffs' unjust enrichment claim.

Plaintiffs have previously acknowledged that Cardholder Agreements governed their relationship with InComm. *See* Dkt. 36 at 22-23 (conceding that InComm's Cardholder Agreements were "express agreements" through which InComm had a "contractual agreement with purchasers"). Accordingly, the Court admonished Plaintiffs to "explain what the[ir] Cardholder Agreement covers," Dkt. 41 at 8, and directed the parties to provide the agreements, July 17 Order at 10. InComm tried to comply, but which Cardholder Agreement applies depends on the card number, which Plaintiffs have refused to provide. MTD Ex. A, Dkt. 58-2.

Plaintiffs respond that InComm "fails to explain how the Agreements are enforceable and binding," forgetting that ***they*** must allege facts establishing contractual invalidity if they wish to bring an unjust enrichment claim. *See Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235, at *21 (C.D. Cal. Aug. 14, 2023) (Bernal, J.). Because they have not, the claim is barred by "enforceable, binding agreement[s] . . . defining the rights of the parties." *Paracor Fin. Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

### CONCLUSION

InComm respectfully requests that the Court dismiss the SAC with prejudice.

---

There, the court held that plaintiff had not suffered the loss of money or property as he "did not expend money" when receiving a gift. *Id.* at 1013.

12

DEF. INCOMM'S REPLY BRIEF

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 20, 2023 | By: _____ |
|  | William A. Delgado (SBN 222666) |
|  |   wdelgado@dtolaw.com |
|  | Nicole G. Malick (SBN 335754) |
|  |   nmalick@dtolaw.com |
|  | DTO LAW |
|  | 601 S. Figueroa St. Suite 2130 |
|  | Los Angeles, CA 90017 |
|  | Tel: (213) 335-7010 |
|  | Fax: (213) 335-7802 |
|  |  |
|  | Jane Metcalf (*pro hac vice*) |
|  |   jmetcalf@pbwt.com |
|  | David S. Kleban (*pro hac vice*) |
|  |   dkleban@pbwt.com |
|  | Peter Vogel (*pro hac vice*) |
|  |   pvogel@pbwt.com |
|  | Basil Williams (*pro hac vice*) |
|  |   bwilliams@pbwt.com |
|  | PATTERSON BELKNAP WEBB & TYLER LLP |
|  | 1133 Avenue of the Americas |
|  | New York, New York 10036 |
|  | Tel: (212) 336-2000 |
|  | Fax: (212) 336-2222 |
|  |  |
|  | Attorneys for Defendant |
|  | INCOMM FINANCIAL SERVICES, INC. |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for InComm Financial Services, Inc., certifies that this brief is twelve pages, which complies with the page limit set by Court order dated October 20, 2022.

Dated: October 20, 2023    By: _____
William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
Nicole G. Malick (SBN 335754)
  nmalick@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.