Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com
Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
Nicole G. Malick (SBN 335754)
  nmalick@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al., | Case No.: 5:22-CV-01839-JGB-SHK |
| Plaintiffs, | **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DENY CLASS CERTIFICATION** |
| v. | |
| INCOMM FINANCIAL SERVICES, INC., | |
| Defendant. | Hon. Jesus G. Bernal<br>Date:  April 8, 2024<br>Time:  9:00 a.m.<br>Courtroom:  1 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| **InComm's Vanilla Gift Cards** | | |
| 1 | InComm's Vanilla Gift Cards are prepaid cards that can be used like debit cards. | SAC ¶ 1-2, Dkt. 54; Decl. of Alison Ledford ("Ledford Decl.") ¶ 3, Dkt. 60-1. |
| 2 | Each Vanilla Gift Card is associated with a standard credit card network such as Mastercard, Visa, or Discover. | Ledford Decl. ¶ 3; Metcalf Decl. ISO MTD SAC Ex. A, Dkt. 58-1. |
| 3 | Each Vanilla Gift Card has a unique card number, expiration date, and CVV code. | Decl. of Jane Metcalf ISO Motion for Summary Judgment or, in the Alternative, to Deny Class Certification ("Metcalf Decl.") Ex. A, CLARK000034-CLARK000043. |
| 4 | Vanilla Gift Card numbers are 16 digits. | Ledford Decl. ¶ 23. |
| 5 | Some Vanilla Gift Cards take the form of plastic "physical" cards, which resemble debit or credit cards. | Metcalf Decl. Ex. A, CLARK000034-CLARK000035; SAC ¶ 1. |
| 6 | Some Vanilla Gift Cards take the form of virtual eCards, which are electronic images resembling debit or credit cards. | Metcalf Decl. Ex. A, CLARK000036-CLARK000037. |
| 7 | Customers purchase eCards online directly from InComm at VanillaGift.com. | Decl. of Amy Strauser ISO Motion for Summary Judgment or, in the Alternative, to Deny Class Certification ("Strauser Decl.") ¶ 3. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS
14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 8 | When a customer buys an eCard, they must provide an email address to which the card information is sent, which can be either their own email address or another individual's email address if the eCard is being gifted. | Strauser Decl. ¶ 4. |
| 9 | Once the customer provides their email address, InComm transmits a link to the information necessary to use the eCard, to the email address of the purchaser's choosing. | Strauser Decl. ¶ 4. |
| 10 | Cardholders can also access their card images on InComm's website, balance.vanillagift.com. | Metcalf Decl. Ex. A, CLARK000036–37. |
| 11 | Physical Vanilla Gift Cards are sold at a variety of retailers and are "activated" by the retailer at the time of purchase. | Ledford Decl. ¶ 3; SAC ¶¶ 33, 35. |
| 12 | Prior to purchase, Vanilla Gift Cards have no value. | Ledford Decl. Ex. 4, Dkt. 60-5; SAC ¶ 35. |
| 13 | Unlike credit and debit cards, InComm's cards are not associated with | |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | cardholders' names or other identifying information. | Ledford Decl. ¶ 4. |
| 14 | A card's balance and transaction history can be reviewed at InComm's website, balance.vanillagift.com, by entering the card number, expiration date, and CVV. | Metcalf Decl. ISO MTD SAC Ex. B, Dkt. 58-3, Cardholder Agreement for Vanilla Visa Gift Cards beginning with 411810 ¶ 4; Metcalf Decl. ISO MTD SAC Ex. D, Dkt. 58-5, Cardholder Agreement for Vanilla Visa Gift Cards Beginning with 411191 at 1. |
| 15 | The terms of use for each Vanilla Card are governed by a cardholder agreement. | Metcalf Decl. ISO MTD SAC Ex. A, Dkt. 58-2. |
| 16 | One cardholder agreement requires cardholders to contact customer service within 60 days of the earlier of "the date you electronically access your account in which the transaction was reflected, or the date we sent the FIRST written history on which the unauthorized transfer appeared." | Metcalf Decl. ISO MTD SAC Ex. B ¶ 12. |
| 17 | One cardholder agreement cautions cardholders that customer service may not be able to assist the customer if the call is not made within | Metcalf Decl. ISO MTD SAC Ex. E, Dkt. 58-6, Cardholder Agreement for Vanilla Visa Gift Cards beginning with 431568 at 3. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | 60 days of "the unauthorized transaction." | |
| **Unauthorized Transactions on Vanilla Cards** | | |
| 18 | InComm has customer service systems to assist cardholders who are victimized by third-party fraud. | Ledford Decl. ¶ 6; Metcalf Decl. ISO MTD SAC Ex. B ¶ 12. |
| 19 | If a cardholder believes there has been a fraudulent transaction, they can call InComm to dispute the allegedly fraudulent transaction. | Ledford Decl. ¶¶ 11-12; Metcalf Decl. ISO MTD SAC Ex. D at 2; Metcalf Decl. ISO MTD SAC Ex. B ¶ 12. |
| 20 | InComm generally requires cardholders who contact it to verify their card by providing their 16-digit card number. | Ledford Decl. ¶ 13; Metcalf Decl. ISO MTD SAC Ex. D at 2; Metcalf Decl. ISO MTD SAC Ex. B, ¶ 12. |
| 21 | InComm warns cardholders in their cardholder agreements that it "may not be able to assist [them] if [they] do not have or provide [their card number]." | Metcalf Decl. ISO MTD SAC Ex. D at 2. |
| 22 | Cardholders are also informed that InComm will not be able to provide a replacement card unless they provide their "Card number | Metcalf Decl. ISO MTD SAC Ex. D at 2; *see also* Metcalf Decl. ISO MTD SAC Ex. B ¶ 12, Dkt. 58-3. |

5

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | and other identifying details." | |
| 23 | Once the cardholder provides their information, if InComm determines based on the information and the card's balance history that the cardholder was likely a victim of fraud, InComm will investigate the potential fraud and provide the cardholder with a refund or replacement card, if appropriate. | Ledford Decl. ¶ 14. |
| 24 | Cardholders can also seek redress by submitting complaints to the Better Business Bureau ("BBB"). | Metcalf Decl. ISO MTD Initial Compl. Ex. B, Dkt. 23-3. |
| 25 | The BBB gives InComm an A+ rating based on its strong record of responsiveness to and resolution of those complaints. | Metcalf Decl. ISO MTD Initial Compl. Ex. B. |
| 26 | Alternatively, a cardholder can bring a claim against InComm in arbitration, as they are entitled to do under the cardholder agreements. | Metcalf Decl. ISO MTD SAC Ex. B ¶ 17; Metcalf Decl. ISO MTD SAC Ex. D at 2. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 27 | In 2021, a consumer initiated an arbitration proceeding against InComm; the parties resolved the dispute within four months. | Metcalf Decl. Ex. C, American Arbitration Association, Q4 2023 Consumer and Employment Arbitration Statistics Report, https://www.adr.org/consumer (filtered by "NON CONSUMER" for "Incomm Financial" only). |
| **Initiation of this Lawsuit** | | |
| 28 | On or about August 15, 2022, Plaintiff's counsel took out advertisements on Facebook asking: "[d]id you purchase or receive a Vanilla eGift Card that had zero balance or a lower balance than what was originally purchased?" | Metcalf Decl. Ex. D, CLARK000031-33; Metcalf Decl. Ex. E, Pl. Carolyn Clark's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 10; Metcalf Decl. Ex. G, Clark Dep. 143:15–144:5. |
| 29 | The advertisements also asked: "[a]re you interested in in [sic] being a class representative seeking to recover the funds that Vanilla lost?" | Metcalf Decl. Ex. D, CLARK000031; Metcalf Decl. Ex. E, Pl. Carolyn Clark's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 10; Metcalf Decl. Ex. G, Clark Dep. 143:15–144:5. |
| 30 | Each of the five original Plaintiffs—Carolyn Clark, Sharon Manier, Shelby Cooper, Aquilla Thompson, and Tarika Stewart—had their first contact with Plaintiff's counsel after viewing the Facebook advertisement and filling out the web- | Metcalf Decl. Ex. G, Clark Dep. 143:15-144:5; Metcalf Decl. Ex. H, Sharon Manier's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 11; Metcalf Decl. Ex. I, Shelby Cooper's Resps. to Def.'s First Set of Interrogs., Resp. No. 11; Metcalf Decl. Ex. J, Aquilla Thompson Resps. to Def.'s First Set of Interrogs., Resp. No. 11; Metcalf Decl. Ex. L, Tarika Stewart's Resps. to Def.'s First Set of Interrogs., Resp. No. 11. |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | based form linked to the ad. | |
| **Former Plaintiff Sharon Manier** | | |
| 31 | Sharon Manier was an alleged "recipient" of a physical card whose claim was dismissed for lack of standing in the Court's December 1, 2023 decision. | SAC ¶ 20; Order Granting in Part and Denying In Part Def.'s MTD the SAC at 10–11, Dkt. 103. |
| 32 | Manier did not preserve a copy of her Vanilla Gift Card. | Metcalf Decl. Ex. M, Manier Dep. 92:12-94:6. |
| 33 | Manier did not preserve any identifying information about her Vanilla Gift Card. | Metcalf Decl. Ex. M, Manier Dep. 92:12-94:6; Metcalf Decl. Ex. H, Sharon Manier's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 1; Metcalf Decl. Ex. N, Sharon Manier's Resps. to Def.'s First Set of RFPs, Resp. Nos. 1, 2. |
| 34 | Manier did not preserve any documentation showing the transactions made with her card. | Metcalf Decl. Ex. M, Manier Dep. 99:18-23; Metcalf Decl. Ex. H, Sharon Manier's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 4. |
| 35 | Manier has no record of purchasing or receiving her Vanilla Gift Card. | Metcalf Decl. Ex. M, Manier Dep. 48:9-49:3; Metcalf Decl. Ex. N, Sharon Manier's Resps. to Def.'s First Set of RFPs, Resp. No. 3. |
| 36 | Manier never submitted a dispute form to InComm to challenge any charges made on her card. | Metcalf Decl. Ex. M, Manier Dep. 76:3-5; Metcalf Decl. Ex. O, Sharon Manier's Resp. to Def.'s First Set of Reqs. for Admissions, Resp. No. 1. |
| 37 | Manier has no record (such as a phone bill) of calling InComm regarding difficulties with her card. | Metcalf Decl. Ex. M, Manier Dep. 96:5-15; Metcalf Decl. Ex. N, Sharon Manier's Resps. to Def.'s First Set of RFPs, Resp. No. 5. |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
|  | **Former Plaintiff Aquilla Thompson** |
| 38 | Aquilla Thompson was an alleged purchaser of an eCard. | SAC ¶ 22. |
| 39 | Thompson did not preserve a copy of her Vanilla Gift Card. | Metcalf Decl. Ex. J, Aquilla Thompson's Resps. to First Set of Interrogs., Resp. No. 1; Metcalf Decl. Ex. P, Aquilla Thompson's Resps. to Def.'s First Set of RFPs, Resp. No. 1. |
| 40 | Thompson did not preserve any identifying information about her Vanilla Gift Card. | Metcalf Decl. Ex. P, Aquilla Thompson's Resps. to First Set of RFPs, Resp. No. 2. |
| 41 | Thompson did not preserve any documentation showing the transactions made with her card. | Metcalf Decl. Ex. J, Aquilla Thompson's Resps. to First Set of Interrogs., Resp. No. 5. |
| 42 | Thompson has no record of purchasing her Vanilla Gift Card. | Metcalf Decl. Ex. K, Aquilla Thompson's Resps. to First Set of RFPs, Resp. No. 2. |
| 43 | Thompson never submitted a dispute form to InComm to challenge any charges made on her card. | Metcalf Decl. Ex. Q, Aquilla Thompson's Resp. to Def.'s First Set of Reqs. for Admissions, Resp. No. 1. |
| 44 | Thompson has no record (such as a phone bill) of calling InComm regarding difficulties with her card. | Metcalf Decl. Ex. P, Aquilla Thompson's Resps. to Def.'s First Set of RFPs, Resp. No. 3. |
| 45 | Thompson stopped communicating with her attorneys. | Dkt 91; Decl. of Jaclyn Anderson ISO Mot. to Withdraw, Dkt. 91-1. |
| 46 | Plaintiff's counsel withdrew from | Dkt. 91. |

9

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | representing Thompson. | |
| 47 | The Court dismissed Thompson's claims for failure to prosecute. | Dkt. 121. |
| **Former Plaintiff Tarika Stewart** | | |
| 48 | Tarika Stewart was an alleged purchaser of a physical card. | SAC ¶ 21. |
| 49 | Stewart did not preserve a copy of her Vanilla Gift Card. | Metcalf Decl. Ex. R, Tarika Stewart's Resps. to Def.'s First Set of RFPs, Resp. No. 1. |
| 50 | Stewart did not preserve any identifying information about her Vanilla Gift Card. | Metcalf Decl. Ex. L, Tarika Stewart's Resps. to First Set of Interrogs., Resp. No. 1; Metcalf Decl. Ex. R, Tarika Stewart's Resps. to First Set of RFPs, Resp. No. 1. |
| 51 | Stewart did not preserve any documentation showing the transactions made with her card. | Metcalf Decl. Ex. L, Tarika Stewart's Resps. to First Set of Interrogs., Resp. No. 3. |
| 52 | Stewart has no record of purchasing her Vanilla Gift Card. | Metcalf Decl. Ex. R, Tarika Stewart's Resps. to First Set of RFPs, Resp. No. 2. |
| 53 | Stewart never submitted a dispute form to InComm to challenge any charges made on her card. | Metcalf Decl. Ex. S, Tarika Stewart's Resp. to Def.'s First Set of Reqs. for Admissions, Resp. No. 1. |
| 54 | Stewart has no record (such as a phone bill) of calling InComm regarding difficulties with her card. | Metcalf Decl. Ex. R, Tarika Stewart's Resps. to First Set of RFPs, Resp. No. 3. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 55 | Stewart last spoke with counsel on October 19, 2023. | Decl. of Jaclyn Anderson ISO Withdrawing as Counsel for Tarika Stewart ¶ 6, Dkt. 112-1. |
| 56 | Between October 19 and November 15, 2023, Plaintiff's counsel made several attempts to contact Stewart by phone, text, and email. | Dkt. 112-1 ¶¶ 6-13. |
| 57 | Stewart's only response to these outreaches was a short text message on November 9, 2023, informing Jaclyn Anderson that she would call Anderson that day. | Dkt. 112-1 ¶¶ 8-13, 19. |
| 58 | Stewart never called Anderson back. | Dkt. 112-1 ¶ 10. |
| 59 | Stewart was scheduled to sit for a deposition on November 20, 2023. | Dkt. 112; Dkt 112-1. |
| 60 | On November 15, 2023, Jason Dennett, Plaintiff's counsel, emailed InComm's counsel to cancel Stewart's deposition. | E-mail from Jason Dennett on November 15, 2023 at 7:32 PM, Dkt. 112 Ex. B. |
| 61 | In his email, Dennett provided no explanation for the cancellation. | Dkt. 112 Ex. B. |
| 62 | In his email, Dennett represented that Plaintiff's counsel was | Dkt. 112 Ex. B. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | "in contact with Ms. Stewart." | |
| 63 | On November 21, 2023, Dennett emailed InComm and said: "[w]e lost touch with Ms. Stewart prior to her previously scheduled deposition." | Dkt. 112 Ex. B. |
| 64 | Plaintiff's counsel withdrew from representing Stewart. | Dkt. 112. |
| 65 | The Court dismissed Stewart's claims for failure to prosecute. | Dkt. 127. |
| **Former Plaintiff Shelby Cooper** | | |
| 66 | Shelby Cooper was an alleged "recipient" of seven physical gift cards. | SAC ¶ 19. |
| 67 | Cooper did not preserve a copy of her Vanilla Gift Cards. | Metcalf Decl. Ex. I, Shelby Cooper's Resps. to Def.'s First Set of Interrogs., Resp. No. 1. |
| 68 | Cooper did not preserve any identifying information about her Vanilla Gift Cards. | Metcalf Decl. Ex. I, Shelby Cooper's Resps. to Def.'s First Set of Interrogs., Resp. No. 1; Metcalf Decl. Ex. T, Shelby Cooper's Resps. to Def.'s First Set of RFPs, Resp. Nos. 1, 2. |
| 69 | Cooper did not preserve any documentation showing the transactions made with her cards. | Metcalf Decl. Ex. T, Shelby Cooper's Resps. to Def.'s First Set of RFPs, Resp. No. 4. |
| 70 | Cooper has no record of purchasing or receiving her Vanilla Gift Cards. | Metcalf Decl. Ex. T, Shelby Cooper's Resps. to Def.'s First Set of RFPs, Resp. No. 3. |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 71 | Cooper never submitted a dispute form to InComm to challenge any charges made on her cards. | Metcalf Decl. Ex. U, Shelby Cooper's Resp. to Def.'s First Set of Reqs. for Admissions, Resp. No. 1. |
| 72 | Cooper has no record (such as a phone bill) of calling InComm regarding difficulties with her cards. | Metcalf Decl. Ex. T, Shelby Cooper's Resps. to Def.'s First Set of RFPs, Resp. No. 5. |
| 73 | Cooper identified six non-parties as possessing relevant knowledge: her daughter and five other family members and friends who, she said, had given her Vanilla Gift Cards (the "Cooper Six"). | Dkt. 111 at 1. |
| 74 | Cooper voluntarily dismissed her claims on October 18, 2023. | Dkt. 73. |
| 75 | In her Notice of Voluntary Dismissal, Cooper provided no explanation as to why she was withdrawing her claims. | Dkt. 73 at 1. |
| 76 | Before Cooper dismissed her claims, InComm issued a deposition notice to Cooper. | Dkt. 111 at 1. |
| 77 | Before Cooper dismissed her claims, InComm issued subpoenas for the | Dkt. 111 at 1. |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | production of documents to the Cooper Six. | |
| 78 | Plaintiff's counsel agreed to accept service of InComm's subpoenas to the Cooper Six. | Metcalf Decl. Ex. V, Tr. of Discovery Conf. on November 9, 2023, at 16:5-18. |
| 79 | Plaintiff's counsel never obtained authority to accept service of InComm's subpoenas to the Cooper Six. | Metcalf Decl. Ex. V, Tr. of Discovery Conf. on November 9, 2023, at 22:24-25 (establishing that Plaintiff's counsel stated that they "agreed to accept service"); *id.* at 16:5-18; 17:24-18:9 (establishing that Plaintiff's counsel stated "that we don't have these witnesses' contact information, and that was a mistake on our part when we agreed to accept service on [the Cooper Six's] behalf without first obtaining their contact information"). |
| 80 | Plaintiff's counsel never made contact or communicated with the Cooper Six. | Metcalf Decl. Ex. V, Tr. of Discovery Conf. on November 9, 2023, at 19:4-10 (establishing that Plaintiff's counsel stated that they "can't get in touch with these third parties"). |
| 81 | Plaintiff filed a motion to quash the subpoenas InComm issued to the Cooper Six. | Plaintiffs' Notice of Mot. and Mot. to Quash Third-Party Subpoenas, Dkt. 89. |
| 82 | That motion did not reveal that Counsel had never communicated with any member of the Cooper Six. | Dkt. 89. |
| 83 | InComm first learned that Counsel had never communicated with any member of the Cooper Six during | Metcalf Decl. Ex. W, Nov. 3, 2023 E-mail from Peter Vogel to Jaclyn Anderson; Metcalf Decl. Ex. V, Tr. of Discovery Conf. on November 9, 2023, at 18:2–9. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
|  | a meet-and-confer that took place hours before Plaintiff filed her motion to quash. |  |
| 84 | Counsel asserted that Cooper's deposition would "place[] an undue burden on Ms. Cooper and would cause oppression because of a documented medical condition" that "impedes Ms. Cooper's ability to accurately recall and recount events." | Metcalf Decl. Ex. X, Shelby Cooper's Objections to Subpoena to Testify at a Deposition ¶ 3. |
| **Plaintiff Carolyn Clark's Lack of Documentary Evidence** | | |
| 85 | Carolyn Clark did not preserve a copy of her Vanilla Gift Card. | Metcalf Decl. Ex. G, Clark Dep. 40:15-42:11. |
| 86 | Clark did not preserve any identifying information about her Vanilla Gift Card. | Metcalf Decl. Ex. G, Clark Dep. 40:15-42:11, 50:21-51:5; Metcalf Decl. Ex. E, Pl. Carolyn Clark's Suppl. Resps. to Def.'s First Set of Interrogs, Resp. No. 1; Metcalf Decl. Ex. Y, Pl. Carolyn Clark's Resps. to Def.'s First Set of RFPs, Resp. No. 1. |
| 87 | Clark did not preserve any documentation showing the transactions made with her card. | Metcalf Decl. Ex. G, Clark Dep. 95:12-21; Metcalf Decl. Ex. E, Pl. Carolyn Clark's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 4. |
| 88 | Clark did not preserve the computer she used to purchase her eCard. | Metcalf Decl. Ex. G, Clark Dep. 25:13-26:7 (Clark "got rid of" her computer in "mid 2022" and did not "save any information on it"); id. at 60:8-10; id. at 114:5-6 (Clark "got rid of the desktop" used to make the purchase). |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 89 | Clark testified that she cannot access the email account to which her eCard was sent because that email account was "hacked." | Metcalf Decl. Ex. G, Clark Dep. 42:12-43:8, 50:9-51:5. |
| 90 | Clark testified that her account was "hacked" around the time she claims to have purchased her eCard. | Metcalf Decl. Ex. G, Clark Dep. 42:20–46:4. |
| 91 | Clark first disclosed that her account was "hacked" in a supplemental discovery response filed on November 10, 2023. | Metcalf Decl. Ex. E, Pl. Carolyn Clark's Suppl. Resps. to Def.'s First Set of Interrogs., Resp. No. 1. |
| 92 | Clark filed three complaints in this case before November 10, 2023, none of which mentioned this hacking incident. | Initial Complaint, Dkt. 1; First Am. Compl., Dkt. 44; SAC. |
| 93 | Clark testified that after her email account was hacked, she lost everything on the account. | Metcalf Decl. Ex. G, Clark Dep. 36:15–20, 50:9–51:5. |
| 94 | Clark testified that she lost access to the email containing her eCard information when her email account was hacked. | Metcalf Decl. Ex. G, Clark Dep. 50:18–51:5. |
| 95 | Clark claims to have purchased the eCard at | Metcalf Decl. Ex. G, Clark Dep. 63:10–69:7; Metcalf Decl. Ex. E, Pl. Carolyn Clark's Suppl. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | issue using a debit card from the Bank of Hemet. | Resps. to Def.'s First Set of Interrogs., Resp. No. 2. |
| 96 | Clark testified that she was experiencing fraud on her Bank of Hemet debit card around the time she bought her eCard. | Metcalf Decl. Ex. G, Clark Dep. 31:22-32:16. |
| 97 | Clark closed her Bank of Hemet account while this case was pending. | Metcalf Decl. Ex. G, Clark Dep. 63:10–69:7; *id.* at 64:15–22 ("Q. And am I right in understanding that at some point, you stopped having an account with Bank of Hemet? A. Yes. Q. You closed the account? A. Yes. Q. When was that? A. About a year – a year ago."). |
| 98 | Clark destroyed all records associated with her Bank of Hemet account, including her debit card, her debit card number, her bank account number, her bank statements, and her checkbook. | Metcalf Decl. Ex. G, Clark Dep. 63:10–69:7. |
| 99 | Clark discarded the cell phone she claims to have used to call InComm. | Metcalf Decl. Ex. G, Clark Dep. 60:11-63:7. |
| 100 | In July 2023, after the filing of this suit, Clark's fiancé "dump[ed]" that cell phone. | Metcalf Decl. Ex. G, Clark Dep. 10:21–11:2 ("Q. [] Do you have a cell phone right now? A. Yes. . . . Q. Okay. How long have you had that cell phone number? A. Four months."); *id.* at 11:15–19 ("Q. [] And was there any particular reason you got a new phone number four months ago? A. My Obama phones quit working and had issues and T-Mobile has a senior plan, and my fiance decided to pay for us to get regular |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | | phones."); *id.* at 61:5–8 ("Q. Okay. So you mentioned that you got your current cell phone number four months ago, and I think you [] said your Obama phone stopped working? A. Yes. Yes."); *id.* 62:16–22 ("Q. And [] that previous phone, the one you had right before your current one, do you still have it? A. No, I don't have it. Q. What did you do with it? A. As far as I know, Norris took them to one of those places where you can dump phones and stuff."). |
| 101 | Clark did not preserve any information from her discarded phone. | Metcalf Decl. Ex. G, Clark Dep. 62:23-63:9. |
| 102 | Clark testified that she does not know what her old phone number was. | Metcalf Decl. Ex. G, Clark Dep. 120:8-22. |
| 103 | Clark testified that her fiancé does not know what her old phone number was. | Metcalf Decl. Ex. G, Clark Dep. 141:17-20. |
| 104 | Clark does not have any phone records reflecting her call history from the time period during which she claims to have called InComm. | Metcalf Decl. Ex. G, Clark Dep. 122:22–24. |
| 105 | Clark never submitted a dispute form to InComm to challenge any charges made on her card. | Metcalf Decl. Ex. Z, Pl. Carolyn Clark's Resp. to Def.'s First Req. for Admissions, Req. No. 1. |
| 106 | Clark has no documentary evidence that the balance of her card or any other Vanilla card was | Metcalf Decl. Ex. AA, Pl. Carolyn Clark's Resps. to Def.'s Fourth Set of RFPs, Resp. No. 1. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | quickly depleted by fraudsters exploiting a security issue with Vanilla products. | |
| 107 | Clark testified that she was unaware of any obligation to preserve material related to her claim other than "case filings." | Metcalf Decl. Ex. G, Clark Dep. 146:6–147:13. |
| **Clark's Lack of Personal Knowledge Regarding Her Claims** | | |
| 108 | Clark testified that she is bringing this lawsuit because she "bought a gift card, and . . . tried to use it a couple times, and it wouldn't work." | Metcalf Decl. Ex. G, Clark Dep. 20:2-3. |
| 109 | Clark does not know why her card did not work when she attempted to use it. | Metcalf Decl. Ex. G, Clark Dep. 116:25-118:15 (Clark testified that she "never figured out for sure" why her "gift card didn't work"). |
| 110 | Clark testified that she thinks the reason her card did not work "may have been fraud," but that she "do[esn't] know." | Metcalf Decl. Ex. G, Clark Dep. 20:10-14; *id.* at 118:9-15 (Clark testified she is "not sure" that she "suffered fraud"); *id.* at 116:25–118:15 ("Q. So maybe someone stole the money off of [the card], but maybe they didn't, right? . . . . A. Right. Q. So you don't know who's responsible for your losses? . . . . A. No. Q. And if someone did steal the money off your balance, you don't know how they did it? A. Right."). |
| 111 | Clark never reviewed the transaction history for her alleged eCard. | Metcalf Decl. Ex. G, Clark Dep. 95:12–96:2, 118:9–11. |
| 112 | Clark does not know whether her card balance was reduced or spent down to zero. | Metcalf Decl. Ex. G, Clark Dep. 95:12–96:10 ("Q. . . . [Y]ou never checked the balance of the card, right?  A.  No.  Q. . . .  And have you – and you never checked the purchases made on the |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | | card? A. No. Q. So you've never been able to determine what purchases, if any, were made on the card? A. No. Q. And – so you can't be sure that any purchases were made on the card, right? A. Yes. Q. If there were purchases on the card, you don't know what they were? A. No. Q. You don't know what retailers they took place at? A. No. Q. You don't know when they occurred? A. No. Q. And you don't know what amount of money they were for? A. No, I don't."); *id.* at 116:25-118:15 (Clark agreed that she did not "know for sure that the card was spent down" and "never checked the balance history"). |
| 113 | Clark does not know whether anyone made unauthorized purchases using her eCard. | Metcalf Decl. Ex. G, Clark Dep. 20:2-14; 94:17-96:10; 116:25-118:15 (Clark agreed that "maybe someone stole the money off of [the card], but maybe they didn't" and she does not "know who's responsible for [her] losses"). |
| 114 | Clark has no personal knowledge of whether unauthorized users depleted her card balance and, if they did so, how or when they did so. | Metcalf Decl. Ex. G, Clark Dep. 95:12-96:10 (Clark agreed that she couldn't "be sure that any purchases were made" on her card, "what they were", or "when they occurred"); *id.* at 117:5-118:15 (Clark agreed she was unsure "who's responsible for [her] losses," "how they did it," or if they "did steal it at all"). |
| 115 | Clark testified that she had not "read anything about what security features [her] card had against fraud." | Metcalf Decl. Ex. G, Clark Dep. 31:10–15. |
| 116 | Clark testified that she had "no understanding" or expectation regarding card security before her alleged purchase. | Metcalf Decl. Ex. G, Clark Dep. 31:10–15. |
| 117 | Clark testified that she believed that her card | Metcalf Decl. Ex. G, Clark Dep. 33:5-11 ("I trusted them because I bought cards from them |

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
|  | was fraud-proof when she bought it. | before, and they were good, so I guess I did expect it to be fraud-proof"); *id.* at 118:21–119:7 ("[T]he cards should be fraud-proof."). |
| 118 | Clark testified that she would not purchase an InComm card again in the future unless it were, in fact, fraud-proof. | Metcalf Decl. Ex. G, Clark Dep. 153:24-154:8 (Clark agreed that she would "want an assurance that [the card] was fraud-proof" to "purchase a Vanilla gift card again"). |
| **Clark's Difficulty Remembering Case-Relevant Details** | | |
| 119 | Clark was 60 years old as of her November 15, 2023 deposition. | Metcalf Decl. Ex. G, Clark Dep. 9:5-6. |
| 120 | Clark suffers from memory loss that makes it difficult for her to accurately recall and recount events. | Metcalf Decl. Ex. G, Clark Dep. 46:7-10; 108:17-19. |
| 121 | Clark suffered ▇▇▇▇▇ in 2020 and 2023 that required hospitalization. | Metcalf Decl. Ex. G, Clark Dep. 108:14–110:23. |
| 122 | Clark and her doctors have determined that these ▇▇▇ impaired her memory. | Metcalf Decl. Ex. G, Clark Dep. 109:14–110:1. |
| 123 | Clark testified that it is difficult for her to remember "the details of what happened" with her alleged Vanilla card because of her ▇▇▇. | Metcalf Decl. Ex. G, Clark Dep. 110:8–18 ("Q. Okay. And, kind of, the details of what happened with your E-gift card, are those the type of things that . . . you might have difficulty remembering because of the ▇▇▇ you suffered? A. Yes."); *id.* at 108:17-19 (Clark testified that she "can't remember some stuff" regarding her card "because [she] had some ▇▇▇," "[s]o things, kind of, get fuzzy."). |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 124 | Clark testified that her memory issues make it difficult to recall whether she made any calls regarding her alleged Vanilla card after her email was hacked. | Metcalf Decl. Ex. G, Clark Dep. 108:14–19. |
| 125 | Clark testified in her deposition that she purchased an eCard in the amount of $50. | Metcalf Decl. Ex. G, Clark Dep. 20:23-25. |
| 126 | Clark claimed in the Second Amended Complaint that she purchased an eCard in the amount of $100. | SAC ¶ 18. |
| 127 | Clark testified that she was unsure of "some of" the details in her verified interrogatory responses. | Metcalf Decl. Ex. G, Clark Dep. 126:3-128:11. |
| 128 | Clark agreed during her deposition that she "remembered different versions" of "when and where [she] tried to use" her eCard "even in this deposition." | Metcalf Decl. Ex. G, Clark Dep. 128:13-129:21. |
| 129 | Clark confirmed that it was her testimony during her deposition that her verified supplemental response to Interrogatory No. 4 was incorrect and that she had newly | Metcalf Decl. Ex. G, Clark Dep. 85:4-88:7. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | remembered during her deposition that she tried to use her e-Card three times in December 2021, rather than in February and March of 2022. | |
| **InComm's Searches for Records of Plaintiff's Interactions with InComm** |||
| 130 | InComm conducted an extensive search for information related to Clark's card using her name. | Ledford Decl. ¶¶ 17-19. |
| 131 | Normally, InComm would have conducted this search using Clark's card number. | Ledford Decl. ¶ 20. |
| 132 | InComm could not conduct a search using Clark's card number because Clark did not preserve that number. | Ledford Decl. ¶ 20. |
| 133 | InComm's search of Clark's name yielded one result: a Carolyn Clark that does not live in California and is not the plaintiff in this case. | Ledford Decl. ¶¶ 30-31. |
| 134 | InComm conducted a search for records of Clark's card using four email addresses provided by Counsel. | Strauser Decl. ¶¶ 8-9. |
| 135 | Counsel described these emails as the addresses Clark had | Metcalf Decl. Ex. BB, Email from Jaclyn Anderson to Jane Metcalf on October 16, 2023. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS
14907664v.13

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | used "for the past three years as best as she can recall." | |
| 136 | Clark mentioned eleven additional email accounts during her deposition that she says she used. | Metcalf Decl. Ex. G, Clark Dep. 12:19–22, 12:23–13:18, 23:21–36:20, 48:19–21, 54:19–23, 58:13–24, 77:2–7. |
| 137 | One of these eleven email addresses is the email address Clark claims to have used when purchasing her eCard. | Metcalf Decl. Ex. G, Clark Dep. 34:21-35:5. |
| 138 | InComm conducted a search for records of Clark's card using these eleven additional email addresses. | Strauser Decl. ¶¶ 10-11. |
| 139 | InComm's searches for these fifteen email addresses, based on InComm's data for either recipients or purchasers of eGift Cards, yielded no results. | Strauser Decl. ¶¶ 9-11. |
| 140 | Clark's counsel provided InComm with two phone numbers allegedly belonging to Clark. | Metcalf Decl. Ex. BB, Email from Jaclyn Anderson to Jane Metcalf on October 16, 2023. |
| 141 | Using these numbers, InComm subpoenaed T-Mobile US, Inc. for any records of Clark's calls during the | Metcalf Decl. Ex. DD, Subpoena to T-Mobile US, Inc. on November 2, 2023. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

| Def.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | timeframe in which she claims to have called InComm. | |
| 142 | T-Mobile US, Inc. responded that one number "was not assigned to a subscriber during the requested timeframe." | Metcalf Decl. Ex. CC, Resp. to InComm's Subpoena by T-Mobile US, Inc. on November 28, 2023. |
| 143 | T-Mobile US, Inc. responded that the other number "is not associated with [Clark]." | Metcalf Decl. Ex. CC, Resp. to InComm's Subpoena by T-Mobile US, Inc. on November 28, 2023. |

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

1

Respectfully submitted,

2

Dated: March 4, 2024

3

By: _/s/ William A. Delgado_____

4

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com

5

Nicole G. Malick (SBN 335754)
  nmalick@dtolaw.com

6

DTO LAW

7

601 S. Figueroa St. Suite 2130

8

Los Angeles, CA 90017
Tel: (213) 335-7010

9

Fax: (213) 335-7802

10

11

Jane Metcalf (*pro hac vice*)
  jmetcalf@pbwt.com

12

David S. Kleban (*pro hac vice*)
  dkleban@pbwt.com

13

Peter Vogel (*pro hac vice*)
  pvogel@pbwt.com

14

Basil Williams (*pro hac vice*)
  bwilliams@pbwt.com

15

16

PATTERSON BELKNAP WEBB & TYLER LLP

17

1133 Avenue of the Americas

18

New York, New York 10036
Tel: (212) 336-2000

19

Fax: (212) 336-2222

20

21

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

22

23

24

25

26

27

28

DEF. INCOMM'S STATEMENT OF UNDISPUTED FACTS

14907664v.13