Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com
David S. Kleban (*pro hac vice*)
dkleban@pbwt.com
Peter Vogel (*pro hac vice*)
pvogel@pbwt.com
Basil Williams (*pro hac vice*)
bwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

William A. Delgado (SBN 222666)
wdelgado@dtolaw.com
Nicole G. Malick (SBN 335754)
nmalick@dtolaw.com
DTO LAW
601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017
Tel: (213) 335-7010
Fax: (213) 335-7802

Attorneys for Defendant
INCOMM FINANCIAL SERVICES, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN CLARK, et al., | Case No.: 5:22-CV-01839-JGB-SHK |
| Plaintiffs, | **DEFENDANT'S NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| INCOMM FINANCIAL SERVICES, INC., | |
| Defendant. | Hon. Jesus G. Bernal |
| | Date: July 29, 2024 |
| | Time: 9:00 a.m. |
| | Courtroom: 1 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 29, 2024, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California, 92501, before the Honorable Jesus G. Bernal, Defendant InComm Financial Services, Inc. ("InComm") will and hereby does move this Court pursuant 28 U.S.C. § 1927; the California Consumers Legal Remedies Act, Cal Civ. Code § 1780(e) ("CLRA"); and the Court's inherent authority for an order granting attorneys' fees to InComm.

Plaintiff Carolyn Clark's attorneys and their law firms ("Counsel") should be ordered to pay InComm's attorneys' fees for the period between January 24, 2024—the day on which Ms. Clark became the sole remaining plaintiff in this case—and April 10, 2024, the day on which Counsel belatedly disclosed to InComm that they had received evidence confirming that Ms. Clark never purchased a gift card from InComm and thus had never had a valid claim (the "Fee Period").

During the Fee Period, Counsel lacked a good faith basis for pursuing claims against InComm yet plunged forward recklessly and in subjective bad faith, taking care every step along the way to drive up InComm's litigation expenses.  Counsel even continued to pursue claims against InComm after their March 26, 2024 receipt of records proving that Ms. Clark never bought a card from InComm.  Between the day Counsel received those records and the day they finally disclosed them to InComm, InComm incurred almost $90,000 in needless attorneys' fees.  Counsel's conduct during the Fee Period was more than regrettable: it was actionable under Section 1927, the CLRA, and the Court's inherent power to order fees.

InComm spent $741,032.56 in attorneys' fees during the Fee Period.  This figure represents the reasonable rate charged to InComm by its attorneys over a reasonable number of hours—hours that ultimately secured dismissal of this action and a judgment in InComm's favor.  The Court should thus award InComm the full $741,032.56 it spent in legal fees on Ms. Clark's case during the Fee Period.

1    This Motion is made following the conference of counsel pursuant to Local
2  Rule 7-3, which took place on June 21, 2024.

3

4  Dated: July 1, 2024                    By: */s/ William A. Delgado*

5                                          William A. Delgado (SBN 222666)
6                                          wdelgado@dtolaw.com
                                           Nicole G. Malick (SBN 335754)
7                                          nmalick@dtolaw.com
                                           DTO LAW
8                                          601 S. Figueroa St. Suite 2130
9                                          Los Angeles, CA 90017
                                           Tel: (213) 335-7010
10                                         Fax: (213) 335-7802

11
                                           Jane Metcalf (*pro hac vice*)
12                                         jmetcalf@pbwt.com
13                                         David S. Kleban (*pro hac vice*)
                                           dkleban@pbwt.com
14                                         Peter Vogel (*pro hac vice*)
15                                         pvogel@pbwt.com
                                           Basil Williams (*pro hac vice*)
16                                         bwilliams@pbwt.com
17                                         PATTERSON BELKNAP WEBB &
                                           TYLER LLP
18                                         1133 Avenue of the Americas
19                                         New York, New York 10036
                                           Tel: (212) 336-2000
20                                         Fax: (212) 336-2222
21
                                           Attorneys for Defendant
22                                         INCOMM FINANCIAL SERVICES, INC.
23

24

25

26

27

28

DEF. INCOMM'S MOTION FOR ATTORNEYS' FEES

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................... 1

FACTS ........................................................................................................................... 4

    A.    The Commencement of this Action and Initial Motion Practice (October 2022-September 2023) ............................................................ 4

    B.    Plaintiffs' Failures of Proof and Ever-Escalating Discovery Demands (September-November 2023) ............................................ 6

    C.    November 2023:  The Death Knell of Plaintiff Clark's Claims ........... 8

    D.    November 2023-January 2024:  Counsel's Counter-Offensive ........... 9

    E.    The January 24-April 10, 2024 Fee Period:  Counsel's War of Attrition ............................................................................................... 10

        1.    January 24-March 5 ................................................................. 10

        2.    March 5-April 10 .................................................................... 12

    F.    April 10-Present:  Entry of Judgment in Favor of InComm ............... 13

ARGUMENT ............................................................................................................... 14

I.    The Court Should Award InComm Attorneys' Fees for the Fee Period ....... 15

    A.    Counsel's unreasonable and vexatious multiplication of the proceeding merits a fee award pursuant to 28 U.S.C. § 1927. .......... 15

        1.    Recklessness ........................................................................... 16

        2.    Bad Faith ................................................................................. 17

    B.    Counsel's bad faith merits an award of fees under the CLRA. .......... 19

    C.    The Court should exercise its inherent power to award attorneys' fees against counsel and their firms. .......................................... 20

II.    InComm's Requested Fees are Reasonable. ................................................. 21

    A.    The requested hourly rates are reasonable. ........................................ 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                         **Page(s)**

*Abudawood v. de Leon*,
   8:23-cv-02448, Dkt. 100 (C.D. Cal. June 13, 2024) ........................................ 24

*B.K.B. v. Maui Police Dep't*,
   276 F.3d 1091 (9th Cir. 2002) ........................................ 21

*Blixseth v. Yellowstone Mt. Club, LLC*,
   796 F.3rd 1004 (9th Cir. 2015) ........................................ 16

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) ........................................ 25

*Corbett v. Hayward Dodge, Inc.*,
   119 Cal. App. 4th 915 (Cal. Ct. App. 2004) ........................................ 20

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ........................................ 21

*Forto v. Capital One Bank, N.A.*,
   2017 WL 4168529 (N.D. Cal. Sept. 20, 2017) ........................................ 17, 20

*Franco v. Ctr. Transp. LLC*,
   2022 WL 16921826 (C.D. Cal. Oct. 27, 2022) ........................................ 22, 23

*In re Girardi*,
   611 F.3d 1027 (9th Cir. 2010) ........................................ 16, 17

*Haynes v. Home Depot USA, Inc.*,
   800 F. App'x 480 (9th Cir. 2020) ........................................ 21

*Kaass Law v. Wells Fargo Bank, N.A.*,
   799 F.3rd 1290 (9th Cir. 2015) ........................................ 21

*Lahiri v. Universal Music & Video Distrib. Corp.*,
   606 F.3d 1216 (9th Cir. 2010) ........................................ 16, 17, 22

*Monster Energy Co v. Vital Pharms., Inc.*,
   2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) ........................................ 23, 24

*P. v. O'Malley*,
   2024 WL 1136340 (C.D. Cal. Feb. 12, 2024) ........................................ 24

*Sweet People Apparel, Inc. v. Saza Jeans, Inc.*,
   2016 WL 6053958 (C.D. Cal. May 25, 2016) ........................................ 21

*Caputo ex rel. United States v. Tungsten Heavy Powder, Inc.*,
   96 F.4th 1111 (9th Cir. 2024)........................................................... 16, 17

*Vespi v. Galaxy Taco*,
   2019 Cal. Super. LEXIS 83680 (Sup. Ct. San Diego Cnty. May 3,
   2019)............................................................................................................ 20

*WB Music Corp. v. Royce Int'l Broadcasting Corp.*,
   2018 WL6177237 (C.D. Cal. July 9, 2018) ...................................... 24

*In re Yagman*,
   796 F.2d 1165 (9th Cir. 1986)............................................................ 16

**Statutes**

28 U.S.C. § 1927.................................................................................... 16

Cal Civ. Code § 1780(e) ........................................................................ 20

**Other Authorities**

Fed R. Civ. P. 26(e) .............................................................................. 13

Defendant InComm Financial Services, Inc. ("InComm") respectfully submits this Memorandum in support of its Motion for Attorneys' Fees incurred from the period January 24, 2024 through April 10, 2024.

## PRELIMINARY STATEMENT

This case is not the first consumer fraud lawsuit to fall apart in discovery, and in most such cases, each side bears its own costs. Here, however, the facts show not only that this case was meritless, but that Plaintiff Carolyn Clark's counsel ("Counsel") knew or should have known as much from day one. Although Plaintiff's case depended on her claim to have purchased a Vanilla eCard, Counsel signed three Complaints in this case without obtaining—or even trying to obtain—evidence that such an eCard ever existed. At every step of the way, InComm raised concerns about the lack of a factual basis for Plaintiff's claims, which was increasingly apparent as discovery unfolded. But Counsel ignored these concerns and plowed ahead. In so doing, Counsel recklessly disregarded their obligation to ensure a good-faith basis for their claims and subjected InComm to considerable and unnecessary expense.

As this Court described in its May 30 Order, the profound defects of Ms. Clark's claims surfaced most clearly at her November 2023 deposition. There, she admitted to having destroyed or discarded every document, and even every device, that could have possibly yielded evidence of her claims. She further testified that Counsel had not informed her of her obligation to preserve these items. These devastating admissions not only disposed of her claims, but also underscored that Counsel had never had an adequate factual basis to bring those claims in the first place.

The collapse of Ms. Clark's claims gained additional significance as each of her fellow plaintiffs was dismissed from the case—one for lack of standing, and the other three because they seemingly lost interest. As of January 24, 2024, Ms. Clark, who had no trace of the eCard giving rise to her claims, was the only plaintiff

standing.  Yet even then, Counsel barreled forward, compounding the expense to InComm by fomenting needless discovery disputes at every turn. In short, Counsel filed Plaintiff's claims without locating basic factual support, refused to back down even after it became clear that no such support existed, and took every opportunity to run up the costs to InComm.  These facts demonstrate Counsel's reckless disregard of their obligation to pursue claims only upon reasonable determination of merit.

But Counsel's conduct is not explained by recklessness alone; Counsel has also acted in subjective bad faith. It now turns out that the whole time they were pursuing this case, Counsel had easy access to information **dis**proving Ms. Clark's claims but declined to consult it.  Specifically, although Ms. Clark represented that she had bought her eCard with her Bank of Hemet debit card, Counsel never bothered to review her bank account records to confirm the purchase, even after learning that every other potential source of corroboration was missing or had been destroyed.  When InComm requested those bank records in discovery, Counsel responded that Ms. Clark had conducted a "reasonable and diligent search" and that the records "could not be accessed" but assured InComm that they would supplement their production if the records ever turned up.

None of those representations was true.  Only when faced with a summary judgment motion, based on Ms. Clark's deposition testimony, did Counsel make any real effort to access the bank records—presumably in an effort to suggest that discovery was ongoing and InComm's motion was premature.  At that point, the records proved easy to obtain, arriving less than a week after Counsel subpoenaed them.  The records disposed of Ms. Clark's claims, revealing that she had never purchased an eCard at all.  Yet even then, Counsel did not concede defeat.  Instead, Counsel flouted their obligation and prior commitment to produce the records. During that period, InComm incurred another $90,000 in attorneys' fees, in part because of a deposition that Counsel insisted on taking despite their secret

possession of conclusive proof that Ms. Clark's claims were unfounded. The ruse might have gone on even longer, but for the fact that InComm eventually affirmatively asked Counsel about the status of the subpoena. Only then did Counsel finally turn over the records they had been hiding.

Counsel's general failure to investigate Ms. Clark's claims, from the outset of the case, was deeply troubling. Their failure to obtain and review the bank records, which were case-dispositive and easily accessible, was even more so. And their misleading representations to InComm about this subject were most troubling of all. These acts dispel any doubt that Counsel prosecuted this case recklessly and in bad faith. And because of these acts, InComm was required to expend unnecessary time and resources, including attorneys' fees. Accordingly, InComm is entitled to an award of attorneys' fees under 28 U.S.C. § 1927, Section 1780(e) of the California Consumers Legal Remedies Act ("CLRA"), and the Court's inherent power—each a source of authority that courts routinely rely on to award attorneys' fees based on similar misconduct.

Though InComm believes that Counsel lacked a good-faith basis for commencing this lawsuit in October 2022, it seeks only the fees it incurred from January 24, 2024, the date on which Ms. Clark became the sole remaining plaintiff, to April 10, 2024, the date on which Counsel finally shared Ms. Clark's bank records with InComm (the "Fee Period"). InComm's total requested fees amount to $741,052.56.[1] These fees are necessary to bring this matter to a just conclusion by compensating InComm for at least some of the losses it unnecessarily incurred to defend against a frivolous lawsuit.

InComm seeks these fees from Counsel and their law firms, not from Ms. Clark herself. InComm recognizes the exceptional nature of an award of this sort

---

[1] InComm reserves the right to seek fees for its legal expenses post-dating its June 21, 2024 meet and confer with Counsel regarding this motion.

and makes this application only after careful consideration.  But the facts show that Counsel fell short of their professional responsibilities, and they, rather than InComm, should bear the resulting costs.

## FACTS

### A.    The Commencement of this Action and Initial Motion Practice (October 2022-September 2023)

In August 2022, Counsel took out ads on Facebook, seeking individuals who had unsatisfactory experiences with Vanilla Gift Cards.  The ads inquired, "[a]re you interested in in [sic] being a class representative seeking to recover the funds that Vanilla lost?"  SUF ¶ 29.[2]  Two months later, Counsel filed the initial Complaint on behalf of Ms. Clark and the four other named plaintiffs (collectively, "Plaintiffs"), all of whom had responded to Counsel's ad.  *See id.* ¶ 30.

The Complaint alleged that Plaintiffs' Vanilla gift cards were depleted by third-party fraudsters exploiting an unknown security defect, that InComm failed to reimburse them, and that InComm had misled them about the defect and about InComm's customer-service practices.  *See* Dkt. 1.  As InComm emphasized in its initial motion to dismiss, the Complaint provided no identifying information about the Plaintiffs' cards—such as 16-digit card numbers—or about the purchases that allegedly depleted the cards.  The Court granted InComm's motion to dismiss the Complaint, explaining that Plaintiffs had "not allege[d] that anything Defendant did or failed to do caused their harms."  Dkt. 41 at 7.

Plaintiffs then amended their complaint to add the factually inaccurate contention that InComm had failed to adequately secure its website from malicious fraudsters.  *See* Dkt. 44.  While the Court held that this new theory was sufficient to

---

[2] "SUF" refers to InComm's Statement of Undisputed Facts filed in support of its summary judgment motion, Dkt. 152-1.  The Court considered those facts undisputed because "Plaintiff [did] not file[] any evidence which contradict[ed]" them.  Dkt. 162 at 3.

avoid dismissal of the CLRA claim, it dismissed other claims, prompting Plaintiffs to amend their complaint again. *See* Dkt. 54. Each of Plaintiffs' two amended complaints, like their first one, was devoid of information that would enable InComm to identify the cards at the center of Plaintiffs' claims. Without this key information, InComm could not locate the cards' records, hampering its ability to investigate and respond to Plaintiffs' contentions about their cards' purported deficiencies.

InComm's inability to locate Plaintiffs' cards was not—as InComm explained in its motion to dismiss the Second Amended Complaint—for want of effort. In support of that motion, InComm submitted a sworn statement from longtime employee Alison Ledford, who detailed her exhaustive, multi-step search for any record of Plaintiffs' alleged outreach to InComm customer service, using the scant information they had provided (which was not much more than their names and state of residence). *See* Dkts. 58, 75. That search bore no fruit. Ms. Ledford did turn up a customer service communication from a "Carolyn Clark"—but not the "Carolyn Clark" who had filed this case. On this basis, InComm questioned Plaintiffs' claims of injury from Vanilla Cards and, in turn, their standing to bring the suit.

The Court granted InComm's motion as to the lone plaintiff who merely alleged that she had *received* a card (as opposed to purchasing one). But as to the others, the Court held that it was bound to credit Plaintiffs' allegations at the pleading stage and that the truth about their card histories should be resolved in discovery. The Court therefore denied InComm's motion to dismiss the Second Amended Complaint as to those claims. *See* Dkt. 103 at 7–8, 10–11.

Central to the Court's reasoning was the principle that Plaintiffs' allegations were entitled to a presumption of truth *at the pleading stage*. As the Court noted, it would ultimately be for Plaintiffs to supply evidence of their claims (which would necessarily include evidence of their cards' existence). By all rights, this should

have prompted Counsel to consider whether they had any such evidence—particularly after Ms. Ledford's affirmations cast doubt on Plaintiffs' alleged contacts with InComm. Had Counsel bothered with such an investigation, they would have learned that the claims were baseless, thus sparing the parties and the Court months of hard-fought litigation. Instead, they forged ahead, maintaining ignorance of the core facts underlying their clients' claims.

### B. Plaintiffs' Failures of Proof and Ever-Escalating Discovery Demands (September-November 2023)

InComm, by contrast, continued to pursue the elusive facts surrounding Plaintiffs' cards. In August 2023, InComm served document requests on Ms. Clark, seeking, among other things, a printout of her eCard; the email from InComm transmitting the card; and documents concerning the refund that she claimed to have requested from InComm, including cellphone records showing her calls to InComm. *See* Dkt. 143-30. Ms. Clark responded the following month that she did not have a single one of the documents InComm had requested. SUF ¶¶ 85–87 (describing Ms. Clark's lack of documentation). She also represented in interrogatory responses that she could not recall the date she purchased the eCard, the website from which she purchased it, or even the phone number she used when purportedly calling InComm to complain of suspected fraud. Dkt. 143-9. The other Plaintiffs provided similarly deficient responses. SUF ¶¶ 34–37, 39–44, 49–54, 67–72.

Even as Plaintiffs dodged these basic discovery requests, Counsel sought accelerated discovery from InComm, including voluminous information relating to every aspect of the products at issue. For example, on September 11, 2023, just four days after serving their deficient discovery responses, Counsel sent a letter demanding an immediate response to Plaintiffs' Requests for Production, and a meet and confer the very next day, even though Counsel had already agreed to extend

InComm's response deadline to September 19.  Metcalf Decl. Ex. B.[3]  In other words, immediately after revealing that they lacked any shred of support for their claims, Counsel began ratcheting up the pressure on InComm to produce discovery, seemingly in the hopes that marshaling unflattering information about InComm would distract from their own failures of proof.

InComm was troubled by Plaintiffs' apparent attempts to run up costs in pursuit of a meritless case.  And it told Counsel as much, explicitly raising this concern, which it called "the elephant in the room," in a September 14, 2023 email to Counsel:

> [I]t's become increasingly clear that [Plaintiffs] don't have a shred of a factual basis for their claims . . . .  [*InComm then catalogued the documents and facts Plaintiffs were uniformly missing per recent discovery responses.*]  Plaintiffs' Vanilla Cards, or whatever cards they recall buying or receiving, are totally lost to history. . . .
>
> Though we assume your side has always known this, we're learning it for the first time, after almost a year and considerable expense. . . .  We bring it up now because of Plaintiffs' seeming interest in fomenting one or more discovery disputes in the short term.  We suspect Plaintiffs are eager to change the subject to anything besides these glaring, foundational defects in their claims.  But ultimately, manufacturing disputes about InComm's discovery conduct is not going to fix these issues for Plaintiffs.  ***And to the extent we have concerns that Plaintiffs have already wasted InComm's money by pursuing an obviously meritless case, understand that Plaintiffs will not allay those concerns by wasting even more.***

*See* Metcalf Decl. Ex. C (emphasis added).  InComm hoped that highlighting the incongruity between Counsel's abject lack of proof and their aggressive pursuit of discovery would prompt Plaintiffs to commit to supplementing their responses or

---

[3] Unless otherwise indicated, references to the "Metcalf Decl." refer to the July 1, 2024 Declaration of Jane Metcalf filed herewith in support of InComm's motion for attorneys' fees.

suspend their own demands of InComm.  But Counsel was defiant.  Their response to InComm's email arrived swiftly:  "[We] appreciate your comments, but we disagree with nearly everything you argue." *Id.*  They did not elaborate further, nor did they change course.

### C.    November 2023:  The Death Knell of Plaintiff Clark's Claims

Though Plaintiff Clark's interrogatory responses revealed that she had no information about her eCard and could not remember anything of substance about her experience with the card, she did aver one fact:  that she had used her "debit card from the Bank of Hemet" to buy the Vanilla eCard from an InComm-operated website.  SUF ¶ 95.  Thus, in October 2023, InComm requested production of her Bank of Hemet account records from the time period in question.  RFP 5, Second Set of RFPs, Metcalf Decl. Ex. D.

In response, Counsel represented that Ms. Clark had performed a "reasonable and diligent search" but had found that her bank records "cannot be accessed."  Pl. Clark's Resp. to RFP 5, Metcalf Decl. Ex. E.  Counsel stated further that Ms. Clark was still "attempting to access records for the debit card used to purchase the Vanilla E-Card" (*id.* Ex. F) and assured InComm that, "[t]o the extent such documents [were] located in the future, [Ms. Clark would] supplement the production, accordingly" (*id.* Ex. E).

InComm took Ms. Clark's deposition in November 2023.  The deposition established that Ms. Clark could not hope to prove her claims, much less represent a class.   Ms. Clark testified that the email account containing her alleged eCard information was "hacked" around the time the eCard was purchased, causing her to lose all emails on the account.  SUF ¶¶ 90, 93–94.  She further testified that she discarded the computer she allegedly used to purchase her eCard and the phone she allegedly used to call InComm.  *Id.* ¶¶ 88, 99.  She also testified that she closed her Bank of Hemet account while this case was pending and then destroyed all account statements she had previously received.  *Id.*¶ 98.  This wholesale destruction of

evidence appears to have resulted at least in part from Counsel's failure to inform Ms. Clark of her discovery obligations; Ms. Clark explained that she was unaware of any obligation to preserve evidence related to her claim other than "case filings." *See id.* ¶ 107.

The deposition also revealed that, separate and apart from these failures of proof, Ms. Clark's personal circumstances rendered her an unsuitable class representative.  Ms. Clark testified that she suffers from a diagnosed medical condition that causes memory loss and, in particular, impaired her ability to recall "the details of what happened with [her] E-gift card." *Id.* ¶ 123.  These medical difficulties were manifest throughout Ms. Clark's deposition testimony, which was halting, disjointed, and often indicative of confusion.  It was apparent to any observer that Ms. Clark was not in a condition to serve as a class representative.

InComm thought that Counsel would agree and would relieve her of her duties as class representative.  Indeed, just a week earlier, Counsel had objected to a subpoena that InComm issued to a non-party, arguing that the witness suffered from "a documented medical condition" that "impedes [her] ability to accurately recall and recount events"; Counsel said that InComm's subpoena would cause "oppression" for that reason.  *Id.* ¶ 84.  But, despite Ms. Clark's similar affliction, Counsel took no steps to withdraw Ms. Clark's claims.

### D.    November 2023-January 2024:  Counsel's Counter-Offensive

Meanwhile, the other plaintiffs exited the case one by one. The Court dismissed Sharon Manier for lack of standing.  Dkt. 103.  Shelby Cooper, Tarika Stewart, and Aquilla Thompson all withdrew and/or abandoned their claims before InComm could take their depositions.  Dkts. 73, 106, 121, 127.  Thus, it came into focus during this time period that Ms. Clark, an individual with significant medical issues and no proof whatsoever of her claims, was likely to be Counsel's only vehicle for continued pursuit of the case.

Faced with this reality, Counsel again opted ***not*** to reconsider their pursuit of the case but, rather, to double down. On December 14, Counsel initiated yet another discovery dispute before Magistrate Judge Kewalramani regarding "InComm's failure to supplement and produce documents responsive to Plaintiffs' [] Request for Production." *See, e.g.*, Metcalf Decl. Ex. G. (G. LippSmith's December 14, 2023 Email to Judge Kewalramani's Chambers). Counsel gave a scathing account of InComm's supposed discovery lapses, complaining that "[t]o date, InComm has not produced ***any*** responsive documents" and urging Judge Kewalramani to impose "firm deadlines" for InComm to do so, including for "immediate production" of all documents relating to security audits. *See id.* (emphasis in original). Counsel's definition of "responsive documents," as defined through their document requests, was extraordinarily broad. For example, they sought "[a]ll Documents that Relate To Unauthorized User use of Card value," and "[a]ll Documents that Relate to Cybersecurity measures." Metcalf Decl. Ex. A. Because InComm devotes considerable personnel effort to card fraud prevention and cybersecurity, both of these requests would implicate an extraordinarily high volume of confidential documents.

**E.     The January 24-April 10, 2024 Fee Period:  Counsel's War of Attrition**

*1.     January 24-March 5*

Though Plaintiffs' case hung by a thread throughout this period, the actual dismissal of their claims unfolded gradually. Because several of the Plaintiffs simply stopped corresponding with Counsel, rather than actively withdrawing their claims, their dismissal from the case took some time to be finalized. *See* Dkts. 73, 106, 121, 127. First, Counsel (at InComm's prodding) moved to withdraw as counsel; then the Court issued Orders to Show Cause for each plaintiff to retain new counsel or be dismissed from the case for failure to prosecute; then, when each plaintiff failed to do so, she was dismissed. The last of these dismissals occurred on

January 24, 2024, leaving Ms. Clark as the lone named plaintiff. Dkt. 127. InComm seeks recovery of fees from this date through April 10, 2024.

On January 24, in what was by then a familiar pattern, Counsel reacted to the dismissal of their penultimate plaintiff, and its dire implications for the case, by launching a renewed offensive against InComm. That very day, Counsel served InComm with a second set of document requests, which was as overbroad as the prior set. Counsel demanded, among other things, records of *every* cardholder outreach related to fraud that InComm had ever received—complete with the cardholders' personal information. Then, when InComm asked for a modest extension of time to respond to the requests, Counsel refused to give one. Metcalf Decl. Ex. H.

This was hardly the only example of the discovery-related costs that Counsel imposed on InComm during this period. In early March, InComm was required to send several attorneys to Riverside, California, for an all-day discovery conference ordered by Judge Kewalramani in response to Counsel's initiation of the December 2023 discovery dispute. There, Counsel once again complained bitterly about InComm's supposed discovery delinquency and continued their press for immediate production of documents, including several categories that they demanded of InComm within a matter of weeks.

Finally, given Counsel's obstinate refusal to acknowledge defeat on Ms. Clark's claims, InComm was forced to prepare a motion for summary judgment (and alternatively for denial of class certification). In connection with that motion, InComm performed yet another round of searches for Ms. Clark's card records, using the *fifteen* different email addresses that Ms. Clark had hazarded throughout discovery as possibly being the one she used to buy her eCard. Amy Strauser, an employee at InComm that oversees the process of fulfilling Vanilla eCard orders at InComm, searched InComm's records for Vanilla eCard purchases associated with any of those fifteen email addresses. Like Ms. Ledford, Ms. Strauser found no

1    evidence that Ms. Clark ever had any interaction with InComm.  SUF ¶ 139; Dkt.

2    145-2.  Based on this abject failure of proof, InComm moved for summary judgment

3    on March 4, 2024.  Dkt. 143-1.

4                    2.    *March 5-April 10*

5            Although InComm's March 4 motion ultimately induced Counsel to drop their

6    case, that effect was not immediate.  First, the motion prompted a sequence of events

7    that revealed Plaintiff's lack of proof, and Counsel's lack of investigation, to be even

8    ***worse*** than InComm had previously understood.    As noted above, Counsel had

9    represented months earlier in a discovery response that Ms. Clark had been unable

10   to access her Bank of Hemet records thus far but would supplement the production

11   if the records became available.  It is not clear what efforts, if any, Counsel had

12   undertaken to retrieve Ms. Clark's bank records prior to March 4.  (They had,

13   instead, devoted most of their energy to inveighing against InComm's purported

14   discovery failures.)  But, when faced with the prospect that their last remaining

15   plaintiff's claims would be dismissed, Counsel sprang into action: They served a

16   subpoena on Bank of Hemet's successor, HCN Bank, on March 21, 2024.[4]

17           It turned out that, despite Counsel's earlier representations, the bank records

18   were not very hard to "access" after all.  HCN sent them to Counsel just five days

19   later, on March 26.  It also turned out that the records conclusively disproved Ms.

20   Clark's claim.  They revealed that she had not purchased any eCards at all during

21   the time period in question.[5]

22

23   [4] InComm had neither reason nor ability to pursue the bank records itself through
     this method.  InComm was relying upon the veracity of Counsel's representation
24   that they were seeking access to the records and would produce the records if
     available.
25   [5] Counsel has designated the bank records "Highly Confidential" and InComm is
26   therefore not submitting them with this motion.  InComm does not understand there
     to be any dispute regarding the dispositive import of the HCN Bank production but
27   is prepared to submit the records along with a motion to seal should the Court wish
28   to review them.

Despite the case-dispositive effect of HCN's March 26, 2024 production, despite the continuing obligation to produce materials responsive to InComm's discovery requests (*see* Fed R. Civ. P. 26(e)), and despite having made an express commitment to produce any bank records they were able to retrieve, Counsel chose ***not*** to send the production to InComm when they received it.  Indeed, it is not clear that Counsel ***ever*** would have informed InComm about the production if InComm had not asked about the status of Counsel's subpoena on April 8, 2024.  Even then, Counsel delayed another two days before finally sending the production to InComm.

During the period that Counsel were withholding this critical information, Counsel insisted upon taking the April 4, 2024 deposition of Ms. Strauser.  This required three of InComm's attorneys to travel to Denver to prepare for and defend the deposition, during which Counsel attempted to undermine the reliability of Ms. Strauser's search for any record of any Vanilla eCard purchase by Ms. Clark.  All the while, Counsel knew that there had in fact been no such purchase.  But they kept that information to themselves, as they summoned InComm's counsel to Denver, diverted Ms. Strauser from her usual job duties, and grilled her about whether she had done enough to search for Ms. Clark's phantom eCard.  This was not just improper; it was downright perverse.

It was also, like much of Counsel's conduct, extraordinarily wasteful of InComm's resources.   In the two-week period during which Counsel was withholding the HCN Bank production, InComm incurred attorneys' fees of $88,277.85.

### F.     April 10-Present:  Entry of Judgment in Favor of InComm

Soon after providing the bank records on April 10, Counsel finally relented and advised InComm that they would not oppose summary judgment.   Thus, InComm seeks no fees incurred after that date.

The Court granted InComm's summary judgment motion on May 30, 2024. Dkt. 162.  The Court reasoned that "[t]he undisputed facts show that Plaintiff does

not know her purported card number for her eCard, cannot provide any identifying information about her eCard, cannot locate any documentation showing transactions made with the card, and cannot even access or locate the computer, email account, or bank account used to purchase or receive the card." *Id.* at 8.  Moreover, the Court noted that "[e]xtensive searches of InComm's internal data reveal that Plaintiff has no record with the company, and that Plaintiff never called about supposed fraudulent activity on her card." *Id.*  The Court added that "[e]ven if Plaintiff could demonstrate that she purchased an eCard, there is absolutely no evidence that the purported depletion of her card was caused by a security defect in [InComm's] systems—the crux of Plaintiff's claims." *Id.*  The Court entered judgment "in favor of [InComm] and against Plaintiff," dismissed all claims in the Second Amended Complaint with prejudice, and noted that "Plaintiff takes nothing from this lawsuit against [InComm]."  Dkt. 163 at 2.  The Court also ordered that "Defendant shall file any motions for attorneys' fees or sanctions no later than 30 days from the date of this Order."  Dkt. 162 at 9 (emphasis omitted).

## ARGUMENT

This case—meritless from the beginning—only became less defensible over time.  It is now clear that Counsel filed the Complaint, which accused InComm of defrauding five Plaintiffs by selling them insufficiently secure Vanilla Cards, without reviewing the card records or even gathering any verification of the cards' existence.  It is also apparent, from both Ms. Clark's deposition performance and the abrupt exit of three of the original plaintiffs, that Counsel did little or nothing to vet the individuals whose claims it brought before this Court.  Instead, Counsel drummed up plaintiffs, sued InComm as soon as it could, and then looked to InComm to provide discovery so they could figure out a claim.

Given this reckless course of conduct, InComm has ample grounds for seeking recovery of fees incurred throughout the entire duration of the case.  Had Counsel performed the adequate investigation that is required of them, InComm would not

have spent even one dollar defending this case. However, in recognition of the exceptional nature of the remedy, and the desire not to multiply the proceedings still further, InComm's application is far more modest in scope, covering only a two-and-a-half-month period of this 18-month litigation.

Ms. Clark became the sole remaining plaintiff on January 24, 2024, by which point Counsel could not have harbored any good faith belief that her claim was viable. Accordingly, InComm is entitled to an award of fees incurred during the period from that date through April 10, 2024 (when Counsel belatedly disclosed the HCN Bank production to InComm). An award of attorneys' fees for the Fee Period is separately and independently justified under 28 U.S.C. § 1927, the CLRA, and the Court's inherent power.[6]

## I. The Court Should Award InComm Attorneys' Fees for the Fee Period

### A. Counsel's unreasonable and vexatious multiplication of the proceeding merits a fee award pursuant to 28 U.S.C. § 1927.

Counsel's conduct during the Fee Period merits an award of fees under Section 1927, which states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess . . . attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Multiplication" simply means "to multiply or prolong proceedings after the complaint is filed," *see In re Yagman*, 796 F.2d 1165, 1187

---

[6] These independent bases for awarding fees would permit InComm to recover against Ms. Clark, her attorneys, and her attorneys' law firms. While InComm respectfully requests that any award of fees be made jointly and severally against Counsel and their firms, InComm does not seek any award against Ms. Clark personally. As discussed at length in InComm's motion for summary judgment, Dkt. 143-1, Ms. Clark has suffered adverse medical events that diminished her cognitive capacity. InComm finds it unconscionable that Counsel would proffer her as the sole representative of a putative statewide class and subject her to the burdens of this pointless litigation. InComm has no desire to compound that harm by seeking an award against Ms. Clark herself.

(9th Cir. 1986), and an attorney's conduct is unreasonable or vexatious if it is either (1) reckless *or* (2) in bad faith, *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

An attorney acts recklessly when they "disregard[] a known or obvious risk of material misrepresentation." *In re Girardi*, 611 F.3d 1027, 1038 n.4 (9th Cir. 2010). For reckless conduct to be sanctionable under Section 1927, it must also be "frivolous." *Blixseth v. Yellowstone Mt. Club, LLC*, 796 F.3rd 1004, 1007 (9th Cir. 2015). Litigation conduct is "frivolous" when it is "patently lacking in any basis in either law or fact." *Caputo ex rel. United States v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024). Conduct is also frivolous if it is "'baseless and made without reasonable and competent inquiry' or [is] made up of 'legal or factual contentions so weak as to constitute objective evidence of improper purpose.'" *Id.* (quoting *In re Girardi*, 611 F.3d at 1062).

Attorneys act in bad faith, meanwhile, when they "continue[] to prosecute [their client's] claims, despite being presented with evidence that [their] claims [a]re meritless." *Forto v. Capital One Bank, N.A.*, 2017 WL 4168529, at *7 (N.D. Cal. Sept. 20, 2017).

### 1. Recklessness

Here, at minimum, Counsel acted recklessly by continuing to prosecute this action after January 24, 2024, when Ms. Clark became the only remaining plaintiff. By that time, Counsel knew that Ms. Clark did not have a single piece of documentary or physical evidence that she ever even purchased a Vanilla eCard. They knew that Ms. Clark had voluntarily destroyed or discarded any evidence that could have borne on that question. They also knew that InComm's Alison Ledford had undertaken an exhaustive search for any evidence that Ms. Clark ever called InComm and had found none. And Counsel knew, finally, that Ms. Clark suffered from cognitive impairments that made her own recollection inherently and irreparably unreliable. Yet despite all this, Counsel apparently took no independent

steps to verify that there was any good-faith basis for continuing to pursue claims on Ms. Clark's behalf. Counsel therefore disregarded a known and obvious risk that they were pursuing frivolous claims, rendering sanctions appropriate and necessary. *See, e.g.*, *Lahiri*, 606 F.3d at 1218–21 (affirming sanction under § 1927 where counsel should have known through "even a cursory investigation" that his client's claims were meritless).

Indeed, not only did Counsel continue their pursuit of the case, but they also wielded discovery to run up prodigious discovery costs in a meritless case—all while dismissing InComm's expressions of concern that they were doing just that. In all three of its motions to dismiss, InComm emphasized the need for Plaintiffs' card information to determine the fate of Plaintiffs' cards, and took Plaintiffs to task for their failure to provide it. Though the Court appeared to agree with Plaintiffs that the cards' information need not be specified in the Complaint, it now turns out that Counsel simply did not have the information at all. Moreover, InComm's own searches underscored that without the information, Plaintiffs' cards could never be located. Yet Counsel ignored these glaring signs of inadequacy and forged ahead.

This cavalier disregard for known and obvious risks then escalated as discovery—and the unraveling of Plaintiffs' case—got under way. In September 2023, InComm noted the contradiction between Plaintiffs' utter lack of basis for their claims, as revealed through discovery responses, and Counsel's increasingly aggressive discovery tactics toward InComm. InComm voiced its "concerns that Plaintiffs ha[d] already wasted InComm's money by pursuing an obviously meritless case," and exhorted Plaintiffs that they "w[ould] not allay those concerns by wasting even more." Metcalf Decl. Ex. C. Yet that is just what Plaintiffs did, pursuing their claims for ***seven more months*** and applying ever-escalating discovery pressure.

### 2. Bad Faith

Counsel also acted in subjective bad faith. During discovery, Counsel signed discovery responses representing that Ms. Clark had performed a diligent search for

17

her bank records, that the bank records "cannot be accessed," and that Counsel would produce the records if they ever turned up.  It is now clear these statements were untrue.  Ms. Clark and Counsel could not have conducted a diligent search for Ms. Clark's bank records prior to March 2024, because when Counsel sought to retrieve the records in their effort to oppose summary judgment, they were indeed readily accessible.  All they had to do was send a subpoena to HCN Bank, which produced the records in less than a week and without objection.  This suggests that Counsel simply had not *wanted* to obtain records that would bear directly on whether Ms. Clark had purchased an eCard.  It was only when Counsel's incentives changed, and they were scrambling for a way to avoid summary judgment, that they pursued the bank records in the hopes of manufacturing a "fact issue" to stave off summary judgment.

That plan did not pan out; instead, the records showed that Ms. Clark's alleged card purchase had never happened.  But instead of taking steps to end this case, Counsel abandoned their earlier promise (and pre-existing obligation) to produce Ms. Clark's bank records.  They withheld the documents—and subjected InComm, its lawyers, and a non-lawyer employee to a pointless deposition relating to InComm's exhaustive searches for a purchase that Counsel *knew had never happened*.  During that time, InComm incurred nearly $90,000 more in fees.

Finally, as set forth above, throughout the case, Counsel demonstrated an unmistakable pattern of reacting to the revelation of their own failures of diligence by "going on the offensive" against InComm.  When written discovery showed their lack of documents to support their claims, they immediately badgered InComm to produce documents.  When Ms. Clark gave her disastrous deposition, they launched a discovery dispute against InComm shortly thereafter, bemoaning InComm's failure to "produce ***any*** documents."  Metcalf Decl. Ex. G (emphasis in original).  When Ms. Clark became the only plaintiff left in the case, they served additional, expansive new discovery demands—and pursued their discovery dispute in a hearing

before Judge Kewalramani—that same day.  And, most stunningly, when they received bank records showing that the purchase at the heart of Ms. Clark's claims had never occurred, they proceeded with a deposition of an InComm employee, during which they questioned her about her failure to find the non-existent transaction.  This pattern, of seeking to obscure their own lapses by turning the tables on InComm, further underscores the bad faith with which Counsel brought this case before the Court.

In sum, Counsel forced InComm to "waste time and resources defending an action that, from the beginning, lacked a factual basis" and "continued [to do so] despite being presented with evidence that [Ms. Clark's] claims were meritless." *Forto*, 2017 WL 4168529, at *7.  This conduct calls for an award of sanctions under § 1927.  *See id.* (awarding fees under § 1927 to sanction similar misconduct).

**B.**     **Counsel's bad faith merits an award of fees under the CLRA.**

Counsel's bad faith prosecution of this action during the Fee Period also warrants an award of fees under the CLRA, which allows "[r]easonable attorney's fees [to] be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith." Cal. Civ. Code § 1780(e).

The Court has already ordered that InComm is the "prevailing party," *see* Dkt. 163 at 2, so the only question here is whether Counsel's prosecution of this action on behalf of Ms. Clark "was not in good faith."  *See Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915, 924 (Cal. Ct. App. 2004).  It is the "rare plaintiff who will admit that . . . she knew [her] action lacked merit," so the fact of subjective bad faith "must be deduced from inferences or from circumstantial evidence." *Vespi v. Galaxy Taco*, 2019 Cal. Super. LEXIS 83680, at *7 (Sup. Ct. San Diego Cnty. May 3, 2019); *see also Corbett*, 119 Cal. App. 4th at 926, 928 (holding that "evidence of an improper motive may be established by the circumstances" and that "[w]hen [an] action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive").  For instance, in *Pickman v.*

*American Express Co.*, the Northern District inferred from the fact that "plaintiff's tactics utterly lacked merit" that the plaintiff's CLRA claim was not in good faith and so awarded fees under CLRA § 1780(e). *See* 2012 WL 1357636, at *3–4 (N.D. Cal. Apr. 17, 2012). For the reasons discussed above, bad faith during the Fee Period is easily inferred from Counsel's conduct.

InComm has found no clear indication in the caselaw whether Cal. Civ. Code § 1780(e) invites an award only against the unsuccessful litigant or also against her counsel. InComm respectfully submits that it is consonant with the purposes of the CLRA for a court to have discretion to issue an award against counsel when it is clear, as here, that counsel was primarily responsible for driving the pursuit of an objectively meritless claim.

### C. The Court should exercise its inherent power to award attorneys' fees against counsel and their firms.

The Court should also exercise its inherent authority to award fees against Counsel and their law firms.[7] Sanctions under the Court's inherent power "are available if the [C]ourt specifically finds bad faith or conduct tantamount to bad faith" such as "recklessness when combined with an additional factor such as frivolousness." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) (explaining that "bad faith *per se*" is not required for a court to use its inherent power to impose sanctions and that "reckless *and* knowing conduct" will suffice).

---

[7] While Section 1927 "does not permit the award of sanctions against a law firm" (it only permits parties to seek fees against individual attorneys), *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3rd 1290, 1293 (9th Cir. 2015), courts can use their inherent authority to sanction individual attorneys *or* their firms. *See, e.g.*, *Haynes v. Home Depot USA, Inc.*, 800 F. App'x 480, 486–87 (9th Cir. 2020) (recognizing that courts can use their inherent powers to sanction law firms); *Sweet People Apparel, Inc. v. Saza Jeans, Inc.*, 2016 WL 6053958, at *2 (C.D. Cal. May 25, 2016) (same).

As discussed above, Counsel knowingly and recklessly pursued Ms. Clark's frivolous claims despite (initially) knowing they lacked a good faith basis for asserting those claims and (later) knowing beyond a doubt that her claims were meritless.  This alone is sufficient for the Court to use its inherent power to sanction Counsel and their firms.  *See Lahiri*, 606 F.3d at 1218–21 (affirming sanction under the court's inherent power where counsel should have known through "even a cursory investigation" that his client's claims were meritless).

Moreover, as discussed above, Counsel acted in bad faith by (1) misrepresenting the diligence of its search for Ms. Clark's bank records—that is, by pretending they had earnestly sought these vital documents when, in truth, they had not; (2) by plowing forward with their meritless claims after being presented with evidence that they were baseless; and (3) by declining to inform InComm promptly that they had obtained evidence that conclusively demonstrated that Ms. Clark had no claim.

## II.    InComm's Requested Fees are Reasonable.

"Once a party establishes its entitlement to attorneys' fees, '[i]t remains for the district court to determine what fee is reasonable.'"  *Franco v. Ctr. Transp. LLC*, 2022 WL 16921826, at *2 (C.D. Cal. Oct. 27, 2022) (Bernal, J.) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), *appeal dismissed* 2023 WL 8320039.  Courts make this determination through the "lodestar method" by which they multiply "the time spent with the reasonable hourly compensation of each attorney involved in the presentation of the case."  *Id.* (internal quotation marks omitted).  As set forth below, InComm's attorneys' hourly rates are reasonable and they expended a reasonable amount of time during the Fee Period securing the complete dismissal of this case. Accordingly, InComm is entitled to an award of the fees it incurred during the Fee Period: $741,052.56.

**A.**  **The requested hourly rates are reasonable.**

InComm was represented in this motion by two law firms, DTO Law and Patterson Belknap Webb and Tyler LLP.  InComm seeks only to recover attorneys' fees for the work of the five Patterson Belknap attorneys that represented it during this period, partners Jane Metcalf and David Kleban and associates Peter Vogel, Basil Williams, and Colleen Anderson (the "Patterson Attorneys").  The Patterson Attorneys billed at hourly rate of ████ (Metcalf), ████ (Kleban), ████ (Vogel), ████ (Williams), and ████ (Anderson).[8]  These rates were reasonable for the work provided, as demonstrated by several indicia of reasonableness.

First, these rates fall comfortably within the 50th to 75th percentile of billing rates for attorneys in the Los Angeles area, as reported by the 2023 Wolters Kluwer Real Rate Report.[9]  *See* Metcalf Decl. Ex. L at 26, 30 (noting that partners practicing for less than 21 years in Los Angeles billed at a median rate of $747 with a third quartile rate of $1,102 and that associates in the same market with 3 to 7 years of experience billed at a median rate of $761 and at a third quartile rate of $875).  The Real Rate Report "identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies[;] it [thus] provides a much better reflection of true market rates than self-reported rates in all practice areas."  *Franco*, 2022 WL 16921826, at *3 (internal quotation marks omitted).    That the Patterson Attorneys billed at

---

[8] InComm also seeks fees for the seven eDiscovery professionals employed by Patterson Belknap who worked on this matter during the Fee Period.  Collectively, those individuals billed 4.95 percent of the hours at issue and charged 2.00% percent of the fees at issue.

[9] "Reasonable hourly rates are calculated according to the prevailing market rate in the relevant legal community—here, the Central District of California."  *Monster Energy Co v. Vital Pharms., Inc.*, 2023 WL 8168854, at *22 (C.D. Cal. Oct. 6, 2023) (Bernal, J.).

comparable rates to their peer litigators in Los Angeles as evidenced by the Real Rate Report is strong evidence of the reasonableness of their rates. *See id.* (treating the Real Rate Report as the "starting point" for analyzing the reasonableness of rates).

Second, these rates are consistent with—and indeed compare favorably to—recent awards from the Court and from other judges in the Central District, further demonstrating their reasonableness. *See, e.g.*, *Abudawood v. de Leon*, 8:23-cv-02448, Dkt. 100 at 3–4 (C.D. Cal. June 13, 2024) (approving hourly rates of $1,339,50 to $1,858.50 for three Kirkland & Ellis partners and approving a $706.50 rate for a Kirkland associate); *P. v. O'Malley*, 2024 WL 1136340, at *3 (C.D. Cal. Feb. 12, 2024) ("The Ninth Circuit has found reasonable fees with effective hourly rates exceeding $900, and the Central District of California has frequently found reasonable fees with effective hourly rates exceeding $1,000."); *Monster Energy*, 2023 WL 8168854, at *23 (Bernal, J.) (approving $1,042 rate for partners and $806 rate for associates and collecting authorities approving of rates of $1,500, $1,365, and $1,600 per hour for partners); *WB Music Corp. v. Royce Int'l Broadcasting Corp.*, 2018 WL6177237, at *5 (C.D. Cal. July 9, 2018) (Bernal, J.), *aff'd* 814 Fed. App'x 286 (approving of a $495 hourly rate for a "junior associate . . . right out of law school").

Third, these rates are reasonable because they are what InComm has paid to defeat this attempted class action, which has spawned copycat lawsuits across the country and has resulted in significant—and meritless—negative publicity for InComm. The fact that a client in a competitive legal market is willing to pay the charged rate strongly suggests the rate is reasonable. *See Monster Energy*, 2023 WL 8168854, at *23 (Bernal, J.) (collecting authorities). In fact, InComm has subsequently hired the Patterson Attorneys to represent it in the copycat litigation generated by Counsel's spurious claims, further evidencing the reasonableness of these rates. *See* Metcalf Decl. ¶¶ 17, 32.

Fourth, these rates are reasonable in light of the amount of money at issue in this lawsuit. Plaintiffs valued the amount in controversy here as "exceeding $5,000,000 exclusive of interest and costs" and sought to represent two California-wide classes of those who purchased or received InComm's cards. *See* Dkt. 54 ¶¶ 25, 99. In fact, Counsel saw this case as so potentially remunerative that they persisted in litigating it long after they should have known that there were no viable claims to pursue. In light of the significant risk this case posed to InComm prior to its dismissal, the charged hourly rates are reasonable.

Finally, these rates are reasonable given "the experience, skill, and reputation of the attorney[s] requesting fees." *See, e.g.*, *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

InComm's counsel also spent a reasonable number of hours during the Fee Period. During that time, InComm was forced to, among other things, prepare a summary judgment motion and supporting papers, including a declaration detailing its efforts to search for a non-existent transaction; prepare for and attend a day-long discovery conference where Counsel fulminated about InComm's purported failure to produce documents fast enough; engage in extensive discovery efforts, including two days of on-site interviews of document custodians by outside counsel, followed by collection and analysis of documents, to appease Counsel's aggressive demands; respond to an onerous set of discovery requests for which Counsel declined an extension; and prepare for and defend the deposition of Amy Strauser, allowing Counsel to examine her about her failure to locate a transaction that Counsel secretly knew had never occurred. Although the hours devoted to this matter were significant, Counsel have only themselves to blame for that.

## CONCLUSION

InComm respectfully requests that the Court grant its Motion for Attorneys' Fees.

1

2

Respectfully submitted,

3    Dated: July 1, 2024

By: _/s/ William A. Delgado_

4

5    William A. Delgado (SBN 222666)
wdelgado@dtolaw.com

6    Nicole G. Malick (SBN 335754)
nmalick@dtolaw.com

7    DTO LAW

8    601 S. Figueroa St. Suite 2130
Los Angeles, CA 90017

9    Tel: (213) 335-7010

10   Fax: (213) 335-7802

11   Jane Metcalf (*pro hac vice*)
jmetcalf@pbwt.com

12   David S. Kleban (*pro hac vice*)

13   dkleban@pbwt.com

14   Peter Vogel (*pro hac vice*)
pvogel@pbwt.com

15   Basil Williams (*pro hac vice*)

16   bwilliams@pbwt.com

17   PATTERSON BELKNAP WEBB &
TYLER LLP

18   1133 Avenue of the Americas
New York, New York 10036

19   Tel: (212) 336-2000

20   Fax: (212) 336-2222

21   Attorneys for Defendant

22   INCOMM FINANCIAL SERVICES, INC.

23

24

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE

2

    The undersigned, counsel of record for InComm Financial Services, Inc.,

3

certifies that this brief is twenty-five pages, which complies with the page limit set

4

by court order dated October 20, 2022.

5

6

Dated: July 1, 2024                    By: _/s/ William A. Delgado_____

7

8

                                       William A. Delgado (SBN 222666)

                                       wdelgado@dtolaw.com

9

                                       Nicole G. Malick (SBN 335754)

                                       nmalick@dtolaw.com

10

                                       DTO LAW

11

                                       601 S. Figueroa St. Suite 2130

                                       Los Angeles, CA 90017

12

                                       Tel: (213) 335-7010

13

                                       Fax: (213) 335-7802

14

                                       Jane Metcalf (*pro hac vice*)

15

                                       jmetcalf@pbwt.com

                                       David S. Kleban (*pro hac vice*)

16

                                       dkleban@pbwt.com

17

                                       Peter Vogel (*pro hac vice*)

                                       pvogel@pbwt.com

18

                                       Basil Williams (*pro hac vice*)

19

                                       bwilliams@pbwt.com

                                       PATTERSON BELKNAP WEBB &

20

                                       TYLER LLP

21

                                       1133 Avenue of the Americas

                                       New York, New York 10036

22

                                       Tel: (212) 336-2000

23

                                       Fax: (212) 336-2222

24

                                       Attorneys for Defendant

25

                                       INCOMM FINANCIAL SERVICES, INC.

26

27

28