UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1839 JGB (SHKx)** | Date | September 13, 2024 |
|---|---|---|---|
| Title | *Carolyn Clark, et al. v. InComm Financial Services, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Defendant's Motion for Attorneys' Fees (Dkt. No. 164); and (2) VACATING the September 16, 2024 Hearing (IN CHAMBERS)

Before the Court is Defendant InComm Financial Service's ("Defendant") motion for attorneys' fees. ("Motion," Dkt. No. 164.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. Upon consideration of the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.

## I. BACKGROUND

On October 18, 2022, Plaintiffs Tarika Stewart, Carolyn Clark, Sharon Manier, Shelby Cooper, and Aquilla Thompson (collectively, "Original Plaintiffs") filed a class action complaint against Defendant InComm Financial Services, Inc. ("Defendant" or "Incomm"), doing business as Vanilla Gift. ("Complaint," Dkt. No. 1.) On December 14, 2022, Defendant moved to dismiss the Complaint. (Dkt. No. 23.) On March 16, 2023, the Court granted Defendant's motion to dismiss and granted Original Plaintiffs leave to amend. (Dkt. No. 41.)

On April 7, 2023, Original Plaintiffs filed a first amended complaint. ("FAC," Dkt. No. 44.) Defendant moved to dismiss the FAC on April 28, 2023. (Dkt. No. 45.) On July 17, 2023, the Court granted-in-part and denied-in-part Defendant's motion to dismiss and granted Original Plaintiffs leave to amend. (Dkt. No. 53.)

On August 7, 2023, Original Plaintiffs filed a second amended complaint. ("SAC," Dkt. No. 54.) Defendant moved to dismiss the SAC on September 1, 2023. ("MTD," Dkt. No. 58.)

On December 1, 2023, the Court granted-in-part and denied-in-part Defendant's MTD. ("MTD Order," Dkt. No. 103.)

As part of the MTD Order, the Court dismissed Plaintiff Sharon Manier's sole claim without leave to amend. (See MTD Order at 12; SAC.) Plaintiff Shelby Cooper was voluntarily dismissed from the action on November 1, 2023. ("Cooper Dismissal," Dkt. No. 86.) Plaintiffs Aquilla Thompson and Tarika Stewart were later dismissed from the action for failure to prosecute. ("Thompson Dismissal," Dkt. No. 121; "Stewart Dismissal," Dkt. No. 127.) The only remaining plaintiff was Carolyn Clark ("Plaintiff" or "Clark"). The remaining claims alleged in the SAC were: (1) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., for unlawful business practices; (3) violations of the UCL for unfair business practices; and (4) unjust enrichment. (See SAC.)

On April 10, 2024, Defendant filed a motion for summary judgment. ("MSJ," Dkt. No. 152.) On May 30, 2024, the Court granted Defendant's MSJ and entered judgment in favor of Defendant and against Plaintiff. ("MSJ Order," Dkt. No. 162.)

On July 1, 2024, Defendant filed the Motion. (Motion.) In support of the Motion, Defendant filed the declaration of attorney Jane Metcalf ("Metcalf Decl.," Dkt. No. 164-3) with attached exhibits ("Metcalf Exs. A-L," Dkt. Nos. 164-4–15).

On July 31, 2024, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 171.) In support of the Opposition, Plaintiff filed:

- Request for judicial notice of five court dockets or filings, two government press releases, and one Federal Deposit Insurance Corporation ("FDIC") survey ("RJN," Dkt. No. 173);[1]

---

[1] A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Proceedings of courts, including orders and filings, are the proper subject of judicial notice when directly related to the case, though not for the truth of the contents of the underlying documents. See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("[C]ourt orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b).]"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). As such, the court dockets and filings are subject to judicial notice. "[P]ublic records maintained on government websites are [also] generally subject to judicial notice." Johnson v. DBTA, LLC, 424 F. Supp. 3d 657, 662 (N.D.

- Declaration of attorney Graham B. Lippsmith ("Lippsmith Decl.," Dkt. No. 171-3) with attached exhibits ("Lippsmith Exs. 1-15," Dkt. Nos. 171-4–11, 172-3–6);
- Declaration of attorney Jaclyn L. Anderson ("Anderson Decl.," Dkt. No. 172-7) with attached exhibits ("Anderson Exs. 16-25," Dkt. Nos. 172-8–17); and
- Declaration of Carolyn Clark ("Clark Decl.," Dkt. No. 18).

Defendant replied on August 30, 2024. ("Reply," Dkt. No. 179.) In support of the Reply, Defendant filed the supplemental declaration of attorney Jane Metcalf ("Metcalf Supp. Decl.," Dkt. No. 179-2) with attached exhibits ("Metcalf Supp. Exs. A-B," Dkt. Nos. 179-3–4).

## II.  LEGAL STANDARD

Under the "American Rule," each party to a lawsuit is generally responsible for its own attorneys' fees. Hensley v. Eckerhart, 461 U.S. 4214, 429 (1983). However, an award of attorneys' fees may be proper where a valid contract or statute shifts fees to a losing party. See, e.g., United States v. Standard Oil Co. of Cal., 603 F.2d 100, 103 (9th Cir. 1979).

### A.  28 U.S.C. § 1927

28 U.S.C. § 1927 ("Section 1927") provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be ordered by the court to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Imposition of sanctions under this section requires a finding of bad faith. Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000). Knowing or reckless conduct meets this subjective standard, but negligent conduct does not. Id.

### B.  Consumer Legal Remedies Act

California's Consumer Legal Remedies Act ("CLRA") provides that "[t]he court shall award court costs and . . . [r]easonable attorney's fees . . . to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith." Cal. Civ. Code § 1780(e). The CLRA attorneys' fees provision "requires the trial court to find that the plaintiff proceeded in subjective bad faith before it may award fees to a prevailing defendant." Shisler v. Sanfer Sports Cars, Inc., 167 Cal. App. 4th 1, 9 (2008). The moving party has the burden of proof. Corbett v. Hayward Dodge, Inc., 119 Cal. App. 4th 915, 926 (2004). "When a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive." Id. (citing Summers v. City of Cathedral City, 225 Cal. App. 3d 1047, 1073 (1990)). It is within a court's discretion, however, not to draw that inference "if convinced the party was acting in the good faith belief the action was meritorious." Id.

//

---

Cal. 2019) (citation omitted). As such, the government press releases and the FDIC survey are also subject to judicial notice. Accordingly, the Court **GRANTS** the RJN.

### C. Court's Inherent Powers

District courts may impose sanctions under their power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). A court may assess attorney's fees as a sanction when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," including when a party has willfully disobeyed a court order. Chambers, 501 U.S. at 45 (internal quotations and citations omitted). A court may similarly impose attorney's fees as a sanction when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." Id. at 46 (internal quotations and citation omitted). A court may even dismiss an action for a party's failure to prosecute or to comply with a court order. Link v. Wabash R. Co., 370 U.S. 626, 630 (1962) (citing F. R. Civ. P. 41(b)). These inherent powers of the court "must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44-45.

### III. DISCUSSION

Defendant argues that it is entitled to attorneys' fees under Section 1927, CLRA, and the Court's inherent powers. (See Motion.) Defendant also contends that its requested attorneys' fees—$741,052.56 for the period from January 24, 2024 to April 10, 2024 (the "Fee Period")—are reasonable. (See id. at 15, 21.) Defendant seeks a fee award against Plaintiff's counsel, LippSmith LLP and Tousley Brain Stevens PLLC (jointly, "Counsel"), and not against Plaintiff herself. (See id. at 15 n.6.)

### A. Attorneys' Fees Under Section 1927

First, Defendant argues that it is entitled to attorneys' fees under Section 1927 because Counsel acted recklessly by continuing to prosecute the action after January 24, 2024, when Clark became the sole named Plaintiff in the action. (See Motion at 16.) Section 1927 "requires proving that the opposing party acted with subjective bad faith." Kohler v. Flava Enters., Inc., 779 F.3d 1016, 1020 (9th Cir. 2015) (internal quotations omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument . . . or argues a meritorious claim for the purpose of harassing an opponent." Id. (internal quotations omitted).

Here, Clark became the lone named Plaintiff after Stewart was dismissed on January 24, 2024. (See Stewart Dismissal.) The same day, Counsel served Defendant with a second set of document requests. (Motion at 11.) It is undisputed that Counsel failed to subpoena Plaintiff Clark's HCN Bank records, for any history of a Vanilla eCard purchase, until March 2024. (See Motion at 12; Opposition at 17.) At some point between March 26, 2024, and April 5, 2024, Counsel reviewed the subpoenaed HCN Bank documents, which revealed that there was no record that Plaintiff had purchased a Vanilla eCard (the basis of this lawsuit). (See Motion at 16; Opposition at 17.) On April 4, 2024, Counsel took the deposition of Defendant's employee, Amy

Strauser. (See Motion at 13; Opposition at 9.) On April 8, 2024, Defendant asked about the status of Counsel's HCN Bank subpoena. (See Motion at 13; Metcalf Ex. J.) Finally, on April 10, 2024—the last day of the Fee Period—Counsel provided Defendant with the HCN Bank records. (See Motion at 3; Opposition at 9.)

Defendant contends that the actions Counsel took during the Fee Period, which included serving Defendant with a second set of document requests, attending an all-day discovery conference, and taking Amy Strauser's deposition, were made in bad faith because Counsel knew that there was no evidence Plaintiff had purchased a Vanilla eCard. (See Stewart Dismissal; Motion at 16; Metcalf Ex. H; Anderson Ex. 25.) The Court agrees. When counsel for a party "continue[s] to prosecute Plaintiff's claims, despite being presented with evidence that [the] claims [are] meritless," the counsel does so "in bad faith." See Forto v. Capital One Bank, National Association, 2017 WL 4168529, at *7 (N.D. Cal. Sept. 20, 2017) (finding that a defendant was entitled to attorneys' fees from plaintiff's counsel under Section 1927 because counsel forced the defendant to "waste time and resources defending an action that, from the beginning, lacked a factual basis").

Counsel initiated this lawsuit in October 2022. (See Complaint.) Until this Court entered judgment and dismissed the case in May 2024, nearly two years later, it appears that the only available evidence that Plaintiff Clark had ever purchased a Vanilla eCard was a single page of Clark's handwritten notes about her purported calls with Defendant. (See Opposition at 16; Clark Decl. ¶ 4, 19; Anderson Decl. ¶ 9; Anderson Ex. 16.) The notes indicate that Clark left messages but never spoke about her alleged eCard with any of Defendant's employees. (See Anderson Ex. 16.) In contrast, Counsel had myriad reasons to suspect that Clark had not purchased an eCard: Clark could not provide the card number for her eCard, could not provide identifying information about her eCard, could not locate any documentation showing transactions made with the eCard, and could not access or locate the computer, email account, or bank account used to purchase the eCard. (See MSJ Order at 8.) Defendant's extensive searches of its internal records, using fifteen email addresses and two phone numbers Clark provided, yielded no results. (See id. at 6.) Once Clark became the lone named Plaintiff, Counsel's entire case rested on the implausible narrative that any documentation of Clark's eCard was lost, hacked, or destroyed, including Clark's email account, bank account, bank account number, bank statements, checkbook, debit card, debit card number, cell phone, cell phone number, and phone records. (See id. at 4-5.) There remained one possible source of corroboration for Clark's claims: her HCN Bank (formerly Bank of Hemet) records, as Clark had purportedly purchased the eCard using her Bank of Hemet debit card. (See id. at 4-5.) But Counsel neglected to subpoena HCN Bank for the records until March 2024. (See Motion at 12; Opposition at 17.) Once Counsel reviewed the documents, which revealed no record of Clark's purported eCard purchase, Counsel failed to turn them over to Defendant until asked. (See Motion at 3, 13; Opposition at 9; Metcalf Ex. J.)

The Court does not fault Clark for the lack of evidence. Clark herself did not initiate the lawsuit—she saw Counsel's social media marketing in search of plaintiffs and was contacted by Counsel to serve as a class representative. (See ¶¶ 5-6.) She also suffers from a medical

condition, which affects her memory, and she faced difficult personal circumstances during the lawsuit, which hampered her ability to keep track of her belongings and records. (See Clark Decl. ¶¶ 13, 17.) But the Court does fault Counsel for its stunning, nearly two-year lack of diligence in corroborating Clark's claim that she purchased an eCard. When Clark became the only named Plaintiff, Counsel continued to prosecute the case without taking any meaningful action to ensure that Clark had actually purchased the eCard. In that time, Counsel served Defendant with a second set of document requests and continued to pursue Defendant's responses to those requests, took the Strauser Deposition, and initiated a day-long discovery conference. (See Metcalf Ex. H; Anderson Ex. 25; Opposition at 4-5.) Similar to the counsel in Forto, Counsel here "knew or should have known" that there was no evidence to support Plaintiff's claims, but "proceeded to litigate Plaintiff's claims on the merits" and "forced [Defendant] to waste time and resources defending an action that, from the beginning, lacked a factual basis." See Forto, 2017 WL 4168529, at *6-7. The Court finds that Counsel's actions during the fee period caused "unreasonably protracted and costly litigation over" a claim without any factual basis. See Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1222 (9th Cir. 2010).

Counsel devotes much of its Opposition to arguing that Defendant acted in bad faith, both by failing to timely respond to discovery requests and by bringing the instant Motion. (See Opposition at 14-18.) But despite Defendant's purported delay in responding to Plaintiff's document requests, the fact remains that Counsel was long aware that Clark had no evidence of her eCard purchase, that Defendant's search of its systems yielded no results showing Clark's purchase, and that Counsel made no effort to secure the one piece of possibly corroborating evidence to support Clark's claims (her HCN Bank records). Under those circumstances, Counsel knew or should have known it lacked a factual basis for the action. In addition, Counsel submits ample evidence of the parties' draft settlement agreements, stipulations, and communications, in which Defendant proposed terms that allowed "each side to bear its own costs." (See Lippsmith Decl. ¶¶ 8-20.) Efforts at a settlement failed. (See id. ¶ 20.) However, that Defendant was once willing to settle the action without an attorneys' fees award has no bearing on the Motion now before the Court. The question before the Court is not Defendant's motivation for bringing the Motion, but whether Plaintiff's Counsel unreasonably "multiplied the proceedings" in bad faith. 28 U.S.C. § 1927; Pac. Harbor Cap., Inc., 210 F.3d at 1118. The Court finds that it did. As such, attorneys' fees are warranted under Section 1927 for Counsel's actions during the Fee Period.

Because the Court finds that sanctions are warranted under Section 1927, it does not reach the arguments that sanctions should also be imposed under CRLA or the Court's inherent powers. See Lozano v. Cabrera, 678 F. App'x 511, 513 (9th Cir. 2017).

### B. Lodestar Analysis

Once a party establishes its entitlement to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley, 461 U.S. at 433. Courts generally apply the lodestar method to determine the reasonableness of requested attorneys' fees. Id. Under the lodestar method, a court multiplies "the time spent" with the "reasonable hourly compensation

of each attorney involved in the presentation of the case." Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 579 (2004). "The district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008); Ketchum v. Moses, 24 Cal.4th 1122, 1132 (2001).

   1. **Hourly Rate**

The reasonable hourly rate is the rate prevailing in the community for similar work. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community."); Viveros v. Donahue, 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. See Schwarz v. Secretary of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. See, e.g., Viveros, 2013 WL 1224848, at *2; Ashendorf & Assocs. v. SMI-Hyundai Corp., 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); Bademyan v. Receivable Mgmt. Servs. Corp., 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

The Court has reviewed Defendant's counsel's hourly rates for partner Jane Metcalf, partner David Kleban, associate Peter Vogel, associate Basil Williams, and associate Colleen Anderson. (See Motion at 22; Metcalf Decl. ¶ 18.) Metcalf and Kleban both have 12 years of experience in private practice, Vogel has 3 years of experience at Patterson Belknap, Williams has 2 years of experience at Patterson Belknap, and Anderson has 1 year of experience at Patterson Belknap. (See Metcalf Decl. ¶¶ 19, 23-26.) Plaintiff does not oppose Defendant's counsel's rates. (See generally Opposition.) The Court finds that these rates are reasonable. In support of its rates, Defendant's counsel submits the 2023 Real Rate Report: The industry's leading analysis of law firm rates, trends, and practices ("Real Rate Report"). (See Metcalf Ex. L.) "Because the Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies, it provides a much better reflection of true market rates than self-reported rates in all practice areas." Franco v. Central Transport LLC, 2022 WL 16921826, at *3 (C.D. Cal. Oct. 27, 2022) (internal quotations omitted). The Real Rate Report indicates that Defendant's counsel's billing rates fall within the 50th to 75th percentile of billing rates for Los Angeles attorneys. See Metcalf Ex. L at 26, 30 (showing that associates with 3 to 7 years of experience bill a median rate of $761 and a third quartile rate of $875, and showing that partners with fewer than 21 years of experience bill a median rate of $747 and a third quartile rate of $1,102). The Court acknowledges that the rates for Defendant's counsel's partners are on the high end of rates in the community, but it finds the rates reasonable given recent awards for similar rates in this District. See P. v. O'Malley, 2024 WL 1136340, at *3 (C.D. Cal. Feb. 12, 2024) ("[T]he Central District of California has frequently found reasonable fees with effective hourly rates exceeding $1,000."); Leslie L.L. v. Kijakazi, 2022 WL 17184598, at *5 (C.D. Cal. Oct. 6, 2022) (approving a $1,500

effective hourly rate for combined attorney and paralegal time); Diaz v. Berryhill, 2019 WL 2871147, at *2 (C.D. Cal. June 3, 2019) (approving a $1,397.59 effective hourly rate).

Accordingly, the Court finds that Defendant's counsel's hourly rates are reasonable.

### 2. Hours Billed

An attorneys' fee award should include compensation for all hours reasonably expended prosecuting the matter but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 839 (9th Cir. 1982).

Here, Defendant's counsel requests an attorneys' fees award for a total of 837.4 hours expended during the under three-month Fee Period. (See Metcalf Decl. ¶ 29.) Defendant's counsel provides a breakdown of the hours by attorney and a list of "most significant categories of work" but, because of "attorney-client privilege,"[2] does not submit an itemized list of hours by task, or even hours by type of work. (See Metcalf Decl. ¶¶ 29, 29 n.1, 34.) "If the party seeking an award of attorney fees fails to adequately document the hours or the hours are deemed excessive, the Court may reduce the award." Hebrank v. Linmar Management, Inc., 2014 WL 5092748, at *2 (S.D. Cal. Oct. 9, 2014) (citing Chalmers v. City of Los Angeles, 769 F.2d 1205, 1210 (9th Cir. 1986)). By providing only total hours expended by attorney, Defendant's counsel fails to carry its burden of proving that the fees it seeks are reasonable. See id.; Yenidunya Invs., Ltd. v. Magnum Seeds, Inc., 2012 WL 538263, at *7 (E.D. Cal. Feb. 17, 2012). The Court has no way to determine whether the work was duplicative or excessive. See Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd., 2012 WL 12883819, at *3 (C.D. Cal. June 12, 2012) ("The Court has no way to determine whether one attorney's revisions were duplicative of another's, nor any way to determine whether the revisions were necessary at all.").

Moreover, the Court finds the total hours billed—over 800 hours for under three months of work in a relatively straightforward case—to be outrageous. Courts have awarded proportionally far fewer hours in similar cases related to false advertising and consumer products. See Wyatt Technology Corp. v. Malvern Instruments, Inc., 2010 WL 11508372, at *1, 9 (C.D. Cal. Apr. 28, 2010) (awarding attorneys' fees for a total of 3,495 hours expended over nearly two

---

[2] The Ninth Circuit has "expressly rejected" Defendant's contention that its billing statements are privileged, and "blanket assertions of attorney-client privilege . . . are 'extremely disfavored.'" See Solis v. Best Miracle Corp., 2011 WL 13187251, at *2 (C.D. Cal. Mar. 15, 2011) (quoting Clarke v. American Commerce National Bank, 914 F.2d 127, 129 (9th Cir. 1992)). In Clarke, the Ninth Circuit held that attorney billing statements which merely contain information regarding the identity of the client, the case name, the amount of the fee, and the nature of the services performed "do not contain privileged communications" because they do not "reveal[] specific research or litigation strategy." Clarke, 914 F.2d at 130.

years, in a case which included "a year-long contentious discovery battle," "two motions to compel," and "three separate motions for summary judgment"); K&N Engineering, Inc. v. Spectre Performance, 2012 WL 12893796, at *1, 5 (awarding attorneys' fees for a total of 3,163 hours expended over three years, in a case which included a "cross motions for summary judgment" and a nine-day jury trial). Defendant's counsel claims its hours were primarily spent preparing responses to Plaintiff's second set of requests for production, collecting and reviewing documents, conducting a two-day visit to Defendant's offices, responding to discovery disputes, participating in meet-and-confer sessions, preparing a letter brief on the scope of discovery, attending two court conferences, preparing the MSJ, and preparing for and defending Amy Strauser's deposition. (See Metcalf Decl. ¶ 34.) But the Court fails to see how those tasks could amount to over 800 hours of work, especially because the MSJ was unopposed. (See MSJ Order.) In the past, for instance, a court in this District awarded 100 hours for the preparation of a motion for summary judgment, 50 hours for all document production, and 60 hours to respond to all document discovery in a complex, three-year case—a fraction of the 837.4 hours billed here. See Omega, S.A. v. Costco Wholesale Corp., 2012 WL 3150432, at *2 (C.D. Cal. June 20, 2012); see also Farrar v. Catalina Restaurant Group, Inc., 2018 WL 2059611, at *4 (C.D. Cal. Apr. 30, 2018) (awarding 55 hours for the preparation of a motion for summary judgment).

Given the lack of support, detail, or itemized billing of the hours expended during the Fee Period, the Court has no means by which to arrive at a lodestar figure. Accordingly, the Court **DENIES** Defendant's Motion. Should Defendant renew its motion for attorneys' fees, it must provide itemized billing statements which show the hours spent by task (e.g., preparation of the MSJ) and by attorney.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion. The September 16, 2024 hearing is **VACATED**.

**IT IS SO ORDERED.**