Graham B. LippSmith (SBN 221984)
g@lippsmith.com
MaryBeth LippSmith (SBN 223573)
mb@lippsmith.com
Jaclyn L. Anderson (SBN 258609)
jla@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 3000
Los Angeles, CA  90071
Tel: (213) 344-1820 / Fax: (213) 513-2495

Jason T. Dennett (WSBA #30686), *Pro Hac Vice*
jdennett@tousley.com
Kaleigh N. Boyd (WSBA #52684), *Pro Hac Vice*
kboyd@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA  98101
Telephone: (206) 682-5600 / Fax: (206) 682-2992

Attorneys for Plaintiff Carolyn Clark

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CAROLYN CLARK;<br><br>                    Plaintiff,<br><br>        v.<br><br>INCOMM FINANCIAL SERVICES, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 5:22-cv-01839-JGB-SHK<br><br>**REDACTED OPPOSITION TO MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. Jesus G. Bernal<br><br>Date: September 16, 2024<br>Time: 9:00 a.m.<br>Courtroom: 1 |

1

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY ........................... 3

  A.   Plaintiff Commenced a Putative Class Action in October 2022. ..................... 3

  B.   Plaintiffs Attempt to Obtain Discovery from InComm, to No Avail. ............. 4

  C.   This Court Granted in Part and Denied in Part the Motion to Dismiss. .......... 6

  D.   Counsel Continue to Seek Discovery First Propounded in February 2023 ..... 6

  E.   InComm Filed an Early MSJ. ........................................................................ 7

  F.   Plaintiff Worked to Obtain Corroborating Documentary Evidence. .............. 8

  G.   Plaintiff Deposed Ms. Strauser on April 4, 2024. ........................................ 9

  H.   The Parties Engage in Settlement Negotiations .......................................... 10

  I.   Plaintiff Elected to Dismiss Her Claims with Prejudice ............................... 14

III.  ARGUMENT .......................................................................................... 14

  A.   Plaintiff Did Not File a Frivolous Suit, and the Court Should Deny Sanctions
       Pursuant to § 1927. ...................................................................................... 14

  B.   Plaintiff Did Not Pursue Her Claims in Bad Faith, and the Court Should
       Deny CLRA Sanctions. ................................................................................ 18

  C.   The Court Should Deny Sanctions Pursuant to Its Inherent Powers............. 23

  D.   The Court Should Deny the Requested Fees as Unreasonable. ..................... 24

IV.  CONCLUSION ....................................................................................... 25

i

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975)..............14

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021)...........................23

*Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111 (9th Cir. 2024)...........15, 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .................................................23, 24

*Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915 (2004)...........19, 20, 21, 22

*Diaz v. Messer*, 742 Fed. App'x 250 (9th Cir. 2018)........................................15, 18

*Elia v. Roberts*, No. 1:16-CV-0557 AWI EPG,
    2017 WL 4844296 (E.D. Cal. Oct. 25, 2017) ......................................................10

*Est. of Blas Through Chargualaf v. Winkler*, 792 F.2d 858 (9th Cir. 1986)...........14

*Fed. Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.*, No. C03-3721 VRW,
    2004 WL 2513467 (N.D. Cal. Nov. 3, 2004) ......................................................10

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001)..........................................................23

*Forto v. Capital One Bank*, 2017 WL 4168529 (N.D. Cal. Sept. 20, 2017)...........18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................24

*Jones v. ConAgra Foods, Inc.*, 2013 WL 6623740 (N.D. Cal. Dec. 16, 2013)..21, 22

*Kleffman v. Vonage Holdings Corp.,* 387 Fed. App'x. 696 (9th Cir. 2010) ...........22

*Lahiri v. Univ. Music & Video Distrib. Corp.*, 606 F.3d 1216 (9th Cir. 2010) .......18

*Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995) ........................................................24

*Mendez v. Subaru Of Am., Inc.,* 2006 WL 1523288 (Cal. Ct. App. June 2, 2006) ..23

*Pickman v. Am Exp. Co.*, 2012 2012 WL 1357636 (N.D.Cal. Apr. 17, 2012) ........21

*Primus Automotive Financial Services, Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) ..............................................................................15

*Rhoades v. Avon Prod., Inc.,* 504 F.3d 1151 (9th Cir. 2007)..................................10

*Roehrig v. Area 55, Inc.*, 2016 WL 1737759 (Cal. Ct. App. Apr. 29, 2016)...........23

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Slovin v. Sunrun, Inc.*, No. 15-CV-5340 YGR,
   2017 WL 2902902 (N.D. Cal. July 7, 2017)..........................................16

Uforma/Shelby Business Forms, Inc. v. N.L.R.B., 111 F.3d 1284 (6th Cir.1997)..10

*United States ex rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists,
   P.C.*, 2023 WL 6370921 (C.D. Cal. Aug. 24, 2023) .............................24

*United States v. Austin*, 749 F.2d 1407 (9th Cir. 1984) ....................................14, 15

*Valdez v. Kismet Acquisition, LLC*, 474 B.R. 907 (S.D. Cal. 2012) ......................15

**Statutes**

Cal. Civ. Code § 1780(e)...........................................................................19

**Rules**

California RPC 5.6(a)(2) ............................................................................2

New York RPC 5.6(a)(2) ...........................................................................2

Washington RPC 5.6(b) .............................................................................2

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.    INTRODUCTION**

3    Defendant InComm Financial Services, Inc. ("Defendant" or "InComm")

4    spins a rich yarn—replete with false and incendiary accusations. InComm claims

5    Plaintiff's Counsel ("Counsel") acted recklessly and with bad faith. InComm falsely

6    accuses Counsel of failing to investigate Plaintiff's claims; possessing definitive

7    proof Plaintiff had no claim against InComm and nevertheless proceeding with

8    litigation; making misrepresentations to InComm's attorneys; receiving subpoenaed

9    documents well before they did; and hiding evidence. None of these disturbing and

10   serious accusations proves true.

11   But InComm proceeds with its Motion for Attorneys' Fees anyway, seeking

12   to obtain a three-quarter-of-a-million-dollar sanction against Counsel. InComm

13   claims that this sanction is "necessary to bring this matter to a just conclusion."

14   Mot. 3. Unfortunately, InComm presents the Court with an incomplete and spurious

15   narrative. The truth is that InComm makes this Motion with one disquieting motive:

16   to prevent future lawsuits against InComm.

17   In fact, while its summary judgment motion was pending, InComm offered to

18   work toward "mutually agreeable terms for a stipulation of dismissal, with each side

19   to bear its own costs, and the stipulation itself to say that plaintiff will take nothing

20   from this action." Declaration of Graham B. LippSmith ("LippSmith Dec."), Ex. 1.

21   ████████████████████████████████████████

22   ████████████████████████████ *Id.*, Exs. 3a & 4.

23   ████████████████████████████████████████

24   ████████████████████████████████████

1

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2 *E.g.*, *id.*, Ex. 3b at 4–5 (▓▓▓▓▓▓▓), Ex. 4a at 3–4 (▓▓▓), Ex. 5a at 5–6

3 (▓▓), Ex. 6a at 4 (▓▓▓▓▓▓▓▓▓▓▓▓); Ex. 7 ("▓▓▓▓▓▓▓▓▓▓▓

4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"); Ex. 7b at 5 (▓▓▓▓▓▓▓▓, Ex. 8a at 4

5 (▓▓▓▓▓). During ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*, Ex. 7b at 5.

9        But when Counsel refused to even negotiate about—let alone agree to—

10 unethical settlement terms that would restrict their future practice of law by

11 promising not to sue InComm, InComm abruptly ended settlement talks. *Id.*, Ex. 9.

12 InComm's counsel stated they disagreed with Counsel's "reading of Rule 5.6" and

13 that "[t]o release InComm's potential claims, we'd need more than your side is

14 willing to give on various items," ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15 ▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at ¶ 19 & Exs. 3a, 4 & 9.

16

---

17 [1] California RPC 5.6(a)(2) states: "Unless authorized by law, a lawyer shall not
participate in offering or making" "an agreement that imposes a restriction on a
18 lawyer's right to practice in connection with a settlement of a client controversy, or
otherwise." Comment [2] to the Rule explains that "Paragraph (a)(2) prohibits a
19 lawyer from offering or agreeing not to represent other persons[] in connection with
settling a claim on behalf of a client."
20 [2] New York RPC 5.6(a)(2) states: "A lawyer shall not participate in offering or
making" "an agreement in which a restriction on a lawyer's right to practice is part
21 of the settlement of a client controversy."
[3] Washington RPC 5.6(b) states: "A lawyer shall not participate in offering or
22 making" "an agreement in which a restriction on the lawyer's right to practice is
part of the settlement of a client controversy." Similar to California, Comment [2]
23 states, "Paragraph (b) prohibits a lawyer from agreeing not to represent other
persons in connection with settling a claim on behalf of a client."
24

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    Now, InComm seeks to punish Counsel for refusing to agree to an unethical

2  restriction on the practice of law and attempts to use this judicial proceeding to

3  obtain what it could not extract in settlement talks. But even InComm admits that

4  some consumer fraud cases fall apart in discovery. Mot. 1. Nothing more happened

5  here. In fact, following the filing of InComm's early motion for summary judgment,

6  Counsel swiftly attempted to obtain further corroborating documentary evidence to

7  support Plaintiff's claims. LippSmith Dec. ¶ 3. Within days of both determining

8  that they could not obtain further corroborating documentary evidence ▆▆▆

9  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

10  ▆▆▆▆▆▆▆▆, Plaintiff and her Counsel ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

11  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *Id.* at

12  Ex. 3a & 4. Counsel neither protracted the proceedings nor engaged in excessive

13  litigation, as InComm now claims. Rather, Counsel acted in good faith and in

14  accordance with their ethical duties to swiftly end litigation once they obtained

15  documents showing Plaintiff's memory about certain details of her purchase history

16  was imperfect. The Court should deny InComm's Motion in its entirety.

17  **II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY**

18      **A.  Plaintiff Commenced a Putative Class Action in October 2022.**

19    Plaintiff Carolyn Clark brought this putative class action with former

20  plaintiffs Shelby Cooper, Sharon Manier, Tarika Stewart, and Aquilla Thompson

21  ("Plaintiffs") in 2022. Complaint, Dkt. 1. Plaintiffs purchased or received a pre-

22  loaded debit card that InComm marketed and issued as "Vanilla gift cards"

23  ("Cards"). *Id.* at ¶¶ 1–2, 7–11. Each Plaintiff experienced their Card being rejected

24  for insufficient funds soon after purchase. Second Amended Complaint ("SAC"),

3

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1  Dkt. 54, ¶¶ 18–22. Plaintiffs' alleged experiences were consistent with those of

2  other consumers who complained online about similar experiences. *Id.* at ¶¶ 44–47.

3        Before filing this case, Counsel investigated Card complaints generally and

4  vetted the original plaintiffs and investigated their claims. Declaration of Jaclyn L.

5  Anderson ("Anderson Dec.") ¶¶ 4–6. During litigation, each plaintiff responded to

6  discovery in September 2023. *Id.* at ¶ 9. Each Plaintiff indicated she no longer had

7  documents with details of her Cards or Card purchases. *Id.* Each Plaintiff listed

8  witnesses who could provide information about her experiences with the Cards. *Id.*

9  Ms. Clark provided a copy of contemporaneous notes she kept to document her

10  experiences contacting InComm about issues with her Card. *Id.* & Ex. 16. The

11  plaintiffs' reports were similar to common, online consumer complaints. *See* SAC

12  ¶¶ 44–47.

13     **B.  Plaintiffs Attempt to Obtain Discovery from InComm, to No Avail.**

14        Plaintiffs participated in discovery in good faith; InComm refused to respond

15  to Plaintiffs' February 28, 2023 Requests for Production (Anderson Dec. ¶ 10 & Ex.

16  17); filed a motion to dismiss, claiming Plaintiffs never called InComm to seek

17  reimbursement for lost funds (Dkt. 58); and contended "Plaintiffs are entitled to no

18  discovery whatsoever at this time," after Plaintiffs propounded identical document

19  requests on August 1, 2023 (Anderson Dec. ¶ 10, Ex. 17).

20        Plaintiffs' document requests sought, *inter alia*, all documents related to any

21  Plaintiff, including records of Plaintiffs' Cards and efforts to seek reimbursement

22  for lost funds. Anderson Dec. ¶ 10. After InComm refused to respond to nearly all

23  written discovery requests because it claimed to have no obligation to respond to

24  certain discovery while its Motion to Dismiss was pending, Plaintiffs' counsel met

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    and conferred with InComm's counsel and initiated the informal discovery

2    conference ("IDC") process with M.J. Kewalramani, pressing for InComm to

3    produce documents, including those that would inform the putative class about any

4    purchase and customer service records that may be available from InComm. *Id.*

5        Although InComm extensively relied on the Declaration of Alison Ledford in

6    support of its Motion to Dismiss, InComm initially refused to produce Ms. Ledford

7    for deposition. Anderson Dec. ¶ 11; Dkt. 58. InComm used her declaration to claim,

8    "InComm conducted an exhaustive search for records of any complaints from

9    Plaintiffs or their family members," "but this search was fruitless." Dkt. 58 at 9, 16.

10    InComm's refusal to produce its key—and only—fact witness offered in support of

11    its Motion to Dismiss necessitated Plaintiffs' efforts to compel her deposition. After

12    unsuccessful meet and confer efforts, M.J. Kewalramani ordered InComm to

13    produce Ms. Ledford for deposition no later than October 27, 2023—too late for

14    Plaintiffs to use her testimony to oppose InComm's Motion to Dismiss. Dkt. 72.

15    ██████████████████████████████████████

16    ██████████████████████████████████████████████

17    ███████████████████████████████████████████

18    ███████████████████████████████████████████.

19    Anderson Dec., Ex. 18 at 14:25–15:21. ████████████

20    ██████" (*id.* at 12:24–13:3, 51:22–52:17); ████████████

21    ████████████████████████████████████████

22    ████████ (*id.* at 67:2–68:14); ████████████████

23    ██████████████████ (*id.* at 56:2–5, 74:1–4). ██████

24    ██████████████████████████████████████

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

*Id.* at 70:21–72:25; *see also id.* at 102:9–24, 102:25–105:1, 110:2–11.

*Id.* at 105:8–19, 108:23–109:1.

*Id.* at 146:23–147:4, 147:13–148:25, 149:15–20, 152:9–19, 153:13–25.

**C.  This Court Granted in Part and Denied in Part the Motion to Dismiss.**

On December 1, 2023, this Court granted in part and denied in part InComm's Motion to Dismiss the SAC. Dkt. 103. The Court denied InComm's motion to dismiss claims for unlawful business practices, unjust enrichment, and injunctive relief. *Id.* at 8–9, 11–12. However, the Court also ruled that Card recipients lacked standing to assert claims pursuant to the "unfair" prong of California's unfair competition law, dismissing Ms. Manier's claim. Dkt. 103 at 10–11. Ms. Clark became the sole remaining plaintiff.

**D.  Counsel Continue to Seek Discovery First Propounded in February 2023**

By the time of the Court's December 1, 2023 ruling on InComm's Motion to Dismiss the SAC, InComm had produced ***zero*** documents in response to Plaintiff's February 28, 2023 production requests and the identical requests she served on August 1, 2023. Anderson Dec. ¶ 16. Accordingly, Counsel continued to focus their efforts on obtaining ***any evidence*** from InComm. *Id.*

On December 14, 2023, Counsel requested a further IDC to address InComm's failure to supplement discovery responses and to produce any responsive

6

1   documents, following up on January 11, 2024. Anderson Dec. ¶ 17, Ex. 19. M.J.

2   Kewalramani held a further IDC on January 24, 2024, ordering the parties to attend

3   an in-person IDC on March 5, 2024. *Id.* at ¶ 18. The same day, Plaintiff also served

4   a second set of document requests on InComm, following up, in part, on

5   information Ms. Ledford could not provide at her deposition: how InComm records

6   complaints; consumer dispute information she referenced; and documents showing

7   data stored in InComm's databases. *Id.* at ¶ 19. By this time, in contrast to InComm,

8   Ms. Clark had responded to three sets of document requests, plus interrogatories

9   and requests for admission, and sat for a four-hour deposition. *Id.* at ¶ 20.

10  **E.   InComm Filed an Early MSJ.**

11          On March 4, 2024, InComm filed its Motion for Summary Judgment, or, in

12  the Alternative, to Deny Class Certification ("MSJ"), the night before the parties'

13  further IDC with M.J. Kewalramani. Dkt. 143. At the IDC, Counsel sought to

14  secure an order for InComm to respond to the discovery that it refused since

15  February 2023 and to begin producing ***any*** meaningful documents. Anderson Dec.

16  ¶ 22. M.J. Kewalramani ordered InComm to inform Plaintiff of search terms it

17  would apply to "assess the potential burden of locating and producing" documents

18  in response to certain requests with an update in two weeks. *Id.* at Ex. 20.

19          The next day, Counsel asked InComm to agree to an alternate briefing for the

20  MSJ to allow Plaintiff time to depose Amy Strauser. Anderson Dec., Ex. 21.

21  ████████████████████████████████████████████

22  ████████████████████████████████████

23  ██████████████████████████████████████████

24  ████████████████   Dkts. 143-1 at 19–21 & 145-2. InComm conditioned an

7

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

extension on Plaintiff's agreement to forgo discovery motions and IDCs until the Court decided the MSJ; Plaintiff agreed, except "as to disputes on evidence necessary to her opposition." *Id.* at Exs. 21 & 22. The Parties also agreed Ms. Strauser's deposition would proceed on April 4, 2024, in Denver. *Id.* at Ex. 23.

### F.  Plaintiff Worked to Obtain Corroborating Documentary Evidence.

To address InComm's arguments in its early MSJ, Counsel and Plaintiff continued their efforts to obtain additional documentary evidence corroborating Ms. Clark's sworn testimony that she bought a Card. LippSmith Dec. ¶ 3. In March 2024, Ms. Clark tried to regain access to the Gmail account she had when she bought her Card, that she believed had the receipt for her Card purchase, and that was hacked after the purchase. Declaration of Carolyn Clark ("Clark Dec.") ¶ 10. Ms. Clark could not regain access to the account because she did not have her old passwords or her telephone numbers associated with the Gmail account. *Id.* Ms. Clark has had "many phones, which were sometimes government program phones," and she could not remember the phone linked to her email account. *Id.* at ¶¶ 8 & 10.

Counsel initially relied on Ms. Clark to obtain her bank statements, which proved unsuccessful. Clark Dec. ¶¶ 11–12. On March 19, 2024, Counsel issued a subpoena to HCN Bank, the successor name for the Bank of Hemet, to obtain Ms. Clark's monthly account statements. LippSmith Dec. ¶ 3. While the HCN bank records are dated March 26, 2024, the postmark on the envelope transmitting the records shows HCN mailed them to LippSmith LLP's offices on or about March 29, 2024. *Id.* at ¶ 4, Exs. 12 & 13. On April 3, 2024 at 2:43 pm PST, LippSmith LLP's mail processor transmitted a scan of the HCN production by email to LippSmith LLP's paralegal, who was working on a time-sensitive filing for another case until

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1  after close of business on April 4. LippSmith Dec. ¶ 5. The morning of April 5,

2  2024, that paralegal internally processed the subpoena production and then

3  circulated it to the attorney team for review at 10:34 a.m. PST. *Id.* After attorney

4  review, Counsel's support staff Bates numbered the HCN documents, marked them

5  "Highly Confidential" pursuant to the Protective Order, and produced the

6  documents to InComm on April 10, 2024. *Id.* at ¶ 6 & Ex. 14.

7      On April 10, 2024, Counsel informed Ms. Clark that the HCN records did not

8  show the Card purchase, contrary to what Plaintiff and Counsel expected. Clark

9  Dec. ¶ 15. Together, they worked to track down records of a Chase banking card

10 Ms. Clark opened in December 2021, which is when she recalls buying a Card, to

11 account for the possibility she was mistaken about which debit card she used to buy

12 the Card. *Id.* Ms. Clark attempted to go online to obtain her Chase statements. *Id.*

13 Over two weeks, Ms. Clark continued to try to obtain her Chase account records

14 despite internet and other challenges. *Id.* at ¶ 16. Ms. Clark finally downloaded the

15 Chase records and shared them with Counsel on April 24, 2024. *Id.* The Chase

16 records did not show a Card purchase. Anderson Dec. ¶ 28.

17     After Ms. Clark's unsuccessful attempts to regain access to the hacked Gmail

18 account she had when she bought her Card (Clark Dec. ¶ 10), Counsel also served a

19 subpoena on Google, but Google indicated that the Federal Stored Communications

20 Act, 18 U.S.C. Section 2702(a), prohibited its production of Plaintiff's records.

21 LippSmith Dec. ¶ 7 & Ex. 15. These records could not be obtained.

22     Ms. Clark remains firm in her conviction that she "bought a Vanilla gift card"

23 and "was never able to use it." Clark Dec. ¶ 17. That testimony has never changed.

24 **G.  Plaintiff Deposed Ms. Strauser on April 4, 2024.**

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

On April 4, 2024, Counsel deposed Ms. Strauser. Anderson Dec. ¶ 26. █████

*Id.* Ex. 24 at 18:22–19:21, 21:3–22:18.

*Id.* at 15:15–25, 25:16–27:14.

*Id.* at 42:23–43:5, 45:14–46:7.

**H.  The Parties Engage in Settlement Negotiations[4]**

On Saturday, April 13, 2024, InComm attorney Jane Metcalf emailed Counsel, indicating she had reviewed the HCN records. LippSmith Dec. ¶ 8, Ex. 1. Ms. Metcalf falsely claimed Plaintiff "first received [the HCN records] on March

---

[4] FRE 408 has "limited applicability;" "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured." *Rhoades v. Avon Prod., Inc.,* 504 F.3d 1151, 1161–62 (9th Cir. 2007). Courts have "allowed evidence of settlement negotiations" "to show bad faith in the negotiation process," *Elia v. Roberts*, 2017 WL 4844296, at *8 (E.D. Cal. Oct. 25, 2017), and to show motive, *Fed. Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.*, 2004 WL 2513467, at *2 (N.D. Cal. Nov. 3, 2004); *Uforma/Shelby Business Forms, Inc. v. N.L.R.B.,* 111 F.3d 1284, 1293–94 (6th Cir. 1997) ("Rule 408 is 'inapplicable when the claim is based upon some wrong that was committed in" "settlement discussions.'") (cleaned up, citation omitted)). The communications among counsel regarding a stipulation for dismissal and the draft settlement agreement demonstrate InComm's bad faith and probable ethical violations ████████████████ ████████████  These communications also demonstrate InComm's motives for bringing this Motion. Thus, FRE 408 does not bar the Court from considering InComm's statements in the settlement negotiations to decide the Motion.

26." *Id.* She also noted InComm incurred costs associated with Ms. Strauser's deposition, seeming to assume Plaintiff would have dismissed her case immediately upon reviewing the HCN records. *Id.* Still, Ms. Metcalf stated, "I'm hoping we can find some mutually agreeable terms for a stipulation of dismissal, with each side to bear its own costs, and the stipulation itself to say that plaintiff will take nothing from this action," asking for a response by April 19, 2024. *Id.* On April 15, Counsel asked Ms. Metcalf to "send a proposed stipulation." *Id.* at Ex. 2.



." *Id.* at Ex. 3a. Counsel agreed to the stipulation for dismissal. *Id.* at Ex. 4.

*Id.* at Ex. 3b.

). *Id.* at p. 5 (6(D).

LippSmith Dec. Exs. 5 & 5a.

. *Id.* at 5a, p. 5.

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**



*Id.* at p. 1

*Id.* at p. 5

*Id.* at Ex. 6a, p. 4 (emphasis added).

." *Id.* ; see also *id.* at 6a, p. 4 ).

LippSmith Dec., Ex. 7. Mr. Kleban wrote,

*Id.*

*Id.* :

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

*Id.* at Ex. 7a, pp. 4–5 ((6)(E). InComm included a provision that Counsel

*Id.*

at p. 5

LippSmith Dec., Ex. 8; *see also* Ex. 8a (deleting ).

The next day, Ms. Metcalf ended the negotiations: "We disagree with your reading of Rule 5.6," and "[t]o release InComm's potential claims, we'd need more than your side is willing to give on various items[.]" LippSmith Dec., Ex. 9.

*Id.* at Ex.

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1  9a. ████████████████████████████████████████

2  (*id.* at Ex. 3a) ███████████████████████████ (*id.* at Ex. 4).

3  **I.   Plaintiff Elected to Dismiss Her Claims with Prejudice**

4     Although "[u]ntil right before the end of the case," Ms. Clark "felt like" she

5  "should continue with the lawsuit because" she "didn't think what InComm did was

6  right by letting money get stolen and not reimbursing it," Ms. Clark ultimately

7  elected to agree to dismiss her claims before filing an opposition to the MSJ. *See*

8  Clark Dec. ¶ 18. She "just got tired of the way they were going after [her], and [she]

9  was the only one left in the case." *Id.* at ¶ 19. She also "knew the only evidence

10  [she] had was [her] memory and [her] notes about [her] calls to the company, so

11  [she] wanted to end it." *Id.* The Court granted summary judgment to InComm on

12  May 30, 2024 and entered judgment the same day (Dkts. 162 &163).

13  **III.   ARGUMENT**

14  **A.  Plaintiff Did Not File a Frivolous Suit, and the Court Should Deny**

15    **Sanctions Pursuant to § 1927.**

16     Per the "American Rule," "the prevailing litigant is ordinarily not entitled to

17  collect a reasonable attorneys' fee from the loser," though some exceptions exist.

18  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 257–59

19  (1975). Section 1927 allows this Court "to sanction an attorney personally who

20  'multiplies the proceedings . . . unreasonably and vexatiously.'" *Est. of Blas*

21  *Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citation

22  omitted). This sanction "may not be imposed" "without an express finding that

23  counsel acted willfully, intentionally, recklessly, or in bad faith." *United States v.*

24  *Austin*, 749 F.2d 1407, 1408 (9th Cir. 1984). InComm attempts to establish only

14

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    recklessness and bad faith. Mot. 16–19.

2         The Ninth Circuit's "cases have been less than a model of clarity regarding

3    whether a finding of mere recklessness alone may suffice to impose sanction[s] for

4    attorneys' fees under § 1927;" "a finding that the attorneys recklessly raised a

5    *frivolous* argument which resulted in the multiplication of the proceedings justifies

6    § 1927 sanctions." *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1154–55

7    (9th Cir. 2024) (internal quotation marks, citations omitted). For the purposes of

8    this recklessness bad faith standard, "frivolous arguments" are "ones that are

9    baseless and made without reasonable and competent inquiry or made up of legal or

10   factual contentions so weak as to constitute objective evidence of improper

11   purpose." *Id.* (internal quotation marks, citations omitted). "That is to say that when

12   an argument is patently lacking in any basis in either law or fact, it can be fairly

13   characterized as 'frivolous' for the purpose of a § 1927 sanction award." *Id.*

14        "The bad faith requirement, as applied to attorney sanctions, sets a high

15   threshold." *Valdez v. Kismet Acquisition, LLC*, 474 B.R. 907, 917 (S.D. Cal. 2012)

16   (internal quotation marks, citation omitted). "A finding of bad faith is warranted

17   where an attorney knowingly or recklessly raises a frivolous argument," or "argues

18   a meritorious claim for the purpose of harassing an opponent." *Primus Automotive*

19   *Financial Services, Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (cleaned up).

20   "A party also demonstrates bad faith by delaying or disrupting the litigation or

21   hampering enforcement of a court order." *Id.* Notably, a "finding of a lack of

22   diligence" does not meet the Section 1927 standard, *Austin*, 749 F.2d at 1409, and

23   "sanctions are inappropriate **where their imposition would chill zealous advocacy**,"

24   *Diaz v. Messer*, 742 Fed. App'x 250, 251 (9th Cir. 2018) (internal quotation marks

15

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    and citation omitted) (emphasis added), as here.

2    Counsel acted diligently and in good faith. Ms. Clark has evidence she

3    purchased a Card and that she called InComm to try to obtain a refund. Clark Dec.

4    ¶¶ 4, 19; Anderson Dec. ¶ 9 & Exs. 16 & 25 at 20:2–21:24. To this day, Ms. Clark

5    is firm that she purchased a Card. Clark Dec. ¶ 17. Thus, Ms. Clark's claims were

6    not baseless, made without reasonable or competent inquiry, so weak as to suggest

7    improper purpose, or patently lacking in any basis in fact. *Caputo*, 96 F.4th at 1155.

8    In fact, her evidence supports a reasonable conclusion that Ms. Clark purchased a

9    Card and that InComm would likely have some record of her purchase and dispute.

10    But InComm resisted Plaintiff's efforts to obtain its records, in the face of Ms.

11    Clark's diligence. Anderson Dec. ¶¶ 10–11, 16–20. Ms. Clark's efforts to obtain

12    discovery show diligent and zealous prosecution of a consumer class action, as she

13    was required to do, and nothing more. *Slovin v. Sunrun, Inc.*, 2017 WL 2902902, at

14    *2 (N.D. Cal. July 7, 2017) ("Class representatives owe a duty to the putative class

15    to prosecute the action vigorously on behalf of the class," and owing to their

16    "special obligations," "the plaintiff forgoes some ability to dispose of [her]

17    individual claim that an ordinary litigant enjoys.") (cleaned up).

18    With the filing of the MSJ, Counsel learned for the first time that InComm

19    *may* not have any record of Plaintiff's Card purchase or complaints, ▮▮▮▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮ Zealous, appropriate advocacy required Counsel to test this evidence. ▮▮

22    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

OPPOSITION TO MOTION FOR ATTORNEYS' FEES

1  ████████████████████████████████████████

2  ████████████████████████ Anderson Dec., Ex. 24 at 42:23–43:5; 45:14–46:7.

3      Counsel swiftly attempted to obtain additional corroborating documentary

4  evidence of Ms. Clark's Card purchase. LippSmith Dec. ¶ 3. Counsel subpoenaed

5  Ms. Clark's HCN Bank records, tried to help recover her Gmail account, and

6  worked with her to obtain her Chase bank card records when the HCN records did

7  not show her Card purchase. Clark Dec. ¶¶ 10–12, 15–16.; Anderson Dec. ¶ 28,

8  LippSmith Dec. ¶¶ 3, 7. InComm acknowledges it did not subpoena Ms. Clark's

9  bank records at any time, relying instead on its internal records. Mot. 12 n.4.

10      Contrary to InComm's assumption, Counsel did not receive the HCN

11  documents on March 26, 2024. LippSmith Dec. ¶¶ 4–6. HCN did not even mail the

12  records until Friday, March 29, 2024; LippSmith LLP's mail processer scanned the

13  documents on Wednesday, April 3, 2024; and LippSmith LLP's paralegal did not

14  circulate the documents for attorney review until Friday, April 5, 2024—*after*

15  Ms. Strauser's deposition. *Id.* Thus, Counsel could only first review the records on

16  April 5, 2024, and produced them to InComm within three business days. *Id*. Even

17  after the HCN records did not show a Card purchase, Counsel worked with Plaintiff

18  to obtain her Chase records. Clark Dec. ¶¶ 15–16; Anderson Dec. ¶ 28.

19      While Counsel continued to gather all available evidence, InComm's counsel

20  reviewed the HCN records, saw no evidence of a Card purchase, and wrote to

21  Counsel on April 13, 2024, that they were "hoping we can find some mutually

22  agreeable terms for a stipulation of dismissal, with each side to bear its own

23  costs[.]." LippSmith Dec. ¶ 8. At that point, though Ms. Clark continued (and

24  continues) to firmly believe in the merits of her own case, after her diligent search

17

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1  for records came up short, she recognized that she may face an uphill battle at trial,

2  and she simply "got tired of the way they were going after" her, and she "knew the

3  only evidence [she] had was [her] memory and [her] notes about [her] calls to the

4  company." Clark Dec. ¶¶ 18–19. On April 29, 2024, the parties agreed to a

5  stipulation for dismissal with a walkaway because Counsel did not want to prolong

6  the litigation. InComm's proposal was consistent with a case that fell apart during

7  discovery, Mot. 1, not one requiring a three-quarter-of-a-million-dollar sanction

8  against Counsel "to bring this matter to a just conclusion," Mot. 3. But when

9  Counsel would not agree to forgo suing InComm—unethically restricting its future

10 practice of law—InComm abruptly ended the negotiations, withdrew the parties'

11 April 29, 2024 agreed-upon stipulation for dismissal, and brought this Motion.

12     The cases InComm cites do not apply. *Lahiri v. Univ. Music & Video Distrib.*

13 *Corp.*, 606 F.3d 1216 (9th Cir. 2010) (affirming sanctions where Counsel spent five

14 years pursuing a legally baseless claim and hired the judge's former law firm to try

15 to force recusal); *Forto v. Capital One Bank*, 2017 WL 4168529 (N.D. Cal. Sept.

16 20, 2017) (finding bad faith where plaintiff's default excused defendants' obligation

17 to repay her, but she sued defendants on 10 claims anyway, inverting the law).

18 Section 1927 sanctions would only serve to "chill zealous advocacy"—exactly what

19 InComm wants—but could not ethically achieve. *Diaz*, 742 Fed. App'x at 251.

20 **B.  Plaintiff Did Not Pursue Her Claims in Bad Faith, and the Court**

21 **Should Deny CLRA Sanctions.**

22     InComm "does not seek any award against Ms. Clark personally," asking

23 instead for attorney fees from Counsel pursuant to the CLRA. Mot. 15 n.6. The

24 CLRA states: "The court shall award court costs and attorney's fees to a prevailing

18

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    plaintiff in litigation filed pursuant to this section. Reasonable attorney's fees ***may***

2    be awarded to a prevailing defendant upon a finding by the court that ***the plaintiff's***

3    prosecution of the action was not in good faith." Cal. Civ. Code § 1780(e)

4    (emphasis added). InComm bears the burden of proof. *Corbett v. Hayward Dodge,*

5    *Inc.*, 119 Cal. App. 4th 915, 926 (2004).

6    First, the CLRA mentions only "***the plaintiff's*** prosecution of the action," not

7    an attorney's. Cal. Civ. Code § 1780(e) (emphasis added). InComm failed to cite

8    any case awarding CLRA fees against counsel and admits it "has found no clear

9    indication in the caselaw" whether Section 1780(e) "invites an award only against

10    an unsuccessful litigant or also against her counsel." Mot. 20. InComm argues that

11    sanctioning Counsel for fees pursuant to the CLRA "is consonant" with the statute's

12    purpose. *Id.* But the statute's plain text does not support such an extension. More

13    worrisome, InComm mischaracterizes the statute's purpose:

14
15    Civil Code section 1760 provides: "This title shall be liberally construed and
      applied to promote its underlying purposes, which are to protect consumers
      against unfair and deceptive business practices and to provide efficient and
16    economical procedures to secure such protection." Accordingly, the statute is
      to be interpreted to encourage such prosecutions.
17
      *Corbett*, 119 Cal. App. 4th at 924.
18
19    California courts have expressed concern about chilling CLRA actions. *Id.*

20    Extending Section 1780(e) to sanction lawyers, rather than plaintiffs, would chill,

      rather than encourage, enforcement of the CLRA. Lawyers prosecuting CLRA class
21
      actions risk fighting hard cases, for years, for which they may never be paid; putting
22
      in time and resources they may never recoup; and forgoing other work all the while.
23
24

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1 | Expanding the CLRA to make attorneys liable for CLRA fees would deter lawyers

2 | from filing CLRA actions, against California's explicit public policy.

3 |       Moreover, InComm fails to meet its burden to show Plaintiff prosecuted this

4 | action "not in good faith." This standard requires finding more than that her CLRA

5 | claim was "frivolous" or "without reasonable cause." *Corbett*, 119 Cal. App. 4th at

6 | 924 (internal quotation marks and citations omitted). "[G]ood faith, or its absence,

7 | involves a factual inquiry into the plaintiff's subjective state of mind," a standard

8 | that serves to avoid chilling CLRA lawsuits. *Id.* at 923, 924. Ms. Clark is resolute.

9 | Her declaration states: "I know that I bought a Vanilla gift card and that I was never

10 | able to use it." Clark Dec. ¶ 17. She "didn't think what InComm did was right by

11 | letting the money get stolen and not reimbursing it." *Id.* at ¶ 18. She felt that this

12 | lawsuit "was the right thing to do." *Id.* at ¶ 19. In short, despite many difficult life

13 | circumstances (*id.* at ¶¶ 8, 10, 13), Ms. Clark makes clear that she genuinely sought

14 | to enforce consumer protection rights she believed InComm violated as to her and

15 | other consumers nationwide. She just was not successful—conduct that is not

16 | sanctionable under the CLRA. Moreover, Ms. Clark's declaration states that she

17 | agreed to retain all evidence in this case; sought her HCN Bank records diligently,

18 | including in two in-person visits and online; sought her Royal Bank of Canada

19 | records by phone; downloaded her Chase statements despite challenges; and sought

20 | to regain access to her hacked Gmail account. *Id.* at ¶¶ 4–8, 10–12, 14, 16. Ms.

21 | Clark did not destroy the phone she used to call InComm; rather, she had a Safelink

22 | phone through a government program that did not last very long. *Id.* at ¶ 8. She also

23 | did not destroy the laptop she used to buy her Card; rather, it was secondhand, did

24 | not work, and a professional told her nothing on it was recoverable. *Id.* at ¶ 6.

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

Plaintiff purchased her Card for herself, "to do some Christmas shopping." Anderson Dec., Ex. 25 at 21:7–24. Ms. Clark's intended use aligned with Counsel's research showing that unbanked and underbanked consumers disproportionately use prepaid cards and use them to make purchases and to pay bills. LippSmith Dec. ¶ 23; RFJN Ex. 33 at 1–2, 5–6, 30–32, 79. Counsel found online complaints from consumers who purchased Cards to buy gas at the pump, engage in other in-person or online retail, or pay bills. LippSmith Dec. ¶ 23. Counsel's investigation also suggested unbanked or underbanked consumers who were more likely to use prepaid cards may also be disproportionately lower income and/or with less education; more likely to be people of color, single parents, and/or to have a disability; and more likely to experience job and/or income instability. LippSmith Dec. ¶ 23, RFJN Ex. 33 at 4, 21–22, 57–61, 77. Counsel believed a significant portion of the putative class may experience financial, job, and other insecurities and, thus, were more likely to be vulnerable ***and*** less likely to have stable access to technology, the internet, and phone service, and may lack perfect record-keeping. LippSmith Dec. ¶ 23. A putative class action on behalf of these consumers meets the CLRA's stated purpose. *Corbett*, 119 Cal. App. 4th at 924.

InComm fails to meet its burden. First, InComm fails to show any "explicit" improper motive. *Jones v. ConAgra Foods, Inc.*, 2013 WL 6623740, at *4 (N.D. Cal. Dec. 16, 2013) (citing *Pickman v. Am Exp. Co.*, 2012 WL 1357636, *3 (N.D.Cal. Apr. 17, 2012) ("By counsel's own admission, he filed the instant action [alleging CLRA violations] to engage in forum shopping")). InComm also fails to show an "inferred" improper motive. *Id.* For instance, InComm does not raise any evidence of "'personal animus or purposeful use of dilatory tactics for purpose of

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    delay.'" *Id.* (quoting *Corbett*, 119 Cal. App. 4th at 926). Moreover, "courts do not

2    automatically infer some ulterior motive where the theory underlying a plaintiff's

3    claim is simply 'weak.'" *Jones*, 2013 WL 6623740, at *4 (finding no bad faith

4    where plaintiff asserted claims based on false factual allegations that he either failed

5    to review or failed to correct); *Corbett*, 119 Cal. App. 4th at 929 (holding "weak

6    evidence" did not show subjective bad faith); *Kleffman v. Vonage Holdings*

7    *Corp.,* 387 Fed. App'x. 696, 698 (9th Cir. 2010) (finding no subjective bad faith

8    where dismissed plaintiff was not a CLRA "consumer").

9          "When a tactic or action utterly lacks merit, a court is entitled to infer the

10   party knew it lacked merit yet pursued the action for some ulterior motive."

11   *Corbett*, 119 Cal. App. 4th at 928. But a court has "discretion not to draw that

12   inference if convinced the party was acting in the good faith belief the action was

13   meritorious." *Id.* The *Corbett* Court concluded the plaintiff's evidence was weak

14   but not without merit, as the plaintiff believed the defendant car dealership

15   misrepresented an auto loan interest rate to him, but his memory failed on whether

16   anyone at the dealership told him the rate at the time. *Id.* Here, Ms. Clark testified

17   that she purchased a Card and produced contemporaneous notes of her calls to

18   InComm. Clark Dec. ¶¶ 4, 19; Anderson Dec., ¶9, Ex. 16. Ultimately, some of her

19   memories were flawed or could not be corroborated by additional evidence. Clark

20   Dec. at ¶ 10, 17, 19, 20. Though she could not locate further corroborating

21   documentary evidence confirming her purchase, she had some evidence, even if

22   weak. And Ms. Clark's experience with InComm is consistent with Counsel's

23   investigation, with allegations set forth in the San Francisco City Attorney's

24   lawsuit against InComm, and with Senator Richard Blumenthal's recent request

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1  that the Federal Trade Commission investigate InComm for card draining. RFJN

2  Exs. 31, 32.

3      California courts have found bad faith where a plaintiff conspired to

4  manufacture and file a false advertising case against the defendant (*Roehrig v.*

5  *Area 55, Inc.*, 2016 WL 1737759 (Cal. Ct. App. Apr. 29, 2016)), and where a

6  plaintiff posted online that he intended to file a fraudulent warranty claim that the

7  jury found was, indeed, fraudulent (*Mendez v. Subaru Of Am., Inc.,* 2006 WL

8  1523288 (Cal. Ct. App. June 2, 2006)). These cases are inapposite.

9      Finding subjective bad faith and extending CLRA sanctions to Counsel

10  would chill CLRA lawsuits, including taking on the representation of California's

11  most vulnerable consumers—which is InComm's intent—but lacks legal support.

12  **C.  The Court Should Deny Sanctions Pursuant to Its Inherent Powers.**

13      "Federal courts possess certain inherent powers" "to manage their own

14  affairs" "to achieve the orderly and expeditious disposition of cases," including "to

15  fashion an appropriate sanction for conduct which abuses the judicial process." *Am.*

16  *Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (internal

17  quotation marks and citation omitted). These sanctions require a finding of "bad

18  faith or conduct tantamount to bad faith," such as "***willful*** actions, including

19  recklessness ***when combined with*** an additional factor" like frivolousness,

20  harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir.

21  2001) (emphasis added); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)

22  (holding a court may impose sanctions when "fraud has been practiced upon it, or

23  that the very temple of justice has been defiled;" when "a party shows bad faith by

24  delaying or disrupting the litigation or by hampering enforcement of a court order;"

23

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    or to make "the prevailing party whole for expenses caused by his opponent's

2    obstinacy") (internal quotation marks, citations omitted). "Because of their very

3    potency, inherent powers must be exercised with restraint and discretion,"

4    (*Chambers*, 501 U.S. at 44), and "reserved for those cases in which the conduct of a

5    party or an attorney is egregious and no other basis for sanctions exists," *(Martin v.*

6    *Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)).

7        Again, the facts do not show abuse of the judicial process, fraud upon the

8    court, bad faith, or obstinance. Counsel investigated this case and Plaintiff's claims;

9    relied on Ms. Clark's testimony and evidence; and continue to find Plaintiff earnest,

10   truthful, and justice oriented. Anderson Dec. ¶¶ 4–5, 7–9. InComm repeatedly

11   withheld discovery while Counsel steadfastly and diligently attempted to obtain

12   corroborating documentary evidence to further support Plaintiff's claims. *Id.* at ¶¶

13   10–11, 16–26, 28; LippSmith Dec. ¶¶ 3–7. As this Court found in *United States ex*

14   *rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C.*, 2023 WL

15   6370921, at *6 (C.D. Cal. Aug. 24, 2023) (cleaned up), "[t]his is simply not one of

16   the rare and exceptional occasions where sanctions are warranted," and InComm's

17   Motion "arguably did more to multiple the proceedings than" any of Counsel's

18   conduct in zealously litigating this putative consumer class action. *Id.*

19       **D.  The Court Should Deny the Requested Fees as Unreasonable.**

20       "The most useful starting point" to determine reasonable fees "is the number

21   of hours reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

22   InComm's counsel made no good faith effort to exclude excessive, redundant, and

23   unnecessary hours or to avoid overstaffing in its fee request. *Id.* at 434. During the

24   "Fee Period," InComm's counsel claims 837.4 hours for a lodestar of $741,052.56.

24

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

1    But they fail to even attempt to show these hours were reasonably expended.

2    Declaration of Jane Metcalf ("Metcalf Dec.") ¶ 34 (listing "most significant

3    categories of work" with no breakdown of hours by task). And most of the work

4    performed during the "Fee Period" resulted from InComm evading discovery.

5    Anderson Dec. ¶¶ 10–11, 16–26. Items (a) through (g) concern discovery InComm

6    ignored for months and finally addressed during the Fee Period, after M.J.

7    Kewalramani set an in-person IDC and ordered compliance. Metcalf Dec. ¶ 34

8    (listing two-day visit to Atlanta to identify documents). During the same "Fee

9    Period," Counsel billed 203 hours for a lodestar of $162,522 for mirror image work

10   on the same tasks. LippSmith Dec. ¶ 22.

11        The only unique tasks in the "Fee Period" were drafting (boilerplate)

12   objections to discovery, reviewing and producing less than 300 pages of documents,

13   drafting the MSJ, and defending a deposition. The Court should reject any claim

14   InComm's counsel reasonably expended 600 attorney hours on this work. Finally,

15   InComm's counsel overstaffed tasks (e.g., sending multiple lawyers to defend

16   Ms. Strauser's deposition in Denver with no explanation for excessive and/or

17   duplicative billing).   The requested fees are unreasonable and excessive on their

18   face. In any event, InComm should not recover *any* fees based on its false premise

19   that earlier production of Plaintiff's bank records would have ended the litigation.

20   **IV.    CONCLUSION**

21        InComm's Motion is an attempt to get the Court to enforce the unethical

22   position InComm could not get Plaintiff to agree to in settlement: barring Counsel

23   from filing any further cases against InComm. This Court should deny the Motion.

24

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

Dated: July 31, 2024          Respectfully submitted,

**LIPPSMITH LLP**

By:  */s/ Graham B. LippSmith*
        GRAHAM B. LIPPSMITH
        MARYBETH LIPPSMITH
        JACLYN L. ANDERSON

**TOUSLEY BRAIN STEPHENS PLLC**

        JASON T. DENNETT, WSBA #30686
        *Pro Hac Vice*
        KALEIGH N. BOYD, WSBA #52684,
        *Pro Hac Vice*

        Attorneys for Plaintiff

26

**OPPOSITION TO MOTION FOR ATTORNEYS' FEES**